David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel For Plaintiffs*

Edward Finkelstein, Esquire [EP-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel: 212-216-8000 / FAX- 212-216-8001
*Local Counsel For Plaintiffs*



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**



DREAMLAND AMUSEMENTS, INC.,
TOY CIRCUS , INC., CROSSROADS
TRUCKING CORP., ROBERT DESTEFANO,
and KATHRYN DESTEFANO,

                    Plaintiffs,

        v.

THE HONORABLE ANDREW M. CUOMO,
ATTORNEY GENERAL OF THE STATE OF
NEW YORK, OFFICE OF THE ATTORNEY
GENERAL,
                    Defendant.

CASE ~~Docket~~ No.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## I.    INTRODUCTION

1.    The traveling carnival is a swathe cut from the fabric of small and mid-town America. "What kid from one to ninety-two" could contain his intense excitement and anticipation awaiting the arrival of the traveling carnival, bringing its thunderous rides, the smell of roasted peanuts, cotton candy leaving strands of sugar on his face, and the other sights and sounds that constitute the midway?

511587-1

2.      Apparently, the Office of the Attorney General of the State of New York is manned by people who as children were deprived of the opportunity to partake of and enjoy this paradigmatic slice of American life.  Perhaps due to this deprivation, the New York State Attorney General has represented, both orally and in writing, that it believes that Plaintiffs have and are engaging in repeated fraudulent and illegal acts, and have demonstrated persistent fraud and illegality in conducting their traveling carnival.  In this regard the prosecutors steadfastly claim both a right and duty to bring "justice" to the Plaintiffs' mobile carnival for its operations both within the State of New York and each of the other half-score states to which Plaintiffs bring their mobile carnival.  The New York State Attorney General has repeatedly represented both orally and in writing that the "fraud" and "persistent illegality" consists entirely of Plaintiffs' alleged failures to pay temporary, seasonal alien workers compensation as set forth in the contract of Plaintiff Dreamland Amusements, Inc. with the United States Department of Labor.  Moreover, consistent with its powers to bring both civil and criminal proceedings, and particularly for "repeated fraudulent and illegal acts" and "persistent fraud and illegality", the New York State Attorney General has acknowledged that it could well bring criminal proceedings against Plaintiffs. Plaintiffs currently employ approximately twenty such workers.

3.      Plaintiffs vehemently deny that Dreamland or any one of them breached any term or condition of Dreamland's contract with the United States Department of Labor in any respect, much less the alleged failure to pay to the 20 alien, seasonal employees the appropriate wages pursuant to Dreamland's contract with the Federal Government, as well as any suggestion that Dreamland or any of the other plaintiffs engaged in "repeated fraudulent or illegal acts" or demonstrated "persistent fraud or illegality" in connection with the performance of the

2

conditions of the contract between Dreamland and the United States Department of Labor.[1]  It

will so prove, should any investigative authority with jurisdiction over the subject matter of the

investigation and/or the power and duty to construe Dreamland's contract with the United States

Department of Labor see fit to make a formal or informal inquiry or undertake an investigation.

    4.    The New York State Attorney General is not such an entity.  To the contrary,

preemption precludes the New York State Attorney General from investigating, much less

prosecuting, any claims of repeated fraudulent or illegal acts or persistent fraud or illegality with

respect to Dreamland's performance under its contract with the United States Department of

Labor, or the breach of the contract itself.  Moreover, assuming, *arguendo*, that preemption did

not absolutely bar the New York State Attorney General from investigating and prosecuting

these claims, the question whether Dreamland has complied with or breached its contract with

the United States Department of Labor is itself vested solely within the United States Department

of Labor, the United States Department of Homeland Security, and the United States Attorney

General, pursuant to the statutory and regulatory scheme erected by the Federal Government in

furtherance of its exclusive powers over immigration and commerce as are set forth in Article I,

§ 8, Clauses 3 and 4 of the United States Constitution.

    5.    Plaintiffs have repeatedly advised the State Attorney General, both in writing and

in lengthy letter memoranda containing analysis and authorities, that the Attorney General has no

---

[1]    In the interest of full disclosure, the New York State Attorney General has represented orally and in writing that its investigation also includes alleged violations of the Federal Civil Rights Laws and the Federal employment discrimination laws set forth in Title VII of the United States Code, pegging the Federal civil rights and Federal employment violations upon its investigation which it states has disclosed thus far that the port-a-potties that Plaintiffs lease from unrelated third parties for use by their employees, including the alien, seasonal workers, at their tour stops are poorly maintained, and that Dreamland's employees, including the alien, seasonal workers, are forced to work outdoors during inclement weather at tour stops without being given ponchos at Plaintiffs' cost.  Plaintiffs are prepared to meet these allegations of Federal civil rights and Federal employment violations head-on. These matters, however, are not the subject of the instant complaint.

right or power to pursue civil or criminal actions against any of the plaintiffs due to preemption

and the fact that the prosecution hinges solely upon an interpretation of duties and obligations

under Dreamland's contract with the United States Department of Labor, committed solely to

that federal department and its federal designes. The entreaties and analyses have fallen on deaf

ears.

6.      Plaintiffs are therefore faced with an ongoing civil and potentially criminal

prosecution that is beyond the right, power, or duty of the State Attorney General to pursue and

prosecute. Moreover, the strident demands from the State Attorney General manifest that the

prosecution is ongoing and the risks to Plaintiffs from prosecution, however misguided, are

serious and imminent.

7.      As a result, Plaintiffs are compelled to file the instant Complaint for Declaratory

Judgment and Injunctive Relief, seeking an order precluding the State Attorney General from

proceeding with its prosecution of Plaintiffs for alleged violations of Dreamland's contract with

the United States Department of Labor, and any fraudulent or illegal acts or persistent fraud or

illegality in connection therewith were there any based upon preemption and the paramount

federal question.

## II.    PARTIES

8.      Plaintiff Dreamland Amusements, Inc. (hereinafter "Dreamland") is an entity

incorporated under the laws of the State of New Hampshire. It had in the past been incorporated

by mistake under the laws of New York, and has been inactive. Dreamland has undertaken steps

preparatory to dissolution of the corporation in New York. For the purposes of this action, it has

an address of 2 Olympia Lane, Stony Brook, New York 11790.

4

9.     Plaintiff Toy Circus, Inc. (hereinafter "Toy Circus") is an entity incorporated under the laws of the State of New York. For the purposes of this action, it has an address of 2 Olympia Lane, Stony Brook, New York 11790.

10.     Plaintiff Crossroads Trucking Corp. (hereinafter "Crossroads") is an entity incorporated under the laws of the State of New York. For the purposes of this action, it has an address of 2 Olympia Lane, Stony Brook, New York 11790.

11.     Dreamland, Toy Circus and Crossroads, own, operate and transport the mobile carnival business generally known as Dreamland.

12.     Plaintiff Robert DeStefano is an owner, officer and/or operator of Dreamland, Toy Circus and Crossroads. For the purposes of this action, he has an address of 2 Olympia Lane, Stony Brook, New York 11790.

13.     Plaintiff Kathryn DeStefano is an owner, officer and/or operator of Dreamland, Toy Circus and Crossroads. For the purposes of this action, he has an address of 2 Olympia Lane, Stony Brook, New York 11790.

14.     Defendant The Honorable Andrew Cuomo is the Attorney General of the State of New York. He is sued in his individual capacity. The Office of the Attorney General of the State of New York is a unit of state government that is charged with representing the interests of the State of New York in civil and criminal proceedings, limited to those previous granted to it by statute. It has an address of 120 Broadway, New York City, New York, 10271.

