UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREAMLAND AMUSEMENTS, INC.,
TOY CIRCUS, INC., CROSSROADS
TRUCKING CORP., ROBERT DESTEFANO,
and KATHRYN DESTEFANO,

     Plaintiffs,

     -- against --

THE HONORABLE ANDREW M. CUOMO,
ATTORNEY GENERAL OF THE STATE OF
NEW YORK, OFFICE OF THE ATTORNEY
GENERAL,

     Defendant.

No. 08 Civ. 6321 (JGK)

ECF Case

# DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Andrew M. Cuomo
Attorney General of the State of New York
120 Broadway
New York, New York 10271
Attorney for Defendant

Alphonso B. David, Deputy Bureau Chief for Civil Rights
Spencer Freedman, Counsel for Civil Rights
Seth Kupferberg, Acting Bureau Chief for Labor

Julian R. Birnbaum
Andrew J. Elmore
Judith Marblestone
Assistant Attorneys General
    Of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 1

ARGUMENT ...................................................................................................................... 6

     POINT I

     THE COMPLAINT IS NOT RIPE FOR JUDICIAL REVIEW
     AND SHOULD BE DISMISSED ...................................................................... 6

     POINT II

     THE COURT SHOULD ABSTAIN FROM HEARING CLAIMS
     THAT CAN BE RAISED IN A PENDING STATE PROCEEDING ................................ 9

     POINT III

     THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION ................................ 15

     POINT IV

     EVEN ASSUMING PLAINTIFFS WERE TO SURVIVE
     JURISDICTIONAL FLAWS IN THEIR COMPLAINT, PLAINITFFS
     HAVE ALSO FAILED TO STATE A CLAIM FOR RELIEF ........................................ 19

CONCLUSION ...................................................................................................................... 25

**TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGE**

Abbott Laboratories v. Gardner,
    387 U.S. 136 (1967)................................................................................................ 6

Anheuser-Busch, Inc. v. Abrams,
    71 N.Y.2d 327 (N.Y. 1988) ............................................................................ 7, 20

Arnold v. Ben Kanowsky, Inc.,
    361 U.S. 388 (1960)................................................................................................ 7

Avco Corp. v. Aero Lodge No. 735,
    390 U.S. 557 (1968).............................................................................................. 18

Avco Financial Corp. v. Commodity Futures Trading Comm'n,
    929 F. Supp. 714 (S.D.N.Y. 1996) ...................................................................... 8

Balbuena v. IDR Realty LLC,
    6 N.Y.3d 338 (N.Y. 2006) .................................................................. 21, 24, 25

Bates v. Dow Agrosciences L.L.C.,
    544 U.S. 431 (2005)............................................................................................ 20

Beneficial Nat'l Bank v. Anderson,
    539 U.S. 1 (2003)............................................................................................... 18

Briarpatch Ltd. v. Phoenix Pictures, Inc.,
    373 F.3d 296 (2d Cir. 2004) .............................................................................. 18

Box Tree South, Ltd. v. Bitterman,
    873 F. Supp. 833 (S.D.N.Y. 1995) .............................................................. 15, 17

Brunswick Hosp. Center, Inc. v. Hynes,
    52 N.Y.2d 333 (N.Y. 1981) .............................................................................. 13

Cammon v. City of New York,
    95 N.Y.2d 583 (N.Y. 2000) .............................................................................. 11

Clearing House Association, L.L.C. v. Cuomo,
    510 F.3d 105 (2d Cir. 2007).................................................................. 8, 15, 50, 21

Corning Glass Works v. Brennan,
    417 U.S. 188 (1974)........................................................................................... 17

**Table of Authorities (cont'd)**

**CASES** **PAGE**

Cox v. NAP Constr. Co.,
2008 N.Y. LEXIS 1472 (N.Y. June 5, 2008) ................................................................ 18

Damassia v. Duane Reade, Inc.,
2008 U.S. Dist. LEXIS 41650 (S.D.N.Y. May 27, 2008)..................................... 24

De Canas v. Bica,
424 U.S. 351 (1976)......................................................................... 20, 22

Detroit Diesel Corp. v. Attorney General,
269 A.D.2d 1 (N.Y. App. Div. 1st Dep't 2000)..................................... 13

Diamond "D" Constr. Corp. v. McGowan,
282 F.3d 191 (2d Cir. 2002).......................................................... 9, 15

Donovan v. Rothman,
106 F. Supp. 2d 513 (S.D.N.Y. 2000)........................................... 15, 17

Dowling v. Slotnik,
712 A.2d 396, 244 Conn. 781 (1998) .............................................. 21

Empire Healthchoice Assurance, Inc. v. McVeigh,
547 U.S. 677 (2006)......................................................................... 16

English v. General Elec. Co.,
496 U.S. 72 (1990)........................................................................... 21

Fleet Bank, N.A. v. Burke,
160 F.3d 883 (2d Cir 1998)............................................. 15, 16, 18, 19

Franchise Tax Bd. v. Constr. Laborers' Vacation Trust,
463 U.S. 1 (1983)..................................................................... 16, 18

Hartford Enters. v. Coty,
529 F. Supp. 2d 95 (D. Me. 2008) .................................................... 23

Hicks v. Miranda,
422 U.S. 332 (1975)......................................................................... 11

Hip-Hop Summit Action Network v. N.Y. Temp. State Comm'n on Lobbying,
2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003)...................... 10

iii

**Table of Authorities (cont'd)**

CASES                                                                                              PAGE

Huffman v. Pursue,
    420 U.S. 592 (1975)......................................................................................... 13, 14

In re People v. Applied Card Systems, Inc.,
    2008 N.Y. LEXIS 18 (N.Y. Ct. App. June 26, 2008) ........................................ 22

Integrative Nutrition, Inc. v. Acad. of Healing Nutrition,
    476 F. Supp. 2d 291 (S.D.N.Y. 2007).............................................................. 19

Jara v. Strong Steel Doors, Inc.,
    16 Misc. 3d 1139A (N.Y. Sup. Ct. Kings Cty. 2007)........................................ 23

Juidice v. Vail,
    430 U.S. 327 (1977).............................................................................. 12, 13, 14

J. & W. Seligman & Co., Inc. v. Spitzer,
    2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007)............................. 10, 12

Kaylor v. Fields,
    661 F.2d 1177 (8th Cir. 1981) ........................................................................ 10

Kirschner v. Klemons,
    225 F.3d 227 (2d Cir. 2000)............................................................................. 9

Madeira v. Affordable Housing Found., Inc.,
    469 F.3d 219 (2d Cir. 2006)........................................................................ 21, 23

Manlinguez v. Joseph,
    226 F. Supp. 2d 377 (E.D.N.Y. 2002) ............................................................. 24

Matter of Angello v. Labor Ready, Inc.,
    7 N.Y.3d 579 (N.Y. 2006) .............................................................................. 12

Matter of Council of City of N.Y. v. Bloomberg,
    6 N.Y.3d 380 (N.Y. 2006) .............................................................................. 18

**Table of Authorities (cont'd)**

**CASES**                                                                 **PAGE**

Matter of Forrence Orchards, Inc. v. Ross,
    85 A.D.2d 44 (N.Y. App. Div. 3d Dep't 1982),
    appeal dismissed, 57 N.Y.2d 673 (N.Y. 1982) ................................................. 23

