UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO, | No. 08 Civ. 6321 (JGK) |
|      Plaintiffs, | ECF Case |
|      -- against -- | |
| THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OFFICE OF THE ATTORNEY GENERAL, | |
|      Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTION**

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway
New York, New York 10271
Attorney for Defendant

Alphonso B. David, Deputy Bureau Chief for Civil Rights
Spencer Freedman, Counsel for Civil Rights
Seth Kupferberg, Acting Bureau Chief for Labor

Julian R. Birnbaum
Andrew J. Elmore
Judith Marblestone
Assistant Attorneys General
   Of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 8

POINT I       THE COMPLAINT SHOULD BE DISMISSED BASED ON <u>YOUNGER</u>
              ABSTENTION AND LACK OF JURISDICTION……………………….…………8

POINT II      IN ANY EVENT, PLAINTIFFS CANNOT SATISFY THE
              REQUIREMENTS FOR INJUNCTIVE RELIEF ................................................. 10

              A.  Plaintiffs Have Not Alleged, Much Less Shown,
                  Any Cognizable Irreparable Harm…………………………………………10

              B.   Plaintiffs Cannot Succeed on the Merits ……………………………..…14

              C.   A Balancing of the Equities Mandates the Denial of Injunctive Relief……..18

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

American Petroleum Inst. v. Jorling,
    710 F. Supp. 421 (N.D.N.Y. 1989) ................................................................. 12

AVCO Corp. v. C.F.T.C.,
    929 F. Supp. 714 (S.D.N.Y. 1996) ................................................................. 10

Beneficial Nat'l Bank v. Anderson,
    539 U.S. 1 (2003) ........................................................................................... 17

Broder v. Cablevision Systems Corp.,
    418 F.3d 187 (2d Cir. 2005) ........................................................................... 18

Chavez v. Freshpit Foods, Inc.,
    456 F.2d 890 (10th Cir. 1972) ....................................................................... 16

Chick Kam Choo v. Exxon Corp.,
    486 U.S. 140 (1988) ......................................................................................... 9

Choimbol v. Fairfield Resorts, Inc.,
    2006 U.S. Dist. LEXIS 68225 (E.D. Va. Sept. 11, 2006) .............................. 15

City of L.A. v. Lyons,
    461 U.S. 95 (1983) ......................................................................................... 19

Clearing House Association, L.L.C. v. Cuomo,
    510 F.3d 105 (2d Cir. 2007) ........................................................................... 14

Connecticut Dep't of Environmental Protection v. O.S.H.A.,
    356 F.3d 226 (2d Cir. 2004) ........................................................................... 10

Covino v. Patrissi,
    967 F.2d 73 (2d Cir. 1992) ............................................................................. 11

De Canas v. Bica, ,
    424 U.S. 351 (1976) ....................................................................................... 17

Dombrowski v. Pfister,
    380 U.S. 479 (1965) ....................................................................................... 13

Doran v. Salem Inn, Inc.,
    420 U.S. 922 (1975) ....................................................................................... 12

**Table of Authorities (cont'd)**

**CASES**                                                                                          **PAGE**

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006)..................................................................................................... 10

E.E.O.C. v. Local 638 . . . Local 28 of the Sheet Metal Workers Int'l Ass'n,
    1995 U.S. Dist. LEXIS 7756 (S.D.N.Y. June 7, 1995) ...................................................... 12

Fireman's Fund Ins. Co. v. Leslie & Elliott Co.,
    867 F.2d 150 (2d Cir. 1989)............................................................................................ 10

Fort Halifax Packing Co. v. Coyne,
    482 U.S. 1 (1987)............................................................................................................ 17

Franchise Tax Bd. v. Constr. Laborers' Vacation Trust,
    463 U.S. 1 (1983)............................................................................................................ 11

F.T.C. v. Standard Oil Co. of California,
    449 U.S. 232 (1980)........................................................................................................... y

Grochowski v. Phoenix Constr.,
    318 F.3d 80 (2d Cir. 2002).............................................................................................. 18

HMI Mech. Sys. v. McGowan,
    266 F.3d 142 (2d Cir. 2001)............................................................................................ 17

In re Lustron Corp.,
    184 F.2d 789 (7th Cir. 1950) .......................................................................................... 13

Kamerling v. Massanari,
    295 F.3d 206 (2d Cir. 2002)............................................................................................ 11

Madeira v. Affordable Housing Foundation, Inc.,
    469 F.3d 219 (2d Cir. 2006)............................................................................................ 11

Metropolitan Life Co. v. Taylor,
    481 U.S. 58 (1987).......................................................................................................... 17

Mitchell v. Cuomo,
    748 F.2d 804 (2d Cir. 1984)............................................................................................ 12

iii

**Table of Authorities (cont'd)**

**CASES**                                                                                            **PAGE**

Morales v. Trans World Airlines, Inc.,
          504 U.S. 374 (1992)..............................................................................9, 10, 11, 17

N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health,
          545 F. Supp. 2d 363 (S.D.N.Y. 2008)...........................................................12

O'Shea v. Littleton,
          414 U.S. 488 (1974)...............................................................................19

Pathways, Inc. v. Dunne,
          329 F.3d 108 (2d Cir. 2003)...................................................................9-10

People v. General Electric Co., Inc.,
          302 A.D.2d 314 (N.Y. App. Div. 1st Dep't 2003).............................................7

Petroleum Exploration, Inc. v. Public Service Comm'n,
          304 U.S. 209 (1938)...............................................................................13

Portland Gen. Elec. Co. v. Myers,
          No. 03-CV-1641-HA, 2004 U.S. Dist. LEXIS 15284 (D. Or. 2004) ...................................9