### III.     JURISDICTION AND VENUE

15.     Original jurisdiction resides in this Honorable Court pursuant to the Supremacy Clause of the United States Constitution, Article VI, Clause 2, as implied and as otherwise provided for under 28 U.S.C. § 1343; under 28 U.S.C. § 1331, in that the instant action arises

5

under the constitution, laws, and treaties of the United States, under 28 U.S.C. § 1337, in that the matter arises under Acts of Congress regulating commerce *inter alia*; and under the Declaratory Judgment Act, 28 U.S.C. § 2201, in that an actual controversy exists, threating Plaintiffs with an unfounded prosecution by anemtity lacking jurisdiction.

16.    Venue is vested in this Honorable Court under 28 U.S.C. § 1391(b) in that the defendant resides within this district and a substantial part of the events or omissions giving rise to the claims of relief occurred and are occurring within this district.

### IV.    FACTS GIVING RISE TO CLAIMS FOR RELIEF

#### A.    The Business of Dreamland and its Limited Operations in New York

17.    Dreamland, Toy Circus and Crossroads are a nomadic, mobile carnival, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts. For much of the year, Dreamland operates its carnival with its charitable organization partners in small and mid-sized towns in states up and down the East Coast of the United States.

18.    For 2008, Dreamland is bringing its carnival to venues such as New London, Connecticut; West Chester, Pennsylvania; Westport, Connecticut; Leonia, New Jersey; Mt. Pocono, Pennsylvania; Bud Lake, New Jersey; New Haven, Vermont; Bennington, Vermont; Lyndonville, Vermont; Lancaster, New Hampshire; Ledyard, Connecticut; Fort Bragg, North Carolina; Augusta, Georgia; and other small and mid-sized cities and towns along the East Coast of the United States. This year Dreamland will operate at New York State venues, such as Islip, Levittown, Farmingdale and New Paltz. Dreamland will operate its mobile amusement park at New York State venues for approximately six weeks during the year 2008, with some stops as short as three days. Nonetheless, the New York State Attorney General purports to prosecute

Plaintiffs for their activities throughout the length and breadth of their tour stops based upon those few occurring within New York State.

**B.  Dreamland is Exempt from Federal and State Minimum Wage, Hour and Overtime Strictures**

19.     The federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., sets forth minimum wage, hour and overtime strictures generally governing the relationship between employers and employees. 29 U.S.C. §§ 206, 207. Certain industries and businesses have been exempted from the wages, hours and overtime provisions of the Fair Labor Standards Act (hereinafter "F.L.S.A.") , including Dreamland and Toy Circus.

20.     29 U.S.C. § 213(a), headed "Minimum Wage and Maximum Hour Requirements," exempts amusement and/or recreational establishments from the minimum wage and maximum hour requirements. The statute reads, in relevant part:

> The provisions of § 206... and § 207 of this Title shall not apply with respect to --- (3) any employee employed by an establishment which is an amusement or recreational establishment...if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33⅓ per centum of its average receipts for the other six months of such year...

21.     For certain years Dreamland did not operate its core business for more than seven months in any calendar year.  For each year, however, its average receipts for any six months of such year are not more than ⅓ of its average receipts for the other six months.  Thus, Dreamland is exempt from the minimum wage and maximum hour requirements of the F.L.S.A., and its employees, including its 20 H- 2 B employees, are not covered by the F.L.S.A. minimum wage and maximum hour requirements.\[2]

---

[2]\     Not surprisingly, the F.L.S.A. amusement establishment exemption is mirrored in the Code of Federal regulations. 29 CFR 779.385.

22.     The New York Labor Laws contain the amusement enterprise exemption as well, as they must in view of the supremacy clause. See e.g., 12 NYCRR §§ 142-3.2, 142-2.2

23.     Thus, Congress has carved out a class of employees of businesses such as Dreamland from the receipt of wages, hours and overtime as otherwise required by federal law. New York State has, perforce, followed suit.

24.     From the inception of Spector, Gadon & Rosen's representation of Plaintiffs, on June 2, 2008, in response to an office subpoena of the New York State Attorney General dated May 23, 2008, Plaintiffs have submitted 10,665 documents, each of which has been bates-stamped and listed as responsive to specific paragraphs of the State Attorney General's twenty-seven separate paragraph subpoena, many of which paragraphs contain multiple subsections. Review of those documents discloses that Dreamland is an exempt amusement establishment under both federal and New York law, had only the State Attorney General reviewed the documents.

### C.  Dreamland's Workforce and its Contracts with the United States Department of Labor

25.     Likely due to the fact that Dreamland is an exempt amusement enterprise so that wages, hours and overtime do not apply to employees of Dreamland, and because high costs of operation and limited ability to generate income effectively preclude mobile carnivals such as Dreamland from deriving sufficient revenues to pay United States born workers a wage sufficient to induce employment with Dreamland, Dreamland is compelled to look beyond the borders of the United States in order to find workers who are willing to be itinerant mobile carnival employees in return for wages that mobile carnivals such as Dreamland can afford to pay and remain in business. Dreamland currently employs approximately one score such foreign national workers each of whom has "H-2B" visas issued by the Federal Government.

8

26.     In this regard, in order to obtain temporary, seasonal employees from foreign countries, Dreamland must, as must all others similarly situated, must first advertise for native-born workers and certify to the United States Department of Labor that their temporary need for the alien employees is based upon their inability to obtain native-born workers. In this regard, the form that entities such as Dreamland must submit to the Department of Homeland Security, United States Citizenship and Immigration Services[3] in connection with its request for permission to employ alien seasonal workers requires the submission of precisely such justification. The form submitted by Dreamland for the year 2008 recites under Section 2(3) under "Explain your temporary need for the alien's services" the following:

> DUE TO THE SHORTAGE OF U.S. WORKERS TO FILL THE LABORER POSITIONS WITH OUR ANNUAL TOURS, WE HAVE A CRITICAL NEED FOR TEMPORARY WORKERS TO ERECT LOADING AND UNLOADING BEFORE/AFTER EACH TOUR STOP. WE HAVE ADVERTISED AND RECRUITED ONCE AGAIN PER THE GUIDELINES AND INSTRUCTIONS AS SET FORTH BY THE DOL/INS FOR THIS JOB CATEGORY.
>
> WE HAVE ALSO POSTED HELP-WANTED SIGNS AT THE VARIOUS CITIES THAT WE TRAVEL TO DURING OUR TOURS.
>
> BECAUSE THIS JOB INVOLVES OUTDOOR WORK, MANY PEOPLE BECOME DISCOURAGED BY HAVING TO WORK IN THE ELEMENTS (HEAT, COLD, RAIN, ETC.).     HOWEVER, THE MAIN PROBLEM IS FINDING PEOPLE THAT ARE WILLING/ABLE TO TRAVEL ON TOUR TO THE VARIOUS LOCATIONS FOR THE ENTIRE DURATION OF OUR OPERATING SEASON. THESE REASONS MENTIONED ALSO MAKE THIS TEMPORARY NEED NECESSARY FOR US TO BE ABLE TO CONTINUE TO OPERATE SUCCESSFULLY AND TO MEET OUR COMMITMENTS AND NOT LOSE OUR DATES TO THE COMPETITION.