Matter of Garcia v. Heady,
    46 A.D.3d 1088 (N.Y. App. Div. 3d Dep't 2007) ............................................ 17

Matter of Scott Wetzel Servs., Inc. v. New York State Bd. of Indus. Appeals,
    252 A.D.2d 212 (N.Y. App. Div. 3d Dep't 1998) .............................................. 7

Matter of Settlement Home Care, Inc. v. Industrial Bd. of Appeals,
    151 A.D.2d 580 (N.Y. App. Div. 2d Dep't 1989) ............................................. 11

McGinley v. Hynes,
    51 N.Y.2d 116 (N.Y. 1980) ........................................................................... 14

Mendoza v. Zirkle Fruit Co.,
    2000 U.S. Dist. LEXIS 21126 (E.D. Wash. Sept. 27, 2000),
    rev'd on other grounds, 301 F.3d 1163 (9th Cir. 2002) ................................... 21

Medtronic, Inc. v. Lohr,
    518 U.S. 470 (1996) ...................................................................................... 25

Metro. Life Ins. Co. v. Taylor,
    481 U.S. 58 (1987) ........................................................................................ 18

Middlesex County Ethics Comm. v. Garden State Bar Ass'n,
    457 U.S. 431 (1982) ...................................................................................... 12

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,
    491 U.S. 350 (1989) ...................................................................................... 12

New York Civil Liberties Union v. Grandeau,
    528 F.3d 122 (2d Cir. 2008) ............................................................................ 8

Overnite Transp. Co. v. Tianti,
    926 F.2d 220 (2d Cir. 1991) .......................................................................... 24

People v. General Electric Co., Inc.,
    302 A.D.2d 314 (N.Y. App. Div. 1st Dep't 2003) ............................................. 4

**Table of Authorities (cont'd)**

CASES                                                                                           PAGE

People v. Mikuszewski,
    73 N.Y.2d 407 (N.Y. 1989) ................................................................................................ 24

Perez-Farias v. Global Horizons, Inc.,
    2008 U.S. Dist. LEXIS 27588 (E.D. Wash. Mar. 27, 2008)........................................ 21, 23

Riegel v. Medtronic, Inc.,
    128 S.Ct. 999, 1011, 169 L. Ed. 2d 892, 906 (2008).......................................... 25

Schlagler v. Phillips,
    166 F.3d 439 (2d Cir.1999)............................................................................................... 9

Simmonds v. INS,
    326 F.3d 351 (2d Cir. 2003)........................................................................................... 7, 8

Spannaus v. Fed. Exchange Comm'n,
    641 F. Supp. 1520 (S.D.N.Y. 1986)................................................................................. 8

Spargo v. New York State Comm'n on Judicial Conduct,
    351 F.3d 65 (2d Cir. 1986).......................................................................................... 10, 14

Temple of the Lost Sheep v. Abrams,
    761 F. Supp. 237 (E.D.N.Y. 1989) ............................................................................. 10, 11

Tenet v. Doe,
    544 U.S. 1 (2005)............................................................................................................. 10

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003)........................................................................................ 16, 22

Villas at Parkside Partners v. City of Farmers Branch,
    2008 U.S. Dist. LEXIS 42452 (N.D. Tex. May 28, 2008) ................................................ 22

Younger v. Harris,
    401 U.S. 37 (1971)........................................................................... 9, 10, 11, 12, 13, 14, 15


FEDERAL STATUTES

8 U.S.C. §1101 ........................................................................................................................ 25

**Table of Authorities (cont'd)**

**FEDERAL STATUTES**                                             **PAGE**

8 U.S.C. §1324a ............................................................................ 21

29 U.S.C. §213 ............................................................................ 17

29 U.S.C. §218 ............................................................................ 24


**FEDERAL RULES AND REGULATIONS**

8 C.F.R. §214.2 ........................................................................... 25

20 C.F.R. §655.3 .......................................................................... 25

29 C.F.R. §778.5 .......................................................................... 24


**NEW YORK STATUTES**

C.P.L.R. §2304 ............................................................................ 13

Executive Law §63(12) ........................................................... passim

Executive Law §290 et seq. .............................................................. 5

Labor Law Article 6 .......................................................... 4, 5, 12, 13

Labor Law Article 19 ............................................................... 5, 13


**NEW YORK RULES AND REGULATIONS**

10 N.Y.C.R.R. Subpart 7-3 ............................................................... 5

12 N.Y.C.R.R. Part 142 .................................................................. 5

12 N.Y.C.R.R. §142-2.2 ................................................................ 18


**NEW YORK CITY CODES**

New York City Administrative Code §8-101 et seq. ................................. 5

vii

**Table of Authorities (cont'd)**

**MISCELLANEOUS**                                                                          **PAGE**

Foreign Labor Certification Training and Employment Guidance Letter, No. 31-05,
     U.S. Dep't of Labor May 31, 2006, <u>available at</u>
     http://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=2228 ............................................. 3

## PRELIMINARY STATEMENT

Plaintiffs filed their Complaint as an eleventh hour ploy to resist valid subpoenas pursuant to a pending state investigation into whether their employment practices violate state wage and hour, civil rights and health laws. For the reasons below, the Court should reject outright this transparent attempt to frustrate a valid state investigation.

Pursuant to New York Executive Law §63(12), the New York Attorney General in May 2008 investigated the employment practices of plaintiffs Dreamland Amusements Inc., Toy Circus, Inc., and Crossroads Trucking Corp., which jointly operate the traveling carnival business known as "Dreamland," and their owners-operators Robert F. DeStefano, Jr. and Kathryn L. DeStefano ("the DeStefanos"), by issuing subpoenas _duces tecum_ to Dreamland and the DeStefanos and subpoenas _ad testificandum_ to the DeStefanos. After partial compliance with the subpoenas _duces tecum_, but without seeking relief in state court, plaintiffs now seek to have a federal court halt the ongoing investigation of alleged violations of state laws. The Attorney General has since filed a motion to compel compliance with the subpoenas under state law in state court.

This Court should dismiss because the Complaint does not present a ripe controversy, is barred by abstention, does not confer federal jurisdiction, and fails to state a claim. New York has a significant interest in enforcing its laws. Prompt dismissal here avoids creating perverse employer incentives to ignore state law and investigations involving alleged victims with temporary work visas.

## STATEMENT OF FACTS

In May 2007, the Attorney General's office began receiving complaints that Dreamland was engaged in unlawful employment practices (accompanying Affidavit of

Assistant Attorney General Andrew J. Elmore, sworn to July 29, 2008 ("Elmore Aff."),

¶13).[1]  The Attorney General's preliminary investigation suggests that plaintiffs operate

up to one half of their season in New York, and that since at least January 2007, up to one

third of plaintiffs' workforce consists of nonimmigrant employees from Mexico

authorized to work for Dreamland on a seasonal basis pursuant to temporary H-2B work

visas ("H-2B employees") (id. ¶¶14-15).  Employee complaints alleged principally that

plaintiffs failed to pay employees full, or even minimum, wages and overtime required

under New York Labor Law and regulations; that H-2B employees are provided with

work and living conditions inferior to those of non-H-2B employees, in violation of state

and local anti-discrimination laws; and that employee housing is unsanitary and

substandard, in violation of regulations promulgated under the State Sanitary Code.