Renegotiation Board v. Bannercraft Clothing Co.,
          415 U.S. 1 (1974)..................................................................................13

Reynolds v. Giuliani,
          F.3d 183 (2d Cir. 2007)...........................................................................19

Rodriguez by Rodriguez  v. DeBuono,
          175 F.3d 227 (2d Cir. 1999).......................................................................11

San Diego Bldg. Trades Council v. Garmon,
          359 U.S. 236 (1969)...............................................................................17

Spielman Motor Sales Co. v. Dodge,
          295 U.S. 89 (1935).................................................................................12

Sussman v. New York State Organized Crime Task Force, ,
          39 N.Y.2d 227 (1976) .............................................................................8

**Table of Authorities (cont'd)**

**CASES**                                                                   **PAGE**

Wallace v. Kern,
    520 F.2d 400 (2d Cir. 1975)................................................................... 19

Watson v. Buck,
    313 U.S. 387 (1941) .......................................................................... 12

Williams v. Mohawk Indus., Inc., ,
    465 F.3d 1277 (11th Cir. 2006) ......................................................... 16

Wooley v. Maynard,
    430 U.S. 705 (1977)........................................................................... 12

Younger v. Harris,
    401 U.S. 37 (1971)......................................................... 1, 8, 9, 13


**FEDERAL STATUTES**

28 U.S.C. § 2283 ............................................................................................. 9

29 U.S.C. § 218 ............................................................................................. 15


**FEDERAL RULES AND REGULATIONS**

8 C.F.R. § 214.2 ............................................................................................. 5

20 C.F.R. §655.00 .......................................................................................... 5

20 C.F.R. §655.3 ............................................................................................ 5

29 C.F.R. § 778.5 ........................................................................................... 15


**NEW YORK STATUTES**

Executive Law § 63(12)............................................................................. 4, 6, 7

Executive Law § 290 et seq. ......................................................................... 4

Labor Law Article 6...................................................................................... 4, 7

**Table of Authorities (cont'd)**

**NEW YORK STATUTES**                                                              **PAGE**

Labor Law Article 19.....................................................................................................4

Labor Law § 190........................................................................................................16

Labor Law § 191........................................................................................................16

Labor Law § 198........................................................................................................16


**NEW YORK RULES AND REGULATIONS**

10 N.Y.C.R.R. Subpart 7-3.........................................................................................4

12 N.Y.C.R.R. Part 142 .............................................................................................4


**NEW YORK CITY CODES**

New York City Administrative Code § 8-101 et seq........................................................4


**MISCELLANEOUS**

Foreign Labor Certification Training and Employment Guidance Letter
        No. 21-06, Change 1,
        U.S. Dep't of Labor June 25, 2007, available at
        http://www.labor.state.ny.us/workforcenypartners/tegls.shtm ............................................5

vi

## PRELIMINARY STATEMENT

There is no basis for plaintiffs' request for an injunction restraining the Attorney General's investigation into potential violations of state labor and civil rights laws. As explained in the Attorney General's previously filed motion to dismiss, this federal lawsuit is nothing more than a collateral attack on a pending state investigation and is flawed at its core. Not only is the action unripe because the Attorney General has not yet reached any firm conclusions in his investigation, but <u>Younger v. Harris</u>, 401 U.S. 37 (1971), bars plaintiffs' request for this Court to interfere with ongoing state proceedings, including the Attorney General's pending state-court order to show cause to compel plaintiffs' compliance with his outstanding investigatory subpoenas.

In addition to these threshold defects in the action, plaintiffs have not satisfied any of the requirements for injunctive relief. For instance, they have identified no cognizable irreparable harm. Their complaints about the alleged burdens of complying with the Attorney General's investigation do not qualify, as it is well established that mere litigation expenses do not constitute irreparable harm. Indeed, plaintiffs' conduct demonstrates that their true motive is delay, not avoidance of any irreparable harm. Upon receiving the Attorney General's subpoenas, plaintiffs initially complied, and they did not move in state court to quash the subpoenas. Later, they sought, and the Attorney General consented to, three adjournments of their deadline for further compliance, offering shifting rationales. Only after the Attorney General denied a fourth request for an adjournment did plaintiffs file this federal lawsuit claiming preemption. And they did this on the eve of their deadline for compliance with the subpoenas, without seeking, let alone obtaining, an emergency order to excuse their failure to comply. Plaintiffs' recent

removal of the Attorney General's ensuing state-court order to show cause to compel compliance, which they served the day before a scheduled state-court hearing in which any defenses to compliance could have been heard and decided, only highlights their continuing strategy of obstruction and delay.

Moreover, as set forth in the Attorney General's motion to dismiss, plaintiffs cannot succeed on the merits of their preemption arguments. Plaintiffs have not denied, and cannot deny, that the Attorney General's subpoenas request information relevant to non-preempted state law claims.[1] Plaintiffs ask this Court to issue injunctive relief based on their contention that a single potential enforcement theory would be preempted if the Attorney General asserted it. Plaintiffs' preemption argument has no merit, but even if it did, their anticipatory effort to assert a preemption defense would be no ground for enjoining a valid state investigation whose scope is largely unchallenged. Plaintiffs' preemption claim is a transparent attempt to manufacture a federal controversy in order to evade the Attorney General's pre-complaint investigation into violations of New York law. Furthermore, given plaintiffs' dilatory conduct and manipulation of the judicial process, and in light of the strong public interest in vigorous investigation and enforcement of wage and hour and civil rights laws, the equities weigh strongly against

---

[1]     Although plaintiffs seek to contest the Attorney General's authority to investigate and enforce certain state law claims in opposing the Attorney General's motion to compel, their new arguments have nothing to do with preemption and expressly contradict plaintiffs' assertion in their Complaint ("Compl." at 3, n. 1) that the Attorney General's investigation of state civil rights and health violations "are not the subject" of the instant action.