27.     This certification by Dreamland to the United States Department of Homeland Security and the United States Citizenship and Immigration Services is crucial in order to comport with the Immigration and Naturalization Acts. These Acts aim to ensure that United States workers are not displaced from obtaining employment by alien, seasonal workers. See, e.g., 8 U.S.C. § 1101(a)(H)(ii)(b)(setting out the power of the United States Congress to enact

---

[3]\     The form is the H Classification Supplement to Form I-129.

9

laws governing aliens residing in a foreign country which they have no intention of abandoning, who come to the United States "to perform temporary service or labor <u>if unemployed persons capable of performing such services or labor cannot be found in this country</u>.") (emphasis supplied). The seasonal, temporary alien employees sought by Dreamland have H-2B visas based upon this subsection of 8 U.S.C. § 1101(a).

28.    The process of obtaining H-2B workers for enterprises such as Dreamland is one governed solely and exclusively by federal law, with each and every step in the process committed exclusively to the United States Department of Labor, the United States Department of Homeland Security, the United States Citizenship and Immigration Services and the United States Attorney General.

29.    The document upon which the New York State Attorney General bases his prosecution of Plaintiffs is a two page component of the massive documentation submitted by and for Dreamland to the United States Department of Labor and its designees in multiple federal departments, and their agencies and bureaus within, in order to obtain H-2B employees.

30.    Those here at issue, and upon which the State Attorney General purports to base its prosecution, however misguided, are the United States Department of Labor, Employment and Training Administration Forms ETA-750A.[4]

31.    Those filed by Dreamland in anticipation of the 2006, 2007 and 2008 Dreamland mobile carnival tours are attached hereto as Exhibit "A".[5]

---

[4] \    Neither Crossroads nor Toy Circus has ever applied for or employed any alien with an H-2B visa.

[5] \    The original office subpoena propounded by the State Attorney General on May 23, 2008 covers the period from January 1, 2006 through the present. On July 8, the State Attorney General served by email a supplemental subpoena purporting to cover the period July 8, 2002 through December 31, 2005. The earlier forms are similar or identical in all material reports.

32.    Review of the federal form ETA-750 is instructive. First, each is signed and submitted four to six months before the year within which the H-2B employee will be working. Before the tour stops are finalized, the precise numbers of employees required and such niceties even as the length of the season are not known or knowable as of the time of submission of the form ETA-750 to the United States Department of Labor. Moreover, as is reflected on the first page of each of the forms, all enclosures must also be submitted to the United States Citizenship and Immigration Services and the United States Department of Homeland Security.

33.    The two-page "Application for Alien Employment Certification" contains at paragraph 23 (b) under "Employer certifications" the following language:

> The wage offered equals or exceeds the prevailing wage and I guarantee that if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

34.    There is not, nor could there be, any specific guarantee contained in the Federal Form ETA-750, with respect to the number H-2B workers Dreamland will employ or the number of hours each employee will work per week, much less the number of hours of overtime. What is instructive, however, is the absence of any guarantee of hours of work, much less hours of overtime. For example, Block 10 on the Federal Form ETA-750 submitted to the United States Department of Labor by Dreamland for 2006, recites an estimate of 40 hours basic and no overtime per week with no rate of payment for overtime, and instead lists a basic weekly rate of pay of $310.80 per H-2B employee. This submission was approved by the United States.

35.    The New York State Attorney General has represented orally and in writing that the violations it has found of "repeated fraudulent and illegal acts" or "persistent fraud and illegality" are premised solely upon its contention that Dreamland repeatedly failed to pay to its H-2B employees the prevailing wage, as required by paragraph 23(b) of the certification

11

Dreamland made to the United States Department of Labor and the United States Department of Homeland Security. The New York State Attorney General has thus created out of whole cloth, from an issue of illegal breach of Dreamland's contract with the Department of Labor, a "repeated and persistent fraud and fraudulent misrepresentation" investigation encompassing wages paid by Dreamland to its H-2B employees at each and every small and mid-sized town throughout the Eastern United States at which Dreamland sets up its mobile carnival.

36.    In so purporting to act, the New York State Attorney General has arrogated unto himself the power to investigate, interpret, implement and penalize what it contends are breaches of Dreamland's contract with the United States Department of Labor. This the law precludes.

### D. **Preemption and the Supremacy Clause**

37.    The powers of the United States Congress over Commerce and Immigration are exclusive and paramount, as set forth in Article I, Section 8, Clauses 3 and 4 of the United States Constitution. These hold sway over states and their agents, as required by Article VI, Clause 2, the Supremacy Clause. The need for the paramount and exclusive jurisdiction being vested in federal agencies is even more pointed in the aftermath of September 11, and the resulting plethora of federal enactments governing aliens and the conduct and circumstances governing their entry into the United States by the Federal Government as part of its comprehensive immigration program.

38.    Every aspect of immigration, including that pertaining to seasonal workers, is specifically set forth at length in phone-book sized volumes within the United States Code and the United States Code of Federal Regulations.

39.    8 U.S.C. § 1101(a)H(ii)(b) sets out the power of the United States Congress to enact laws governing aliens residing in a foreign country seeking to perform the temporary

12

service or labor in this country "if unemployed persons capable of performing such service or labor cannot be found". Exercising that power, the secretary of the Department of Homeland Security, the Attorney General of the United States, and the Secretary of the United States Department of Labor have been exclusively vested with the "administration and enforcement of the chapter and all other laws relating to the immigration and naturalization of aliens" as set forth therein. See, e.g., 8 U.S.C. § 1102(a). The powers so vested are virtually co-extensive with the power to regulate immigration. See, e.g., 8 U.S.C. § 1103, including (g) thereunder.

40.    A sub-set of that broad grant of power is found within 8 U.S.C. § 1184 headed "Admission of Non-Immigrants". Pursuant to that statute, at subsection (a), the admission of any alien as a non-immigrant "for such time and other such conditions" as the Federal Executive Branch may prescribe is squarely-bottomed. Within that section are provisions imposing fraud prevention and detection fees upon employers filing false Forms ETA-750 and other petitions. 8 U.S.C. § 1184(c)(13)(A) and (B). This statute also empowers the Secretary of the Department of Homeland Security[6] to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits false or fraudulent applications in order to obtain, *inter alia*, H-2B employees. See, e.g., 8 U.S.C. § 1184(c)(14)(A).

41.    The United States Code of Federal Regulations contains more than thirty pages addressing only seasonal alien temporary workers. 8 CFR § 214.2(h)(1), et seq., sets forth the procedures governing the representations by contract with the United States Department of Labor

---

[6] \    Notably, although the Secretary of the Department of Homeland Security may, by 8 U.S.C. sec. 1184(c)(14)(B), delegate to the Secretary of Labor these investigative and enforcement duties and rights, the Department of Homeland Security has, to date, chosen not to do so. Rather, the Department of Homeland Security, in a clear indication of its desire to maintain its exclusive authority over this area of immigration regulation, has solely retained the rights of investigation and enforcement.

511587-1

binding upon petitioners such as Dreamland seeking H-2B workers, <u>including wages and however other terms and conditions of employment</u>.

42. The Secretary of Labor and thereafter the Secretary of the Department of Homeland Security and their federal designees, have both the power and jurisdiction to approve H-2B contracts and thereafter enforce and investigate each and every instance in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Indeed, under § 214.2(h)(11)(B), the Director may revoke a petition at any time, even after its expiration, based upon the petitioner's statement of facts contained in the petition being "not true and correct" or if the petitioner has "violated the terms and conditions of the approved petition" or any of the other standards set forth therein.