Dreamland  Amusements  Inc.  filed  Applications  for  Alien  Employment

Certification ("ETA 750s") with the New York State Department of Labor ("NYS

DOL"), seeking temporary labor certification for H-2B workers.[2]  Either Robert or

---

[1]      The Elmore Aff. was filed in support of the Attorney General's order to show
cause to compel compliance with subpoenas in state court, Cuomo v. Dreamland
Amusements Inc., Index No. 401816/08 (S. Ct. N. Y. Cty.), filed July 29, 2008.  Copies
are attached to the Affidavit of Julian R. Birnbaum, sworn to August 6, 2008 ("Birnbaum
Aff."), Ex. A.  Defendant submits the affidavits in support of the portions of his motion
made under Fed. R. Civ. P. 12(b)(1).

[2]      Plaintiffs cannot dispute that Dreamland Amusements Inc. filed ETA 750s with
NYS DOL.  Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for
Preliminary and/or Permanent Injunction ("Pls. Prelim. Inj. Mem.") states "[the ETA
750] is submitted to the appropriate State Workforce Agency ("SWA") for a
determination of the prevailing wages in the geographic areas in which the alien will
work" (id. at 5).  Plaintiffs note the SWAs' role in recruitment of U.S. workers and
determination of an employer's temporary need and rate of pay, as well as transmittal of
the ETA 750s to the United States Department of Labor (id. at 5-7).  As plaintiffs aver
that Dreamland Amusements Inc. "followed each and every step" required to obtain H-
2B employees (Pls. Prelim. Inj. Mem. at 12), and the NYS DOL is the appropriate SWA

Kathryn DeStefano signed ETA 750s in 2005, 2006, and 2007, certifying under penalty of perjury, inter alia, that Dreamland would pay a rate of pay listed in the ETA 750 that is no less than the prevailing wage, determined by NYS DOL and listed on each ETA 750, and comply with federal, state and local laws, including but not limited to wage and hour and civil rights laws (Complaint Ex. A; Elmore Aff. ¶¶15-23, Exs. B-C).

Based upon employees' allegations, the ETA 750s, and surveillance of the worksite conducted by the Attorney General that corroborate employee allegations about hours worked, the Attorney General issued subpoenas,[3] seeking testimony and production of documents relating to, inter alia, payroll and time records, employment practices, tax returns, and documents filed with New York and federal agencies regarding wages and other terms and conditions of employment (Elmore Aff. ¶33).

Despite initial assurances of compliance with the subpoenas, plaintiffs subsequently refused to testify or to produce any further documents (id. ¶34-52). Plaintiffs produced numerous documents, including payroll records from 2006-08 that suggest failure to pay wages, including overtime, and recordkeeping violations under state Labor Law (id. ¶25). In response to plaintiffs' demands and to advance settlement discussions (id. ¶42), the Attorney General provided the ETA 750s to plaintiffs and

---

for East Coast entertainment companies like Dreamland, see Foreign Labor Certification Training and Employment Guidance Letter No. 31-05, at 2 (U.S. Dep't of Labor May 31, 2006), available at http://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=2228 (last visited Aug. 6, 2008); see also Complaint ¶¶8, 17, it is beyond dispute that Dreamland Amusements Inc. filed its ETA 750s with the NYS DOL. (See Elmore Aff. ¶¶16-18.)

[3]    The Attorney General issued subpoenas pursuant to New York Executive Law §63(12), which provides jurisdiction "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business," and that "the Attorney General is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules."

explained the Attorney General's good faith basis to believe that plaintiffs (a) violated recordkeeping, civil rights and state sanitary code requirements, (b) failed to pay the rate of pay listed on the ETA 750s, which equals or exceeds the prevailing wage determined by NYS DOL and which constitutes the lawful wage under New York Labor Law Article 6, and (c) misrepresented to NYS DOL that they would pay no less than the H-2B prevailing wage if they received temporary labor certification – which constitute a repeated fraudulent and illegal practice under Executive Law §63(12) (id. ¶¶ 42-43).[4]

Plaintiffs' initial compliance changed dramatically when the the DeStefanos were to appear for subpoena hearings to testify about the documents they produced and the ongoing investigation (id. ¶¶34-52). After plaintiffs requested and received three hearing adjournments to accommodate alleged unavailability and the document production schedule (id. ¶¶38, 40, 45), they repeatedly changed positions on whether they would testify or refuse to testify (id. ¶41, 44, 46), and after a denied request for a fourth postponement (id. ¶50), refused to testify or to produce additional documents absent judicial order (id. ¶ 51). The Attorney General had earlier advised plaintiffs that nor compliance would result in a motion to compel (id. ¶¶43, 45).

Although plaintiffs' intent appears to be to avoid compliance with the subpoenas, plaintiffs did not file a motion to quash them. Instead, plaintiffs filed this federal lawsuit the day before the final subpoena hearing date, seeking to enjoin the proceeding on the

--------

[4]    The test for fraudulent conduct under Executive Law §63(12) "is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud." People v. General Electric Co., Inc., 302 A.D.2d 314, 314 (N.Y. App. Div. 1st Dep't 2003).

4

alleged ground of federal preemption (id. ¶¶51-52).[5]  As discussed below, the preemption argument is meritless on several independent grounds and, as plaintiffs acknowledge, does not address two of the Attorney General's bases for the subpoenas, a good faith belief that plaintiffs violated anti-discrimination and state health laws (Complaint n.1).

The investigation so far suggests plaintiffs have engaged in repeated and persistent illegality and fraud under Executive Law §63(12) by, inter alia, failing to pay full or minimum wages and overtime, and comply with recordkeeping requirements, in violation of Labor Law Articles 6 and 19 and 12 N.Y.C.R.R. Part 142; deceptive business practices in misrepresenting to NYS DOL that they would pay a prevailing wage and adhere to applicable laws but failing to do so, in violation of Executive Law §63(12); subjecting H-2B workers to discriminatory employment conditions, in violation of Executive Law §290 et seq. and New York City Administrative Code §8-101 et seq; and furnishing unsanitary and substandard employee housing, in violation of New York Sanitary Code regulations, 10 N.Y.C.R.R. Subpart 7-3 (Elmore Aff. ¶28).

On July 29, 2008, the Attorney General moved in state court to compel compliance; an order to show cause is returnable August 12, 2008 (Birnbaum Aff. ¶¶3, 6).  On August 1, plaintiffs moved for a preliminary injunction, to which the Attorney General will respond in due course.

---

[5]     Tellingly, the Complaint does not mention procedural objections that plaintiffs previously raised (Elmore Aff. ¶¶41, 44, 46), but rather rests on a meritless preemption argument.  Plaintiffs' recent motion for an injunction is further evidence of their true intention.  Plaintiffs moved only after the Attorney General's state court motion highlighted that they did not seek federal emergency relief.  As the Attorney General will respond, plaintiffs cannot make the showing required for injunctive relief.

# ARGUMENT

## POINT I

### THE COMPLAINT IS NOT RIPE FOR JUDICIAL REVIEW AND THEREFORE SHOULD BE DISMISSED

Because the Attorney General's investigation is at an early stage, before reaching formal conclusions or filing suit, plaintiffs' preemption argument is not ripe for federal court adjudication. The ripeness doctrine ensures that federal courts hear only actual cases and controversies, which avoids "entangling [federal courts] in abstract disagreements," and protects "agencies from judicial interference until" an agency action is ripe for judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967). Examination of plaintiffs' Complaint shows that its attempt to halt a state investigation on the ground that the Attorney General is preempted from considering certain documents as evidence of violations of state law, is not ripe.