     Besides being expressly excluded from the Complaint, plaintiffs' claims about the Attorney General's authority (i.e. that the Attorney General may not enforce the state Human Rights Law or Sanitary Code regulations because enforcement would circumvent the powers of the state Division of Human Rights or Department of Health) are transparently matters of state law that provide no basis for federal jurisdiction or injunctive relief on the grounds of preemption.

any grant of injunctive relief.  For all of these reasons, and others outlined below, plaintiffs' motion for an injunction should be denied.

## STATEMENT OF FACTS[2]

Around May 2007, the Attorney General's office began receiving complaints that Dreamland was engaged in unlawful employment practices (Elmore Aff. ¶ 13).  The Attorney General's preliminary investigation suggests that plaintiffs operate up to one half of their annual season in New York, and that since at least January 2007, up to one third of plaintiffs' workforce consists of nonimmigrant employees from Mexico authorized to work for Dreamland on a seasonal basis pursuant to temporary H-2B work visas ("H-2B employees") (id. ¶¶ 14-15).  Employee complaints alleged principally that plaintiffs failed to pay employees full, or even minimum, wages and overtime required under New York Labor Law and regulations; that H-2B employees are provided with work and living conditions inferior to those of non-H-2B employees, in violation of state and local anti-discrimination laws; and that employee housing is unsanitary and substandard, in violation of regulations promulgated under the State Sanitary Code.

The Attorney General routinely investigates allegations of violations of state laws – such as plaintiffs' alleged violation of state labor and civil rights laws as well as

---

[2]    The facts alleged in plaintiffs' complaint against the Attorney General are summarized more fully on pages 1 to 5 of the Attorney General's Memorandum of Law in Support of His Motion to Dismiss the Complaint filed on August 6, 2008 ("A.G. Mem. of Law"), as well as the Affidavit of Assistant Attorney General Andrew J. Elmore sworn to on July 29, 2008 ("Elmore Aff.") which was filed in support of the Attorney General's order to show cause to compel compliance with subpoenas in state court, Cuomo v. Dreamland Amusements Inc., Index No. 401816/08 (N.Y. Sup. Ct. N.Y. Cty.), filed on July 29, 2008.  A copy of the Elmore Aff. is attached to the Affidavit of Julian R. Birnbaum, sworn to August 6, 2008 ("Birnbaum Aff."), Ex. A, which was filed in support of the Attorney General's motion to dismiss, and the A.G. Mem. of Law is attached to the Birnbaum Aff. as Ex. B.

fraudulent business practices that the Attorney General's Labor and Civil Rights Bureaus are currently investigating -- pursuant to New York Executive Law § 63(12) which grants the Attorney General broad authority to investigate repeated and persistent fraud and illegality.

The Attorney General's investigation of plaintiffs relates to allegations that plaintiffs have engaged and may continue to be in engaging in repeated and persistent fraudulent and illegal conduct under New York Executive Law § 63(12). The investigation so far suggests plaintiffs have engaged in repeated and persistent illegality and fraud under New York Executive Law § 63(12) by, inter alia, failing to pay full or minimum wages and overtime, and comply with recordkeeping requirements, in violation of New York Labor Law Articles 6 and 19 and 12 N.Y.C.R.R. Part 142; deceptive business practices in misrepresenting to New York State Department of Labor ("NYS DOL") that they would pay at least a prevailing wage and adhere to applicable laws but failing to do so; subjecting H-2B workers to discriminatory employment conditions, in violation of New York Executive Law §290 et seq. and New York City Administrative Code §8-101 et seq; and furnishing unsanitary and substandard employee housing, in violation of New York Sanitary Code regulations, 10 N.Y.C.R.R. Subpart 7-3 (Elmore Aff. ¶ 28).

It is undisputed that Dreamland employs H-2B employees (Compl. ¶ 25). In order to get authorization to employ H-2B workers, employers must submit an Application for Alien Employment Certification (referred to as an "ETA 750") to the State Workforce Agency ("SWA"), here the NYS DOL. After the SWA has, among other tasks, reviewed the ETA 750 applications for completeness, determined the

prevailing wage which the employer's wage offer and the wage subsequently paid throughout the season must equal or exceed, and supervised recruitment of U.S. workers, the SWA forwards the complete ETA 750 application to the U.S. Department of Labor ("US DOL").  In order for a certification to be granted, an employer seeking to employ H-2B workers must demonstrate that "qualified persons in the United States are not available and that the terms of employment will not adversely affect the wages and working conditions of workers in the United States similarly employed."  20 C.F.R. § 655.3(a); see also 8 C.F.R. §  214.2(h)(6)(iv)(1); 20 C.F.R. § 655.00; Foreign Labor Certification Training and Employment Guidance Letter No. 21-06, Change 1 (U.S. Dep't     of     Labor     June     25,     2007),     available     at http://www.labor.state.ny.us/workforcenypartners/tegls.shtm (last visited Aug. 12, 2008) (Elmore Aff. ¶¶ 16-18).

Since 2003, Dreamland Amusements Inc. has filed six ETA 750s applications with the NYS DOL, seeking temporary labor certification to employ H-2B workers for each season since 2003 (accompanying affidavit of George Forsythe is attached to the Marblestone Aff. as Exhibit A).  Either Robert or Kathryn DeStefano signed these ETA 750s in 2005, 2006, and 2007, certifying under penalty of perjury, inter alia, that Dreamland would offer and pay a rate of pay listed in the ETA 750 that is no less than the prevailing wage, determined by the NYS DOL and listed on each ETA 750, and comply with federal, state and local laws which include but are not limited to wage and hour and civil rights laws (Compl. Ex. A; Elmore Aff. ¶¶ 15-23).