43. Moreover, each and every false statement to the federal authorities subjects each petitioner to felony prosecution for false statements, 18 U.S.C. § 1001; mail fraud, 18 U.S.C. § 1341; or even RICO, 18 U.S.C. § 1961. Thus the exhaustive and inclusive H-2B federal regime is comprehensive, including civil and criminal penalties for any who run afoul of the form ETA-750 contract between petitioners such as Dreamland and the United States.

44. Plaintiffs respectfully submit that there is a preemption precluding the New York State Attorney General from prosecuting Plaintiffs for any claimed violations of the contract between Dreamland and the United States Department of Labor. Even were there no statutory preemptions, such as that set forth in 8 U.S.C. § 1324(a)(h)(2), case law would compel it. Otherwise each of fifty (50) attorneys general would be free to prosecute ETA-750 issues as each saw fit.

14

**E.  The Prosecution of Plaintiffs by the New York State Attorney General Continues**

45.    From the retention of Spector Gadon & Rosen, on June 2, 2008 in response to the

original office subpoenas propounded by the New York State Attorney General to Plaintiffs on

May 23, 2008, Plaintiffs through their undersigned counsel have been cooperating with the New

York State Attorney General.  In addition to supplying 10,665 documents responsive to the

subpoenas, all with express reservations of rights, counsel as well has repeatedly in oral and

written communications to the New York State Attorney General provided the statutes

establishing the amusement enterprise exemption and the statutes and authorities, together with

analyses, manifesting beyond peradventure, that the subject matter of the prosecution is pre-

empted by the United States statutes and regulations and applicable case law, as well as

manifesting that the breach of contract question on which the New York State Attorney General

hinges his investigation is itself a federal question, whose answer is committed exclusively to the

United States Department of Labor and Homeland Security, with enforcement by the United

States Attorney General.  See, e.g., counsel's letter of July 8, 2008 to Chief and Assistant

Attorney General's Balletta, Birnbaum, Marblestone, and Elmore attached hereto as Exhibit "B".

46.    The New York State Attorney General, representing it has already found

violations, has responded to the analyses and citations to authority, such as those set forth in

Exhibit "B", without any analysis at all, stating simply "We have already addressed the

substantive arguments that you raise."   Instead of heeding the Federal Government's clear,

exclusive jurisdiction, the New York State Attorney General has propounded an additional

subpoena dated July 8 to each of the plaintiffs, demanding documents and testimony pertaining

15

to the Federal Form ETA-750's, this time covering the period from July 8, 2002 through December 31, 2005.[7]

### F. **Plaintiffs are Threatened by State Actions**

47.    The State Attorney General has already represented that he has found violations as a result of his investigation. Despite preemption and the fact that the state's investigation hinges upon the interpretations by the United States Departments of Labor and Homeland Security of a contract entered into between Dreamland and the United States Department of Labor, the State Attorney General is not only proceeding with, but also expanding his investigation and prosecution of Plaintiffs, in spite of the fact that he lacks the right or power to investigate, much less prosecute any issue regarding Dreamland's breach of its contract with the United States Department of Labor, much less notions of persistent fraud in connection with the entry into and performance under that contract.

48.    Plaintiffs have been and will continue to be harmed thereby, unless this Honorable Court grants them the relief to which they are entitled.

### COUNT I – DECLARATORY JUDGMENT

49.    The averments set forth in paragraphs 1 - 45 supra, are incorporated by reference as though fully set forth.

50.    As is set forth hereinbefore, the New York State Attorney General claims it has has found violations and is continuing to investigate and prosecute Plaintiffs for serious and substantial civil and criminal allegations of fraud, all predicated solely upon the Attorney

---

[7] \    The unusual inception date of July 8, 2002 set forth in the additional office subpoena dated July 8, 2008 is premised upon the State Attorney General's contention that under New York law he has the power to recover full wages, benefits and wage supplements accruing during the preceding six years for Dreamland's failure to pay the H-2B prevailing wages as indicated on Dreamland's ETA-750s, which "repeated and persistent failure" and "illegality" the State Attorney General claims falls within his jurisdiction.

511587-1

General's contention that Dreamland violated its Federal Form ETA-750 contracts with the United States Department of Labor and signed the contract with the intent to do so.

51.     Dreamland has not breached any of the terms and conditions of its Form ETA-750 contracts with the United States Department of Labor. Assuming, *arguendo*, it had so violated, it is crystal clear that the determination whether there is a breach, the procedures to attach to such determination, and the remedies to be applied in the event of such a breach lie wholly within the realm of the Federal Government and beyond the reach or power or jurisdiction of the New York State Attorney General, due to preemption.

52.     Moreover, the precise question whether the conduct of Dreamland in paying wages to the H-2B employees breached or did not breach the Dreamland contracts with the United States Department of Labor may be determined only by the United States Departments of Labor and/or Homeland Security.

53.     Yet, despite preemption and the overriding federal question, the State Attorney General claims to have found violations and vows to continue and has indeed expanded his prosecution of Plaintiffs.

54.     As set forth, supra, these facts constitute an actual controversy within the jurisdiction of this Honorable Court. In this regard, the controversy is actual, immediate and real, based upon the threat of litigation and the reasonable apprehension of Plaintiffs to the threat of litigation in view of the representations of the State Attorney General.

55.     Plaintiffs have thus established a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

56.     Moreover, where the substantial controversy involves the threat of prosecution by an agency of the government, persons such as Plaintiffs need not expose themselves to liability before bringing suit to challenge the basis of the threat.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter an Order decreeing:

(1)     That preemption blocks the New York State Attorney General from prosecuting any claim based in whole or in part on the construction or interpretation of the contracts between Dreamland and the United States Department of Labor, such as those attached as Exhibit "A" to this complaint;

(2)     That the determination whether there is a breach by Dreamland of any or each of the provisions of the Form ETA-750 contracts with the United States Department of Labor lies solely within the departments and agencies of the United States; and

(3)     That any other relief deemed necessary, proper or equitable be awarded.

## COUNT II– INJUNCTION

57.     The averments set forth in paragraphs 1 - 53 supra, are incorporated by reference as though fully set forth.

58.     As is set forth hereinbefore, the New York State Attorney General is purporting to prosecute an action, the substance of which has been pre-empted by the United States, so that he lacks any right or power to proceed in the matter.

59.     As is set forth hereinbefore, even were the Attorney General somehow entitled to proceed with his prosecution of the matter under investigation despite preemption, nonetheless his investigation hinges solely upon the interpretation of a contract between Dreamland and the

18

United States Department of Labor, thereby presenting a federal question over which the State Attorney General has no jurisdiction and respecting which he looks standing.

60.    Thus, the State Attorney General has no power or jurisdiction or legal right to continue with this investigation and prosecution of any Plaintiff herein.

61.    Nonetheless, the Attorney General continues to do so, even expanding the temporal scope of his prosecution of Plaintiffs.

62.    Plaintiffs have been and continue to be harmed by the legal and unlawful actions of the New York State Attorney General.

63.    Plaintiffs submit that they lack an adequate remedy at law, in that the disruption to their business and lives from the prosecution by the State Attorney General can never be remedied, and they are unlikely to ever recover the substantial costs they have borne and will continue to bear in responding to the unlawful and improper prosecution of them by the State Attorney General.

64.    Based upon the facts as set forth hereinbefore, Plaintiffs respectfully submit that, absent granting them the injunctive relief sought, they are likely to suffer irreparable harm before a decision on the merits can be rendered.