Plaintiffs attempt to entangle the Court in a discovery dispute in an ongoing state investigation into their employment practices that has obtained only partial compliance with subpoenas duces tecum and no compliance with its subpoenas ad testificandum. It is unclear at this point what conclusions the Attorney General may reach, the scope of violations that may exist, whether there are other violations, or whether he will eventually file suit. As plaintiffs' preemption argument asserts that the investigation is "premised solely on its contention that Dreamland repeatedly failed to pay its H-2B employees the prevailing wage" (Complaint ¶35), and that the ETA 750 is an exclusive "contract with the United States Department of Labor ["US DOL"]" (Complaint ¶36), this argument is likely to change as plaintiffs concede that the Attorney General's investigation is based upon evidence that extends well beyond the ETA 750s (Complaint n.1), and that

6

Dreamland filed the ETA 750s with NYS DOL so that it could determine whether plaintiffs' proposed wage rate is at or above the prevailing wage (see Pls. Prelim. Inj. Mem. at 5-7; n.2 above). Plaintiffs' preemption argument is, therefore, not fit for judicial decision now because it requires this Court to engage in hypothetical determinations regarding arguments that will likely shift in light of new information, and the future conclusions and scope of an incomplete investigation. The Attorney General has not issued any conclusions regarding his investigation; rather, he has a good faith belief that state law violations have occurred based on a variety of information, which authorizes him to issue subpoenas pursuant to Executive Law §63(12). See Anheuser-Busch, Inc. v. Abrams, 71 N.Y.2d 327, 331-32 (N.Y. 1988).

It is premature to conclude how additional documents or information will bear on the investigation, or to adjudicate to what extent the New York Labor Law incorporates the Fair Labor Standards Act ("FLSA") seasonal amusement exemption before the Attorney General has obtained sufficient evidence to determine whether plaintiffs even qualify for the exemption.[6] Thus, further factual development on these issues alone is required before a preemption argument is fit for a judicial decision, because "the issues sought to be adjudicated are contingent on future events or may never occur." Simmonds

---

[6]    The Complaint's conclusory assertions that plaintiffs qualify for the FLSA exemption for amusement establishments are insufficient to support this factual assertion (Complaint ¶¶19-24). Exemptions to federal and state overtime requirements are narrowly construed against employers, and the employer carries the burden of proving an employee comes within its scope. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 394 n.11 (1960); Matter of Scott Wetzel Servs., Inc. v. New York State Bd. of Indus. Appeals, 252 A.D.2d 212, 214 (N.Y. App. Div. 3d Dep't 1998). Testimony of the DeStefanos and other corporate representatives pursuant to the subpoenas is necessary to determine whether the produced documents show their employees are exempt and whether there are other responsive documents, which demonstrates the need for further factual development before this matter is ripe.

7

v. INS, 326 F.3d 351, 359 (2d Cir. 2003); see AVCO Financial Corp. v. Commodity Futures Trading Comm'n, 929 F. Supp. 714, 722 (S.D.N.Y. 1996) (ripeness defense likely to succeed when party makes a "preemptive attempt" to challenge investigation by seeking to enjoin subpoenas before enforcement action is brought); cf. Spannaus v. Fed. Exchange Comm'n, 641 F. Supp. 1520, 1529-30 (S.D.N.Y. 1986) ("reason to believe" findings supporting federal agency subpoenas are not ripe for review).

Plaintiffs also fail to demonstrate they "will endure hardship if decision is withheld." Clearing House Ass'n, L.L.C. v. Cuomo, 510 F.3d 105, 123 (2d Cir. 2007). Their contention that the "threat" or "reasonable apprehension" of litigation is a hardship (Complaint ¶56) is belied by their previous compliance and representations. Plaintiffs initially stated they intended to comply and produced numerous documents for the original subpoenas duces tecum (Complaint ¶45), never raising a hardship issue regarding testimony but instead requesting and receiving adjournments (Elmore Aff. ¶¶38, 40, 45). This Court should therefore not hesitate to reject plaintiffs' newly made hardship contention.[7]

---

[7]    Moreover, possible future litigation is conjectural and insufficient to demonstrate hardship. See Simmonds, 326 F.3d at 360 ("mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship"); see also Spannaus, 641 F. Supp. at 1529-30 (no hardship where only real burden is responding to federal agency subpoena, and adequate procedural safeguards after conclusion of investigation). Nor are any other hardship factors present here. As plaintiffs must comply with New York laws, the mere existence of a state investigation into their potential noncompliance does not constitute a burden. The Attorney General may not impose civil or criminal penalties until after filing a suit, in which jurisdictional defenses would be ripe. Plaintiffs challenge the Attorney General's jurisdiction, not the conduct of his investigation. See Clearing House Ass'n, 510 F.3d at 123-24; New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 134-35 (2d Cir. 2008).

Accordingly, adjudication of the Attorney General's theoretical bases of liability and plaintiffs' shifting jurisdictional defenses would entangle this Court in an abstract disagreement, subject the Attorney General to unwarranted interference, and is unripe.

## POINT II

### THE COURT SHOULD ABSTAIN FROM HEARING CLAIMS THAT CAN BE RAISED IN A PENDING STATE PROCEEDING

Because plaintiffs could raise their preemption claims in pending state court proceedings, their collateral attack on the Attorney General's investigation is barred by Younger v. Harris, 401 U.S. 37 (1971). Under Younger, a federal court should abstain from exercising jurisdiction "over federal constitutional claims that involve or call into question ongoing state proceedings" when the claims can be raised and litigated in state court. Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002). The strong policy in favor of abstention arises from core considerations of federalism and comity, see, e.g., Younger, 401 U.S. at 43, 45; Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir.1999), which reaffirm that "in the ordinary course, a state proceeding provides an adequate forum for the vindication of federal constitutional rights." Diamond "D" Const. Corp., 282 F.3d at 198 (quotation omitted).

Plaintiffs identify no reason why their federal preemption claims cannot be fully and adequately addressed in state court, and indeed, their own complaint demonstrates that the three threshold requirements for abstention are satisfied. The Second Circuit has repeatedly confirmed that Younger abstention is mandatory when (1) there is an ongoing state proceeding that (2) implicates an important state interest, and (3) the federal plaintiff

has an adequate opportunity to raise the federal constitutional claims in the state proceeding.[8] Spargo, 351 F.3d at 75; Diamond "D" Const. Corp., 282 F.3d at 198.

First, there are ongoing state proceedings related to plaintiff's federal suit. Plaintiffs acknowledge they filed this action only after the Attorney General issued investigatory subpoenas under Executive Law §63(12) (Complaint ¶¶45-48). "The Attorney General's issuance of the contested subpoenas" in a pending investigation "constitutes an 'ongoing state proceeding'" that triggers Younger abstention. J. & W. Seligman & Co., Inc. v. Spitzer, 2007 U.S. Dist. LEXIS 71881, at *14 (S.D.N.Y. Sept. 27, 2007); see also Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981) (subpoenas issued by prosecutor pursuant to state law constitute an ongoing state proceeding); Hip-Hop Summit Action Network v. N.Y. Temp. State Comm'n on Lobbying, 2003 U.S. Dist. LEXIS 21229, at *7-8 (S.D.N.Y. Nov. 25, 2003) (state lobbying commission's investigation and issuance of investigatory subpoenas is state proceeding for Younger).