The NYS DOL's standard practice for ETA 750 applications like Dreamland Amusements Inc.'s was to forward the original ETA 750s for H-2B workers and

5

supporting documentation to the US DOL after the NYS DOL had reviewed the ETA

750s for completeness and, among other tasks, made a determination of the prevailing

wage and supervised the employer's efforts to recruit U.S. workers for the jobs for which

the employer sought temporary labor certification to employ H-2B workers (Forsythe

Aff. ¶ 6).  In addition, the NYS DOL's practice was to forward ETA 750s to the US DOL

only if the employer agreed to pay at least the prevailing wage determined by the NYS

DOL (Forsythe Aff. ¶ 9).  The wage that the employer would be required to pay during

the time period when the H-2B workers would be employed in the U.S. if the US DOL

certified the ETA 750 was at least the prevailing wage determined by the NYS DOL (id.).

Employers were free to pay higher wages than the prevailing wage (id.).

Based upon employees' allegations of wages, hours, and other working and living

conditions; the ETA 750s; and surveillance of the worksite conducted by the Attorney

General that corroborate employee allegations about hours worked, the Attorney General

issued subpoenas to plaintiffs,[3] seeking testimony and production of documents relating

to, inter alia, payroll and time records, employment practices, tax returns, and documents

filed with New York and federal agencies regarding wages and other terms and

conditions of employment (Elmore Aff. ¶33).

Despite initial assurances of compliance with the subpoenas, plaintiffs

subsequently refused to testify or to produce any further documents (Elmore Aff. ¶¶ 34-

52).  Plaintiffs produced numerous documents, including payroll records from 2006-08

---

[3]    The Attorney General issued subpoenas pursuant to New York Executive Law §
63(12), which provides jurisdiction "[w]henever any person shall engage in repeated
fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the
carrying on, conducting or transaction of business," and that "the Attorney General is
authorized to take proof and make a determination of the relevant facts and to issue
subpoenas in accordance with the civil practice law and rules."

that suggest failure to pay full wages, including overtime, and recordkeeping violations under state Labor Law (id. ¶ 25).  In response to plaintiffs' demands and to advance settlement discussions (id. ¶ 42), the Attorney General provided ETA 750s signed by one of the DeStefanos in 2005, 2006, and 2007 to plaintiffs' counsel and explained the Attorney General's good faith basis to believe that plaintiffs (a) violated recordkeeping, civil rights and state sanitary code requirements, (b) failed to pay the rate of pay listed on the ETA 750s, which equals or exceeds the prevailing wage determined by NYS DOL and which constitutes the lawful wage under New York Labor Law Article 6, and (c) misrepresented to NYS DOL that they would pay no less than the H-2B prevailing wage if they received temporary labor certification – which constitutes a repeated fraudulent practice under New York Executive Law § 63(12) (id. ¶¶ 42-43).[4]

Plaintiffs' initial compliance changed dramatically when the DeStefanos were to appear for subpoena hearings to testify about the documents they produced and the ongoing investigation (Elmore Aff. ¶¶ 34-52).  After plaintiffs requested and received three hearing adjournments to accommodate alleged unavailability and the document production schedule (id. ¶¶ 38, 40, 45), they repeatedly changed positions on whether they would testify or refuse to testify (id. ¶¶ 41, 44, 46), and after a denied request for a fourth postponement (id. ¶ 50), refused to testify or to produce additional documents absent judicial order (id. ¶ 51).  The Attorney General had earlier advised plaintiffs that noncompliance would result in a motion to compel (id. ¶¶ 43, 45).

---

[4]     The test for fraudulent conduct under Executive Law § 63(12) "is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud."  People v. General Electric Co., Inc., 302 A.D.2d 314, 314 (N.Y. App. Div. 1st Dep't 2003).

Although plaintiffs' intent appears to be to avoid compliance with the subpoenas, they did not file a motion to quash them.[5]  Instead, plaintiffs filed this federal lawsuit the day before the final subpoena hearing date, seeking to enjoin the proceeding on the alleged ground of federal preemption (Elmore Aff. ¶¶ 51-52).[6]  Plaintiffs appear to have used a similar dilatory tactic to avoid state court adjudication of issues that fall squarely within state court jurisdiction.  In addition, as discussed below, the preemption argument is meritless on several independent grounds and, as plaintiffs acknowledge, does not address two of the Attorney General's bases for the subpoenas, a good faith belief that plaintiffs violated anti-discrimination and state sanitary code regulations (Compl. n.1).

## ARGUMENT

### POINT I

### THE COMPLAINT SHOULD BE DISMISSED BASED ON YOUNGER ABSTENTION AND LACK OF JURISDICTION

For the reasons stated in the Attorney General's motion to dismiss, this Court should not grant injunctive relief because this action does not properly lie in federal

---

[5]     Plaintiffs' newly filed Memorandum of Law in Opposition to the Attorney General's Order to Show Cause ("Mem. in Opp. to Order to Show Cause," 08-CV-7100) to compel compliance with his subpoenas underscores that they belong in state court by arguing at length (id. at 8-11) that the Attorney General's subpoena "is void and voidable" pursuant to Sussman v. New York State Organized Crime Task Force, 39 N.Y.2d 227 (1976).  If they are right, plaintiffs should make that argument in state court.