65.    Plaintiffs respectfully submit that granting them the injunctive relief they seek eliminates the substantial hardship they are currently incurring, while imposing limited hardship upon the New York State Attorney General, particularly given the showing made herein that he lacks the power, jurisdiction and standing to prosecute Plaintiffs for his creative but unfounded manufacturing of state law, civil and criminal offenses, based solely on an allegation that Dreamland breached its contracts with the United States Department of Labor, pursuant to which it obtained H-2B employees.

66.    Plaintiffs respectfully submit that based on what has been set forth hereinbefore, they have established a substantial likelihood of success on the merits.

67.    Plaintiffs respectfully submit that based on what has been set forth herein - before, the public interest would be furthered by granting the sought relief for each of the following reasons:

(1)  the public interest is furthered by precluding prosecutorial agencies from initiating and pursuing proceedings over which they have no jurisdiction;

(2)  the public interest is furthered by maintaining and enforcing the constitutional limitations imposed upon the powers of states and their attorney generals, whenever the subject matter at issue has been pre-empted or presents a federal question whose resolution is vested solely within the Federal Government; and

(3)  as set forth hereinbefore, the determination whether contracts between persons such as Dreamland who seek seasonal, alien workers under the federal H-2B program have breached or complied with the provisions of the contract each signs with the United States Department of Labor cannot be subject to the caprice, whim, or analysis of each of the fifty state attorneys general, but rather, must be determined by the Federal Government, the only governmental entity with whom each applicant for H-2B employees must contract.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter a preliminary injunction decreeing:

(1)    That preemption blocks the New York State Attorney General is enforced from prosecuting any claim based in whole or in part on the construction or interpretation of the contracts between Dreamland and the United States Department of Labor, attached as Exhibit "A" to this complaint; and

20

(2)    The determination whether there is a breach by Dreamland of any or each of the provisions of the Form ETA-750 contract with the United States Department of Labor including these attached as Exhibit "A", lies solely within the jurisdiction and power of the departments and agencies of the United States.

Respectfully submitted,

**SPECTOR GADON & ROSEN, PC**

By:    David Picker
       David B. Picker, Esquire [DP. 9658]
       1635 Market Street, 7th Floor
       Philadelphia, PA 19103
       215-241-8888 / FAX- 215-241-8844

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
1635 Market Street, 7th Floor
Philadelphia, PA 191103
215-241-8888/ FAX-215-241-8844

By:
       Edward Finkelstein, Esquire [EF-2805]
       TARTER, KRINSKY & DROGIN P.C.
       1350 Broadway
       New York, New York 10018
       212-216-8000 / FAX- 212-216-8001
       *Local Counsel For Plaintiffs*

21

511587-1

**EXHIBIT "A"**

**U.S. Department of Labor**    **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



### FINAL DETERMINATION

January 20, 2006

DREAMLAND AMUSEMENTS                ETA Case Number:    C-06020-07301
c/o Joe A, Nichols                         State Case #    20050036260
Law Office of Joe A. Nichols, P. A.    Number of Openings:    40
1033 W. First Street, Suite B
Sanford, FL 32771                         Occupation:    Circus Laborer
                              Period of Certification:    January 05, 2006 - November 01,
                                                         2006

In reply refer to:    Mary Glusak

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, has been certified and is enclosed. All enclosures are required to be submitted to the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, at:

> U.S. Department of Homeland Security
> U.S. Citizenship and Immigration Services
> Vermont Service Center
> 75 Lower Weldon St.
> Saint Albans, VT 05479

for consideration with your petition (Form I-129).

The employer is advised if filing for H-2B visas for carnival laborers next year, he must file his application under the guidelines of GAL 1-95 and not the guidelines for entertainers.

Sincerely,

Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENTS

Attachments: Form ETA 750A

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

OMB Approval No. 44-R1301

**APPLICATION**
**FOR**
**ALIEN EMPLOYMENT CERTIFICATION**

IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM
*PRINT legibly in ink or use a typewriter. If you need more space to answer questions on this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.*

*To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).*

### PART A. OFFER OF EMPLOYMENT

1. Name of Alien  *(Family name in capital letter, First, Middle, Maiden)*

Multiple Aliens    (40)

2. Present Address of Alien  *(Number, Street, City and Town, State ZIP Code or Province, Country)*

Not in USA.

3. Type of Visa  *(If in U.S.)*

The following information is submitted as evidence of an offer of employment.

4. Name of Employer  *(Full name of organization)*

DREAMLAND AMUSEMENTS

5. Telephone  *(Area Code and Number)*

516-901-2988

6. Address  *(Number, Street, City or Town, County, State, Zip Code)*

2 Olympia Lane, Stony Brook, NY. 11790

7. Address Where Alien Will Work  *(if different from item 6)*

Traveling Carnival on US Tour

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule *(Hourly)* | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b. Overtime |
| Traveling Entertainment Carnival | Carnival Laborers | 40 | none | 10:00 a.m. 7:00 p.m. | $ 310.80 per week | $ none per hour |

13. Describe Fully the Job to be Performed  *(Duties)*

Working with carnival rides and seats, unloading and loading rides, seats, and tents, moving heavy equipment as directed, setting up and taking down rides, seats, and tents.

14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactory the job duties described in Item 13 above.

15. Other Special Requirements

| EDU-CATION *(Enter number of years)* | Grade School | High School | College | College Degree Required  *(specify)* |
|---|---|---|---|---|
| | 0 | 0 | 0 | n/a |
| | | | | Major Field of Study |
| | | | | n/a |

| TRAIN-ING | No. Yrs. | No. Mos. | Type of Training |
|---|---|---|---|
| | 0 | 0 | n/a |

| EXPERI-ENCE | Job Offered | | Related Occupation | | Related Occupation  *(specify)* |
|---|---|---|---|---|---|
| | Number | | | | |
| | Yrs. | Mos. | Yrs. | Mos. | |
| | 0 | 0 | 0 | 0 | n/a |

16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor

Supervisor

17. Number of Employees Alien Will Supervise    0

ENDORSEMENTS  (Make no entry in section - for government use only)

Date Forms Received

| | |
|---|---|
| L.O. | S.O. NOV 1 5 2005 |
| R.O. | N.O. |
| Ind. Code 7999 | Occ. Code 969. 687010 |
| | Occ. Title Carnival Laborer |

1. Qualified workers cannot be found in the United States
2. Division of Foreign Labor Certification Policies have been observed.
3. This certification is valid from 1/5/06 through 11/1/06

1/20/06
(Date)

*Maria C. Gonzalez*
(Certifying Officer)

C-06020-07301

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED  *(Complete)* | | |
|---|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | 18. Number | 15. Name of Local | |
| | From | To | | | |
| 40 | 01/05/2006 | 10/11/2006 | | | |

*Handwritten across items 18/19:* 11-01-2006  1-20-06  **CORRECTION APPROVED BY REGIONAL OFFICE**

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS      *(Complete for Private Household Job ONLY)* | | | | | | |
|---|---|---|---|---|---|---|
| a. Description of Residence | b. No. Persons Residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? | *("X" one)* |
| *("X" one)* | Number of Rooms | Adults | Children | Ages | | |
| ☐ House | | | BOYS | | ☐ YES   ☐ NO | |
| ☐ Apartment | | | GIRLS | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.**  *(Specify Sources of Recruitment by Name)*

Will advertise per instructions from Dept. of Labor office.

**22.**   Applications require various types of documentation. Please read PART II of the instructions to assure that appropriate supporting documentation is included with your application.