Moreover, because plaintiffs unilaterally refused to comply with the disputed subpoenas, the Attorney General commenced a proceeding in state court to compel compliance. The pending motion to compel also qualifies as an ongoing state proceeding for Younger purposes. See, e.g., Temple of the Lost Sheep v. Abrams, 761 F. Supp. 237, 242 (E.D.N.Y. 1989) (recognizing that the Attorney General's motion to compel

---

[8]    Younger applies to requests for both declaratory and injunctive relief. Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000). In addition, while Younger does not divest the court of Article III jurisdiction, it is a threshold consideration that may be addressed before deciding whether federal question jurisdiction exists over plaintiffs' claims. See Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005); Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003).

compliance with investigatory subpoenas is an "ongoing proceeding before the courts of New York" that satisfies the first condition for <u>Younger</u> abstention).[9]

Here, even if issuance of subpoenas did not trigger <u>Younger</u>, the Attorney General's efforts to obtain compliance in state court (which plaintiffs clearly anticipated) satisfies the threshold requirements for abstention. The grounds for abstention are even more clear here than in factually similar <u>Lost Sheep</u>, where plaintiffs filed a federal lawsuit challenging the Attorney General's ongoing investigation into their religious society and requested immediate injunctive relief after the Attorney General issued subpoenas. Although the Attorney General did not proceed in state court to compel compliance until two weeks after plaintiffs moved for a federal injunction, the district court nonetheless abstained under <u>Younger</u> – appropriately deferring to the pending state court action because no substantive proceedings had occurred in federal court. <u>Lost Sheep</u>, 761 F. Supp. at 242-43. Unlike plaintiffs in <u>Lost Sheep</u> who moved for injunctive relief in federal court <u>before</u> the Attorney General sought state court compliance, plaintiffs here failed to seek affirmative relief from this Court – moving for a preliminary injunction only <u>after</u> the Attorney General moved to compel in state court. Plaintiffs' conduct in this Court is consistent with their previous pattern of delay and evidences the very type of strategic interference with state proceedings that <u>Younger</u> forbids.

---

[9]    While plaintiffs filed this lawsuit before the Attorney General had an opportunity to seek relief in state court, their strategic effort to avoid compliance and manipulate the subpoena process to file the federal action first does not evade <u>Younger</u> because abstention is not determined by a race to the courthouse. Rather, <u>Younger</u> is fully applicable when state proceedings are commenced "after the federal complaint is filed" so long as no "proceedings of substance on the merits" have occurred in the federal action. <u>Hicks v. Miranda</u>, 422 U.S. 332, 349 (1975). It would trivialize the considerations of comity underlying <u>Younger</u> to permit a federal suit where plaintiffs have induced state authorities to refrain from instituting a state proceeding by seeking multiple adjournments and delaying subpoena compliance.

Second, the state has an undeniable interest in enforcing its labor and employment laws[10] and "in investigating and preventing fraudulent conduct and enforcing subpoenas issued pursuant to state law." Seligman, 2007 U.S. Dist. LEXIS 71881, at *17. A claim of preemption does not alter that interest. Cf. Juidice v. Vail, 430 U.S. 327, 335-36 (1977) (states have important interest in integrity of subpoena and contempt procedures).[11]

Here, there is no question that the Attorney General's investigation was lawfully instituted. Indeed, plaintiffs do not challenge the majority of the claims under investigation, focusing solely on the Attorney General's authority to "enforce" a prevailing wage certification purportedly made only to the US DOL. Even if that

---

[10]    See, e.g., Cammon v. City of New York, 95 N.Y.2d 583, 590 (N.Y. 2000) ("Labor Law's strong State interest in protecting workers"); Matter of Settlement Home Care, Inc. v. Industrial Bd. of Appeals, 151 A.D.2d 580, 581 (N.Y. App. Div. 2d Dep't 1989) (minimum wage law "constitutes remedial legislation designed to relieve the financial hardship experienced by persons employed in occupations 'at wages insufficient to provide adequate maintenance for themselves and their families' (Labor Law §650). As such, it is to be liberally construed so as to permit as many individuals as possible to take advantage of the benefits it offers" (citations omitted)); see also Matter of Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 583-86 (N.Y. 2006) (purpose of Labor Law Article 6 is "to strengthen and clarify the rights of employees to the payment of wages" and "history of [provision prohibiting unlawful deductions from wages] manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements" (citation omitted)).

[11]    Contrary to plaintiffs' suggestion, assertion of a preemption claim does not automatically mandate that the claim be heard in federal court. Younger applies fully when a federal plaintiff alleges that state action is preempted. New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans ("NOPSI"), 491 U.S. 350, 365 (1989). Because state courts are equally competent at adjudicating constitutional claims, including under the Supremacy Clause, see Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) ("[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights"), the relevant Younger inquiry is not whether a plaintiff has a valid preemption claim, but instead whether the state has a valid interest in the underlying proceeding that makes federal intervention inappropriate. NOPSI, 491 U.S. at 365.

accurately described the underlying facts or fairly characterized one particular theory of liability the state may assert, which it does not, it would not alter the state's general interest in ensuring timely compliance with subpoenas, which lies at the core of the state's enforcement power and provides a compelling basis for federal abstention.

The state's enforcement interest is especially strong here, when state procedures provide plaintiffs with a timely opportunity to challenge investigative subpoenas and raise any federal claims regarding the Attorney General's underlying jurisdiction in state court. Plaintiffs could have raised their preemption claim, for example, in a motion to quash the subpoenas. See N.Y. C.P.L.R. §2304; Detroit Diesel Corp. v. Attorney General, 269 A.D.2d 1, 12-13 (N.Y. App. Div. 1st Dep't 2000) (affirming order quashing subpoenas duces tecum where claims asserted by Attorney General were preempted by the Clean Air Act); Brunswick Hosp. Center, Inc. v. Hynes, 52 N.Y.2d 333, 339 (N.Y. 1981) ("A motion to quash or vacate, of course, is the proper and exclusive vehicle to challenge the validity of a subpoena or the jurisdiction of the issuing authority[.]").[12]

Plaintiffs have ignored available state remedies for challenging the Attorney General's authority to issue the disputed subpoenas, which allow plaintiffs to raise a

---

[12]    Plaintiffs' "failure to avail themselves of [this] opportunity" does not render Younger inapplicable. Juidice, 430 U.S. at 337. Parties "need be accorded only an opportunity to fairly pursue their constitutional claims" in state court for abstention to apply; they may not invoke federal jurisdiction by unilaterally ignoring state procedures or by deliberately not exhausting state remedies. Id. (emphasis added); see also Huffman v. Pursue, 420 U.S. 592, 610-11 & n.22 (1975). Juidice rejected the very strategy that plaintiffs have adopted here. Like plaintiffs, appellants in Juidice unilaterally ignored outstanding subpoenas, failed to appear for deposition, and did not appear in state court to assert constitutional claims – instead bringing a federal suit to enjoin the New York contempt procedures. Juidice, 430 U.S. at 329-30. The Court held that Younger abstention applied because appellants "had an opportunity to present their federal claims in state proceedings," and therefore could not resort to a federal forum by simply deciding not to appear in state court to raise constitutional claims. Id. at 337.

timely preemption claim by filing a motion to quash.[13]  Moreover, here, in contrast to Juidice and Huffman, state proceedings are not complete.  Plaintiffs may seek to raise preemption in response to the pending motion to compel, as a defense to any enforcement action, and may seek appellate review – all of which are sufficient to preserve plaintiffs' ability to present their federal claims.[14]  Cf. Huffman, 420 U.S. at 608-09.