[6]     Moreover, plaintiffs moved for preliminary and/or permanent injunctive relief only after the Attorney General's state court motion highlighted that they did not seek federal emergency relief.  On July 29, 2008, the Attorney General moved in state court to compel compliance with the subpoenas; an order to show cause was returnable August 12, 2008 (Birnbaum Aff. ¶¶ 3, 6).  On August 1, plaintiffs moved for a preliminary injunction.  On August 6, the Attorney General filed a motion to dismiss plaintiffs' complaint.  On August 8, only 1 full business day before the order to show cause return date, plaintiffs filed a notice of removal of the Attorney General's proceeding to compel compliance with the subpoenas.

court.  Most plainly, plaintiffs ask this Court to interfere in ongoing state proceedings implicating important state interests, which Younger v. Harris, 401 U.S. 37 (1971), forbids.[7]  See A.G. Mem. of Law at 9-15.  Additionally, this action, and the specific preemption argument on which it rests, is not ripe at this stage in the Attorney General's investigation, given that the Attorney General has reached no firm conclusions and framed no concrete claims for relief.  Id. at 6-9; see also Portland Gen. Elec. Co. v. Myers, No. 03-CV-1641-HA, 2004 U.S. Dist. LEXIS 15284 (D. Or. 2004) (dismissing as unripe an action to stop a state attorney general's investigation on preemption grounds where claims were based on hypothetical charges that might not have been brought).  Nor is there federal question jurisdiction over plaintiffs' claims, which merely implicate potential federal preemption defenses to claims plaintiffs anticipate that the Attorney General may bring.  See A.G. Mem. of Law at 15-18.  Finally, the Anti-Injunction Act, 28 U.S.C. § 2283, "generally bars federal courts from granting injunctions to stay proceedings in state courts," and on that basis precludes injunctive relief in the instant

---

[7]        The principal decision that plaintiffs rely upon (discussed over three and a half full pages of their brief, see Pls. Inj. Mem. at 21-24) in support of their request for injunctive relief, Morales v. TransWorld Airlines, stated at its outset that Younger's heightened requirements for injunctive relief did not apply because the state petitioners had not argued for abstention, "and the federal-state comity considerations underlying Younger [were] accordingly not implicated."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 n. 1 (1992).

        The Attorney General has raised abstention here, and considerations of comity bar the injunctive relief which plaintiffs seek, which is both overbroad and duplicative of timely remedies that plaintiffs could have obtained in state court, yet deliberately chose to ignore.  Plaintiffs' decision to bypass available state remedies in an attempt to secure a federal injunction is not only the type of strategic interference that Younger prohibits, it also demonstrates that plaintiffs' claim of irreparable harm is largely manufactured and the result of their own insistence that the scope of a preliminary state investigation be determined in federal court.

case.  Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 145 (1988); Pathways, Inc. v.

Dunne, 329 F.3d 108 (2d Cir. 2003).

**POINT II**

**IN ANY EVENT, PLAINTIFFS CANNOT SATISFY THE
REQUIREMENTS FOR INJUNCTIVE RELIEF**

Even apart from the threshold defects in this action, plaintiffs have not met any of

the requisites for a grant of injunctive relief.  To obtain a preliminary injunction

restraining government action taken in the public interest, a plaintiff must demonstrate

that (1) it will be irreparably harmed if an injunction is not granted and (2) it has a

likelihood of success on the merits of its claim.  See Connecticut Dep't of Environmental

Protection v. O.S.H.A., 356 F.3d 226, 230 (2d Cir. 2004); AVCO Fin. Corp. v. C.F.T.C.,

929 F. Supp. 714, 716-17 (S.D.N.Y. 1996).   To obtain a permanent injunction, a plaintiff

must demonstrate that (1) it has suffered an irreparable  injury; (2) remedies available at

law, such as monetary damages, are inadequate to compensate for that injury; (3)

considering the balance of hardships between the plaintiff and defendant, a remedy in

equity is warranted; and (4) the public interest would not be disserved by a permanent

injunction.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Plaintiffs

have satisfied none of these requirements.

> **A.    Plaintiffs Have Not Alleged, Much Less Shown, Any
> Cognizable Irreparable Harm**

"A finding of irreparable harm is an absolute prerequisite to the issuance of an

injunction." Fireman's Fund Ins. Co. v. Leslie & Elliott Co., 867 F.2d 150, 151 (2d Cir.

1989). To establish irreparable injury, the plaintiff must demonstrate that "there is a

continuing harm which cannot be adequately redressed by final relief on the merits" and

10

for which "money damages cannot prove adequate compensation." <u>Kamerling v. Massanari</u>, 295 F.3d 206, 214 (2d Cir. 2002) (quotation marks omitted).  The harm shown must be actual and imminent, not remote or speculative.  <u>See Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 381 (1992); <u>Rodriguez by Rodriguez  v. DeBuono</u>, 175 F.3d 227, 234 (2d Cir. 1999).

Plaintiffs have failed to show any irreparable harm resulting from the Attorney General's investigation.  They seem to suggest that a purported violation of their constitutional rights under the Supremacy Clause constitutes per se irreparable harm. <u>See</u> Plaintiffs' Motion for Preliminary and/or Permanent Injunction ("Pls. Inj. Mem.") at 17-19.  But even if plaintiffs were correct that one of several potential theories of liability that the Attorney General might ultimately assert in any enforcement action may be preempted by federal law (which they are not), it does not follow that their constitutional rights would be violated merely by requiring them to produce documents and answer questions pursuant to the outstanding subpoenas. Preemption is not a doctrine of immunity from investigation or suit.  It is only a defense to liability, and plaintiffs can preserve their "rights" by raising that defense in any state-court enforcement proceeding presenting actual and concrete claims, if the Attorney General brings such an action.  <u>See Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 12 and n.12 (1983) (noting that preemption defenses can and should be decided by state court, subject to possible Supreme Court review by certiorari).