### 23. EMPLOYER CERTIFICATIONS

*By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.*

a.  I have enough funds available to pay the wage or salary offered the alien.

b.  The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c.  The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly or monthly basis.

d.  I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e.  The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f.  The job opportunity is not:

   (1)   Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

   (2)   At issue in a labor dispute involving a work stoppage.

g.  The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h.  The job opportunity has been and is clearly open to any qualified U.S. worker.

### 24. DECLARATIONS

| DECLARATION OF EMPLOYER ➤ | Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct. | |
|---|---|---|
| SIGNATURE | | DATE 07/13/2005 |
| NAME   *(Type or Print)* Bob DeStefano | | TITLE Owner |
| AUTHORIZATION OF AGENT OF EMPLOYER ➤ | I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent. | |
| SIGNATURE OF EMPLOYER | | DATE 07/13/2005 |
| NAME OF AGENT   *(Type or Print)* Joe A. Nichols | ADDRESS OF AGENT *(Number, Street, City, State, ZIP Code)* Law Office of Joe A. Nichols, P.A. 1033 W. First Street, Ste. B, Sanford, FL 32771 | |

**U.S. Department of Labor**   **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



## FINAL DETERMINATION

November 07, 2006

DREAMLAND AMUSEMENTS INC
c/o MALCOLM SEHEULT
15210 WATERLINE ROAD
BRADENTON, FL 34212

| | |
|---|---|
| ETA Case Number: | C-06311-14820 |
| State Case #: | 20060002710 |
| Number of Openings: | 45 |
| Occupation: | Ride Operator |
| Period of Certification: | January 17, 2007 - November 06, 2007 |

In reply refer to:    Mary Glusak

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, **has been certified and is enclosed.** All enclosures are required to be submitted to the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, at:

> U.S. Department of Homeland Security
> U.S. Citizenship and Immigration Services
> Vermont Service Center
> 75 Lower Welden St.
> Saint Albans, VT 05479

for consideration with your petition (Form I-129).

Sincerely,

Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENTS INC

Attachments:  Form ETA 750A

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

## APPLICATION
## FOR
## ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001)

**PART A. OFFER OF EMPLOYMENT**

| 1. Name of Alien (Family name in capital letter, First, Middle, Maiden) |
|---|
| 45 unknown temporary workers |

| 2. Present Address of Alien (Number, Street, City and Town, State ZIP code or Province, Country) | 3. Type of Visa (if in U.S.A.) |
|---|---|
| not in the U.S.A. | n/a |

The following information is submitted as an offer of employment.

DEPARTMENTAL LABOR CERTIFICATION
NATIONAL PROC. CTR. - Chicago

NOV 0 7 2006
RECEIVED

| 4. Name of Employer (Full name of Organization) | 5. Telephone |
|---|---|
| Dreamland Amusements Inc. | (866) 666-3247 |

| 6. Address (Number, Street, City and Town, State ZIP code) |
|---|
| 2 Olympia Lane, Stoney Brook, New York 11790 |

| 7. Address Where Alien Will Work (if different from item 6) |
|---|
| see attached Route Schedule |

| 8. Nature of Employer's Business | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule | 12. Rate of Pay |
|---|---|---|---|---|---|
| carnival/amusement business | ride operator | a. Basic 40 | b. Overtime 0 | Hours 11:00 a.m. 07:00 p.m. | a. Basic $ Prevailing wage per hour  b. Overtime $ 0.00 per hour |

| 13. Describe Fully the job to be Performed (Duties) |
|---|
| Ride Operator- workers will operate various carnival rides and will assemble and disassemble the rides at each location. Worker shall collect tickets for the rides. Ability to lift in excess of 50 lbs. |

CORRECTION APPROVED BY
NATIONAL PROCESSING CENTER
_____ ON 11-7-06
DATE

| 14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above. | | | | | 15. Other Special Requirements |
|---|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School 0 | High School 0 | College 0 | College Degree Required (specify) n/a  Major Field of Study n/a | |
| TRAIN-ING | No. Mos. 0 | No. Mos. 0 | | Type of Training n/a | workers will be trained on location |
| EXPERI-ENCE | Job Offered Yrs. 0 Mos. 0 | Related Occupation Number Yrs. 0 Mos. 0 | | Related Occupation (specify) none | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | ► owner or ride supervisor | 17. Number of Employees Alien Will Supervise ► 0 |
|---|---|---|

ENDORSEMENTS (Make no entry in section - for Government use only)

Date Forms Received

| L.O. | S.O. SEP 2 7 2006 |
|---|---|
| R.O. | N.O. |

1. Qualified workers cannot be found in the United States
2. Division of Foreign Labor Certification Policies have been observed.
3. This certification is valid from 11/7/07 through 11/6/07

11/9/06    Annie C. Gonzalez
(Certifying Officer)

1899 3426932010
Occ. Code
Occ. Title Ride Operator

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

00311-14820

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | | |
|---|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local | |
| | From | To | | n/a | |
| **45** | **01/17/07** | **11/06/07** | **n/a** | c. City and State | **n/a** |

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS  (Complete for Private Household ONLY) | | | | | | |
|---|---|---|---|---|---|---|
| a. Description of Residence | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? | (X one) |
| ("X" one)  ☐ House ☐ Apartment | Number of Rooms | Adults | | Children | Ages | |
| | | | BOYS | | | ☐ YES  ☐ NO |
| | | | GIRLS | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.** (Specify Sources of Recruitment by Name)

advertised for workers in local papers and magazines, but unable to find a high response to seasonal need. Our company must rely on contract or temporary workers to fill this position although this is difficult due to the transient nature of this occupation-i.e. constant travel from one location to another

**22.** Applications require various types of documentation.  Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

### 23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

### 24. DECLARATIONS

| DECLARATION OF EMPLOYER | ➤ Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct. | |
|---|---|---|
| SIGNATURE | | DATE |
| *[signature]* | | September 12, 2006 |
| NAME (Type or Print) | | TITLE |
| Bob Destefano | | Owner |

| AUTHORIZATION OF AGENT OF EMPLOYER | ➤ I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent. | |
|---|---|---|
| SIGNATURE OF EMPLOYER | | DATE |
| *[signature]* | | September 12, 2006 |
| NAME OF AGENT (Type or Print) | | ADDRESS OF AGENT (Number, Street, City, State, ZIP Code) |
| Malcolm Seheult | | 15210 Waterline Road, Bradenton, Florida, 34212 |

**U.S. Department of Labor**    **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



## FINAL DETERMINATION

November 01, 2007

DREAMLAND AMUSEMENT, INC.                    ETA Case Number:    C-07303-28899
c/o JKJ WORKFORCE, TESS HARRISON
32755 FM 106                                 State Case Number:    20070004340
RIO HONDO, TX 78583                          Number of Openings:    55
                                             Occupation:    Ride Operator
                                             Period of Certification:    December 26, 2007 – November 09,
                                                                         2008

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, has been certified and is enclosed.

Upon receipt of this notification, you will need to submit the appropriate Form I-129 which is required in conjunction with an H-2B temporary labor certification application to the following address:

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services (USCIS)
California Service Center
Attn: I-129
P. O. Box 10129
Laguna Niguel, CA 92607-1012

The USCIS I-129 form can be obtained at http://www.immigration.gov.

Sincerely,

Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENT, INC.