Because the third requirement for Younger abstention is satisfied, abstention is mandatory and the action should be dismissed.    Juidice, 430 U.S. at 337 (where "appellees had an opportunity to present their federal claims in the state proceedings . . . [n]o more is required to invoke Younger").  Although plaintiffs "may prefer a federal forum," their preference does not override considerations of comity that require them to present their preemption arguments first in the pending state proceeding.  Spargo, 351 F.3d at 81.

_____

[13]    Had plaintiffs raised their preemption claim before the subpoena return date rather than seeking multiple adjournments, the claim could have been decided in state court before the federal action was even filed.

[14]    Younger requires the opportunity to present the federal claim in state court, not a right to obtain affirmative relief there.  See, e.g., Huffman, 420 U.S. at 609 & n. 20 (Younger bars federal intervention even if state trial court may have erroneously decided constitutional issue); Kirshner, 225 F.3d at 234-35 (relevant Younger question is "whether the state's procedural remedies could provide the relief sought" not "whether the state will provide the relief sought" by federal plaintiffs (emphasis in original)).
As the Attorney General has argued above at Point I, even if plaintiffs' preemption claim had merit, it would be premature to enjoin the investigation or to attempt to define potential theories of recovery before an enforcement action has been filed, particularly since plaintiffs' assertions of preemption cover only one aspect of the investigation into recordkeeping, civil rights, wage, and health violations. The Attorney General believes that similar considerations would defeat any effort to quash the subpoenas in state court at the investigatory stage. Younger, of course, does not require state courts to hear unripe constitutional claims, but rather, only to afford plaintiffs the opportunity to present their preemption claim at the appropriate point in state proceedings.

Any other rule would improperly allow parties to ignore outstanding subpoenas and disrupt ongoing state investigations by bringing a federal action to enjoin an investigation before an enforcement action is filed. Plaintiffs do not explain why federal courts should intervene in an essentially pre-complaint discovery dispute when state courts provide a fully adequate remedy. See, e.g., McGinley v. Hynes, 51 N.Y.2d 116, 126 n.3 (N.Y. 1980) ("traditional remedy of a motion to quash provides adequate protection to those who feel themselves aggrieved by the conduct of a public prosecutor who pursues an investigation in excess of his legitimate authority"). Younger prohibits such interference, particularly on the theory that plaintiffs have presented here – that state courts will somehow fail adequately to enforce federal rights – an unfounded premise incompatible with our federal system and the co-equal dignity of the state courts. See Younger, 401 U.S. at 44; Diamond "D" Const. Corp., 282 F.3d at 198.

### POINT III

### THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION

Contrary to plaintiffs' assertions, there is no federal question jurisdiction here. Under familiar doctrine, this inquiry is governed by the well-pleaded complaint rule, Box Tree South, Ltd. v. Bitterman, 873 F. Supp. 833, 836 (S.D.N.Y. 1995), that "jurisdiction must be found from what necessarily appears in the plaintiff's statement of his own claim in the complaint." Donovan v. Rothman, 106 F. Supp. 2d 513, 516 (S.D.N.Y. 2000) (citations and internal quotations omitted). The rule "requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim,

and precludes invoking federal question jurisdiction merely to anticipate a federal defense." Clearing House, 510 F.3d at 122; accord Box Tree, 873 F. Supp. at 837.[15]

"A complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." Fleet Bank, 160 F.3d at 886; see also Franchise Tax Bd. v. Constr. Laborers' Vacation Trust, 463 U.S. 1, 11 (1983) (rule applies to original jurisdiction of district courts as well as to removal jurisdiction).  Thus, the analysis here must consider a hypothetical complaint that the Attorney General might bring in the future, and determine whether the affirmative elements of the claims in such a complaint would establish federal question jurisdiction.  Although in this case it is not yet certain what claims the Attorney General may ultimately assert – a fact that underlines the unripeness of the Complaint – the Attorney General's motion to compel shows that, regardless of plaintiffs' possible assertion of a federal preemption defense, no claims that are necessarily federal have been raised by the Attorney General.

The Attorney General's investigation pertains to civil rights, wage and hour, and sanitary code claims under New York law, not any federal causes of action.  Nor do those state-law claims fall into the "slim" class of state law claims classified as "aris[ing] under" federal law for jurisdictional purposes because they necessarily involve substantial questions of federal law.  Empire Healthchoice Assurance, Inc. v. McVeigh,

---

[15]    Plaintiffs' defensive invocation of the Supremacy Clause does not qualify as a potential federal question or claim.  The declaratory judgment statute does not confer federal jurisdiction.  Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998). Adding a request for an injunction also does not obtain federal jurisdiction where, as shown below at 18-19, there is a dispute about the interpretation of state law. Id., 160 F.3d at 889.

547 U.S. 677 (2006). While plaintiffs point out that the Attorney General might ultimately look to information on the ETA 750 forms to determine the lawful wage, that does not mean that claims would require any interpretation of federal law. See, e.g., Vera v. Saks & Co., 335 F.3d 109, 115 (2d Cir. 2003) (state-law wage claims requiring reference to collective bargaining agreement to ascertain promised wage did not require interpretation of labor contract and were not barred by Labor Management Relations Act s express preemption of state regulation of labor disputes).[16]

Reference to the ETA 750s or the possible involvement of the FLSA exemption are not substantial enough to warrant federal jurisdiction. These are at most "merely incorporated by reference as a standard of conduct" in the state action. Box Tree, 873 F. Supp. at 844; Donovan, 106 F. Supp. 2d at 517 (when Congress has provided no private right of action, borrowing of federal statute as standard of conduct in state created action insufficiently substantial to confer federal question jurisdiction). Furthermore, any issue related to the federal exemption or the ETA 750s is insubstantial because state-law issues would predominate in the Attorney General's claims. Box Tree, 873 F. Supp. at 843-45; Donovan, 106 F. Supp. 2d at 517-18 (mere presence of federal issue does not automatically confer federal jurisdiction; where federal statute merely informs and gives

---

[16]    Plaintiffs' contention that they qualify for a FLSA exemption for employees of seasonal amusement companies, see 29 U.S.C. §213(a)(3), does not create federal jurisdiction (see Complaint ¶21). The subpoenas sought business records to determine whether Dreamland meets the time and receipts requirements for the federal exemption, which requires no interpretation of federal law:  rather, it is a purely factual question about plaintiffs' average receipts and months of operation.  In any event, the issue of the exemption would be an affirmative defense of plaintiffs', not an element of the Attorney General's claim, see Matter of Garcia v. Heady, 46 A.D.3d 1088, 1090 (N.Y. App. Div. 3d Dep't 2007) (employer bears burden of proof of exemption); see also Corning Glass Works v. Brennan, 417 U.S. 188, 197 (1974) ("the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense"), and therefore must be disregarded under the well-pleaded complaint rule.

content to state breach of fiduciary duty claim by providing specific law that could be violated, federal interest in state action is too insubstantial). This is particularly true since New York law would still require Dreamland to pay overtime at one and one-half times the state minimum wage even if the exemption were found to apply, 12 N.Y.C.R.R. §142-2.2, or if the ETA 750 rate of pay were not applicable.