Moreover, while violations of certain fundamental constitutional rights may give rise to a presumption of irreparable harm at the preliminary injunction stage, <u>see Covino v. Patrissi</u>, 967 F.2d 73, 77 (2d Cir. 1992) (violation of Fourth Amendment rights);

11

Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (violation of Eighth Amendment rights), preemption of state law under the Supremacy Clause, unlike violations of core Fourth Amendment or Eighth Amendment rights, is not a matter of fundamental individual rights.  The cases finding a presumption of irreparable harm all involve deprivations of "personal" constitutional rights, typically "coupled with some . . . physical harm or loss of liberty."  E.E.O.C. v. Local 638 . . . Local 28 of the Sheet Metal Workers Int'l Ass'n, 1995 U.S. Dist. LEXIS 7756, at *16 (S.D.N.Y. June 7, 1995); cf. N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 545 F. Supp. 2d 363, 367 (S.D.N.Y. 2008).  By contrast, no presumption of irreparable harm arises from alleged violations of constitutional provisions, such as the Supremacy Clause, that "serve 'structural' purposes . . . relating to the division of power between the States and the federal government." American Petroleum Inst. v. Jorling, 710 F. Supp. 421, 431 (N.D.N.Y. 1989).

Plaintiffs can draw no support from the cases they cite on irreparable harm (Pls. Inj. Mem. at 20).  In fact, two of those cases deny injunctive relief because, as in this case, the plaintiff failed to make any showing that irreparable injury would result from the enforcement of the state statute that was allegedly unconstitutional.  See Watson v. Buck, 313 U.S. 387, 400-401 (1941); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95-96 (1935). Several other cases that do grant injunctive relief, do so only upon a specific demonstration of irreparable harm—for example, a showing of exposure to successive and harassing criminal prosecutions, Wooley v. Maynard, 430 U.S. 705 (1977); likelihood of potential insolvency, Doran v. Salem Inn, Inc., 420 U.S. 922 (1975);

12

or immediate chilling of First Amendment rights to free expression, <u>Dombrowski v.</u>
<u>Pfister</u>, 380 U.S. 479 (1965).[8] Plaintiffs have made no similar showing in this case.

Indeed, plaintiffs' only effort to identify any tangible irreparable harm is their
allegation that "the disruption to their business and lives from the prosecution by the
Attorney General can never be remedied, and they are unlikely to ever recover the
substantial costs they have borne and will continue to bear in responding to the [Attorney
General's] unlawful and improper prosecution" (Compl. ¶ 63). But the Supreme Court
long ago made clear that "[m]ere litigation expense, even substantial and unrecoupable
cost, does not constitute irreparable injury." <u>Renegotiation Board v. Bannercraft Clothing</u>
<u>Co.</u>, 415 U.S. 1, 24 (1974); <u>see also</u> <u>F.T.C. v. Standard Oil Co. of California</u>, 449 U.S.
232, 244 (1980) (holding that "the expense and disruption of defending [one]self in
protracted adjudicatory proceedings" is not irreparable harm); <u>Younger</u>, 401 U.S. at 46
("the cost, anxiety, and inconvenience of having to defend against a single criminal
prosecution" are not irreparable harm). As the Court has emphasized, "the expense and
annoyance of litigation" is not a ground for judicial relief restraining governmental
action.  <u>Standard Oil Co. of California</u>, 449 U.S. at 244 (quoting <u>Petroleum Exploration,</u>
<u>Inc. v. Public Service Comm'n</u>, 304 U.S. 209, 222 (1938)).[9]

---

[8]     <u>In re Lustron Corp.</u>, 184 F.2d 789, 794-795 (7th Cir. 1950), also cited by plaintiffs
(Pls. Inj. Mem. at 20), addresses a federal court's issuance of an injunction in aid of its
exclusive bankruptcy jurisdiction and thus has no relevance here.

[9]     Plaintiffs' claims of disruption are also belied by their initial cooperation with the
Attorney General's investigation, which included production of more than 10,000
documents (Compl. ¶¶ 24, 45).  Plaintiffs could and should have moved to quash the
subpoenas <u>before</u> "cooperating with the New York State Attorney General" (Compl. ¶
45) if such compliance truly would have exacted such a serious toll on plaintiffs.  Further
undercutting their assertions of irreparable injury, in a letter to the Attorney General's
office dated July 14, 2008, plaintiffs' counsel told the Attorney General that plaintiffs

Nor could plaintiffs contend that this is a case, like others in which federal courts have enjoined state statutes based on preemption (Pls. Inj. Mem. at 19, 21-25), where plaintiffs face the dilemma of either repeatedly violating a state statute until a state suit is brought and decided, thereby exposing themselves to mounting penalties, or else complying with the state law notwithstanding their claim of preemption.  Plaintiffs do not dispute that, as a matter of substantive law, they must abide by the certifications in their ETA-750s.  Plaintiffs contest only the Attorney General's authority to assert claims related to those certifications.  Perhaps for this reason, plaintiffs have never suggested that the success or failure of their preemption defense will affect whether they actually comply with the certifications to which they have admittedly sworn. Cf. Clearing House Ass'n, L.L.C. v. Cuomo, 510 F.3d 105, 124 (2d Cir. 2006) (citations omitted) (finding claim for injunctive relief unripe where plaintiff banks were "required to abide by the fair lending provisions of the FHA regardless of whether the New York Attorney General has the authority to enforce those provisions.").  Indeed, plaintiffs' counsel has repeatedly invited federal government oversight of their alleged compliance with the ETA 750s by "suggest[ing] that [the Attorney General] submit the matter to the [US DOL]" (Pls. Inj. Mem. at 3-4; see also Compl. ¶ 3, Ex. B at 6).