Attachments: Form ETA 750A

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

**APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION**

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**
PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

**PART A. OFFER OF EMPLOYMENT**

| 1. Name of Alien (Family name in capital letter, First, Middle, Maiden) | | | |
|---|---|---|---|
| 55 Unnamed Aliens | | | |

| 2. Present Address of Alien (Number, Street, City and Town, State ZIP code or Province, Country) | | 3. Type of Visa (If in U.S.) |
|---|---|---|
| N/A | | N/A |

The following information is submitted as an offer of employment.

| 4. Name of Employer (Full name of Organization) | | 6. Telephone |
|---|---|---|
| Dreamland Amusements, Inc. | OCT 3 0 2007 | (516) 901-2988 |

| 5. Address (Number, Street, City and Town, State ZIP code) |
|---|
| 2 Olympia Lane, Stony Brook, NY 11790 |

| 7. Address Where Alien Will Work (If different from Item 6) |
|---|
| As per the attached itinerary. |

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | (Hours) | a. Basic | b. Overtime |
| Traveling Carnival | Amusement Attendant Carnival [39-3091] | 38 | 0 | 11:30 a.m. 08:30 p.m. | $ 8.13 per Hour | $ 12.20 per hour |

| 13. Describe Fully the Job to be Performed (Duties) |
|---|
| Preforms variety of attending duties at amusement or recreation facility. May schedule use of recreation facilities, maintain and provide equipment to participants of sporting events or recreational pursuits, or operate amusement concessions and rides. |

| 14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in Item 13 above. | | | | 15. Other Special Requirements |
|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School: 0 | High School: 0 | College: 0 | |
| | | College Degree Required (specify) N/A | | |
| | | Major Field of Study N/A | | |
| TRAIN-ING | No. Yrs. 0 | No. Mos. 0 | Type of Training N/A | Travel with Carnival. |
| EXPER-IENCE | Job Offered Yrs. 0 Mos. 0 | Related Occupation Yrs. 0 Mos. 0 | Related Occupation (specify) N/A | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | 17. Number of Employees Alien Will Supervise |
|---|---|
| Supervisor | 0 |

ENDORSEMENTS (Make no entry in section - for Government use only)

Date Forms Received

| L.O. | S.O. SEP 2 6 2007 |
|---|---|
| R.O. | N.O. |
| Ind. Code 7999 | Occ. Code 34-2663010 |
| Occ. Title Ride operator | |

...ualified workers cannot be found in the United States
...vision of Foreign Labor Certification Policies
...ave been observed.
...his certification is valid from 12/24/07 through 11/9/08

11/1/07    Maria A. Gonzalez

Replaces MA 7-50A, B 2260C (Apr. 1970 edition) which is obsolete.    ETA 750 (Oct. 1979)

07303-28899

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|
| a. No. of Openings To Be Filed By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | a. Number of Local | b. Name of Local |
| | From          To | N/A | N/A |
| 55 | 12/26/07   11/09/08 | | c. City and State |
| | | | N/A |

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS (Complete for Private Household ONLY) | | | | | |
|---|---|---|---|---|---|
| a. Description of Residence | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? |
| ("X" one) | Number of Rooms | Adults | Children | Ages | ("X" one) |
| ☐ House | | | BOYS | | ☐ YES  ☐ NO |
| ☐ Apartment | | | GIRLS | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources of Recruitment by Name)**

We spread the word of employment by word of mouth. We are able to fill some temporary positions with local workers, but we have a chronic shortage of at least 40 to 50 positions that we are not able to fill.

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered to the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

  (1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

  (2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

DECLARATION OF EMPLOYER ➤ Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE |
|---|---|
| Kathryn L. DiStefano | 08/08/07 |
| NAME (Type or Print) | TITLE |
| Kathryn L. DeStefano | President |

AUTHORIZATION OF AGENT OF EMPLOYER — I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE |
|---|---|
| Kathryn L. DiStefano | 08/08/07 |
| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) |
| JKJ Workforce, Tess Harrison, | 32775 FM 106, Rio Honda, TX 78583 |

# EXHIBIT "B"

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

E-MAIL
bthall@lawsgr.com

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

July 8, 2008

**Via Email @oag.state.ny.us**
Andrew Elmore, Esquire
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

> Re:    Response to Your Settlement Proposal and
> Counter Proposal of Dreamland

Dear Andrew:

The enclosed constitutes the substantive response of our clients to the settlement offer promulgated by the Office of the Attorney General of the State of New York, together with an explanation of the predicates on which it is founded.

Dreamland itself conducts its mobile carnival business, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts, along the East Coast of the United States, in 2008 operating in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and New York State. Your Office purports to have the power to challenge my clients' performance under the totality of Dreamland's contract with the United States Department of Labor, even though only a small percentage of its business is conducted at locations in New York.

We have previously provided to you the authorities disclosing that our clients are an amusement enterprise, so that they are exempt from the wages and hours and overtime strictures of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and specifically section 13 thereunder, and the complementing federal regulations, codified at 29 C.F.R. 779.385. Similarly, we have previously provided to you 12 New York Codes Rules and Regulations 142-2.2 (and 142-3.2), which include the FLSA exemption of our clients from the wages and hours strictures, through adopting the exemptions set forth in the Fair Labor Standards Act, including the exemption for amusement enterprises.

508078

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -2-

As a result, no employee of our clients has any claim of entitlement to wages, hours or overtime work standards as set forth in federal or New York Code, regardless of whether the worker is a natural born citizen or an alien.[1]

At our meeting, you disclosed that the New York Office of the Attorney General is not proceeding under wages, hours or overtime as set forth in the FLSA or New York Code. Rather, your theory is based upon a contract between our clients and the United States Department of Labor. In this regard, you assert that our clients have engaged in repeated or persistent fraud or illegality in the conducting of its carnival business, and specifically with regard to federal Department of Labor forms ETA-750 (Applications for Alien Employment Certification). You contend that in signing those United States Department of Labor form contracts for each of three years, 2006, 2007, and 2008, Dreamland alone,[2] and not our other clients, contracted under penalty of perjury to the United States to pay United States Department of Labor prevailing wages to non-immigrant, H-2B seasonal employees obtained by others for our clients for their mobile carnival; further, you contend that our clients breached the contracts, and that the breach of the contract with the United States Department of Labor gives the New York Office of the Attorney General jurisdiction over what you deem to be the fraudulent misrepresentations, pursuant to New York Executive Law § 63(12), even though the contract was exclusively entered into with and approved by the United States Department of Labor.

The federal forms ETA-750 contain columns for estimated hours per week, estimated overtime hours, estimated weekly wages, and estimated weekly overtime at boxes 10 and 12. Only estimates can be made on signing the form, because on application to the United States Department of Labor, the final schedule of carnival locations and dates, and hours consumed on each date have not been determined. The estimates are not a guarantee of the number of hours that each H-2B worker will be asked to perform during each week.

Were there any questions regarding these facts or their interpretation, the United States Department of Labor is the sole entity which can answer them.

It is difficult to conceive how anyone could view the affixation of a signature by Dreamland to constitute a guarantee of specified hours of work per week. Moreover, precisely because the FLSA and New York Analog exempt American citizens who work for Dreamland

---

[1]    You also averred that my clients violated Civil Rights statutes because, inter alia, the porto-johns they lease for use at carnival sites are not sufficiently clean and because workers, including H-2B aliens, are forced to work in inclement weather. The short answers are sue the lessors and buy yourself a rain slicker at Family Dollar. The power of your Office to bring Civil Rights claims is not otherwise addressed in this response.

[2]    The United States Department of Labor forms ETA-750 were submitted by Dreamland Amusements, only, and not by Toy Circus or Crossroads. In fact, none of the latter have any H-2B non-agricultural, seasonal employees.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -3-

from wages and hours strictures, your construction of the United States Department of Labor forms ETA-750 would create the anomalous situation of alien workers being guaranteed more money for displacing American workers than the American workers would receive for performing those services. Such a conundrum ignores and undercuts the express policy of the United States in creating its H-2B programs in the first instance. See, e.g., 8 U.S.C. § 1101(a)(4)(ii)(B).