Nor do plaintiffs' preemption arguments, which are the centerpiece of their Complaint, support federal jurisdiction here. Because preemption is a federal defense, issues of preemption generally cannot establish federal-question jurisdiction. See Franchise Tax Bd., 463 U.S. at 21 n.22 (federal jurisdiction cannot be based on preemption defense). For this reason, federal preemption defenses are commonly decided by the state courts. See, e.g., Matter of Council of City of N.Y. v. Bloomberg, 6 N.Y.3d 380, 385 (N.Y. 2006); Cox v. NAP Constr. Co., 2008 N.Y. LEXIS 1472, at **8-14 (N.Y. Ct. App. June 5, 2008). Consequently, plaintiffs' preemption arguments provide no basis for jurisdiction under the well-pleaded complaint rule.

To be sure, notwithstanding the well-pleaded complaint rule, certain decisions recognize existence of federal jurisdiction over lawsuits requesting an injunction, in addition to declaratory relief, based on federal preemption.[17] Fleet Bank made clear that

---

[17]    In extremely narrow circumstances not applicable here, the Supreme Court has held that a statutory prescription of an exclusive federal cause of action, typically when accompanied by a sweeping express preemption clause, can have jurisdictional consequences. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (National Bank Act §§ 85 and 86); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (ERISA § 502(a)); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (Labor Management Relations Act § 301); see also Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004) (Copyright Act, 17 U.S.C. §§ 102, 103, 106, and 301(a)). Under these federal statutes, all claims within the scope of the exclusive federal right of action are deemed to be federal claims in substance, even if the claims are artfully pleaded in state-law terms. This doctrine of "complete preemption" has no application to this case because there is

18

federal jurisdiction exists in such cases only where "plaintiffs acknowledge[] that the state law regulate[s] them in the manner that the state officials [are] asserting," id., 160 F.3d at 889, such that federal preemption is the sole issue. Jurisdiction does not exist where the plaintiff both disputes whether state law prohibits its conduct and asserts that federal law preempts state law. Id. at 884, 893. To find federal jurisdiction where state law is disputed would "risk[] a major and unwarranted incursion" on the state courts' traditional authority over state law, particularly where, as here, the defendants "[we]re an official and an agency of a state." Id. at 892-893. Here too, the Complaint runs afoul of the rule of Fleet Bank because it repeatedly asserts that plaintiffs' conduct did not violate New York law.[18]   Plaintiffs should, therefore, present their New York law and preemption defenses in a state-court enforcement action, if and when the Attorney General actually asserts the claims that plaintiffs anticipate.

## POINT IV

### EVEN ASSUMING PLAINTIFFS WERE TO SURVIVE THE FATAL JURISDICTIONAL FLAWS IN THEIR COMPLAINT, PLAINTIFFS HAVE ALSO FAILED TO STATE A CLAIM FOR RELIEF

---

no express preemption clause and no exclusive federal cause of action covering the Attorney General's allegations here, as there was in the above cases. As shown below at Point IV, there is no preemption at all here, let alone complete preemption so extraordinary that it substitutes a federal remedy for state law, thereby creating an exclusive federal cause of action. See Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 295 (S.D.N.Y. 2007).

[18]    For example, the Complaint characterizes the Attorney General's position as a "creative but unfounded manufacturing of state law" (Complaint ¶65), and "vehemently den[ies] that Dreamland . . . breached any term or condition of Dreamland's contract [i.e., promises in the ETA 750s] . . . as well as any suggestion that Dreamland . . . engaged in 'repeated fraudulent or illegal acts'" within the meaning of New York Executive Law §63(12) (id. ¶3; cf. ¶51). The Complaint further alleges that the Attorney General's interpretation of New York Labor Law as not exempting amusement enterprise employees from all the statute's protections is incorrect (id. ¶¶22-23).

19

Plaintiffs incorrectly assert that the Attorney General's investigation is preempted. As an initial matter, plaintiffs do not even argue for preemption of investigation or claims of discrimination in working conditions or sanitary code violations, which alone are sufficient to support investigatory subpoenas. See Anheuser-Busch, 71 N.Y.2d at 331-32 (Executive Law §63(12) authorizes subpoenas seeking information reasonably related to any subject matter under investigation). Nor do plaintiffs claim that federal immigration law preempts the general wage and hour or recordkeeping provisions of New York's Labor Law, which apply to all covered employees without regard to immigration status.

Moreover, contrary to plaintiffs' contentions, there is no basis to find preemption of other claims the Attorney General may bring just because those may rely, in part, on the fact that plaintiffs failed to pay wages in accordance with the ETA 750s. The very point of requiring employer certification is to ensure that use of H-2B workers does not adversely affect wages and working conditions of U.S. workers, matters of paramount state interest. Because such concerns lie at the heart of the state's historic police powers, a strong presumption against preemption of state law applies. De Canas v. Bica, 424 U.S. 351, 356-57 (1976). Accordingly, a Congressional purpose to preempt must be "clear and manifest." Bates v. Dow Agrosciences L.L.C., 544 U.S. 431, 449 (2005).

There is no clear and manifest purpose here. Express preemption does not apply because no "explicit statutory language" bars state investigations of violations of law affecting authorized aliens such as H-2B employees. Clearing House, 510 F.3d at 113. Field preemption is inapplicable because the investigation and compliance proceeding addresses employment conditions, not immigration matters, and therefore does not regulate "a field that Congress intended the Federal Government to occupy exclusively."

20

Id. Finally, there is no conflict preemption because this investigation complements, and does not conflict with, Congress's objective of admitting H-2B employees without harming U.S. workers. Id.; see English v. General Elec. Co., 496 U.S. 72, 78-79 (1990); Perez-Farias v. Global Horizons, Inc., 2008 U.S. Dist. LEXIS 27588, at *40-42 (E.D. Wash. Mar. 27, 2008); Balbuena v. IDR Realty LLC, 6 N.Y.3d 338, 356 (N.Y. 2006).

Federal immigration law does not expressly preempt investigating whether plaintiffs paid full wages owed under New York Labor Law, here the prevailing wage determined by NYS DOL, as reflected in Dreamland Amusement Inc.'s ETA 750s. The sole express preemption clause in the Immigration Reform and Control Act ("IRCA") is 8 U.S.C. §1324a(h)(2), which displaces only those state and local laws that impose "civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." Id. Congress thus limited express preemption to laws that sanction employers for hiring unauthorized workers, and did not displace remedial state or local laws that regulate the terms and conditions of employment for all employees, without regard to their immigration status. See Balbuena, 6 N.Y.3d at 357 (preemption provision directed at only state laws that directly punish employers that hire undocumented workers).[19] The investigation does not attempt to punish Dreamland for hiring any particular kind of worker, let alone

---

[19]    Additionally, compensatory damages for injury or unpaid or lost wages are not "sanctions" within the meaning of § 1324a(h)(2). Madeira v. Affordable Housing Found., Inc., 469 F.3d 219, 240 (2d Cir. 2006) (Congress has not explicitly preempted state laws allowing undocumented workers to recover damages for injuries); see also Mendoza v. Zirkle Fruit Co., 2000 U.S. Dist. LEXIS 21126, at *31-32 (E.D. Wash. Sept. 27, 2000) (distinction between sanctions and compensatory damages in rejecting IRCA preemption of civil conspiracy action), rev'd on other grounds, 301 F.3d 1163 (9th Cir. 2002); Dowling v. Slotnik, 712 A.2d 396, 403, 244 Conn. 781, 792 (1998) (workers' compensation benefits could not be construed as sanctions in rejecting IRCA preemption challenge).

unauthorized workers; indeed, its H-2B employees are fully authorized to work in the United States.