### B.    Plaintiffs Cannot Succeed on the Merits

Even if plaintiffs had shown irreparable harm, which they have not, plaintiffs cannot succeed on the merits of their claims.  As an initial matter, plaintiffs' preemption

---

"will gather the documents responsive to [the Attorney General's] 'additional' subpoenas, and forward them to [plaintiffs' counsel] for review, categorization and Bates stamping, just as they have done in response to [the Attorney General's] initial office subpoena.  This way, we will be in a position to forward them to you should we not prevail in the litigation" (Elmore Aff. Ex. S at 2).

argument is narrow, attacking only one of many theories that the Attorney General might ultimately assert in an enforcement action, if one is brought. Plaintiffs try to obscure this fact by misrepresenting the nature of the Attorney General's investigation. Thus, they repeatedly assert that the Attorney General's potential claims "[a]ris[e] solely from [Dreamland's] alleged breaches" of certifications of ETA-750 forms. See Pls. Inj. Mem. at 2. This is simply false. As plaintiffs have elsewhere acknowledged, see Compl. at 3 n. 1, the Attorney General is also investigating potential civil rights claims based on alleged discrimination in working conditions, as well as public health claims based on alleged unsanitary work conditions, and plaintiffs do not assert that these claims would be preempted by federal law. The Attorney General is also investigating claims based on failure to pay the minimum wage required by New York law and to pay no less than one and one-half times that wage for overtime worked, which also are clearly not preempted. See 29 U.S.C. § 218; 29 C.F.R. § 778.5 (both expressly permitting states to enact minimum wage and maximum hour laws that are more protective of employees than the federal minimum wage and overtime laws).[10] Furthermore, plaintiffs' apparent rationale for preemption—i.e., the notion that the Attorney General is attempting to "enforce" certifications they made to the federal government—obviously would not apply to New York wage and hour claims based on any wage greater than the minimum wage to the

---

[10] The cases that plaintiffs cite for the proposition that the FLSA preempts "any . . . non-FLSA claims" and/or that the FLSA provides an "exclusive" remedy for "every state based claim for relief premised upon alleged failures of employers to pay H-2B workers the requisite hourly and overtime wages . . . be it created by statute or based on common law" are inapposite (Pls. Inj. Mem. at 35-36 (emphasis in original)).[10] The cases that plaintiffs cite (e.g., Choimbol v. Fairfield Resorts, Inc., 2006 U.S. Dist. LEXIS 68225 (E.D. Va. Sept. 11, 2006), see Pls. Inj. Mem. at 34-36) for this proposition relate to alleged FLSA preemption of state common law claims that merely duplicate FLSA claims, not state statutory claims with their own, independent requirements, like those that the Attorney General is investigating in the instant case.

extent that plaintiffs actually offered that wage to prospective employees, as plaintiffs certified they would on their ETA-750s. <u>See</u> N.Y. Labor Law §§ 190, 191, 198. Such matters, among others, all provide legitimate non-exclusive bases for the Attorney General's continued investigation of plaintiffs, entirely apart from plaintiffs' limited claim of preemption.

Moreover, as discussed more fully in the Attorney General's motion to dismiss, plaintiffs' preemption arguments, as limited as they are, are incorrect. A.G. Mem. of Law at 19-25. Plaintiffs' theory that federal preemption forecloses any state-law claim that in any way touches on immigration law (even though immigration law is not what is being enforced), is also belied by <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1292-94 (11th Cir. 2006) (allowing a state-law racketeering class action against a defendant for hiring undocumented workers to depress the wages of legal employees).[11]    In short, contrary to plaintiffs' claims, no part of the Attorney General's investigation attempts to regulate immigration matters; rather, the investigation focuses on ensuring the wages and employment conditions afforded to workers comply with New York law. <u>See</u> <u>Madeira v. Affordable Hous. Found., Inc.</u>, 469 F.3d 219, 240 (2d Cir. 2006) ("[I]mmigration is plainly a field in which the federal interest is dominant . . .   State . . . labor laws, however, occupy an entirely different field."). And a state investigation into wage and hour violations would not conflict with the objectives of federal immigration law, since awarding restitution or damages in the form of back wages for work already performed would not frustrate the federal goal of ensuring that H-2B workers are not subject to

---

[11]    Plaintiffs cite <u>Chavez v. Freshpit Foods, Inc.</u>, 456 F.2d 890 (10th Cir. 1972), for the idea that rights of action should not be implied from federal immigration law (Pls. Inj. Mem. at 43-44). In this case, as in <u>Williams</u>, it is not immigration law but a state statute that is being enforced.

depressed terms and conditions of employment that may adversely affect the wages and working conditions of similarly situated U.S. workers.

Plaintiffs cite many inapposite cases and doctrines, which this Court should not hesitate to disregard. For example, most of the cases relied on by plaintiffs involve exceptional federal statutes which have been found to "completely preempt" state law, in the sense that even valid claims are deemed to arise solely under the federal statute. That is true, for example, of <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1 (2003) (National Banking Act); <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236 (1969) and other cases under the Labor Management Relations Act; and <u>Metropolitan Life Co. v. Taylor</u>, 481 U.S. 58 (1987) (ERISA). It has been clear at least since <u>De Canas v. Bica</u>, 424 U.S. 351 (1976), that federal immigration law does not completely preempt state enforcement of general labor standards to protect workers within the state; the other federal law invoked by plaintiffs, the Fair Labor Standards Act ("FLSA"), states expressly that state regulation, including more stringent state regulation, is permitted. <u>See</u> Point II.B above. Furthermore, even those statutes which do completely preempt state-law claims that actually fall within their area of concern matter generally do not extend to unrelated matters within states' traditional police powers, such as general labor regulation. <u>See, e.g.</u>, <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 19-22 (1987) (Labor Management Relations Act); <u>HMI Mech. Sys. v. McGowan</u>, 266 F.3d 142, 149-150 (2d Cir. 2001) (ERISA).