Putting facts and logic aside however, your Office lacks the right or power to claim jurisdiction over or standing to pursue the averments that our clients have engaged in repeated or persistent fraud or illegality through your contention that they failed to pay prevailing wages per contract wit the United States Department of Labor to the H-2B seasonal employees, as set forth below.[3]

## PREEMPTION AND THE SUPREMACY CLAUSE

Resisting the temptation to refer you to treatises on Federal Preemption and the Supremacy Clause, suffice it to say for purposes of your investigation that the powers of Congress over Commerce and Immigration, as set forth in Article I, Section 8, Clauses 3 and 4 of the Constitution, are exclusive and paramount, and hold sway over states, as required by Article VI, Clause 2, known as the Supremacy Clause. The paramount and exclusive jurisdiction is even more pointed following the aftermath of the plane hijackings that occurred on September 11, 2001, and the resulting plethora of federal enactments governing aliens and the conduct of their entry into the United States by the federal government as part of its comprehensive immigration program.

Every aspect of immigration, including that pertaining to seasonal workers, is specifically set forth at length in phone book sized volumes within the United States Code and the Code of Federal Regulation.

### Federal Statutes and Federal Regulations

8 U.S.C. § 1101(a)(H)(ii)(b) sets out Congress's power to enact laws governing aliens residing in a foreign country which they have no intention of abandoning who come to the United States "to perform temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." Exercising that power, the Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of

---

[3]    Whether the United States Department of Justice could prosecute such claims as false statements under 18 U.S.C. § 1001, or as mail fraud under 18 U.S.C. § 1341, or under RICO pursuant to 18 U.S.C. § 1961 is unclear in view of primacy of the regulatory scheme involving the Departments of Homeland Security, Labor, Agriculture and Justice. E.g., *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). What is clear is that the New York Office of Attorney General has no such power.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -4-

the Department of Labor have been exclusively vested with the "administration and enforcement of the chapter and all other laws relating to the immigration and naturalization of aliens," as set forth therein. See 8 U.S.C. § 1102(a). The powers so vested are virtually co-extensive with the power to regulate immigration. See, e.g., 8 U.S.C. § 1103, including (g) thereunder.

A sub-set of that broad grant of power is found within 8 U.S.C. § 1184, headed "Admission of Non-Immigrants." Under that statute, subsection (a), hinges admission of any alien as a non-immigrant "for such time and other such conditions" as the Executive Branch may prescribe. Within that Section are provisions imposing fraud prevention and detection fees upon employers filing false forms ETA-750 and other petitions, 8 U.S.C. § 1184(c)(13)(A), and (B). The statute also empowers the Secretary of the Department of Homeland Security to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits a false or fraudulent application in order to obtain, *inter alia*, H-2B employees. 8 U.S.C. § 1184(c)(14)(A).

The Code of Federal Regulations contains more than 30 pages addressing only seasonal alien temporary workers. 8 C.F.R. § 214.2(h)(1), *et seq.*, extending for 30 pages within the Code of Federal Regulations, sets forth the procedure governing and representations by contract with the United States Department of Labor binding upon petitioner seeking H-2B workers, including wages and other terms and conditions of employment. The Secretary of Labor wields both the jurisdiction and power to address instances in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Under § 214.2(h)(11)(B), the Director may revoke a petition at any time, even after its expiration, based upon the petitioner's statements of facts contained in the position being "not true and correct," or that petitioner had "violated terms and conditions of the approved petition" or other standards set forth therein.

No wonder there is preemption. The statute itself provides for preemption. Indeed, 8 U.S.C. § 1324(a)(h)(2) reads in its entirety:

> The provisions of the section preempt any state or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.

Even were there no statutory preemption, nonetheless the law would compel it.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -5-

---

## CASE LAW

Not surprisingly, the case law interpreting the scope and breath of the federal statutory and regulatory components governing immigration and including seasonal workers has denied to all others the jurisdictional power or standing to raise claims otherwise within the four corners of the Congressional enactments and Federal Code provisions. Indeed, in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 147-48 (2002), the Supreme Court denied to a federal entity -- the National Labor Relations Board -- the authority to construe its enabling legislation to include giving back pay awards to aliens unauthorized to work in view of the overarching primacy of Title 8 of the United States Code.

Thus, it is not surprising that every Court which has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement. See, e.g., *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941) (striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilarary regulations."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); accord *Gade v. Nat'l Solid Waste Management Assoc.*, 505 U.S. 88, 108 (1992); *Perry v. Thomas*, 482 U.S. 483 (1987); *DeCanas v. Bico*, 424 U.S. 351, 355 (1976); *Spina v. Department of Homeland Sec.*, 470 F.3d 116, 127-28 (2nd Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, *inter alia*, "the immigration laws contain no provision indicating that they are to be interpreted in accordance with state law."); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893-96 (10th Cir. 1972); *Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F.Supp.2d 1036 (D. Ariz. 2008); *Lozano v. City of Hazleton*, 496 F.Supp.2d 477, 517-528 (M.D.Pa. 2007); *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 648-49 (S.D.N.Y. 2000); *United States v. Richard Dattner Architects*, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); *Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146 (D.Colo. 1971); *Younus v. Shabat*, 336 F.Supp. 1137, 1140 (N.D.Ill. 1971).

And, without a private cause of action, there is no "parens patriae" jurisdiction permitting your Office to become involved in the matters you state are under investigation. The remedies are distinctly federal. See, e.g., *Castellanos- Contreras v. Decadur Hotels, LLC*, 488 F.Supp.2d 565 (E.D. La. 2007). Put another way, there is not a single case that holds that a state has the power or standing to pursue a person or entity for alleged false statements to the United States Department of Labor to obtain seasonal workers.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -6-

From the Supremacy Clause set forth in Article VI, Clause 2, the powers over commerce and immigration vested in Congress pursuant to Article I, Clause 8, and the authorities set forth, *supra*, it is painfully obvious that the New York Office of the Attorney General lacks any power with respect to the matter that it contends is under investigation. The substance and breadth of such investigation reside solely and exclusively within the federal government.

That being the case, it is our considered view that your proceeding with your investigation will do nothing other than force our clients to bear substantial legal costs and fees while resulting in an opinion holding that your Office lacks jurisdiction over the matter under investigation.

It is because of the costs and fees, however, that I am authorized to submit to you a formal response to your settlement proposal. I am authorized to represent that our clients are willing to enter into a consent decree, based on no admission of wrongdoing, that results in an order enforceable by you for breach, if such decree will close your investigation and, therefore, end the costs attendant to our clients' unwilling participation in these proceedings. In addition, our client will pay the sum of $35,000, in acknowledgement of the costs and expenses you have incurred in connection with your investigation, albeit one over which you lack jurisdiction.

I would propose that the consent agreement include a weekly wage rate for the periods of time within which our clients' mobile carnival is set up in New York. I would not presume to suggest what other reasonable conditions you deem important or appropriate; however, as I have advised you since the inception of our representation, our clients are more than willing to agree to any reasonable terms and conditions of a consent order.

Alternatively, we encourage you to submit the fruits of your investigation to the United States Department of Labor. That Department has the jurisdiction and standing to address whatever issue you deem important.

I look forward to your response.

Sincerely,

Bruce L. Thall

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -7-

BLT/jkw