Contrary to plaintiffs' suggestions, field preemption does not occur merely because some Dreamland employees are foreign nationals with H-2B visas. The Supreme Court "has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted." De Canas, 424 U.S. at 355, 356-57. Rather, the controlling question is whether the state law is a "regulation of immigration," Villas at Parkside Partners v. City of Farmers Branch, 2008 U.S. Dist. LEXIS 42452, at *24 (N.D. Tex. May 28, 2008), meaning that the law is "essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." De Canas, 424 U.S. at 355.

In this case, the investigation has nothing to do with regulating immigration, nor does it seek to enforce immigration laws or federal criminal laws that prohibit false filing of immigration documents. A finding that the wage rates expressly promised on Dreamland Amusements Inc.'s ETA 750s constitute the wage rates that plaintiffs must pay under New York Labor Law, and that Dreamland must comply with its certifications to adhere to state and local laws, requires no determination regarding the propriety of granting H-2B visas or any other aspect of immigration law or change in workers' visas or status. The Attorney General is not investigating plaintiffs' compliance with federal immigration law. Accordingly, preemption is not even implicated. Cf. Vera, 335 F.3d at 115, see also In re People v. Applied Card Systems, Inc., 2008 NY Slip Op 5780, at *9, 2008 N.Y. LEXIS 18, at **20 (Ct. App. June 26, 2008) (dispositive factor in determining that Truth-in-Lending Act does not preempt claims of fraudulent practices is that

Attorney General's success would not alter required disclosures or require additional disclosures). Nor does the investigation seek to take away any employees' employment authorization or to disqualify plaintiffs from applying for H-2B visas in the future.

Instead, the investigation focuses primarily on maintaining the level of employment conditions for workers within the state. Because the investigation centers on a different field from regulation of immigration, it is not preempted. See Madeira, 469 F.3d at 227-28 (supreme national power over immigration does not preempt state laws allowing unauthorized workers to recover for injuries); Matter of Forrence Orchards, Inc. v. Ross, 85 A.D.2d 44, 44-45 (N.Y. App. Div. 3d Dep't 1982) (New York unemployment law requiring employers to pay contributions upon wages of lawful temporary alien farm workers not preempted by federal immigration or unemployment law), appeal dismissed, 57 N.Y.2d 673 (1982); Perez-Farias, 2008 U.S. Dist. LEXIS 27588, at *40-42 (IRCA does not preempt enforcement of state labor laws in action by authorized temporary agricultural guest workers); Hartford Enters. v. Coty, 529 F. Supp. 2d 95, 101 (D. Me. 2008) (workers' compensation act is not preempted because it in no way determines admission into U.S. or conditions for remaining and is not "regulation of immigration"); Jara v. Strong Steel Doors, Inc., 2007 NY Slip Op 51755U, at *6, 2007 N.Y. Misc. LEXIS 6355 (N.Y. Sup. Ct. Kings Cty. 2007) (failure to comply with federal immigration laws is separate issue that does not permit employer to disregard prevailing wage requirements).

Furthermore, plaintiffs do not dispute that ETA 750s must be filed first with the appropriate SWA, in this case NYS DOL, which then determines the prevailing wage, supervises recruitment of workers and forwards complete applications to the US DOL for

certification (Pls. Prelim. Inj. Mem. at 5-6, 12 ("Dreamland followed each and every step set forth [at pp. 4-7]"); see supra n.2). The State has a sovereign interest, wholly unrelated to immigration matters, in deterring deceptive representations made to it, whether or not the representation is made as a result of a federal requirement to do so. See, e.g., People v. Mikuszewski, 73 N.Y.2d 407, 413-14 (N.Y. 1989) (upholding fraud charge for misrepresentation to state agency regarding federally-required minority business requirements in federally-funded projects).

Apart from immigration matters, FLSA expressly permits states to enact wage and hour laws that are more protective of employees than the federal minimum wage and overtime laws and does not excuse noncompliance with such state laws. See 29 U.S.C. §218; 29 C.F.R. §778.5; Manlinguez v. Joseph, 226 F. Supp. 2d 377, 388-89 (E.D.N.Y. 2002). Such limitation of the reach of FLSA is clearly inconsistent with asserted preemption, and it is well-settled that FLSA does not completely preempt state law. See Overnite Transp. Co. v. Tianti, 926 F.2d 220, 222 (2d Cir. 1991); Damassia v. Duane Reade, Inc., 2008 U.S. Dist. LEXIS 41650, at *29-31 (S.D.N.Y. May 27, 2008).

Lastly, conflict preemption does not apply here. Compliance with both federal immigration laws and New York state law is not "a physical impossibility." Nor does state law pose "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" Balbuena, 6 N.Y.3d at 356 (citations omitted). As noted above, the purpose of requiring that employers obtain a temporary labor certification is to ensure that authorizing hiring of foreign nationals by employers who have demonstrated a temporary or seasonal need will not suppress the wages and working conditions of U.S. workers. See 8 U.S.C. §1101(a)(15)(H)(ii)(b); 8 C.F.R. §214.2(h)(6); 20 C.F.R. §655.3.

24

State investigations to enforce wage payment laws and other laws prohibiting unlawful employment practices for H-2B and other employees thus do not conflict, but rather are in harmony, with the goals underlying labor certification and the H-2B program.[20] Indeed, "the legislative history of IRCA explicitly states that the Act was not intended 'to undermine or diminish in any way labor protections in existing law.'" See Balbuena, 6 N.Y 3d at 356 (citation omitted).

## CONCLUSION

For all of the foregoing reasons, the Attorney General respectfully requests that the Court dismiss this action and grant such other relief as is just and proper.

Dated: New York, New York
   August 6, 2008

Respectfully submitted,

Andrew M. Cuomo,
Attorney General of the State of New York

By: _____ /s/ Julian R. Birnbaum_____
   Julian R. Birnbaum (JB 6721)
   Section Chief, Civil Rights Bureau
   120 Broadway
   New York, New York 10271
   (212) 416-6269
   Attorney for Defendant

---

[20] Rather than regulating immigration, applicable New York laws present "parallel claims" – which include state claims for damages that do "not impose a requirement that is 'different from, or in addition to,' requirements under federal law" – that are not preempted by federal statutes. Medtronic, Inc. v. Lohr, 518 U.S. 470, 513 (1996) (O'Connor, J., concurring in part and dissenting in part). See, e.g., Riegel v. Medtronic, Inc., 128 S.Ct. 999, 1011, 169 L. Ed. 2d 892, 906 (2008) (federal act "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements") (internal citations omitted).