Other cases cited by plaintiffs are inapposite for other reasons. For example, not only did <u>Morales v. Trans World Airlines</u> not pose an abstention issue (<u>see</u> n. 7 above), but it struck down not general state law but "guidelines" promulgated by the National

Association of Attorneys General specifically for the airline industry, which the Supreme Court concluded would inevitably interfere with Congress' decision to leave airline rates deregulated.  The Court, see 504 U.S. at 390, expressly disclaimed any intent to preempt all state regulation "as applied to airlines" when any possible effect on airline rates was tenuous.

Finally, Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir. 2002), involved not generally applicable state labor standards but solely work on federally funded contracts governed by the federal United States Housing and Davis-Bacon Acts; moreover there was no doubt that federal jurisdiction existed since the plaintiff workers themselves had initiated the suit, including federal claims, in federal court.  In Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005), the breach of contract and fraud claims which were found to be removable involved not a breached promise to do something specific (like, in this case, a promise to pay at least a specific, expressly stated wage) but simply a statement by the cable company that its rates would comply with applicable law. While invoking state contract and fraud law, Broder sought a declaration that the company had violated 47 U.S.C. § 543 – a far cry from the Attorney General's investigation into whether Dreamland Amusements Inc. and the DeStefanos failed to live up to specific promises made to the NYS DOL, and to their own employees, even if a federal statute was one of the reasons that those promises were made.

C.    A Balancing of the Equities Mandates the Denial of Injunctive Relief

In addition to the factors discussed above, a balancing of the equities weighs strongly against any grant of injunctive relief. The public interest favors the vigorous enforcement of state labor and hour and civil rights laws.  To restrain the Attorney

General's investigation here would upset "the delicate balance that must be maintained between a federal court's exercise of its equitable power and a state's administration of its own affairs," Reynolds v. Giuliani, 506 F.3d 183, 198 (2d Cir. 2007), and violate "the normal principles of equity, comity, and federalism that should inform the judgment of federal courts when asked to oversee state law enforcement authorities," City of L.A. v. Lyons, 461 U.S. 95, 112 (1983).

Plaintiffs' preemption theory even if valid applies to only to one possible enforcement claim, a factor that weighs strongly against the sweeping injunctive relief that plaintiffs seek. Plaintiffs' proposed order, for example, is not narrowly targeted but instead includes irrelevant findings and seeks broader relief than requested in the Complaint by asking this Court to enjoin any investigation or prosecution of plaintiffs for claims "arising from" an ETA 750 form (Pls. Proposed Order ¶ 17). Because the forms may be relevant to many different state law claims (such as plaintiffs' failure to pay their workers offered wages), the injunctive relief that plaintiffs seek would necessarily embroil this Court in supervising ongoing state proceedings to resolve discovery and potential evidentiary disputes over whether a possible enforcement theory or claim "arises" from a ETA 750 form.

That result would caution against injunctive relief even if plaintiffs' could establish irreparable injury. See, e.g., O'Shea v. Littleton, 414 U.S. 488, 500-01 (1974) (federal courts should avoid issuing injunctive relief that would effectively require day-to-day supervision over state court proceedings or the law enforcement functions of state officials); Wallace v. Kern, 520 F.2d 400, 406 (2d Cir. 1975) (injunction that would require parties to seek ongoing compliance rulings from district court, resulting in

continuing surveillance of state hearing procedures violates principles of federalism and comity).  But here it is dispositive and tips the balance of equities overwhelmingly in the State's favor where the requested injunction would vindicate – at most – a partial preemption defense yet result in extensive interference with the Attorney General's enforcement of non-preempted state laws.

On the other side of the ledger, plaintiffs had prior opportunities to protect their interests that they deliberately ignored.  Plaintiffs' litigation conduct here does not warrant this Court's equitable intervention, particularly when the conduct was seemingly calculated to undermine the Attorney General's enforcement powers and delay an ongoing state investigation.  As detailed above, plaintiffs never moved to quash the Attorney General's subpoenas in state court and, moreover, delayed in bringing this federal action until the eve of their thrice-adjourned deadline for compliance with the subpoenas.  Even then plaintiffs did not seek emergency relief from this Court.  They thus failed to comply with the Attorney General's subpoenas without a court order or any other valid justification.  Moreover, plaintiffs recently served a patently meritless notice of removal of the Attorney General's state-court order to show cause to compel compliance with the subpoenas, and did so the day before a scheduled state-court hearing, which would have presented their earliest opportunity to have any defenses heard.  In light of these actions, plaintiffs' pleas to this Court for equity ring hollow.

20

## CONCLUSION

For all of the foregoing reasons, the Attorney General respectfully requests that the Court deny plaintiffs' motion for preliminary and permanent injunctive relief in its entirety.


Dated: New York, New York          Respectfully submitted,
       August 15, 2008

                                   Andrew M. Cuomo,
                                   Attorney General of the State of New York

                              By: _____/s/_____
                                   Judith Marblestone (JM 3226)
                                   Assistant Attorney General
                                   120 Broadway, Civil Rights Bureau
                                   New York, New York 10271
                                   (212) 416-8702
                                   Attorney for Defendant