Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel: 212-216-8000 / FAX- 212-216-8001
*Local Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO, :<br><br>Plaintiffs, :<br>v. :<br><br>THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK, :<br><br>Defendant. : | Case No. 08-Civ-6321(JGK) |

**ANSWER OF PLAINTIFFS TO DEFENDANT'S AFFIDAVIT IN LIEU OF A MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert

DeStefano, and Kathryn DeStefano (hereinafter "Plaintiffs"), by and through their undersigned

counsel, do hereby answer and otherwise respond to the Defendant's Motion to Dismiss in the form of a state court petition filed by the Honorable Andrew M. Cuomo, Attorney General of the State of New York (hereinafter "Defendant" or "State Attorney General"), and respectfully pray that this Honorable Court enter an Order in the form attached hereto, denying Defendant's Motion for the reasons set forth herein:

1.      Rather than file a Motion, the State Attorney General chose to file in its stead an Affidavit of the Section Chief of the Civil Rights Bureau of the State Attorney General, Julian R. Birnbaum, Esquire, which Affidavit attaches yet another Affidavit, that of Assistant Attorney General Andrew J. Elmore, Esquire, with exhibits, which Affidavit had been filed in the New York State Supreme Court.  The Affidavit does not address any issue under Federal Rules of Civil Procedure 12(b)(1) - (b)(6).

2.      As a result, there is no formal motion to which Plaintiffs are able to respond.

3.      Plaintiffs therefore submit as their Answer to the Attorney General's ersatz Motion, and incorporate by reference as though set forth in full herein, the Answer and Affidavit that they submitted in response to that of Mr. Elmore filed in the New York State Supreme Court, together with exhibits, attached hereto as Exhibit "1."[1]

4.      The State Attorney General has sworn and disclosed in his own writings contained in his faux Motion to Dismiss, that the basis for his investigation and prosecution of Plaintiffs is the State Attorney General's construction and interpretation of the federal form ETA-750 -- a certification between Dreamland Amusements, Inc. and the United States Departments of Labor and Homeland Security regarding wages to be paid to alien, seasonal non-agricultural

---

[1]      In response to the Affidavit of Mr. Birnbaum, Plaintiffs respond as follows:

1-6.    Admitted.

employees should the United States Department of Labor approve Dreamland's requests for H-2B workers for its amusement enterprise.

5.    As is set forth in the Plaintiffs' Complaint and Answer of Plaintiffs to the Defendant's Petition and as is explained in their attached Memorandum of Law, the investigation and prosecution of Plaintiffs by the State Attorney General is preempted, because it is bottomed on the interpretation of a contract among and between the Plaintiff Dreamland and United States departments and agencies, with any claims of fraud being committed solely to the exclusive jurisdiction of the United States Department of Justice.

6.    Were the law otherwise, then the question regarding wages to be paid to the alien, seasonal, non-agricultural H-2B employees is governed by the Fair Labor Standards Act (hereinafter "FLSA").  That Act exempts amusement enterprises such as Dreamland from the minimum wage and maximum hour strictures of the FLSA, at 29 U.S.C. §§ 206, 207, by virtue of Section 213(a)(3)(B), and, as set forth in the accompanying Answer and Memorandum of Law, preempts New York State and the State Attorney General from imposing, prosecuting or investigating any Plaintiff for alleged wages, hours or overtime FLSA violations.

7.    To the extent that the State Attorney General claims that the New York Code of Regulations, although it incorporates the FLSA exemption for amusement enterprises such as Dreamland, provides a lawful state interest and a power vested in the State Attorney General to investigate and prosecute regarding New York overtime wages to be paid to the alien, seasonal non-agricultural H-2B employees despite the amusement exemption, the law is clear that the state may not evade or erase the federal wages and hours exemption through a state's requirements regarding overtime wages, because any such attempt is preempted, as is set forth in the accompanying Memorandum of Law.

3

8.    As a result, Plaintiffs respectfully submit that the entirety of the subject matter governing the wages to be paid by Dreamland to alien, seasonal, non-agricultural H-2B employees pursuant to its certifications with the United States Departments of Labor and Homeland Security, including any New York state wage, hour, or overtime law, custom, or practice, is preempted.

9.    In view of the readily apparent and conclusive preemption, there is no lawful predicate upon which this Honorable Court may abstain from deciding Plaintiffs' entitlement to the declaratory judgment they seek.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter an Order in the form attached hereto, denying Defendant's Motion to Dismiss their Complaint for Declaratory Judgment and Injunctive Relief.

Respectfully submitted,

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA  19103
214-241-8888/FAX - 215-241-8844
*Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER KRINSKY & DROGIN, PC
1350 Broadway
New York, NY  10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Plaintiffs*

# EXHIBIT "1"

Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Respondents*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Respondents*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK,<br><br>                              Petitioner,<br><br>for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas<br><br>         -- against --<br><br>DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp.,<br><br>                              Respondents. | Case No. 08-cv-7100 |

**ANSWER AND FURTHER RESPOSNE TO THE STATE ATTORNEY GENERAL'S**
**PETITION FOR AN ORDER TO COMPEL COMPLIANCE**
**WITH OFFICE SUBPOENAS**

Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert F. DeStefano, Jr., Kathryn L. DeStefano, (hereinafter "Respondents"), by and through their undersigned counsel, hereby answer and otherwise respond to the Petition filed by the State Attorney General seeking an order to compel compliance with his office subpoenas *duces tecum* and *ad testificandum* propounded upon them. In support of their Answer and Further Response, Dreamland submits the following answer to the numbered paragraphs of the Attorney General's Petition, as follows:

1-2.    Admitted.

3.    It is admitted that the Attorney General purports to predicate the authority for his issuance of his office subpoenas upon New York State Executive Law § 63(12). For the reasons set forth herein and in the Respondents' Memorandum of Law in Opposition to the Attorney General's Petition, he utterly lacks the power to act or issue office subpoenas in connection with the stated subject matter of his investigation.

4-6.    The statute, being a writing, speaks for itself. To the extent that the averments are conclusions of law, no responsive pleading is required. By way of further answer, the Attorney General has not filed an Order with the Supreme Court seeking to enjoin any business activities, the precondition in the text of the statute to his taking proofs and issuing subpoenas in accordance with Civil Practice Law and Rules. Moreover, the Attorney General's office subpoenas are not issued in accordance with Civil Practice Law and Rules. Furthermore, having focused upon Respondents and concluded that they are perpetrators of persistent fraudulent acts, albeit mistakenly, the Attorney General cannot use office subpoenas to gather evidence against Respondents.

2

7-8.    The statutes, being writings, speaks for themselves.  By way of further answer,

the law precludes the State Attorney General from evading federal preemption and federal

exclusive jurisdiction over questions arising from the Alien Employment Certification filed by

Dreamland Amusements, Inc. with the United States Departments of Labor and Homeland

Security through purported reliance upon inapplicable state law.  Similarly, Dreamland

Amusements, Inc. is exempt from the wages, hours, and overtime requirements otherwise

imposed under the federal Fair Labor Standards Act because it is an exempt amusement

establishment under that Act, and specifically 29 U.S.C. § 213(a)(3)(B).  As a result, Attorney

General lacks the right or power to investigate the wages paid to Dreamland's H-2B employees

in view of the exemption, even were there no preemption or exclusive federal jurisdiction.  By

way of further answer, the Attorney General is not authorized by law to use his office subpoenas

to undertake investigations for any of those entities and/or to avoid or evade the specific requisite

preconditions to the assumption by those entities of jurisdiction over any claim of discrimination.

9.    It is admitted that regulations under the New York State Sanitary Code address

shower head temperature and hygiene, and sanitary waste facilities at camp grounds.  It is denied

that the Attorney General has any right or power to utilize office subpoenas under Executive

Law § 63(12) to obtain documents or testimony regarding shower head temperature or sanitary

portable toilets or bedbugs because there can not be any "repeated fraudulent or illegal acts" or

"persistent fraud or illegality" in connection therewith, even if the Attorney General had

otherwise the power to enforce the State Department of Health campground regulations.

10-11.  Admitted.  By way of further answer, Dreamland Amusements, Inc. is also an

entity incorporated under the law of the State of New Hampshire.  The incorporation in New

York was the result of a mistake by its prior representatives. It has not been an active

corporation in New York; moreover, it is in the process of dissolution in New York.

      12.    Denied. To the contrary, Respondents are separate and distinct corporate entities,

with separate and distinct books and records, filing separate and distinct tax returns, and

performing separate and distinct functions. That the Attorney General swears that "these

corporate entities appear to operate as a single enterprise," reflects both his haphazard

investigation and a degree of analysis consistent with the Attorney General's contention that it

has the power to investigate Dreamland for repeated fraudulent or illegal acts and persistent

fraud or illegality due to allegations of the hot water temperature at shower heads under State

Health Department campground regulations.

      13.    Respondents deny that they are engaging in any unlawful conduct regarding the

failures to pay lawful wages or any other matters. Dreamland is without sufficient information to

respond to what the Attorney General's office claims it has received by way of complaints or

when it first received them.

      14.    Denied. To the contrary, had the Attorney General deigned to review the 10,665

documents provided by Dreamland thus far in response to its office subpoenas, it would not be

able to "swear" that Dreamland operates "as much as one-half of the approximately nine months

they operate each calendar year" within New York State. To the extent they are deemed

relevant, Respondents demand strict proof of each such allegation.

      15.    Denied. Had the Attorney General deigned to review the 10,665 documents

produced by Dreamland thus far in response to his office subpoenas, he would know that the

number of H-2B employees hired by Dreamland pursuant to its Alien Employment Certification

with the United States Departments Labor and Homeland Security, and its "contract" with the

United States Department of Labor, is now approximately 20, all of whom are Mexicans, and that the only H-2B employees that Dreamland has hired and employed through its contracts with the United States Departments of Labor and Homeland Security have been Mexicans, and never in numbers of one-third of one hundred twenty five.

16-21.  The statutes, rules and regulations, being writings, speak for themselves.  By way of further answer, the Attorney General conflates the role of the State Work Force Agency, as he must, in order to attempt to suggest that the State somehow plays a role other than as a data resource pool for prevailing wages and unemployed United States workers.  To the contrary, the procedures set forth in and indeed mandated by the federal statutes and regulations, as well as the duties and obligations imposed upon persons such as Dreamland Amusements, Inc. in submitting Alien Employment Certification Forms ETA-750 to the United States Departments of Labor and Homeland Security, through the administrative, civil and criminal sanctions to which they are subject for the very acts the Attorney General swears are the gravamen of his investigation, are set forth in Exhibit "I" hereto.  It is admitted that a blank ETA-750 is attached to the Attorney General's Petition as Exhibit "B."  It is also admitted that the federal Form ETA-750 subjects employers who make misrepresentations or fail to adhere to the terms and conditions under which they obtain the seasonal, alien H-2B workers to the full range of federal criminal law by prosecutions at the hands of the United States Department of Justice for felony crimes code violations of false statements and perjury, among others, as is set forth by the Attorney General in paragraph 21.

22-24.  Admitted.  By way of further answer, the "prevailing wage rates" are not known at the time of the submission of the federal Form ETA-750, but, rather, are computed and added after the application is submitted.  It is admitted that Dreamland Amusements, Inc. did hire H-2B

employees during the years 2006, 2007, and 2008. The remaining averments set forth in

paragraphs 22-24 are denied. If deemed relevant, strict proof thereof is hereby demanded.

26.    It is admitted that the Attorney General has received documents from Dreamland.

The remaining averments of paragraph 25 are denied. If deemed relevant, strict proof thereof of

each such allegation is demanded. By way of further answer, Articles 6 and 19 of the New York

Labor Law and regulations promulgated thereunder are wholly inapposite to the wages, hours

and overtime that Dreamland is obligated to pay and the H-2B workers are entitled to receive,

due to preemption, exclusive federal jurisdiction, the amusement enterprise exemption under the

federal FLSA, and the incorporation of that same exemption into the fabric of the New York

Labor Law. By way of further answer, were the position of the Attorney General correct, then

the alien, seasonal H-2B workers employed by Dreamland pursuant to its Alien Employment

Certification and "contract" with the United States Departments of Labor and Homeland Security

would receive far more wages and compensation than the United States born workers employed

by Dreamland, thereby undercutting the intent and purpose of the employment of these seasonal,

foreign born workers as is set forth in 8 U.S.C. § 1101(a)(H)(ii)(b).

26.    Denied, and denied as a legal conclusion to which no responsive pleading is

required. To the extent relevant, Dreamland demands strict proof of each allegation.

27.    Dreamland cannot admit or deny the averments contained in paragraph 27

because they are beyond Dreamland's knowledge. To the extent they are deemed relevant, strict

proof thereof is hereby demanded. By way of further answer, Dreamland makes available at no

cost to all of its employees mobile bunkhouses that accompany the mobile carnival on each of its

stops. Were such bunkhouses overcrowded or unhygienic, which they are not, there cannot be

any discrimination.

28.    Denied.  To the extent deemed relevant, strict proof thereof is hereby demanded.
By way of further answer, Respondents incorporate their response to ¶ 27, *supra*.

29.    Admitted.  By way of further answer, Respondents did not receive the office
subpoenas until days after the Attorney General made service upon the New York State
Secretary of State.

30-33.  The documents, being writings, speak for themselves.

34-41.  The documents, being writings, speak for themselves.  The remaining averments
are denied.  If deemed relevant, strict proof thereof is hereby demanded.  By way of further
answer, from his first communication with the State Attorney General, counsel for Respondents
suggested that his clients were interested in resolving the matter as easily and quickly as possible
through a consent decree, which counsel would recommend be signed even absent proofs of any
wrongdoing, and even though the Attorney General lacks subject matter jurisdiction over his
investigation.

42.    It is admitted that undersigned counsel was told to appear at a settlement
conference June 26, 2008, at the office of the Attorney General.  Despite his requests for
information regarding the predicates upon which the Attorney General based its investigation in
view of undersigned counsel's numerous written analyses and oral submissions to the Attorney
General that he lacked jurisdiction, no such information had been forthcoming from the Attorney
General.  Undersigned counsel arrived at the settlement conference seeking to discuss the
Attorney General's absence of jurisdiction.  Mr. Thall was ushered into a conference room and
confronted with Assistant Attorney General Andrew Elmore, Assistant Attorney General Judith
Marblestone, Section Chief of the Civil Rights Bureau Julian Birnbaum, Deputy Attorney
General James Rogers, and a summer intern.  The four Attorney Generals refused to discuss any

issue of their jurisdiction. They refused to discuss any of the legal predicates upon which they hinged their investigation, and refused to consider preemption, exclusive jurisdiction, the amusement enterprise exemption, or any of the other legal barriers precluding them from proceeding with their investigation or their misuse of office subpoenas in pursuit of that investigation.

There were no settlement discussions. To the contrary, the four Attorneys General demanded that Dreamland pay sums of money to resolve the violations they represented their investigations had found thus far.

In this regard, the Attorneys General represented that as a result of specific violations they had already found, but refused to share, Respondents owed $780,000 in unpaid wages for H-2B workers from January 1, 2006 through May 31, 2008, limited solely to New York State; $2.9 million in unpaid wages for H-2B workers for January 1, 2006 through May 31, 2008 for the entirety of the states within which the mobile carnival stopped; and that if Respondents did not agree to pay the $780,000 (not including costs of investigation) then the Attorney General would issue subpoenas to Respondents going back an additional three years. The most cogent way to convey the lunacy of these computations is that these sums approximate the gross receipts of Dreamland in New York and the entirety of its seasonal tour, respectively. Although reading from a preprinted sheet, the Attorneys General refused to provide it to counsel. The Attorney General did provide copies of the ETA-750s for the years 2006, 2007 and 2008, because they represented that their investigation was based on the ETA-750s and they wanted to make sure that undersigned counsel had them. They refused to provide any other writings, be they redacted "complaints" or other proofs of violations, or surveillance reports, nor did they provide such information orally.

The Attorney General also represented that it had previously found specific acts of discrimination as follows:

(1)    requiring H-2B employees to work outdoors in inclement weather, although the Attorney General acknowledged that Dreamland's other workers did so as well;

(2)    requiring H-2B employees to assemble or disassemble carnival rides in unsafe conditions, as if Dreamland's other workers performed those tasks under different conditions;

(3)    providing unsanitary porto-potties to H-2B workers, as if Dreamland's other workers and carnival customers did not use the same porto-potties, and as if Dreamland did not lease them at each carnival stop;

(4)    yelling at H-2B employees, although the Attorney General acknowledged that non-H-2B employees were yelled at too; and

(5)    providing bunkhouses for H-2B employees with mattresses that allegedly on occasion had bed bugs, without acknowledging or perhaps not being aware that Dreamland offers mobile bunkhouses at no cost to all of its employees, requiring no one to use the mobile bunkhouses, begins each season with brand new mattresses, and hires exterminators to fumigate the bunkhouses several times a year.

The significance to the matter at issue is that regardless of the lack of analysis, thought, and accuracy of the Attorney General's conclusions, the Attorney General had indeed focused upon Respondents and concluded no later than June 26 that Respondents had already committed myriad wrongs.  No matter how silly or embarrassing, the Attorney General's conclusions evidence that its office subpoenas are not in aid of any general investigation, but

9

rather have Respondents in the cross-hair sights of the State Attorney General, who possesses an itchy trigger finger.

43-46.   The documents identified in these paragraphs are genuine and authentic.   Any inferences drawn by the Attorney General are his and his alone.   To the extent any of the assertions made therein are deemed relevant, strict proof thereof is hereby demanded.

47.   Admitted.   By way of further answer, the Attorney General cites to four cases in response to undersigned counsel's questioning of the Attorney General's office subpoena *ad testificandum* procedures, which provide for counsel's presence only if permitted by the Attorney General, preclude the securing of a transcription of the testimony, and were counsel allowed to be present, preclude counsel from participating other than objecting on attorney-client or Fifth Amendment grounds.   Such procedures are not "in accordance with the civil practice law and rules," as set forth in New York Executive Law § 63(12).   By way of further answer, the four cases provided by the Attorney General included only one federal case, a Supreme Court case decided in the decade <u>before</u> *Escobido* and *Miranda*.

Most significantly, separate and apart from the Attorney General's writings, the Attorney Generals were abundantly clear at the so-called settlement conference that, based on their investigation, they had already concluded that Respondents had committed multiple violations of the laws and that the investigation was not an investigation into the conditions under which H-2B workers are employed in general, or the mobile carnival field in particular.

Thus, the subpoenas were not sought in aid of a general investigation, but rather were issued to obtain specific information for use in prosecuting Dreamland.   As a result, the authorities cited by the Attorney General were wholly inapplicable.

48-49.  It is admitted that the documents are authentic and genuine.  Any other assertions or inferences derived therefrom, are specifically denied.  If deemed relevant, strict proof thereof is hereby demanded.

50-53.  The documents referenced are genuine and authentic.  Any other averment of fact or inference derived therefrom is denied.  To the extent they are deemed relevant, strict proof thereof is hereby demanded.

54.     Admitted.  By way of further answer, as is set forth in the accompanying Memorandum of Law, the Attorney General has no right, power or jurisdiction to command the appearance of Respondents for testimony.

55.     Denied as stated.  See Counsel's letter of July 14, 2008, appended to the Attorney General's Affidavit at Exhibit S.

56-57.  Denied as conclusions of law to which no response is required.

58.     Admitted.

        WHEREFORE, Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert F. DeStefano, Jr., Kathryn L. DeStefano, and any other owners and corporate officers of Dreamland Amusements, Inc., Toy Circus, Inc. and/or Crossroads Trucking Corp. respectfully pray that this Honorable Court enter an Order in the form attached hereto,

denying the Petition of the Attorney General to compel compliance with its office subpoenas *ad*

*testificandum* and *duces tecum*.

Respectfully submitted,

SPECTOR GADON & ROSEN, PC

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA 19103
214-241-8888/FAX - 215-241-8844
*Counsel for Respondents*

Edward Finkelstein, Esquire [EF-2805]
TARTER KRINSKY & DROGIN, PC
1350 Broadway
New York, NY 10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Respondents*

Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Respondents*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Respondents*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK,<br><br>     Petitioner,<br><br>for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas<br><br>  -- against --<br><br>DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp.,<br><br>     Respondents. | Case No. 08-cv-7100 |

## <u>AFFIDAVIT OF BRUCE L. THALL</u>

I, Bruce L. Thall, Esquire, being duly sworn, do depose and say the following:

1.      The facts set forth in the Answer and Further Response to the State Attorney

General's Petition for an Order to Compel Compliance with Office Subpoenas are true and

correct to the best of my knowledge, information and belief.

2.      More specifically, the facts set forth in response to Petition paragraphs 42 and 47

are based upon the statements and representations of the Attorneys General at the so-called

settlement conference held in the offices of the Attorney General on June 26, 2008.


_____
Bruce L. Thall, Esquire


Sworn to and subscribed
before me this _12th_ day
of August, 2008.


_____
Notary Public


COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THERESA BAYER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 10, 2012

Bruce L. Thall, Esq.
Heather M. Eichenbaum, Esq.
David B. Picker, Esq. [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Respondents*

Edward R. Finkelstein, Esq. [EF-2805]
TARTER, KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Respondents*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, : : : | Case No. 08-CV-7100 |
| Petitioner, : | |
| for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas : : : : | |
| -- against -- : : | |
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp., : : : : : : : | |
| Respondents. : | |

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO THE STATE ATTORNEY GENERAL'S PETITION FOR AN**
**ORDER TO COMPEL COMPLIANCE WITH OFFICE SUBPOENAS**

{Client\002644\I939\00148037.DOC;1}

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................ii

I.    FACTS AND PROCEDURAL HISTORY ................................................... 1

II.   THE ATTORNEY GENERAL'S MISUSE AND ABUSE OF NEW YORK
      EXECUTIVE LAW § 63(12) ........................................................................7

III.  OFFICE SUBPOENAS ..................................................................................8

IV.   THE STATUTES ON WHICH THE ATTORNEY GENERAL BASES
      HIS PROSECUTION OF RESPONDENTS ...............................................11

      a.    New York Executive Law § 63(12)...................................................12

      b.    Fair Labor Standards Act ..................................................................12

      c.    42 U.S.C. § 1981 ...............................................................................13

      d.    42 U.S.C. § 2000e, et seq., Title VII..................................................14

      e.    New York State Human Rights Law ..................................................16

      f.    10 N.Y.C.R.R. Subpart 7-3................................................................17

      g.    Articles 6 and 19 of the New York Labor Law and 12 N.Y.C.R.R.
            Part 142..............................................................................................19

      h.    New York City Human Rights Law, New York Administrative Code
            §§ 8-101, et. seq.................................................................................21

V.    CONCLUSION..............................................................................................22

534445

## TABLE OF AUTHORITIES

## CASES

*Alden Management Services, Inc. v. Chao*, 529 F. Supp.2d 882 (N.D. Ill. 2007) .....................12-13

*Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp.2d 746
(S.D. Tex. 2007) ........................................................................................................................13

*Butts v. New York City Dep't of Housing*, 2007 U.S. Dist. LEXIS 6534
(S.D.N.Y. Jan. 29, 2007) ...........................................................................................................15

*Chimarev v. TD Waterhouse Investor Services, Inc.*, 280 F. Supp.2d 208
(S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 259 (2d Cir. 2004 WL 1013320) .....................................13

*Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006) .....................12

*Compdon v. Inter-religious Foundation for Community Organization, Inc.*,
18 Misc.3d 874, 850 N.Y.S.2d 841 (N.Y. Co. Sup. 2008) ...........................................................10

*Francis v. City of New York*, 235 F.3d 763 (2d Cir. 2000) ..........................................................15

*Ganthier v. North Shore - Long Island Jewish Health System, Inc.*,
345 F. Supp.2d 271 (E.D.N.Y. 2004) .........................................................................................13

*Gardner v. Lefkowitz*, 97 Misc.2d 806, 412 N.Y.S.2d 740 (N.Y. Co. Sup. 1978) ..........................9

*Grochowski v. Phoenix Const.*, 318 F.2d 80 (2d Cir. 2003) ........................................................13

*Harlem Teens for Self-Help v. Department of Investigation of City of New York*,
122 Misc.2d 1066, 472 N.Y.S.2d 967 (N.Y. Co. Sup. 1984) ........................................................10

*Holtz v. Rockefeller & Co., Inc.* 258 F.2d 62 (2d Cir. 2001) ...................................................14-15

*In re Nassau County Grand Jury Subpoena Duces Tecum*, 4 N.Y. 3665,
830 N.E.2d 1118, 797 N.Y.S.2d 790 (Court of Appeals 2005) .....................................................10

*In re People of the State of New York v. Frink America, Inc.*,
2 A.D.3d 1379 (4th Dep't 2003) ...................................................................................................7

*Jadali v. Alamance Regional Medical Center*, 399 F. Supp.2d 675
(M.D.N.C. 2005), *aff'd*, 167 Fed.Appx. 961 (4th Cir. 2006 WL 392065) .....................................14

*National Railway Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..........................................15

*New York State Commission on Government Integrity v. Congel*,
142 Misc.2d 9, 535 N.Y.S.2d 880 (N.Y. Co. Sup. 1988) .................................................. 10

*Philips v. Pitt County Memorial Hosp.*, 503 F. Supp.2d 776 (E.D.N.C. 2007) ........................... 14

*Santos v. Costco Wholesale, Inc.*, 271 F. Supp.2d 565(S.D.N.Y. 2003) ................................. 13

*Shah v. Wilco Systems, Inc.* 125 F. Supp.2d 641 (S.D.N.Y. 2000) ............................... 12, 16

*Schilling v. Rutherford Pediatrics, P.A.*, 346 F. Supp.2d 828 (W.D.N.C. 2004) ................. 13-14

*State of New York v. Cortelle Corp.*, 38 N.Y.2d 83 (Court of Appeals 1975) ........................... 7

*Sussman v. New York State Organized Crime Task Force*, 39 N.Y.2d 227,
347 N.E.2d 638, 383 N.Y.S.2d 279 (Court of Appeals 1976) ........................................... 8-9

*Tisharodi v. Valley Baptist Medical Center*, 393 F. Supp.2d 561 (S.D. Tex. 2005) ................. 14

*Virag v. Hynes*, 54 N.Y.2d 437, 430 N.E.2d 1249, 446 N.Y.S.2d 196
(Court of Appeals 1981) ................................................................................ 9-10

*Van Zant v. Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) .................................. 15

*Von Zuckerstein v. Argonne Nat. Laboratory*, 984 F.2d 1467
(7th Cir. 1993), *cert. denied*, 510 U.S. 959 (1994) .................................................... 14

*Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385 (1982) ........................................... 15

## **STATUTES**

8 U.S.C. § 1182(n)(2) ................................................................................. 16

18 U.S.C. § 1001 ....................................................................................... 12

18 U.S.C. § 1746 ....................................................................................... 12

Fair Labor Standards Act, 29 U.S.C. § 201 ................................................... *passim*

29 U.S.C. §§ 201, 206, 207, 213(a) ..................................................................... 19

Immigration and Naturalization Act ......................................................... *passim*

Title VII, 42 U.S.C. § 2000(e) .............................................................. 11,14,15,16

42 U.S.C. § 1981 ................................................................................................13, 14, 15

20 C.F.R. § 655.805.....................................................................................................16

20 C.F.R. § 655.815.....................................................................................................16

20 C.F.R. § 655.840.....................................................................................................16

20 C.F.R. § 655.845.....................................................................................................16

20 C.F.R. § 655.850.....................................................................................................16


**NEW YORK STATE EXECUTIVE LAWS AND CODES**

New York Executive Law § 63(12) .........................................................................*passim*

New York Labor Law Articles 6 and 19........................................................11, 19, 20

12 N.Y.C.R.R. Part 142 ......................................................................................11, 20

New York City Human Rights Law, New York Administrative
Code § 8-101, *et seq.* ...........................................................................................11, 21

New York State Human Rights Law, Executive Law § 290, *et seq.* ................................11, 16, 17

New York State Sanitary Code, 10 N.Y.C.R.R.,
Subpart 7-3 "Camp Grounds" .........................................................................11, 17, 18

## I.    FACTS AND PROCEDURAL HISTORY

Despite preemption, the Attorney General of the State of New York has undertaken an investigation and represents that he has found violations of state law warranting both wider investigation and for now the civil prosecution of Respondents.  The violations at issue are asserted by the State Attorney General to be state law claims for relief rising solely from the alleged breaches by Respondent Dreamland of one pre-typed sentence contained in Dreamland's two page Alien Employment Certification that it signs and files with the United States Departments of Labor and Homeland Security under the federal Immigration and Naturalization Act.  The State Attorney General contends, albeit incorrectly, that resulting from Dreamland's alleged failures to pay its temporary, seasonal non-agricultural foreign citizen workers the wages due under the federal Certification to the federal Departments, deemed by the State Attorney General to be a binding contract, Dreamland is engaged in state law "fraud," violative of state statutes within his investigative and prosecutorial jurisdiction.

Moreover, the State Attorney General has gussied up the lynch pin of his investigation and prosecution into other federal or state causes of action.  As will be seen herein, none permits the State Attorney General to issue office subpoenas or investigate or prosecute.  Indeed, no matter how gift-wrapped, the Attorney General's investigation is uniquely improper and illegal, lacking even a semblance of subject matter jurisdiction without which he may not lawfully act.

Dreamland denies that any such breach has occurred and is prepared to meet head on any assertion to the contrary brought by any person, department or agency with jurisdiction to investigate the alleged breach of the certifications/contracts with the United States and with standing to pursue and prosecute such allegations.

The New York State Attorney General is not such a person.  As is set forth hereinafter, preemption necessarily bars any state officer, including the New York State Attorney General, from

proceeding with an investigation and prosecution of state statutory or state common law claims of any and every ilk, including fraud, arising from the alleged breach by Dreamland of its certification/contract with the United States Departments of Labor and Homeland Security.

Moreover, the New York State Attorney General has no right or power to conduct an investigation or initiate a prosecution as straw man for the United States Departments of Labor, Homeland Security and Justice, nor has he even been asked to do so. To the contrary, the thorough, extensive federal statutory and regulatory scheme governs every nook and cranny of Dreamland's certification/contract with the federal government, and provides administrative, civil and criminal sanctions for breaches of such certifications and frauds committed in connection therewith.

Thus, the New York State Attorney General lacks the right, power, or duty to investigate or act. Assuming, *arguendo*, that the law were to the contrary, nonetheless the precise question that is the subject of the Attorney General's investigation -- the determination of the federal prevailing wage that an alien worker with a special H-2B work visa is to receive from his employment in an industry specifically exempted from the wages, hours and overtime strictures of the Fair Labor Standards Act -- is itself a federal question clearly committed solely to the jurisdiction of the United States Department of Labor for an answer, were any question raised.

Respondents have so advised the State Attorney General both orally and in writing, and have suggested that the state officer submit the matter to the United States Department of Labor. *See* letter of July 8, 2008 attached hereto as Exhibit "A". Even though the federal authorities who have approved and policed Dreamland's certifications/contracts with the USDOL and USDHS have not seen fit to open an investigation into Dreamland's performance under its federal certifications/contracts, perhaps the violations already found by the New York State Attorney General and the fruits of his investigation will convert the USDOL and USDHS to the State Attorney General's point of view.

The State Attorney General, however, has declined to accept that suggestion and instead, though his liberal use of office subpoenas ostensibly pursuant to New York Executive Law 63(12), has expanded the temporal scope of his investigation by a factor of two, while preparing the filing of his prosecution of Respondents. Thus, Respondents were compelled to file their Complaint for Declaratory and Injunctive Relief in the United States District Court for the Southern District of New York. The State Attorney General responded by filing in state court a Petition for Enforcement of his office subpoenas, which Petition has been removed by Respondents to this Honorable Court, filed as a related action to their Complaint.

The Attorney General has submitted a 58 paragraph, 18 page Affidavit in support of its Petition seeking to compel Respondents to comply with the Attorney General's office subpoenas. Yet, at no point in its Affidavit has the Attorney General even mentioned that the subpoenas are not issued under the authority of a court, grand jury, or administrative body, but rather are simply office subpoenas.

There are, in fact, two separate sets of office subpoenas, the first dated May 23, 2008 and the second dated July 8, 2008. The former are subpoenas *duces tecum* to each Respondent and subpoenas *ad testificandum* to the individual Respondents. The latter are captioned "supplemental" subpoenas *duces tecum*. One copy of each of the sets of subpoenas *duces* tecum are attached hereto as Exhibits "B" and "C", respectively.

The blunderbuss office subpoenas dated May 23, 2008 contain 27 paragraphs of documents sought, many of which paragraphs contain subparagraphs, on ten and one-half single spaced pages. That of July 8, 2008 is equally intimidating, containing 20 numbered paragraphs, many of which have subparagraphs, on nine and one-half single spaced pages.

Undersigned counsel was retained by Respondents on June 2, 2008. The fulsome subpoenas had not been received by the Respondents until May 28. The subpoenas demanded compliance on or

before June 5, 2008. Given the scope and depth of the subpoenas, the return date was *per se* unreasonable.

Upon retention, undersigned counsel contacted the Attorney General's office and much to his surprise in view of the scope, depth and breadth of the office subpoenas was informed by the Attorney General Affiant that the investigation was not an industry wide investigation. To the contrary, the Affiant represented that the investigation involved Respondents alone, and was based upon information already developed by the State Attorney General. Indeed, as written by the Affiant on June 27, 2008, the Attorney General's investigation had already found multiple violations. *See* letter of June 27, 2008, attached as Exhibit "D". Moreover, although the Attorney General Affiant had represented that the investigation was then civil in nature, he opined that in view of findings of persistent fraud, the matter could become criminal.

Counsel hoped that production of documents would cause even the Attorney General to recognize that it lacked jurisdiction and that its findings and suspicions were erroneous. To that end, Respondents determined to produce documents responsive to the office subpoenas *duces tecum*. From reading the Affidavit of the Attorney General, and particularly paragraphs 54 and 55 thereto, one might believe that the Respondents have ignored the office subpoenas. In fact, although such inference is one which the Affiant may wish the reader to draw, the inference is false. Attached hereto at Exhibit "E", are the 9 separate letters from counsel to the Attorney General enclosing documents responsive to the May 23, 2008 office subpoenas. From June 9 through July 9, 2008, Respondents supplied 10,665 documents to the Attorney General pursuant to its May 23, 2008 office subpoenas. Each of the letters from counsel enclosing documents responsive to the office subpoenas reserved all rights, claims and defenses of Respondents, including the lack of power, right or authority of the State Attorney General to pursue the investigation in the first instance.

In addition, counsel submitted two lengthy letter memoranda to the Attorney General, which letters set forth in the facts and law establishing that the Attorney General lacked the lawful right or power to pursue its prosecution and investigation of Respondents. Counsel's letters of June 24 and July 8, 2008 are attached hereto as Exhibits "F" and "G", respectively.

The letters and letter memoranda fell on deaf ears. As a result, on July 14, 2008, Respondents filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of New York, docketed at 08-CIV-6321, pending before The Honorable John G. Koeltl, and a Memorandum of Law in Support of their Motion for Preliminary and Permanent Injunctive Relief thereafter.

By letter of July 14, 2008, attached hereto as Exhibit "H", counsel informed the Attorney General that in view of the filing of the Complaint for Declaratory Judgment and Injunctive Relief, the Respondents would not appear before the Attorney General in response to the subpoenas *ad testificandum* "absent the court ruling on our application," but that in the meantime, our clients would gather documents responsive to the original and supplemental subpoenas *duces tecum*, so that counsel would be in a position to forward responsive documents to the Attorney General were the court to refrain from providing relief to Respondents.

The Attorney General did not respond to the Respondents' federal court Complaint for Declaratory Judgment. Instead, more than two weeks after Respondents had filed their Complaint in this Court, on July 30, 2008, the Attorney General filed an Affidavit/Petition with the Supreme Court of the State of New York seeking an order under C.P.L.R. § 2308(b) to enforce compliance with the office subpoenas propounded by the Attorney General.

In its Affidavit, the Attorney General swears that it began receiving complaints of Respondents' alleged unlawful conduct in "failing to pay lawful wages and subjecting certain employees to discriminatory treatment" beginning around May of 2007, one year prior to the issuance of the first

office subpoena. [AG Affidavit at ¶ 13]. The Attorney General, moreover, swears that its office subpoenas were issued pursuant to Executive Law § 63(12) "in connection with an investigation into alleged fraudulent and/or illegal business practices of Respondents." [AG Affidavit at ¶¶ 3 and 28]. Moreover, as is set forth therein and at paragraphs 10 through 25 and 28 of the Affidavit, the predicates for the utilization of New York Executive Law § 63(12) are squarely bottomed upon the alleged failures to pay "proper" wages to the H-2B employees,\[1] as determined by the Attorney General. This mirrors the basis for the investigation set forth in the AG Affiant's letter of June 27, 2008, in which the Attorney General pegs his investigation and jurisdiction to "Dreamland's failure to pay promised wages" and "Dreamland's misrepresentations of the wage rate to be paid to its [H-2B] employees contained in the federal Form ETA-750 Alien Employment Certification." *See* Exhibit "D".

The State AG's state court application for an order to enforce compliance resulted in the issuance of a Rule to Show Cause, returnable on August 12, 2008. However, because the State AG lacks the power, authority, or right to enforce his office subpoenas for lack of subject matter jurisdiction in view of preemption, and exclusive federal jurisdiction, and because he lacks the right to act at all even were there no preemption or exclusive federal jurisdiction, on August 8, Respondents removed the Rule to Show Cause action to this Honorable Court, docketed at 08-cv-7100, to be consolidated with their Complaint for Declaratory and Injunctive Relief in order to resolve all issues among and between the parties hereto arising from the Attorney General's investigation and prosecution of Respondents.

---

\[1]    At Affidavit ¶ 28, the Attorney General swears that his investigation and prosecution is based upon "repeated and persistent fraudulent and illegal conduct" by "failing to pay the full wages required under the law, including the H-2B prevailing wage; failing to pay overtime compensation ..., conducting discriminatory employment practices by paying employees differently based on their ... national origin."

## II.    THE ATTORNEY GENERAL'S MISUSE AND
### ABUSE OF NEW YORK EXECUTIVE LAW § 63(12)

The State Attorney General is a creature of statute, possessing only the jurisdiction provided to it by the state legislature. The State Attorney General purports to peg his investigation and prosecution of Dreamland upon New York Executive Law § 63(12). *See* Exhibits "B" and "C" hereto; AG Affidavit at ¶¶ 3, 15, 24, 27 28.

That statute, however, does not create any new cause of action. To the contrary, it only authorizes the Attorney General to seek redress for violations of other statutes that are in fact already within the statutory grant of jurisdiction of the Attorney General. *In re People of the State of New York v. Frink America, Inc.*, 2 A.D.3d 1379 (4th Dep't 2003); *State of New York v. Cortelle Corp.*, 38 N.Y.2d 83, 85 (Court of Appeals 1975). Thus, unless the Attorney General's investigation and prosecution of Respondents is otherwise within the power and jurisdiction of the State Attorney General as provided by statute, the Attorney General cannot predicate an investigation upon Section 63(12).

New York Executive Law § 63(12) empowers the State Attorney General to apply to the Supreme Court of the State of New York for an order enjoining the continuance of business practices amounting to repeated fraudulent or illegal acts. It is only in connection with an application to the Supreme Court for an order to cease those practices that the statute empowers the Attorney General to take proofs and issue subpoenas, all then subject to the Rules of Civil Practice and not his unilateral whim by using office subpoenas. Section 63(12) reads in relevant part:

> Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the Attorney General may apply in the name of the people of the state of New York, to the supreme court of the state of New York on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts,
> ....

* * *

> In connection with any such application, the Attorney General is
> authorized to take proof and make a determination of the relevant facts
> and to issue subpoenas in accordance with the civil practice law and
> rules.

Here, there is no application to the Supreme Court of the State of New York for such an injunctive order. Although purporting to rely upon court supervised subpoenas provided for in § 63(12), in fact the State Attorney General has acted to evade the supervision of a court and the requirements of the civil practice law by issuing office subpoenas in lieu of applying to the Supreme Court for an Order under § 63(12).

Office subpoenas used to be a common place investigative tool of United States Attorneys seeking to act without judicial supervision. The United States Department of Justice withdrew authorization to use office subpoenas as a Post-Watergate reform designed to curb abuses of over-zealous prosecutors. Thus, this Honorable Court may not be familiar with office subpoenas or the law surrounding them. To that subject Respondents now turn.

## III.  OFFICE SUBPOENAS

The courts of the State of New York have long been sensitive to the abuses that can occur by the State Attorney General issuing a non-judicial office subpoena precisely because office subpoenas *duces tecum* and *ad testificandom* yield documents and testimony within the confines of the Attorney General's office that are not generally subject to any post issuance review. Thus, even though the office subpoena is void and voidable unless the Attorney General makes a preliminary showing to a court that the matter under investigation is within his jurisdiction and the scope of the subpoenas is reasonably related to the exercise of that jurisdiction, *Sussman v. New York State Organized Crime Task Force*, 39 N.Y.2d 227, 347 N.E.2d 638, 641, 383 N.Y.S.2d 276 (Ct. of App. 1976), there is no impartial review of the existence of subject matter jurisdiction or the relationship of the subpoena to

the exercise of that jurisdiction absent court review. Such review only occurs if the subpoenaed party knows that it can and does challenge the subpoenas. In this regard, unlike an IRS summons or administrative subpoena, the Attorney General does not advise those to whom it issues office subpoenas that the subpoenas are void and are not self executing, and that they have the right to contest the subpoena before a court.

Thus, as *Sussman* held, it is entirely understandable that the Attorney-General should be required to make a preliminary showing that the purpose of his investigation is within his statutory authority and that the documents and testimony sought are reasonably related to that investigation. *Sussman*, 347 N.E.2d at 641. *Accord Gardner v. Lefkowitz*, 97 Misc.2d 806, 810, 412 N.Y.S.2d 740 (N.Y. Co. Sup. 1978)("it is still the general rule that, as a precondition for the issuance of an office subpoena by the Attorney General, under the investigative authority granted to him by statute, there must exist a subject matter jurisdiction on which the issuance can rest," and "the Attorney General may exercise discretion in the use of his investigative authority only in those areas where he has such authority prescribed by statute, and then only within bounds circumscribed by a reasonable relationship between that which is subpoenaed and its bearing the subject matter under investigation and the public benefit sought to be achieved.").

In affirming the lower court's determination of the invalidity of the Deputy Attorney General's subpoenas, the *Sussman* Court noted that challenges to the Attorney General's office subpoenas may be made by <u>either</u> a motion to quash "or in resisting a proceeding under CPLR 2308(sub. (b)) to compel compliance with the subpoena." *Sussman*, 347 N.E.2d at 642.\[2]

The significant distinctions between a grand jury subpoena and an office subpoena were set out by the Court of Appeals in *Virag v. Hynes*, 54 N.Y.2d 437, 430 N.E.2d 1249, 446 N.Y.S.2d 196 (Ct. of

---

[2]    *Sussman* disposes of the State Attorney General's contention that Respondents waived their right to contest the subpoenas by failing to file a Motion to Quash.

App. 1981). Reasoning that an office subpoena is executed and complied with in the absence of any judicial supervision, and the party served with an office subpoena lacks the right to request to be taken before a judge for prompt resolution of disputes concerning scope and propriety of the office subpoena because it is not court process, *Virag* noted that no office subpoena may be enforced by a court unless or until the Attorney General comes forward with a factual basis "establishing the relevancy of the items sought to the subject matter of the investigation" prior to any order to compel or comply. *Virag*, 430 N.E.2d at 1251. *Accord Compdon v. Inter-religious Foundation for Community Organization, Inc.*, 18 Misc.3d 874, 850 N.Y.S.2d 841 (N.Y. Co. Sup. 2008)(office subpoenas enforceable if government can establish its authority for engaging in an investigation and issuing the subpoenas, reasonable relationship of subpoenaed evidence sought to subject matter of inquiry, and authentic factual basis to warrant investigation); *Harlem Teens for Self-Help v. Department of Investigation of City of New York*, 122 Misc.2d 1066, 472 N.Y.S.2d 967 (N.Y. Co. Sup. 1984).

Unlike the subpoena of a grand jury, an office subpoena enjoys no presumption of validity. *Virag*, 54 N.Y.2d at 444; *In re Nassau County Grand Jury Subpoena Duces Tecum*, 4 N.Y. 3665, 830 N.E.2d 1118, 1126, 797 N.Y.S.2d 790 (Court of Appeals 2005); *New York State Commission on Government Integrity v. Congel*, 142 Misc.2d 9, 14, 19, 535 N.Y.S.2d 880 (N.Y. Co. Sup. 1988)(noting requisite showing of subject matter jurisdiction and that Constitutional requirements under the 4th and 5th Amendments increase as purpose of obtaining records is not preliminary).\\[3]

As is set forth herein, the office subpoenas issued by the Attorney General under New York Executive Law 63(12) are unenforceable due to preemption, for want of subject matter jurisdiction,

---

[3]/    As is set forth in Respondents' Answer to the State Attorney General's Motion, and as is evident from the State Attorney General's Affidavit and Exhibit "D" hereto, the Attorney General, albeit mistakenly, has already "found" that Respondents owe $780,000 in additional unpaid wages to H-2B employees from January 1, 2006 through May 30, 2008. That these "findings" are baseless and, indeed laughable were the Attorney General not so serious, obscures the central fact that, absurd or not, the State Attorney General has focused squarely upon Respondents and "found" serious and substantial fraudulent acts. Thus, no matter how wrong is the Attorney General, the findings establish that this matter is no preliminary, general investigation but, rather, has focused squarely on Respondents and already concluded that pervasive wrongdoing has occurred. Thus, the Respondents' rights to counsel have attached.

lack of standing, and for failure to meet preconditions without which the claims he purports to investigate may not be pursued. Indeed, the Attorney General lacks the lawful right or power to investigate or prosecute Dreamland for any of the stated predicates upon which his subpoenas, investigation and prosecution are based, and which the Attorney General has represented both orally and in writing have already resulted in found violations.

## IV.   THE STATUTES ON WHICH THE ATTORNEY GENERAL BASES HIS PROSECUTION OF RESPONDENTS

According to each of the office subpoenas issued by the State Attorney General [Exhibits "B" and "C" hereto], his letter of June 27 [Exhibit "D" hereto] and his Affidavit, the subject matter of the investigation and the violations already found have been identified as the alleged failures of Dreamland to pay to its alien seasonal H-2B workers the wages the State AG deems are required by Dreamland's Alien Employment Certification to the United States Department of Labor and United States Department of Homeland Security, and the contract Dreamland enters into with the federal authorities regarding the H-2B employees. The State Attorney General purports to base his authority to investigate and prosecute such distinctly federal claims upon the following statutes:

1.   New York Executive Law § 63(12);
2.   Article 6 and Article 19 of the New York Labor Law;
3.   12 N.Y.C.R.R. Part 142;
4.   The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;
5.   Title VII, 42 U.S.C. §§ 2000e *et seq.*;
6.   42 U.S.C. § 1981;
7.   The New York State Human Rights Law, Executive Law §§ 290 *et seq.*;
8.   The New York City Human Rights Law, New York Administrative Code § 8-101 *et. seq.*; and
9.   10 N.Y.C.R.R. Subpart 7-3.

The following analysis discloses beyond per adventure that the New York State Attorney General lacks the right and power to investigate, much less issue office subpoenas to Dreamland or any of the other Respondents.

(a)    <u>New York Executive Law § 63(12)</u>

Respondent relies upon the discussion at II and III, *supra*.

(b)    <u>Fair Labor Standards Act</u>

As is set forth at length in Respondents' Memorandum of Law in Support of its Motion for Preliminary and Permanent Injunctive Relief [attached hereto as Exhibit "I"], the determination of wages due and owing to H-2B alien, seasonal workers employed by Dreamland pursuant to its federal Alien Employment Certification and contract with the United States Department of Labor is within the sole and exclusive jurisdiction of the United States Departments of Labor and Homeland Security, with issues of employer mendacity or perfidy on federal Forms ETA-750 such as those posed by the State Attorney General channeled directly to the administrative mechanisms set forth within the federal statutes and regulations, and with access to courts thereafter, with fraudulent acts by employers constituting felonies within the investigative and prosecutorial jurisdiction of the United States Department of Justice.

In this regard, even the Attorney General himself agrees, reciting that employer's representations in the federal Form ETA-750 submitted by Dreamland to the United States Departments of Labor and Homeland Security are made subject to the federal felony false statement crimes code statute, 18 U.S.C. § 1001, and the federal felony perjury crimes code statute, 18 U.S.C. § 1746. *See* AG Affidavit at ¶ 21.

The subject matter of the State Attorney General's claim is preempted, and the State Attorney General has no lawful role in connection with the investigation or pursuit of Dreamland for either wages, hours and overtime paid to H-2B employees or repeated fraud in employer Alien Employment Certification on the federal ETA-750 forms. *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006); *Shah v. Wilco Systems, Inc.*, 125 F. Supp.2d 641 (S.D.N.Y. 2000); *Alden*

*Management Services, Inc. v. Chao*, 529 F. Supp.2d 882 (N.D. Ill. 2007); *see Grochowski v. Phoenix Const.*, 318 F.2d 80 (2d Cir. 2003); *see* Exhibit "I", at § II(C). Lacking subject matter jurisdiction due to preemption and exclusive federal jurisdiction, the office subpoenas at issue are void and voidable so that the Attorney General's Petition is meritless and should be denied.

    (c)    **42 U.S.C. § 1981**

42 U.S.C. § 1981, headed "Equal Rights Under the Law," is a post-civil war civil rights statute enacted to ensure that blacks would receive "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." The State Attorney General purports to carry the cudgel of the Mexican H-2B workers who are the subject of Dreamland's Alien Employment Certifications and contracts with the United States Departments of Labor and Homeland Security. [AG Affidavit at ¶ 5, referring to the H-2B employees as "foreign nationals from Mexico hired on a seasonal basis as employees under the H-2B visa program."].

As set forth, *supra*, any such inquiry is exclusively that of the United States Department of Labor and the United States Department of Homeland Security based on preemption and exclusive federal jurisdiction. Assuming that the law were otherwise, suffice it to say that Mexicans are not persons within 42 U.S.C. § 1981. To the contrary, the statute excludes discrimination based upon national origin. *See, e.g., Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp.2d 746 (S.D. Tex. 2007)(Mexican immigrant employees cannot bring Section 1981 claim against employer based on national origin discrimination); *Santos v. Costco Wholesale, Inc.*, 271 F. Supp.2d 565 (S.D.N.Y. 2003)(Section 1981 does not prohibit discrimination on basis of national origin); *Chimarev v. TD Waterhouse Investor Services, Inc.*, 280 F. Supp.2d 208 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 259 (2d Cir. 2004 WL 1013320) (Section 1981 does not prohibit discrimination based on national origin); *Ganthier v. North Shore - Long Island Jewish Health System, Inc.*, 345 F. Supp.2d 271 (E.D.N.Y. 2004)(Section 1981 does not prohibit discrimination based on national origin); *Schilling v.*

*Rutherford Pediatrics, P.A.*, 346 F. Supp.2d 828 (W.D.N.C. 2004)(Section 1981 does not provide protection for individuals discriminated against on the basis of national origin); *Tisharodi v. Valley Baptist Medical Center*, 393 F. Supp.2d 561 (S.D. Tex. 2005)(Plaintiff cannot establish Section 1981 claim based on national origin discrimination); *Jadali v. Alamance Regional Medical Center*, 399 F. Supp.2d 675 (M.D.N.C. 2005), *aff'd*, 167 Fed. Appx. 961 (4th Cir. 2006 WL 392065) (country of origin is not basis for discrimination covered by Section 1981); *Philips v. Pitt County Memorial Hosp.*, 503 F. Supp.2d 776 (E.D.N.C. 2007)(discrimination based on national origin is not cognizable under Section 1981); *Von Zuckerstein v. Argonne Nat. Laboratory*, 984 F.2d 1467 (7th Cir. 1993), *cert. denied*, 510 U.S. 959 (1994)(discrimination as foreign born is not cognizable under Section 1981).

The State Attorney General is, therefore, purporting to investigate a matter that is not cognizable under 42 U.S.C. § 1981. As a result, neither his investigation nor any prosecution based upon the "fruits" of that investigation may ensue based upon any alleged violation of §1981. Therefore, his office subpoenas are extra legal, requiring that his Petition to compel be denied.

**(d)   42 U.S.C. § 2000e, *et. seq.*, Title VII**

The State Attorney General purports to be investigating the wages, hours and terms and conditions of employment of Dreamland's H-2B employees under Title VII of the Civil Rights Act as well. In conducting an investigation and prosecution in support of Title VII claims, the State Attorney General has and continues to violate the law, in that he lacks the right or power to use office subpoenas to gather documents or testimony in connection with any Title VII investigation and lacks the right and power to avoid and evade the entities created by statute with the specific power and duty to investigate such claims.

As a precondition to every Title VII discrimination claim, a plaintiff must first exhaust his/her administrative remedies by "filing a timely charge with the EEOC or with "a state or local agency with authority to grant or seek relief from such practice." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-

83 (2d Cir. 2001), *quoting* 42 U.S.C. § 2000e-5(e). Indeed, exhaustion of remedies is a precondition to bringing a Title VII suit. Upon the completion of the investigation, the EEOC (or the New York State Division of Human Rights, the state deferral agency) may file suit themselves or issue a Right to Sue letters to a plaintiff. Such Right to Sue letter are prerequisites to the filing of Title VII suit in court. *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982). Exhaustion of administrative remedies through the EEOC or state deferral agency is an essential component of the Title VII statutory scheme and, as such, is a precondition to suit. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).

The filing with the EEOC or state deferral agency is more than a matter of procedure. Indeed, it may well define substantive rights. For example, prior to filing a Title VII claim, a plaintiff must institute administrative proceedings within 300 days from the act complained of. 42 U.S.C. § 2000e-5(e); *National Railway Passenger Corp. v. Morgan*, 536 U.S. 101, 108-09 (2002). The statutory filing periods are akin to statutes of limitation. *Van Zant v. Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996), and as such "a failure to timely file a charge acts to bar a plaintiff's action." *Butts v. New York City Dep't of Housing*, 2007 U.S. Dist. LEXIS 6534 at *20 (S.D.N.Y. Jan. 29, 2007).

The New York State Attorney General is not the EEOC (or New York State Division of Human Rights). Neither Dreamland nor anyone else has received notification of the initiation of an investigation by either the EEOC or the New York State Division of Human Rights. No plaintiff has filed a verified complaint with the EEOC or the New York State Division of Human Rights.

Although the EEOC or the State Division of Human Rights may have the power to request documents or testimony after a verified complaint has been filed and in the course of their investigations, the New York State Attorney General does not nor can he investigate prior to the statutorily required filing by a plaintiff of a verified complaint with the agency. The State Attorney General is not authorized or empowered to act in the stead of the EEOC or State Division; moreover,

he is not authorized or empowered to gather information in connection with matters within their respective jurisdictions, much less before any verified complaint is filed.

In addition, the subject matter of the investigation and ostensibly violations already "found" as sworn to by the State Attorney General is preempted insofar as the substance is the wages and other terms and conditions of employment by Dreamland of the H-2B alien, seasonal workers hired by Dreamland pursuant to its Alien Employment Certification to the United States Departments of Labor and Homeland Security. As set forth more fully in Dreamland's Memorandum of Law in Support of its Application for Preliminary and Permanent Injunctive Relief, such claims are committed to the exclusive jurisdiction of the United States Department of Labor, initiated by the filing of a complaint with the Wage and Hour Division of that Department, which reviews and investigates such complaints and then issues a determination. 8 U.S.C. § 1182(n)(2); 20 C.F.R. §§ 655.805, 655.815. If a complainant is dissatisfied, he/she may request a hearing with an administrative law judge who is required to issue a decision. 20 C.F.R. §§ 655.815, 655.820, 655.840. Thereafter, either party may petition for review by the Secretary of Labor. 20 C.F.R. §§. 655.840, 655.845. Finally, the Secretary's decision may be appealed to the appropriate United States District Court. 20 C.F.R. § 655.850.

This Court has already concluded that this extensive administrative enforcement mechanism limits the person ostensibly aggrieved to the administrative agencies in charge of the processes, and precludes any other challenge, even under Title VII. *Shah v. Wilco Systems, Inc.*, 126 F. Supp.2d 641, 647-49 (S.D.N.Y. 2000). *See* Exhibit "I", at II(A)-(C). Having no rights or power to investigate Title VII, § 63(12) is of no solace to the Attorney General. His office subpoenas are extra legal, so that his Petition must be denied.

(e)    **New York State Human Rights Law**

The State Attorney General purports to peg his office subpoenas upon his investigation and alleged found violations of the New York State Human Rights Law, Executive Law §§ 290 *et. seq.* As

set forth, *supra*, in the discussion under Title VII, the New York State Division of Human Rights is the state deferral agency which has the right and power to investigate complaints of discrimination in connection with terms and conditions of employment. Under New York Executive Law § 297, any person claiming to be aggrieved by an unlawful discriminatory practice may make or sign with the Division a verified complaint which the Division may file. Only after the verified complaint is filed may the Attorney General take proofs, issue subpoenas, or administer oaths in furtherance of the complaint, which must be promptly served on a respondent after filing. Section 297 (1), (2).

No such verified complaint has been filed. The Attorney General may not use office subpoenas to conduct a pre-complaint investigation which may only occur after a verified complaint is filed with the New York State Division of Human Rights. The Attorney General may not circumvent the statutorily created procedures governing the filing of complaints of discrimination before the New York State Division of Human Rights. Thus, its office subpoenas and alleged found violations are beyond the law.

Moreover, as set forth *supra* in the discussions under Title VII and the FLSA, any claim of discrimination regarding the hiring, firing, or discrimination against the H-2B seasonal workers "in compensation or in terms, conditions, or privileges of employment" -- the unlawful discriminatory practices under New York Law § 296(1)(a) -- is preempted by virtue of the Immigration and Nationalization Act.

Thus, once again, the Attorney General lacks the lawful power or jurisdiction to investigate that which he claims is the subject matter of his investigation. As a result, his offices subpoenas are beyond the law and cannot be enforced.

    (f)    <u>10 N.Y.C.R.R. Subpart 7-3</u>

The Attorney General swears with a straight face that he has authority for his office subpoenas and investigation under the State Sanitary Code, and particularly the Part governing temporary

residences, mass gatherings and children's camps. Pursuant to Subpart 7-3 thereunder, headed "Camp

Grounds," the State Attorney General purports to predicate his investigation on violations of 10

N.Y.C.R.R. § 7-3, including that section headed "Showers." *See* AG Affidavit at ¶ 9. That regulation

reads *in toto*:

> (a) if showers are provided, they shall be constructed of cleanable
> materials and maintained in a sanitary condition and good repair and
> provided with hot and cold running water. (b) Hot water shall mean
> water heated or tempered to provide a temperature of 90° to 110°
> Farenheit at the point of use."

§ 7-3.16.

It is difficult to comprehend how the State Sanitary Code governing Camp Grounds applies to

Dreamland.  Assuming, *arguendo*, that it does, it is difficult to conceive that the Attorney General

represents the State Department of Health in connection with investigations into shower head

temperature.  It is more difficult to contend, as does the State Attorney General, that he has the power

or right to issue office subpoenas in order to investigate alleged violations of temperature requirements

for hot water for showers, as a persistently fraudulent and illegal business practice.  In this regard, the

State Attorney General purports to base such authority on New York Executive Law § 63(12).  As set

forth at II, *supra*, that statute purports to authorize the Attorney General to apply to the Courts of New

York for orders to enjoin the continuance of repeated fraudulent and illegal business activities, and take

proofs and make determinations of relevant facts and issue subpoenas in accordance with civil practice

law and rules in connection with any application.

There is a significant disconnect between the state statutory empowerment of the State Attorney

General to apply to the Supreme Court for an order enjoining repeated fraudulent or illegal acts or

persistent fraud or illegality in the carrying on of a business on the one hand, and the shower head hot

water temperature under Camp Ground regulations of the Department of Health on the other, even if

the Attorney General did have the power or duty to investigate shower head temperature at camp grounds.\[4] The office subpoenas are unenforceable.

(g)    **Articles 6 and 19 of the New York Labor Law and 12 N.Y.C.R.R. Part 142**

The Attorney General pegs its office subpoenas and power to investigate persistent and repeated fraudulent conduct upon violations of the New York State Wage and Hour laws that it contends it has already found. The Attorney General is wrong.

The federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., sets forth minimum wage, hour and overtime strictures generally governing the relationship between employers and employees. 29 U.S.C. §§ 206, 207. They do not govern Dreamland. Certain industries and businesses have been exempted from the wages, hours and overtime provisions of the Fair Labor Standards Act including Dreamland. 29 U.S.C. § 213(a), headed "Minimum Wage and Maximum Hour Requirements," exempts amusement and/or recreational establishments from minimum wage and maximum hour requirements. The statute reads in relevant part:

> The provisions of Section 206 [wages] ... and Section 207 [hours] of this Title shall not apply with respect to -- (3) any employee employed by an establishment which is an amusement or recreational establishment ... if (A) it does not operate for more than 7 months in any Calendar Year, or (B) during the preceding Calendar Year, its average receipts for any six months of such year were not more than 33 1/3 percentum of its average receipts for the other six months of such year....

For each preceding calendar year, Dreamland's average receipts for any six months of such year are not more than 1/3 of its average receipts for the other six months. Thus, under 29 U.S.C. § 213(a)(3)(B), Dreamland is exempt from the minimum wage, maximum hour and overtime requirements of the FLSA for all of its employees, including its 20 H-2B employees.

---

[4]/    The State AG represented that its investigation had already found that Dreamland had committed violations of § 7-3.15 reciting that campground toilet facilities should be maintained in a sanitary condition, even though Dreamland leases port-a-potties at each of its carnival stops from third parties. The Attorney General's affidavit still may base its investigation upon camp ground waste system regulations. *See* AG Affidavit at ¶ 9.

As is set forth in Dreamland's Memorandum of Law in Support of its Motion for Preliminary and Permanent Injunctive Relief [Exhibit "I" hereto], the wages paid by Dreamland to the H-2B employees are committed solely and exclusively to the jurisdiction of the United States Department of Labor, so that even the FLSA does not apply. Moreover, assuming, *arguendo*, that the FLSA did apply, its application to the pay due to H-2B alien, seasonal employees is in and of itself a federal question committed to the jurisdiction of the United States Departments of Labor and Homeland Security, with the entire field being preempted, thereby depriving the Attorney General of any power or right to act. *See* § IV(b), *supra*.

Furthermore, were there not preemption on these two grounds, the fact remains that the premise upon which the Attorney General purports to base his persistent fraud and illegality investigation and prosecution is directly contrary to the law of New York itself precisely because New York has adopted and incorporated the FLSA exemption for amusement enterprises, thereby freeing Dreamland from both state and federal strictures regarding wages and hours. In this regard, the state Minimum Wage Order for Miscellaneous Industries and Occupations, Part 142 of Title 12 of the official compilation of Codes, Rules and Regulations, reads at section 142-2 and 143-2 as follows:

> An employer shall pay an employee for overtime at a wage rate of 1/2 times the employee's regular rate in the manner and method provided in and subject to the exemptions of section 7 and 13 of 29 U.S.C. 201 et seq. ... In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, ... (emphasis supplied)

Thus, New York State has adopted in its own Code the self-same exemption from the wages and hours provisions of the state laws set forth in Articles 6 and 19. Even absent preemption, there is no tenable claim that any H-2B employee could theoretically possess under state law because Dreamland is an exempt employer.\[5]

---

[5]/    Moreover, the sole basis articulated by the State Attorney General to support his supplemental office subpoenas for records and testimony from January 1, 2003 through December 31, 2005 is Article 6 of the New York Labor Law. *See*

Thus, once again, the Attorney General lacks subject matter jurisdiction regarding the wages, hours and overtime payments due to Dreamland's H-2B employees. As a result, its office subpoenas are illegal and cannot be enforced, requiring that the Attorney General's Petition to compel enforcement be denied.

**(h)**    **New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.**

The State Attorney General purports to predicate his investigation into Dreamland for persistent and on-going fraudulent conduct upon violations of the New York City Human Rights Law, Section 8-101 et seq. of the New York Administrative Code. Section 8-107 does set forth unlawful discriminatory practices, and extends to discrimination in compensation or in terms, conditions, or privileges of employment based upon enumerated suspect classes. § 8-107(a). Under the New York City Code, a person aggrieved files a verified complaint with the New York City Commission on Human Rights, upon which the Commission commences proceedings, completes a thorough investigation, and makes a final disposition. § 8-109(a), (g).\[6] The complainant may request dismissal of the complaint if 180 days have lapsed from the filing of the complaint with the Commission. The Commission determines whether probable cause exists to believe that the respondent has engaged or is engaging in the unlawful discriminatory practice. § 8-113(a), (d). The Commission is then authorized to issue subpoenas *duce tecum* and *ad testificandum* and go to court to enforce compliance. § 8-114(a), § 8-118. On the Commission determining that probable cause exists, then the complaint is referred to an administrative law judge for a hearing. § 8-116, § 8-119.

---

Attorney General's June 27, 2008 letter, attached hereto as Exhibit "D". Because Article 6 does not attach, no jurisdiction exists to support the supplemental office subpoenas.

[6]    The jurisdiction of the Commission extends only one year back from the date of the filing of the verified complaint. §8-109(e).

The Attorney General plays no role whatsoever in these proceedings. He lacks the power, duty or authority to supersede the City Commission on Human Rights; moreover, no proceedings have been initiated before it. Furthermore, he lacks the power, duty or authority to issue office subpoenas to develop information that could lead to the filing of a verified complaint before the City Commission.

Thus, the Attorney General lacks the power to issue an office subpoena ostensibly predicated upon violations of the New York City Human Rights Law which he deems amounts to persistent and repeated fraudulent conduct, even were the substance of such investigation and prosecution not preempted by the all encompassing federal statutory and regulatory scheme governing employers and H-2B employees. As a result, the Attorney General's office subpoenas are extra legal, and cannot be enforced, compelling the denial of the Attorney General's Petition.

## V.    CONCLUSION

As is set forth herein, none of the sworn facts by the State Attorney General make out any matters that lie within the jurisdiction granted to him by statute, or which are not denied to him due to federal preemption and exclusive federal jurisdiction. As a result, he lacks the right or power to use § 63(12) to investigate Dreamland or any of the other Respondents for any of the matters he has sworn are the subject of his vendetta, or the alleged violations he believes he has found thus far. Moreover, he cannot use office subpoenas to secure documents and testimony from Respondents, either as a perversion of 63(12) or otherwise, because the subject matter he swears is the substance of his investigation and found violations are beyond his jurisdiction.

Averring repeated fraudulent and illegal acts in connection with shower head temperatures at Camp Grounds in a vane and misguided attempt to bring his investigation into § 63(12) is a paradigmatic example of the absurd overreaching of the State Attorney General. Yet, the other

averments of repeated fraudulent and illegal acts are equally baseless, although perhaps not as facially laughable.\[7]

There are many fraudulent and illegal acts within the Attorney General's jurisdiction. Respondents submit he should investigate those acts, leave issues of shower head temperature at camp grounds to the Health Department, and allow the state and federal agencies possessed of exclusive jurisdiction by statute and code to redress the Attorney General's perceived evil treatment by Dreamland of its H-2B workers regarding wage, hours and terms and conditions of employment to do their jobs.

Regardless, the office subpoenas epitomize overreaching and impropriety because the Attorney General lacks both the power to act and subject matter jurisdiction over the matters he swears are under investigation.

---

[7]    On the other hand, perhaps the Attorney General's contention that § 63(12) empowers him to investigate whether port-a-potties leased by Dreamland at each stop of the mobile carnival meet state campground sanitary codes, and whether Dreamland discriminates against its H-2B employees because it forces them to man their work station at carnival sites during inclement weather or because it allows all employees who choose to do so to reside at no charge in mobile bunkhouses that may during the seven month season occasionally have bed bugs despite routine extermination are equally facially laughable.

Thus, Respondents respectfully submit that the Attorney General's Petition for an Order to

Enforce Compliance with his office subpoenas should be denied.

Dated: New York, New York
      August 13, 2008

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

Edward Finkelstein, Esq. [EF-2805]
1350 Broadway
New York, NY  10018
212-216-8000/FAX - 212-216-8801
*Local Counsel for Respondents*

Bruce L. Thall, Esq.
Heather M. Eichenbaum, Esq.
David B. Picker, Esq. [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA  19103
214-241-8888/FAX - 215-241-8844
*Counsel for Respondents*

# EXHIBIT "A"

# SPECTOR GADON & ROSEN, P.C.

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
350 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 8, 2008

Via Email @oag.state.ny.us
Andrew Elmore, Esquire
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

     Re:    Response to Your Settlement Proposal and
              Counter Proposal of Dreamland

Dear Andrew:

     The enclosed constitutes the substantive response of our clients to the settlement offer promulgated by the Office of the Attorney General of the State of New York, together with an explanation of the predicates on which it is founded.

     Dreamland itself conducts its mobile carnival business, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts, along the East Coast of the United States, in 2008 operating in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and New York State.  Your Office purports to have the power to challenge my clients' performance under the totality of Dreamland's contract with the United States Department of Labor, even though only a small percentage of its business is conducted at locations in New York.

     We have previously provided to you the authorities disclosing that our clients are an amusement enterprise, so that they are exempt from the wages and hours and overtime strictures of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and specifically section 13 thereunder, and the complementing federal regulations, codified at 29 C.F.R. 779.385.  Similarly, we have previously provided to you 12 New York Codes Rules and Regulations 142-2.2 (and 142-3.2), which include the FLSA exemption of our clients from the wages and hours strictures, through adopting the exemptions set forth in the Fair Labor Standards Act, including the exemption for amusement enterprises.

508078

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -2-

As a result, no employee of our clients has any claim of entitlement to wages, hours or overtime work standards as set forth in federal or New York Code, regardless of whether the worker is a natural born citizen or an alien.[1]

At our meeting, you disclosed that the New York Office of the Attorney General is not proceeding under wages, hours or overtime as set forth in the FLSA or New York Code. Rather, your theory is based upon a contract between our clients and the United States Department of Labor. In this regard, you assert that our clients have engaged in repeated or persistent fraud or illegality in the conducting of its carnival business, and specifically with regard to federal Department of Labor forms ETA-750 (Applications for Alien Employment Certification). You contend that in signing those United States Department of Labor form contracts for each of three years, 2006, 2007, and 2008, Dreamland alone,[2] and not our other clients, contracted under penalty of perjury to the United States to pay United States Department of Labor prevailing wages to non-immigrant, H-2B seasonal employees obtained by others for our clients for their mobile carnival; further, you contend that our clients breached the contracts, and that the breach of the contract with the United States Department of Labor gives the New York Office of the Attorney General jurisdiction over what you deem to be the fraudulent misrepresentations, pursuant to New York Executive Law § 63(12), even though the contract was exclusively entered into with and approved by the United States Department of Labor.

The federal forms ETA-750 contain columns for estimated hours per week, estimated overtime hours, estimated weekly wages, and estimated weekly overtime at boxes 10 and 12. Only estimates can be made on signing the form, because on application to the United States Department of Labor, the final schedule of carnival locations and dates, and hours consumed on each date have not been determined. The estimates are not a guarantee of the number of hours that each H-2B worker will be asked to perform during each week.

Were there any questions regarding these facts or their interpretation, the United States Department of Labor is the sole entity which can answer them.

It is difficult to conceive how anyone could view the affixation of a signature by Dreamland to constitute a guarantee of specified hours of work per week. Moreover, precisely because the FLSA and New York Analog exempt American citizens who work for Dreamland

---

[1]    You also averred that my clients violated Civil Rights statutes because, inter alia, the porto-johns they lease for use at carnival sites are not sufficiently clean and because workers, including H-2B aliens, are forced to work in inclement weather. The short answers are sue the lessors and buy yourself a rain slicker at Family Dollar. The power of your Office to bring Civil Rights claims is not otherwise addressed in this response.

[2]    The United States Department of Labor forms ETA-750 were submitted by Dreamland Amusements, only, and not by Toy Circus or Crossroads. In fact, none of the latter have any H-2B non-agricultural, seasonal employees.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -3-
_____

from wages and hours strictures, your construction of the United States Department of Labor
forms ETA-750 would create the anomalous situation of alien workers being guaranteed more
money for displacing American workers than the American workers would receive for
performing those services. Such a conundrum ignores and undercuts the express policy of the
United States in creating its H-2B programs in the first instance. See, e.g., 8 U.S.C. §
1101(a)(4)(ii)(B).

Putting facts and logic aside however, your Office lacks the right or power to
claim jurisdiction over or standing to pursue the averments that our clients have engaged in
repeated or persistent fraud or illegality through your contention that they failed to pay prevailing
wages per contract wit the United States Department of Labor to the H-2B seasonal employees,
as set forth below.[3]

## PREEMPTION AND THE SUPREMACY CLAUSE

Resisting the temptation to refer you to treatises on Federal Preemption and the
Supremacy Clause, suffice it to say for purposes of your investigation that the powers of
Congress over Commerce and Immigration, as set forth in Article I, Section 8, Clauses 3 and 4 of
the Constitution, are exclusive and paramount, and hold sway over states, as required by Article
VI, Clause 2, known as the Supremacy Clause. The paramount and exclusive jurisdiction is even
more pointed following the aftermath of the plane hijackings that occurred on September 11,
2001, and the resulting plethora of federal enactments governing aliens and the conduct of their
entry into the United States by the federal government as part of its comprehensive immigration
program.

Every aspect of immigration, including that pertaining to seasonal workers, is
specifically set forth at length in phone book sized volumes within the United States Code and
the Code of Federal Regulation.

### Federal Statutes and Federal Regulations

8 U.S.C. § 1101(a)(H)(ii)(b) sets out Congress's power to enact laws governing
aliens residing in a foreign country which they have no intention of abandoning who come to the
United States "to perform temporary service or labor if unemployed persons capable of
performing such service or labor cannot be found in this country." Exercising that power, the
Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of

_____

[3] Whether the United States Department of Justice could prosecute such claims as false statements under 18
U.S.C. § 1001, or as mail fraud under 18 U.S.C. § 1341, or under RICO pursuant to 18 U.S.C. § 1961 is unclear in
view of primacy of the regulatory scheme involving the Departments of Homeland Security, Labor, Agriculture and
Justice. E.g., *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). What is clear is that the New York
Office of Attorney General has no such power.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -4-

the Department of Labor have been exclusively vested with the "administration and enforcement of the chapter and all other laws relating to the immigration and naturalization of aliens," as set forth therein. See 8 U.S.C. § 1102(a). The powers so vested are virtually co-extensive with the power to regulate immigration. See, e.g., 8 U.S.C. § 1103, including (g) thereunder.

A sub-set of that broad grant of power is found within 8 U.S.C. § 1184, headed "Admission of Non-Immigrants." Under that statute, subsection (a), hinges admission of any alien as a non-immigrant "for such time and other such conditions" as the Executive Branch may prescribe. Within that Section are provisions imposing fraud prevention and detection fees upon employers filing false forms ETA-750 and other petitions, 8 U.S.C. § 1184(c)(13)(A), and (B). The statute also empowers the Secretary of the Department of Homeland Security to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits a false or fraudulent application in order to obtain, inter alia, H-2B employees. 8 U.S.C. § 1184(c)(14)(A).

The Code of Federal Regulations contains more than 30 pages addressing only seasonal alien temporary workers. 8 C.F.R. § 214.2(h)(1), et seq., extending for 30 pages within the Code of Federal Regulations, sets forth the procedure governing and representations by contract with the United States Department of Labor binding upon petitioner seeking H-2B workers, including wages and other terms and conditions of employment. The Secretary of Labor wields both the jurisdiction and power to address instances in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Under § 214.2(h)(11)(B), the Director may revoke a petition at any time, even after its expiration, based upon the petitioner's statements of facts contained in the position being "not true and correct," or that petitioner had "violated terms and conditions of the approved petition" or other standards set forth therein.

No wonder there is preemption. The statute itself provides for preemption. Indeed, 8 U.S.C. § 1324(a)(h)(2) reads in its entirety:

> The provisions of the section preempt any state or local law
> imposing civil or criminal sanctions (other than through licensing
> and similar laws) upon those who employ, or recruit or refer for a
> fee for employment, unauthorized aliens.

Even were there no statutory preemption, nonetheless the law would compel it.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -5-

---

## CASE LAW

Not surprisingly, the case law interpreting the scope and breath of the federal statutory and regulatory components governing immigration and including seasonal workers has denied to all others the jurisdictional power or standing to raise claims otherwise within the four corners of the Congressional enactments and Federal Code provisions. Indeed, in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 147-48 (2002), the Supreme Court denied to a federal entity – the National Labor Relations Board – the authority to construe its enabling legislation to include giving back pay awards to aliens unauthorized to work in view of the overarching primacy of Title 8 of the United States Code.

Thus, it is not surprising that every Court which has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement. See, e.g., *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941) (striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilary regulations."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); accord *Gade v. Nat'l Solid Waste Management Assoc.*, 505 U.S. 88, 108 (1992); *Perry v. Thomas*, 482 U.S. 483 (1987); *DeCanas v. Bico*, 424 U.S. 351, 355 (1976); *Spina v. Department of Homeland Sec.*, 470 F.3d 116, 127-28 (2nd Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, *inter alia*, "the immigration laws contain no provision indicating that they are to be interpreted in accordance with state law."); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893-96 (10th Cir. 1972); *Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F.Supp.2d 1036 (D. Ariz. 2008); *Lozano v. City of Hazleton*, 496 F.Supp.2d 477, 517-528 (M.D.Pa. 2007); *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 648-49 (S.D.N.Y. 2000); *United States v. Richard Dattner Architects*, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); *Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146 (D.Colo. 1971); *Younus v. Shabat*, 336 F.Supp. 1137, 1140 (N.D.Ill. 1971).

And, without a private cause of action, there is no "parens patriae" jurisdiction permitting your Office to become involved in the matters you state are under investigation. The remedies are distinctly federal. See, e.g., *Castellanos- Contreras v. Decadur Hotels, LLC*, 488 F.Supp.2d 565 (E.D. La. 2007). Put another way, there is not a single case that holds that a state has the power or standing to pursue a person or entity for alleged false statements to the United States Department of Labor to obtain seasonal workers.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -6-

From the Supremacy Clause set forth in Article VI, Clause 2, the powers over commerce and immigration vested in Congress pursuant to Article I, Clause 8, and the authorities set forth, *supra*, it is painfully obvious that the New York Office of the Attorney General lacks any power with respect to the matter that it contends is under investigation. The substance and breadth of such investigation reside solely and exclusively within the federal government.

That being the case, it is our considered view that your proceeding with your investigation will do nothing other than force our clients to bear substantial legal costs and fees while resulting in an opinion holding that your Office lacks jurisdiction over the matter under investigation.

It is because of the costs and fees, however, that I am authorized to submit to you a formal response to your settlement proposal. I am authorized to represent that our clients are willing to enter into a consent decree, based on no admission of wrongdoing, that results in an order enforceable by you for breach, if such decree will close your investigation and, therefore, end the costs attendant to our clients' unwilling participation in these proceedings. In addition, our client will pay the sum of $35,000, in acknowledgement of the costs and expenses you have incurred in connection with your investigation, albeit one over which you lack jurisdiction.

I would propose that the consent agreement include a weekly wage rate for the periods of time within which our clients' mobile carnival is set up in New York. I would not presume to suggest what other reasonable conditions you deem important or appropriate; however, as I have advised you since the inception of our representation, our clients are more than willing to agree to any reasonable terms and conditions of a consent order.

Alternatively, we encourage you to submit the fruits of your investigation to the United States Department of Labor. That Department has the jurisdiction and standing to address whatever issue you deem important.

I look forward to your response.

Sincerely,

Bruce L. Thall

# EXHIBIT "B"

PEOPLE OF THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
LABOR AND CIVIL RIGHTS BUREAUS

IN THE MATTER OF THE INVESTIGATION OF
ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

OF

DREAMLAND AMUSEMENTS INC.; TOY CIRCUS,
INC.; CROSSROADS TRUCKING CORP.; ROBERT F.
DESTEFANO, JR.; KATHERYN L. DESTEFANO; and
any other owners and corporate officers of Dreamland
Amusements Inc., Toy Circus, Inc., and/or Crossroads
Trucking Corp.

SUBPOENA DUCES TECUM

TO:    ROBERT F. DESTEFANO, JR.
       KATHERYN L. DESTEFANO
       DREAMLAND AMUSEMENTS INC.
       TOY CIRCUS, INC.
       CROSSROADS TRUCKING CORP.
       2 Olympia Lane
       Stony Brook, NY 11790

**PLEASE TAKE NOTICE THAT YOU ARE REQUIRED** to produce certain items listed

below, on or before _June 5, 2008, at 5:00 p.m._, and on any adjourned dates thereof, and to appear

for an oral examination, under oath, which will be recorded by an official reporter, on _June 10, 2008_

_at 10:30 a.m._ and on any adjourned dates thereof, at the offices of the New York State Office of the

Attorney General, Civil Rights Bureau, 120 Broadway, 3rd Floor, New York, in an inquiry by

ANDREW M. CUOMO, Attorney General of the State of New York. This inquiry is to determine

whether an action or proceeding should be instituted against DREAMLAND AMUSEMENTS INC.,

1

2 Olympia Lane, Stony Brook, NY 11790, TOY CIRCUS, INC., 2 Olympia Lane, Stony Brook, NY 11790, CROSSROADS TRUCKING CORP., 2 Olympia Lane, Stony Brook, NY 11790, ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and any other owners or corporate officers of Dreamland Amusements Inc., Toy Circus, Inc., and/or Crossroads Trucking Corp. The action or proceeding may be brought pursuant to and for potential violations of New York Executive Law § 63(12); Article 6 (regarding payment of wages) and Article 19 (Minimum Wage Act) of the New York Labor Law; 12 N.Y.C.R.R. Part 142 (Minimum Wage Order for miscellaneous industries and occupations); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; Title VII 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law, Executive Law §§ 290 *et seq.*; the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.*; and 10 N.Y.C.R.R. Subpart 7-3 (State Sanitary Code campground regulations), and any other violations of the aforementioned laws and/or regulations.

**TAKE FURTHER NOTICE THAT** for purposes of responding to this subpoena, the following definitions shall apply:

a. The terms "documents" and "documentation" mean, without limitation, the original and any and all drafts and copies of any writings of any kind, including computer-stored information, although not yet printed out, that is capable of being reproduced on a computer display or printed. A "document," whether existing in computer storage or manual storage includes not only the final version but each and every preliminary draft or worksheet. Any such document bearing on any page thereof (front or back) any marks such as initials, stamped indices, comments, or notations of any character that were not part of the original text or photographic reproduction thereof is to be considered as a separate document.

b. The term "correspondence" means any communication whether by letter, facsimile, telex, note, electronic mail, or any other medium of communication and all documents concerning such "correspondence."

2

c.  The term "concerning" shall be construed in the broadest sense to mean directly or indirectly describing, setting forth, responding to, discussing, relating to, describing, evidencing, constituting or referring to the subject in question, either in whole or in part.

d.  "All" means "any and all," and "any" means "any and all."

e.  "Including" means without limitation.

f.  The terms "and" and "or" have both conjunctive and disjunctive meanings.

g.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of the document request all responses which might otherwise be construed to be outside the scope.

h.  The term "DREAMLAND AMUSEMENTS INC." refers to DREAMLAND AMUSEMENTS INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

i.  The term "TOY CIRCUS, INC." refers to TOY CIRCUS, INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

j.  The term "CROSSROADS TRUCKING CORP." refers to CROSSROADS TRUCKING CORP. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

k.  The term "employee" refers to all of the employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including officers, managers, professionals, salespersons, staff, office and clerical employees, trainees and any other person carried on the payroll whether as salaried or hourly employees, employees on commission or independent contractors. Such persons include but are not limited to individuals employed by or providing services in exchange for compensation from DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. pursuant to an H-2B, H-2R and/or other employment-related visa(s) or authorization.

l.  The terms "employment," "work" and "employ" refer to any service, paid or unpaid, performed by an employee, that primarily benefits DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

m.  The definitions set forth in Rule 105 of the New York Civil Practice Law and Rules are incorporated herein by reference.

## PLEASE TAKE FURTHER NOTICE THAT:

a.  This request is a continuing request requiring supplemental responses in the event that,

3

between the time documents are produced and conclusion of this case or investigation, you become aware of further information or documents.

b. If complete responses cannot be made after the exercise of due diligence to secure the requested information, you are requested to so indicate, to describe the efforts made and the results thereof, and to furnish the information to whatever extent possible.

c. If you object to any of the requests herein, you are requested to state the specific grounds asserted for objecting and not producing any document, to identify each item not produced specifically by its nature, and in the case of objection under claim of privilege, to state the basis on which a privilege is claimed, all persons to whom copies of the document were furnished, and their job titles.

**YOU ARE HEREBY REQUIRED TO PRODUCE** at the time and place aforesaid the following, as to each and every employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in the State of New York, in whole or in part, covering any and all time periods from January 1, 2006, until the return date of this subpoena:

1. Any and all documents that identify the name, last known address, last known phone number, age, race, national origin, sex, alienage, immigration status, hours worked, work shifts, worksite location(s), occupational classification, wage rate, gross wages, deductions, net wages, allowances claimed as part of the minimum wage, adjustments, advances, loans, charges, and/or money paid in cash. These documents or records are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.). Subpoenaed documents include, but are not limited to, any and all such written or computer payroll documents prepared for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., or for any third-party, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP. or any third-party. These documents include but are not limited to payroll records; paystubs; notebooks or registers on which employee names and wages are entered; canceled paychecks; and/or cash receipts.

2. Any and all time sheets, time records, time cards, schedules, calendars, and/or other documents, showing any and all shifts, hours, and days worked. These documents are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

3. Any and all documents and/or correspondence concerning any housing, meals,

4

transportation, and/or medical care provided by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the policies, practices and procedures by which employees are assigned to vehicle(s) for sleeping and/or living quarters.

4. Any and all documents and/or correspondence concerning DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. signed by the abovementioned employees and other persons. These documents include but are not limited to pledges, authorization forms, and tax forms.

YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE at the time and place aforesaid the following concerning employment and/or authorization for employment by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., performed and/or to be performed by employees on or after January 1, 2006 until the return date of this subpoena:

5. Any and all documents and/or correspondence concerning employment and/or authorization for employment of any foreign national, including but not limited to immigrants and non-immigrant aliens, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. Such documents include but are not limited to Applications for Employment Certification (also known as ETA 750s), documents concerning H-2B and/or other employment-related visas (including copies of any and all such visas), Petitions for Aliens To Perform Temporary Nonagricultural Services or Labor, Petitions for A Nonimmigrant Worker, I-94s, I-797s, and/or applications for employment, offers of employment, letters of recommendation, documents concerning the need for temporary non-agricultural services or labor, documents confirming employment, and/or all other attachments and supporting documentation for any and all such applications and/or petitions, and/or proof of service of any of the above to any state or federal agency.

6. Any and all documents concerning other persons and/or entities that provide any service related to the use of the H-2B, H-2R and/or other employment-related visa program by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the recruitment of applicants, the preparation and/or processing of any document listed in Subpoena Question #5, the transportation of H-2B and/or other employment-related visa holders to the United States, preparation of income tax documents of H-2B and/or other employment-related visa holders, and communications to employees about such services.

7. Any and all documents related to the recruitment of employees, including but

5

not limited to advertisements, applications, interviews with applicants, the recruitment of foreign nationals through the H-2B, H-2R and/or other employment-related visa program, and the terms and conditions of employment that DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. communicates directly and/or indirectly to applicants and/or potential applicants prior to employment.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place aforesaid the following as to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., covering any and all time periods from January 1, 2006, until the return date of this subpoena:

8. Any and all documents and/or correspondence concerning personnel policies, rules, guidelines, pay rates, training, discipline, policies on discrimination, and/or any other aspect of employment of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

9. Any and all contracts, collective bargaining agreements, and/or other documents specifying the wage rates, work schedules, benefits, and/or any other terms or conditions of employment. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

10. Any and all documents concerning the operation by and/or participation by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in any fair, carnival, amusement park, and/or other temporary seasonal establishment at which rides, games, contests, and/or food concessions were operated. Such documents include but are not limited to documents sufficient to show the locations, opening and closing dates, hours of operation, and/or sponsors of any fairs, carnivals, and/or amusement parks. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

11. The articles of incorporation, by-laws, charters, annual and quarterly reports, government filings, business certificates, certificates of incorporation, minutes of board meetings, minutes of shareholder meetings, and/or partnership agreements of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP.

12. Any and all documents reflecting the names, addresses, telephone numbers, and positions held over time by each and every officer, director, owner, and/or

6

shareholder of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to annual and quarterly reports, corporate charters, government filings, license applications, business certificates, certificates of incorporation, and partnership agreements.

13. Documents sufficient to show the name, address, and telephone numbers of any and all other business entities in which ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any and all other officers, directors, owners, and shareholders of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. have a direct or indirect ownership interest and/or of which they are officers, directors, members, and/or partners, the nature and extent of any direct or indirect ownership interest, and the position(s) held by each such person.

14. Any and all documents submitted by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to the United States Internal Revenue Service, to New York State taxing authorities, and/or to New York local taxing authorities, including but not limited to all "Form 1099" documents, any and all documents associated with "W-2" forms, for any and all of the employees and/or other persons described above, and any and all quarterly and annual New York State and Federal tax returns, including but not limited to Form NYS-45.

15. Any and all documents referring or relating to total annual and monthly revenue and/or total annual and monthly receipts of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to business records summarizing cash register records or receipts and business records summarizing purchases of products for sale, including but not limited to books of Accounts, Accounts Payable, Cash Books, and Business ledgers, and sales records. These documents or records are to be segregated by month, year, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

16. Any and all documents concerning each and every individual and/or entity (including but not limited to corporations, partnerships, not-for-profit entities, unincorporated associations, vendors, and/or contractors) to whom DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provided goods and/or services and the agreed-upon terms for the provision of such goods and/or services. These documents include but are not limited to contracts, agreements, invoices, orders, accounts payable, and receipts.

17. Any and all documents concerning property (including but not limited to real estate and motor vehicles) in which DREAMLAND AMUSEMENTS INC., TOY CIRCUS,

INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO , and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. has a direct and/or indirect ownership interest and that has been used in connection with the operations of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in New York. These documents include but are not limited to deeds and titles.

18. Any and all agreements by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to lease, rent, and/or provide property (including but not limited to rides, housing, and/or motor vehicles) and/or services, including but not limited to total dollar amount of agreement, parties to agreement, terms of agreement, date of agreement and duration of agreement. These documents or records are to be segregated by year, month, and entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

19. Any and all documents showing expenditures by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., concerning their operations in New York, including, but not limited to records showing rental and/or mortgage payments, salaries, utility bills, and/or payments for licenses and/or permits, and copies of the front and backs of all checks, including bank checks or personal checks, used to pay any and all expenses such as rent, utilities, taxes, license fees, and/or salaries.

20. Any and all documents containing names and/or addresses of suppliers of goods, materials, and/or services for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

21. Any and all licenses, certificates, permits, and/or other documents issued by the New York City or State Department of Health, New York State Department of Labor, New York City Department of Consumer Affairs, New York State Office of Parks Recreation and Historic Preservation, New York City Department of Parks & Recreation, and/or any other state or local government agency in New York to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

22. The account numbers, account signatory authorizations, bank names, and locations of any and all bank accounts held by DREAMLAND AMUSEMENTS INC., TOY

CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. and any and all bank statements for those bank accounts.

23. Any and all documents concerning the following policies and/or coverage of employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. for work done in the State of New York, including, but not limited to, filings with all appropriate governmental agencies, evidence of premium payments, and the terms, scope, and duration of such policies and/or coverage:

    a.  workers' compensation policies;

    b.  unemployment insurance coverage;

    c.  disability insurance policies; and/or,

    d.  liability insurance policies.

24. Documents sufficient to show the practices, policies, and procedures by which DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. retains employees with H-2B and/or other employment-related visas, including but not limited to benefits provided to visa holders who work through the end of the visa term, reimbursement for expenses, possession of visa holders' passports and visas for the duration of the visa term, and direct and indirect communications to employees about such practices, policies, and procedures.

25. All documents concerning any complaint submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. regarding work hours, wages paid, deduction of wages, and work-related expenses paid by employees, lodging, work-related illnesses or injuries and/or treatment of work-related illnesses or injuries, or discrimination, harassment, hostile or abusive environment, retaliation or unfair treatment on the basis of sex, race, alienage and/or national origin, whether written or verbal, made by any current or former employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including but not limited to:

    a.  copies of complaints;

    b.  documents sufficient to show communications regarding complaints, investigations and complaint dispositions, with reasons; and

9

  c. any documents related to any and all disciplinary or other action and consideration thereof against persons in connection with the above incidents, allegations, or complaints.

26. All documents concerning the sex, race, alienage and/or national origin of any employee who was disciplined or terminated, including but not limited to any incidents or allegations of failure to follow management directives, or misconduct by employees, disciplinary action taken against an individual or individuals in connection with any such incidents or allegations, the cause or basis of discipline or termination and the disciplinary measure taken.

27. All documents concerning any and all vehicles (including but not limited to trailers and/or recreational vehicles) owned, operated, and/or leased by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in which employees are housed, including but not limited to:

  a. Documents sufficient to show the vehicles' makes, models, and years, including but not limited to vehicle titles and registrations;

  b. Documents concerning maintenance and repairs;

  c. Documents sufficient to show whether vehicles have electricity, potable water, sewer inlet connections and/or if DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provides for sewer collection services;

  d. Any and all documents concerning the assignment of employees to sleeping and/or living quarters, including but not limited to the names of each employee, the vehicle(s) to which each employee was assigned for sleeping and/or living quarters, and the start and end date of each such assignment; and,

  e. Any and all complaints, violations and/or citations related to any vehicle owned or operated by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to complaints submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

**You are bound by this subpoena to produce the requested items and appear at the examination and on any adjourned date thereof, pursuant to C.P.L.R. Art. 23. For a failure to appear, you may be**

liable, in addition to any other lawful punishment, for damages sustained by the State of New York, and for a penalty.

WITNESS, Honorable ANDREW M. CUOMO, Attorney General of the State of New York, the 23 day of May , 2008.

ANDREW M. CUOMO
Attorney General of the State of New York

BY:

Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

Sworn to before me
this 23 day of
May 2008

Assistant Attorney General

11

# EXHIBIT "C"

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 21 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 2 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 35 of 53

PEOPLE OF THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
LABOR AND CIVIL RIGHTS BUREAUS

---

IN THE MATTER OF THE INVESTIGATION OF
ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

OF

DREAMLAND AMUSEMENTS INC.; TOY CIRCUS,
INC.; CROSSROADS TRUCKING CORP.; ROBERT F.
DESTEFANO, JR.; KATHERYN L. DESTEFANO; and
any other owners and corporate officers of Dreamland
Amusements Inc., Toy Circus, Inc., and/or Crossroads
Trucking Corp.

SUPPLEMENTAL   SUBPOENA
DUCES TECUM

---

TO:    ROBERT F. DESTEFANO, JR.
       KATHERYN L. DESTEFANO
       DREAMLAND AMUSEMENTS INC.
       TOY CIRCUS, INC.
       CROSSROADS TRUCKING CORP.
       2 Olympia Lane
       Stony Brook, NY 11790

**PLEASE TAKE NOTICE THAT YOU ARE REQUIRED** to produce certain items listed

below, on or before _July 15, 2008, at 9:30 a.m._, and on any adjourned dates thereof, at the offices

of the New York State Office of the Attorney General, Civil Rights Bureau, 120 Broadway, 3rd

Floor, New York, in an inquiry by ANDREW M. CUOMO, Attorney General of the State of New

York.  This inquiry is to determine whether an action or proceeding should be instituted against

DREAMLAND AMUSEMENTS INC., 2 Olympia Lane, Stony Brook, NY 11790, TOY CIRCUS,

INC., 2 Olympia Lane, Stony Brook, NY 11790, CROSSROADS TRUCKING CORP., 2 Olympia

1

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 22 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 3 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 36 of 53

Lane, Stony Brook, NY 11790, ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO,

and any other owners or corporate officers of Dreamland Amusements Inc., Toy Circus, Inc., and/or

Crossroads Trucking Corp. The action or proceeding may be brought pursuant to and for potential

violations of New York Executive Law § 63(12); Article 6 and Article 19 of the New York Labor

Law; 12 N.Y.C.R.R. Part 142; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; Title VII 42

U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law, Executive Law

§§ 290 *et seq.*; the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et*

*seq.*; and 10 N.Y.C.R.R. Subpart 7-3, and any other violations of the aforementioned laws and/or

regulations.

**TAKE FURTHER NOTICE THAT** for purposes of responding to this subpoena, the

following definitions shall apply:

a. The terms "documents" and "documentation" mean, without limitation, the original and any and all drafts and copies of any writings of any kind, including computer-stored information, although not yet printed out, that is capable of being reproduced on a computer display or printed. A "document," whether existing in computer storage or manual storage includes not only the final version but each and every preliminary draft or worksheet. Any such document bearing on any page thereof (front or back) any marks such as initials, stamped indices, comments, or notations of any character that were not part of the original text or photographic reproduction thereof is to be considered as a separate document.

b. The term "correspondence" means any communication whether by letter, facsimile, telex, note, electronic mail, or any other medium of communication and all documents concerning such "correspondence."

c. The term "concerning" shall be construed in the broadest sense to mean directly or indirectly describing, setting forth, responding to, discussing, relating to, describing, evidencing, constituting or referring to the subject in question, either in whole or in part.

d. "All" means "any and all," and "any" means "any and all."

2

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 23 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 4 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 37 of 53

e. "Including" means without limitation.

f. The terms "and" and "or" have both conjunctive and disjunctive meanings.

g. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of the document request all responses which might otherwise be construed to be outside the scope.

h. The term "DREAMLAND AMUSEMENTS INC." refers to DREAMLAND AMUSEMENTS INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

i. The term "TOY CIRCUS, INC." refers to TOY CIRCUS, INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

j. The term "CROSSROADS TRUCKING CORP." refers to CROSSROADS TRUCKING CORP. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

k. The term "employee" refers to all of the employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including officers, managers, professionals, salespersons, staff, office and clerical employees, trainees and any other person carried on the payroll whether as salaried or hourly employees, employees on commission or independent contractors. Such persons include but are not limited to individuals employed by or providing services in exchange for compensation from DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. pursuant to an H-2B, H-2R and/or other employment-related visa(s) or authorization.

l. The terms "employment," "work" and "employ" refer to any service, paid or unpaid, performed by an employee, that primarily benefits DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

m. The definitions set forth in Rule 105 of the New York Civil Practice Law and Rules are incorporated herein by reference.

## PLEASE TAKE FURTHER NOTICE THAT:

a. This request is a continuing request requiring supplemental responses in the event that, between the time documents are produced and conclusion of this case or investigation, you become aware of further information or documents.

b. If complete responses cannot be made after the exercise of due diligence to secure the requested information, you are requested to so indicate, to describe the efforts made and the results thereof, and to furnish the information to whatever extent possible.

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 24 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 5 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 38 of 53

c. If you object to any of the requests herein, you are requested to state the specific grounds asserted for objecting and not producing any document, to identify each item not produced specifically by its nature, and in the case of objection under claim of privilege, to state the basis on which a privilege is claimed, all persons to whom copies of the document were furnished, and their job titles.

d. Identify the year(s) to which each document produced refers.

**YOU ARE HEREBY REQUIRED TO PRODUCE** at the time and place aforesaid the following, as to each and every employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in the State of New York, in whole or in part, covering any and all time periods from July 8, 2002 until December 31, 2005:

1. Any and all documents that identify the name, last known address, last known phone number, age, race, national origin, sex, alienage, immigration status, hours worked, work shifts, worksite location(s), occupational classification, wage rate, gross wages, deductions, net wages, allowances claimed as part of the minimum wage, adjustments, advances, loans, charges, and/or money paid in cash. These documents or records are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.). Subpoenaed documents include, but are not limited to, any and all such written or computer payroll documents prepared for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., or for any third-party, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP. or any third-party. These documents include but are not limited to payroll records; paystubs; notebooks or registers on which employee names and wages are entered; canceled paychecks; and/or cash receipts.

2. Any and all time sheets, time records, time cards, schedules, calendars, and/or other documents, showing any and all shifts, hours, and days worked. These documents are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

3. Any and all documents and/or correspondence concerning any housing, meals, transportation, and/or medical care provided by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the policies, practices and procedures by which employees are assigned to vehicle(s) for sleeping and/or living quarters.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place

4

aforesaid the following concerning employment and/or authorization for employment by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., performed by employees on July 8, 2002 until December 31, 2005:

4. Any and all documents and/or correspondence concerning employment and/or authorization for employment of any foreign national, including but not limited to immigrants and non-immigrant aliens, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. Such documents include but are not limited to Applications for Employment Certification (also known as ETA 750s), documents concerning H-2B, H-2R and/or other employment-related visas (including copies of any and all such visas), Petitions for Aliens To Perform Temporary Nonagricultural Services or Labor, Petitions for A Nonimmigrant Worker, I-94s, I-797s, and/or applications for employment, offers of employment, letters of recommendation, documents concerning the need for temporary non-agricultural services or labor, documents confirming employment, and/or all other attachments and supporting documentation for any and all such applications and/or petitions, and/or proof of service of any of the above to any state or federal agency.

5. Any and all documents concerning other persons and/or entities that provide any service related to the use of the H-2B, H-2R and/or other employment-related visa program by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the recruitment of applicants; the preparation and/or processing of any document listed in Subpoena Question #4, the transportation of H-2B, H-2R and/or other employment-related visa holders to the United States, preparation of income tax documents of H-2B, H-2R and/or other employment-related visa holders, and communications to employees about such services.

6. Any and all documents related to the recruitment of employees, including but not limited to advertisements, applications, interviews with applicants, the recruitment of foreign nationals through the H-2B, H-2R and/or other employment-related visa program, and the terms and conditions of employment that DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. communicates directly and/or indirectly to applicants and/or potential applicants prior to employment.

YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE at the time and place aforesaid the following as to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., covering any and all time periods from July 8, 2002

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 26 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 7 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 40 of 53

until December 31, 2005:

7. Any and all documents and/or correspondence concerning personnel policies, rules, guidelines, pay rates, training, discipline, policies on discrimination, and/or any other aspect of employment of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

8. Any and all contracts, collective bargaining agreements, and/or other documents specifying the wage rates, work schedules, benefits, and/or any other terms or conditions of employment. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

9. Any and all documents concerning the operation by and/or participation by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in any fair, carnival, amusement park, and/or other temporary seasonal establishment at which rides, games, contests, and/or food concessions were operated. Such documents include but are not limited to documents sufficient to show the locations, opening and closing dates, hours of operation, and/or sponsors of any fairs, carnivals, and/or amusement parks. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

10. Any and all documents submitted by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to the United States Internal Revenue Service, to New York State taxing authorities, and/or to New York local taxing authorities, including but not limited to all "Form 1099" documents, any and all documents associated with "W-2" forms, for any and all of the employees and/or other persons described above, and any and all quarterly and annual New York State and Federal tax returns, including but not limited to Form NYS-45.

11. Any and all documents referring or relating to total annual and monthly revenue and/or total annual and monthly receipts of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to business records summarizing cash register records or receipts and business records summarizing purchases of products for sale, including but not limited to books of Accounts, Accounts Payable, Cash Books, and Business ledgers, and sales records. These documents or records are to be segregated by month, year, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

12. Any and all documents concerning each and every individual and/or entity (including

6

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 27 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 8 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 41 of 53

but not limited to corporations, partnerships, not-for-profit entities, unincorporated associations, vendors; and/or contractors) to whom DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provided goods and/or services and the agreed-upon terms for the provision of such goods and/or services. These documents include but are not limited to contracts, agreements, invoices, orders, accounts payable, and receipts.

13. Any and all agreements by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to lease, rent, and/or provide property (including but not limited to rides, housing, and/or motor vehicles) and/or services, including but not limited to total dollar amount of agreement, parties to agreement, terms of agreement, date of agreement and duration of agreement. These documents or records are to be segregated by year, month, and entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

14. Any and all licenses, certificates, permits, and/or other documents issued by the New York City or State Department of Health, New York State Department of Labor, New York City Department of Consumer Affairs, New York State Office of Parks Recreation and Historic Preservation, New York City Department of Parks & Recreation, and/or any other state or local government agency in New York to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

15. Documents sufficient to show the account numbers, account signatory authorizations, bank names, and locations of any and all bank accounts held by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. and any and all bank statements for those bank accounts.

16. Documents sufficient to show the following policies and/or coverage of employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. for work done in the State of New York, including, but not limited to, filings with all appropriate governmental agencies, evidence of premium payments, and the terms, scope, and duration of such policies and/or coverage:

    a.  workers' compensation policies;

    b.  unemployment insurance coverage;

    c.  disability insurance policies; and/or,

    d.  liability insurance policies.

17. Documents sufficient to show the practices, policies, and procedures by which DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. retains employees with H-2B, H-2R and/or other employment-related visas, including but not limited to benefits provided to visa holders who work through the end of the visa term, reimbursement for expenses, possession of visa holders' passports and visas for the duration of the visa term, and direct and indirect communications to employees about such practices, policies, and procedures.

18. All documents concerning any complaint submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. regarding work hours, wages paid, deduction of wages, and work-related expenses paid by employees, lodging, work-related illnesses or injuries and/or treatment of work-related illnesses or injuries, or discrimination, harassment, hostile or abusive environment, retaliation or unfair treatment on the basis of sex, race, alienage and/or national origin, whether written or verbal, made by any current or former employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including but not limited to:

    a.  copies of complaints;

    b.  documents sufficient to show communications regarding complaints, investigations and complaint dispositions, with reasons; and

    c.  any documents related to any and all disciplinary or other action and consideration thereof against persons in connection with the above incidents, allegations, or complaints.

19. All documents concerning the sex, race, alienage and/or national origin of any employee who was disciplined or terminated, including but not limited to any incidents or allegations of failure to follow management directives, or misconduct by employees, disciplinary action taken against an individual or individuals in connection with any such incidents or allegations, the cause or basis of discipline or termination and the disciplinary measure taken.

20. All documents concerning any and all vehicles (including but not limited to trailers and/or recreational vehicles) owned, operated, and/or leased by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING

8

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 29 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 10 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 43 of 53

CORP. in which employees are housed, including but not limited to:

    a.  Documents sufficient to show the vehicles' makes, models, and years, including but not limited to vehicle titles and registrations;

    b.  Documents concerning maintenance and repairs;

    c.  Documents sufficient to show whether vehicles have electricity, potable water, sewer inlet connections and/or if DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provides for sewer collection services;

    d.  Any and all documents concerning the assignment of employees to sleeping and/or living quarters, including but not limited to the names of each employee, the vehicle(s) to which each employee was assigned for sleeping and/or living quarters, and the start and end date of each such assignment; and,

    e.  Any and all complaints, violations and/or citations related to any vehicle owned or operated by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to complaints submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

**You are bound** by this subpoena to produce the requested items and appear at the examination and on any adjourned date thereof, pursuant to C.P.L.R. Art. 23. For a failure to appear, you may be liable, in addition to any other lawful punishment, for damages sustained by the State of New York, and for a penalty.

9

Case 1:08-cv-06321-JGK    Document 31-3    Filed 08/19/2008    Page 30 of 34
Case 1:08-cv-07100-UA    Document 8-4    Filed 08/13/2008    Page 11 of 11

Case 1:08-cv-06321-JGK    Document 18-4    Filed 08/06/2008    Page 44 of 53

WITNESS, Honorable ANDREW M. CUOMO, Attorney General of

the State of New York, the ___ day of _____ July _____, 2008.

ANDREW M. CUOMO
Attorney General of the State of New York

BY: _____

Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

Sworn to before me
this ___ day of
_____ 2008
_____
Assistant Attorney General

10

# EXHIBIT "D"



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

By Electronic Mail, Mail and Fax:  (215) 241-8844

June 27, 2008

Bruce Thall, Esq.
Spector Gadon & Rosen, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA  19103

Re:   Dreamland Investigation

Dear Mr. Thall,

      This letter is being submitted to advance the settlement discussions on June 26, 2008 by addressing your request for authority for the New York Office of Attorney General's ("OAG's") jurisdiction over your clients' fraudulent misrepresentations in documents to obtain nonimmigrant ("H-2B") employees.  By providing this information, the OAG is not purporting to represent all jurisdictional bases for all violations of law nor does it waive any assertions of jurisdiction not addressed.

      As courts have consistently recognized, under New York Executive Law § 63(12), the Attorney General has broad authority to enjoin repeated or persistent fraud or illegality in the conducting of business, and to obtain injunctive relief, restitution, and damages. See Matter of State of New York v. Ford Motor Co., 74 N.Y.2d 495 (1989);  People v. Concert Connection, Ltd., 629 N.Y.S.2d 254 (2d Dep't 1995); People by Abrams v. American Motor Club, Inc., 582 N.Y.S.2d 688 (1st Dep't 1992).  The test of fraudulent conduct under Executive Law § 63(12) "is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud." People v. General Electric Co., Inc., 302 A.D.2d 314, 314 (1st Dep't 2003).  Violation of federal, state, local law or regulation constitutes "illegality" under § 63(12).  See, e.g., State v. Scottish-American Ass'n, Inc., 381 N.Y.S.2d 671, 672 (1st Dep't 1976).

Your clients repeatedly filed Applications for Alien Employment Certification ("ETA 750s") promising under penalty of perjury that they would pay H-2B prevailing wages to their employees for the entire work season in order to obtain labor certifications and visas. As required by the H-2B program, your clients filed the ETA 750s to the New York State Department of Labor ("NYS DOL"). The NYS DOL then determines if the promised wage is sufficient before it may send the complete application to the United States Department of Labor. See 20 C.F.R. § 655.2; 70 Fed. Reg. 41,430 (Dep't of Labor Jul. 19, 2005); Foreign Labor Certification Training and Employment Guidance Letter No. 21-06, Attachment A(IV)(A) (Dep't of Labor, June 25, 2007) (NYS DOL may not accept employers' H-2B applications with "[a] job opportunity containing a wage offer below the prevailing wage[.]"). Dreamland's misrepresentations of the wage rate to be paid to its employees therefore constitutes repeated fraudulent conduct upon New York State, for which the OAG may seek injunctive relief and restitution pursuant to its "extremely broad" § 63(12) jurisdiction. See Lefkowitz v. Bull Investment Group, Inc., 306 N.Y.S.2d 488, 491 (3d Dep't 1974).

In addition, Dreamland's failure to pay promised wages is illegal under Article 6 of the Labor Law. Labor Law § 190(1) defines "wages" for the purposes of Article 6 as including all earnings of an employee for labor or services rendered, regardless of the basis for determining the amount of the wages. Under Labor Law § 198(3), "[a]ll employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous." The applicable "wages" under Article 6 of the Labor Law for the Dreamland employees are the H-2B prevailing wages as indicated on Dreamland's ETA 750s. Dreamland's repeated and persistent failure to pay that wage as required by Article 6 is illegality for which our Office has authority under Executive Law § 63(12) to recover restitution, damages, and injunctive relief. See, e.g., People v. Frink America, Inc., 770 N.Y.S.2d 225, 227 (4th Dep't 2003).

Setting aside the civil rights, health code, and other violations we have found, Dreamland clearly has failed to pay its employees the full, promised wages to which they are entitled, and our broad jurisdiction under Executive Law § 63(12) permits a judicial award for full restitution and damages, as well as injunctive relief.

Since you have requested this information in order to help possible resolution of this matter, we trust that you will share this information with your clients.

We expect to hear from you by the close of business Monday, June 30, 2008. While the OAG is willing to continue settlement discussions, the office must proceed with a hearing pursuant to subpoenas ad testificandum personally served on your clients on May 27, 2008. On June 23, 2008 we agreed to a second adjournment of these hearings, to June 26, 2008. Your June 24, 2008 letter stated that you have instructed your clients to refuse to attend a subpoena hearing. Please understand that your clients are under a continuing obligation to testify. If your clients ignore this legal obligation by failing to appear for a hearing, we shall have no choice but to move to compel their testimony.

-2-

Please feel free to reach me at (212) 416-6280 should you have any questions regarding this communication.

Sincerely,

Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

-3-

# EXHIBIT "E"

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

July 9, 2008

Via Federal Express
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
         Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

        I am enclosing for you the ninth stage of production of documents from
Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the
subpoena duces tecum issued by your office to each of these entities.  Additional documents will
be forwarded to you over the next several days.  We have thus far provided 10,665 documents to
you pursuant to your Office's subpoena.

        We are providing these documents to you in stages, pursuant to your request.  As
a result, the production today and those forthcoming is incomplete.  There may well be
documents responsive to numbered paragraphs that we have not produced in their entirety.
There are additional documents which we are attempting to locate and determine whether they
are responsive to your subpoenas.  We will forward those on to you as well.

        In addition, we are submitting these documents even though we believe that your
office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs,
some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example,
and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed,
perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the
minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2,
8, 14, and others as well.

        Yet, the three entities you have subpoenaed appear to be exempt from minimum
wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes
Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 9, 2008
Page -2-

---

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects, with a possible exception for overtime only, which is meaningless given the absence of jurisdiction over wage and hours. Moreover, to the extent that you are basing your standing and jurisdiction on ETA-750's, we have been unable to find a single statute, regulation, or reported case that permits the New York Office of Attorney General to pursue claims for alleged failure to comply with the wage rate guideposts set forth therein.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities.

Moreover, as I wrote you yesterday in our settlement response memorialized with supporting authorities, you lack standing to pursue claims based upon United States Department of Labor form ETA-750's. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the ETA-750 minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

508812

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 9, 2008
Page -3-

Responsive to Request No. 23 - Bates DA 010616 - 010665

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw
Encls.

508812

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 2, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the eigthth stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities.  Additional documents will be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request.  As a result, the production today and those forthcoming is incomplete.  There may well be documents responsive to numbered paragraphs that we have not produced in their entirety.  There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas.  We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 2, 2008
Page -2-

wages, hours and overtime strictures.  The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."  The New York State regulation echoes the federal regulation in all material respects, with a possible exception for overtime only, which is meaningless given the absence of jurisdiction over wage and hours.  Moreover, to the extent that you are basing your standing and jurisdiction on ETA-750's, we have been unable to find a single statute, regulation, or reported case that permits the New York Office of Attorney General to pursue claims for alleged failure to comply with the wage rate guideposts set forth therein.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities, and that you lack standing to pursue claims based upon United States Department of Labor form ETA-750's.  You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office.  As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder.  It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena.  For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others.  We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 16 - Bates DA - 010096-010215; DA - 010289-010423
Responsive to Request No. 1 - Bates DA - 010216-010288; DA - 010484-010615

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 2, 2008
Page -3-

Responsive to Request No. 16 and Request No. 10 - DA - 010424-010483

Should you have any questions, please reach out for me.

Sincerely,

*Bruce L Thall*

Bruce L. Thall

BLT/jkw
Encls.

506532

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 20, 2008

Via Federal Express
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the seventh stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you as we are able to locate and review them.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. As I emailed you last week, we are reaching out to third parties to secure some documents responsive to your subpoena. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -2-

wages, hours and overtime strictures.  The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."  The New York State regulation echoes the federal regulation in all material respects.  Moreover, it would appear that even the overtime exception to the client's exemption does not apply

        As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities, under federal and New York law.  You have not provided any regulation or code provision to the contrary.

        Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

        There are other issues pertaining to the jurisdiction of your office.  As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

        In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder.  It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena.  For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others.  We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

        Today, I am sending to you by federal express documents:

Responsive to Request No. 15 - Bates DA - 007357-007411
Responsive to Request No. 27(e) - Bates DA - 007412-007415
Responsive to Request No. 10 - Bates DA - 007416-007459
Responsive to Request No. 16 - Bates DA - 007460-007546
Responsive to Requests Nos. 16 and 20 - Bates DA - 007547-008096
Responsive to Request No. 20 - Bates DA - 008097-008973

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -3-

Responsive to Request No. 19 - Bates DA - 008974-010095

      Should you have any questions, please reach out for me.

          Sincerely,

          Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 18, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
       Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the sixth stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. As I emailed you last week, we are reaching out to third parties to secure some documents responsive to your subpoena. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 18, 2008
Page -2-

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments. Today's staged production includes DA-007281-007337, which are such documents.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 6 - Bates DA - 005602-007280
Responsive to Requests 1 and 2 - Bates DA - 007281-007337
Responsive to Request No. 6 - Bates DA - 007338-007339
Responsive to Requests Nos. 16 and 18 - Bates DA - 007340-007356

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 18, 2008
Page -3-

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 17, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the fifth stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities.  Additional documents will be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request.  As a result, the production today and those forthcoming is incomplete.  There may well be documents responsive to numbered paragraphs that we have not produced in their entirety.  There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas.  As I emailed you last week, we are reaching out to third parties to secure some documents responsive to your subpoena.  We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 17, 2008
Page -2-

_____

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 16 - Bates DA - 004470-005385
Responsive to Request No. 21 - Bates DA - 005386-005409
Responsive to Request No. 25 - Bates DA - 005410-005412
Responsive to Request No. 17 - Bates DA - 005413-005462
Responsive to Request No. 15 - Bates DA - 005463-005516
Responsive to Request No. 14 - Bates DA - 005517-005562
Responsive to Request No. 10 - Bates DA - 005563-005574
Responsive to Request No. 27 (e) - Bates DA - 005575-005584

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 17, 2008
Page -3-

_____

Responsive to Request No. 27(a) - Bates DA - 005585
Responsive to Request No. 16 - Bates DA - 005586-005601


Should you have any questions, please reach out for me.

Sincerely,

*Bruce J. Thall*

Bruce L. Thall


BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 16, 2008

Via Federal Express
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the fourth stage of production of documents from
Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the
subpoena duces tecum issued by your office to each of these entities. Additional documents will
be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request. As
a result, the production today and those forthcoming is incomplete. There may well be
documents responsive to numbered paragraphs that we have not produced in their entirety.
There are additional documents which we are attempting to locate and determine whether they
are responsive to your subpoenas. As I emailed you last week, we are reaching out to third
parties to secure some documents responsive to your subpoena. We will forward those on to you
as well.

In addition, we are submitting these documents even though we believe that your
office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs,
some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example,
and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed,
perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the
minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2,
8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum
wage and overtime pay strictures. In this regard, 29 C.F.R. 779.385 and 12 New York Codes
Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 16, 2008
Page -2-

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

We previously sent to you document DA-002357. I forgot to inform you that DA-002357 is responsive to subpoena paragraph 12.

Today, I am sending to you by federal express documents:

DA-003838-003848, responsive to subpoena paragraph 17;

DA-003849-003890, responsive to subpoena paragraph 14;

DA-003891-004312, responsive to subpoena paragraph 19; and

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 16, 2008
Page -3-

DA-004313-004469, responsive to subpoena paragraphs 19 and 16.

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 12, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

     I am enclosing for you the third stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you over the next several days.

     We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. As I emailed you last night, we are reaching out to third parties to secure some documents responsive to your subpoena. We will forward those on to you as well.

     In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

     Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, New York State has adopted 29 C.F.R. 779.385. That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 12, 2008
Page -2-

requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

If you disagree with my conclusions, please let me know. If you want to discuss it, all you need do is call.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents DA 002746-003837. Each relates to subpoena paragraph (23).

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 12, 2008
Page -3-

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

**ATTORNEYS AT LAW**
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 10, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

> **Re:**    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
> Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the second stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you tomorrow or Thursday.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, New York State has adopted 29 C.F.R. 779.385. That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 10, 2008
Page -2-

_____

year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

Nonetheless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express the following documents:

1.    Regarding subpoena paragraph (5), documents Bates stamped DA 002374-002705;

2.    Regarding subpoena paragraph (6), documents Bates stamped DA 002358-002373;

3.    Regarding subpoena paragraph (11), documents Bates stamped DA 002706-002715;

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 10, 2008
Page -3-

_____

    4.    Regarding subpoena paragraph (14), documents Bates stamped DA 002134-002356, 002716-002745;

    5.    Regarding subpoena paragraph (17), documents Bates stamped DA 001912-001936;

    6.    Regarding subpoena paragraph (21), documents Bates stamped DA 002089-002133;

    7.    Regarding subpoena paragraph (23), documents Bates stamped DA 002067-002088;

    8.    Regarding subpoena paragraph (27a), documents Bates stamped DA 001937-002005;

    9.    Regarding subpoena paragraph (27b), documents Bates stamped DA 002006-002033; and

    10.    Regarding subpoena paragraph (27e), documents Bates stamped DA 002034-002066.

    We hope to be forwarding the next shipment of documents to you on Wednesday or Thursday, June 11 or 12, 2008.

    Sincerely,

    Bruce L. Thall

BLT/jkw

## SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

E-MAIL
bthall@lawsgr.com

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 9, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

    **Re:**    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
           Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

        I am enclosing for you the first stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities.  Additional documents will be forwarded to you tomorrow.

        We are providing these documents to you in stages, pursuant to your request.  As a result, the production today and tomorrow is incomplete.  There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas.  We will forward those on to you as well.

        In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

        Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures.  In this regard, New York State has adopted 29 C.F.R. 779.385.  That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 9, 2008
Page -2-

year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

Nonetheless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you federal express the following documents:

1.    Regarding subpoena paragraph (1), documents Bates stamped DA 00791-001362;

2.    Regarding subpoena paragraph (10), documents Bates stamped DA 001363-001636;

3.    Regarding subpoena paragraph (15), documents Bates stamped DA 0001-00790; and

4.    Regarding subpoena paragraph (22), documents Bates stamped DA 001637-001911.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 9, 2008
Page -3-

We will be forwarding the next shipment of documents to you on Tuesday, June 10, 2008.

Sincerely,

Bruce L. Thall

BLT/jkw

# EXHIBIT "F"

## SPECTOR GADON & ROSEN, P.C.

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

E-MAIL
bthall@lawsgr.com

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 24, 2008

Via Email @oag.state.ny.us
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:   Dreamland/OAG Investigation

Dear Andrew:

I am taking the liberty of sending this letter to you, as well as to your section and division heads who have participated in some of our phone conversations, in order to make sure that there is no misunderstanding between us.

### The Business of Dreamlands and its Limited Operations in New York

My client is a nomadic, mobile amusement park, generally partnering with charitable, non-profit organizations as part of their fund raising efforts. From early spring into the early fall, Dreamlands operates its amusement park with its charitable organization partners in states up and down the East Coast. This year, Dreamlands is conducting its amusement park business in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and in New York State as well.

This year, Dreamlands will operate at New York State venues for approximately 6 to 7 weeks total, with stops as short as 3 days.

You are therefore conducting an investigation into an amusement park business that spends limited time in New York State, bringing the weight of your office to bear upon Dreamlands for the 6 or 7 weeks within the year during which our clients set up their amusement park within New York in conjunction with their charitable partners.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -2-

———————————————————————

## Dreamlands has Cooperated Despite the Fact that Your Office Lacks Jurisdiction

Your Office initiated its investigation by subpoena dated May 23, 2008. We were retained on behalf of the clients on June 2, 2008. From then through June 20, in response to your request that responsive documents be produced piecemeal and in stages, rather than at one time, we have reviewed, Bates stamped, and sent on to you seven separate productions of responsive documents, comprising 10,095 documents thus far. As I represented to you, additional documents will provided as they are located and reviewed by us. In addition, in response to requests from you, we have provided identifying information with respect to responsive documents whenever you have requested such additional information. We intend to continue to do so.

From the first week in June, indeed dating from our first conversation, I have advised you that your Office lacks jurisdiction to conduct the investigation on any number of grounds. Included with each of the seven separate productions sent to you have been identifications of some of those grounds.

The absence of jurisdiction as previously communicated to you is made manifest by 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2, each of which we have repeatedly cited to you. The federal regulation exempts our clients from FSLA wages, hours and overtime strictures. As previously recounted for you, the federal regulation provides that an amusement establishment operating on a seasonal basis qualifies as an exempt establishment to which the minimum wage and overtime pay requirements of the FSLA do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

You have acknowledged the applicability of the federal regulation, but stated its application is fact sensitive. You now have sufficient documentation to establish beyond any shadow of a doubt that the clients' average receipts for any six months of the year are not more than a third of its average receipts for the other six months of the year.

Since I am sure that you and your investigators have been pouring over the documents sent to you, that fact cannot now be disputed.

The New York State regulation we have cited to you echoes and incorporates the federal regulation's exemption of Dreamlands as an amusement establishment in all material respects regarding wages and hours. At most, the New York regulation may, but does not necessarily, provide you with some jurisdiction with respect solely to overtime; however, there is

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -3-

no question but that you have no jurisdiction over wages and hours under the FSLA and under New York law.

### Applications to the United States Department of Labor do not Provide you with Jurisdiction

During our most recent telephone conversation, in which you were joined by Judith Marblestone, Esquire, Julian Birnbaum, Esquire, and Richard Balletta, Esquire, the Office of Attorney General articulated a different theory of jurisdiction. Specifically, your office contended that in connection with the H-2B non-agricultural workers obtained for Dreamlands by unrelated entities who specialize in seeking and obtaining United States Department of Labor temporary labor certifications for such non-agricultural, seasonal workers, due to the shortage of US workers to fill the laborer positions for Dreamlands annual tours, your office voiced an issue which you contended provided it with jurisdiction. Specifically, your office represented that by having unrelated third parties make application to the United States Department of Labor on Dreamlands' behalf, including their filling out forms I-129, I-907, the Application for Alien Employment Certification, and other federal forms, Dreamlands has through some unidentified mechanism somehow subjected itself not to the jurisdiction of the United States Department of Labor, but rather to the jurisdiction of the Office of the Attorney General of the State of New York. Moreover, your office contends that it has jurisdiction over Dreamlands due to the content of the forms submitted to the federal government, with respect to the payment of prevailing wages as determined by the United States Department of Labor, and for each of the specific locations at which Dreamlands partners with charitable institutions, presumably your jurisdiction limited to the 6 to 7 weeks which Dreamlands spends in New York State.

This is not the time or place to question your jurisdiction based upon the submissions made to the United States Department of Labor. Suffice it to say that any assertion of you jurisdiction based upon the submissions to the United States Department of Labor is tenuous.

Regardless, were there an issue derived from your perception of representations made in documents on behalf of Dreamlands to the United States Department of Labor, perforce that august body has the right, power and duty to determine whether any issue arises, and, if so, pursue such issue under traditional notions applicable to the law of contracts, including any claims of breaches in connection with such contracts.

The contention of contract breach, however inaccurate as will be set forth below, is wholly absent from any communications from the Office of the Attorney-General, assuming *arguendo* that you did have jurisdiction over such representations made to the United States Department of Labor.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -4-

Were you proceeding on a breach of contract basis, by now you would have taken me up on my offer made within days of our retention by the clients, to resolve your investigation by a consent decree, giving your office the right to vacate, correct, or add to that decree were further client documentation provided to your office as part of the continuing staged production you have requested to give you reason to believe that something more need be done.

There has not yet been any such proposal submitted to me, despite my written suggestions and our oral communications.

## Apparent Scorched Earth Policy

Pursuant to the subpoenas themselves, and separate writings, and oral conversations, your office has pegged its jurisdiction upon New York Executive Law Section 63. That statute sets out the general duties of the Attorney General, including the power to subpoena witnesses and books for "inquiries into matters concerning the public peace, public safety and public justice." [Section 63(8)]. It is pursuant to that Section that we have provided over 10,000 documents to you, and cooperated with your investigation.

However, as has now been made abundantly clear by your office, your investigation is predicated upon subsection 12 of section 63 of the New York Executive Law. That section permits the Attorney General to seek orders, direct restitution and damages, and other relief "whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transactions of business, ..."

You and your office have generally represented and now made crystal clear that your office is proceeding against our corporate and individual clients, who are officers, directors of our corporate client, based upon some notation of "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality" in connection with the applications submitted for Dreamlands to the United States to obtain H-2B non-agricultural seasonal workers and, specifically, regarding their compensation.

Although you have represented to me that your investigation is civil in nature, the words "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality" have strong, overwhelmingly criminal overtones. Moreover, the zeal, energy, and exuberance with which you have pursued this investigation echoes those strong criminal overtones.

Such criminal overtones are reinforced by your email of yesterday evening. That email advises me that the testimony you want from my individual clients will not be a deposition under civil law, but rather an oral examination under Section 63(12), which itself hinges solely

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -5-

upon "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality." You email also advises me that my clients have no right to counsel; that you will deign allow me to be present so long as I only raise "privilege" objections; and that I can neither cross examine nor ask any questions whatsoever. Moreover, you also advised me that my clients will not receive a copy of the transcript.

I have been in front of grand juries that have allowed clients' greater rights than those you are willing to provide to my clients.

Sadly, since the Office of the Attorney General has chosen to proceed under 63(12) targeting fraudulent or illegal acts demonstrating persistent fraud or illegality of my clients, whose presence in New York is limited to 6 or 7 weeks a year, rather than by breach of contract, I am forced to respond accordingly, in order to protect the rights of my clients. All this even though, as set forth below, there is no contract breach, much less criminal conduct, even assuming that your office had jurisdiction to investigate based upon the submissions made for my clients to the United States Department of Labor, or under the FSLA and the New York Code.

In short, I cannot permit you to depose my clients in view of what appears to be a criminal investigation, despite the fact that no criminality, or even civil contract breach, exists.

As a result, my clients will not appear for your oral examination pursuant to Executive Law Section 63(12). For me to allow them to testify in view of what is set forth herein would be tantamount to malpractice.

## Dreamlands Will Continue to Cooperate With Your Investigation

Despite what I believe to be your lack of jurisdiction over the subject matter of your investigation with regard to my clients, we will continue to cooperate with your investigation. I believe that additional payroll records for the year 2006 will soon be located. On receipt and review, we will forward them to you. Should other records become available, those, too, will be forwarded to you.

In the past, we have answered questions that you have raised regarding certain documentation. We will continue to do so; however, as in the past, the answers will be through me, akin to a proffer, and not directly from the clients.

Regarding the testimony of my clients, as you know better than I, there are several mechanisms that you can utilize in order to moot the concerns I have regarding what appears to be the criminal focus of your investigation. I encourage you to utilize them; however, absent

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -6-

your recourse to such mechanisms, I cannot permit them to testify in the face of what appears to be a blunderbuss criminal investigation.

## Facts by Proffer

As I have represented, I will continue to answer specific questions you have regarding my clients, because I believe that such information should go far towards your terminating your investigation as improvident, separate and apart from the serious and substantial questions regarding your jurisdiction in the first instance.

By way of example, but not by way of limitation, although you and your colleagues have been particularly closed mouthed about the nature of your investigation, as is the norm with any criminal investigation, our discussions in response to my contentions that you lack jurisdiction to investigate have made clear your office's interest in wages and hours and overtime.

Regarding those issues, you should be aware that regarding the non-resident H-2B non-agricultural seasonal workers, the hand written weekly payroll sheet dollar figure under the column "gross" represents the actual dollar amount paid to each of the H-2B workers. None of that sum is required to be paid by the employee for the lodging provided by Dreamlands. None is required to be paid for food provided by Dreamlands. No "hidden charges" are taken from any of the H-2B workers reported gross salary.

In addition, as I am sure your investigators have reported to you, the gross payroll amount remains constant, and is never varied or diminished due to (a) a worker having no work assigned to him/her on a specific day or days; or (b) weather limiting or canceling the operations of the amusement park on specific days; or (c) for any other reasons.

To the contrary, the gross payroll sum reflected on the handwritten payroll sheets is a figure based upon long experience that is intended to and does include compensation for actual hours worked and overtime.

It is these facts, together with the absence of any deduction from the gross salary figure that appears on the payroll sheets that have resulted in my repeated entreaties to you for a consent decree. Indeed, knowing what a full, fair, and unbiased investigation would perforce conclude, I have beseeched you for a consent decree, with your option to vacate or modify, so that the investigation will end with your office having the assurance that whatever practice you deemed inappropriate would be remedied, with enforcement by virtue of the decree.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -7-

_____

I am still hopeful that such a resolution will occur on you, your three colleagues and your investigators digesting this information. If client affidavits to that effect would achieve that result, I will consider providing them.

### Next Steps

What happens next is up to you. We can enter into a reasonable consent decree. You can secure some kind of immunity for my clients. You can proceed with your investigation, and we can engage in a lengthy motion practice which raises the specter of a court ruling consistent with my position, holding that you lack jurisdiction over the subject matter of your investigation.

You can use the power of your office to bankrupt my client. Your resources are far greater than those available to the nomadic Dreamlands amusement park. It would be a pity if you choose to do so, given the facts set forth above and the 6 to 7 weeks a year that the clients operate in New York.

The choices are yours.

Sincerely,

Bruce L. Thall

Bruce L. Thall

BLT/jkw

# EXHIBIT "G"

## SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 8, 2008

Via Email @oag.state.ny.us
Andrew Elmore, Esquire
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    Response to Your Settlement Proposal and
Counter Proposal of Dreamland

Dear Andrew:

The enclosed constitutes the substantive response of our clients to the settlement offer promulgated by the Office of the Attorney General of the State of New York, together with an explanation of the predicates on which it is founded.

Dreamland itself conducts its mobile carnival business, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts, along the East Coast of the United States, in 2008 operating in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and New York State. Your Office purports to have the power to challenge my clients' performance under the totality of Dreamland's contract with the United States Department of Labor, even though only a small percentage of its business is conducted at locations in New York.

We have previously provided to you the authorities disclosing that our clients are an amusement enterprise, so that they are exempt from the wages and hours and overtime strictures of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and specifically section 13 thereunder, and the complementing federal regulations, codified at 29 C.F.R. 779.385. Similarly, we have previously provided to you 12 New York Codes Rules and Regulations 142-2.2 (and 142-3.2), which include the FLSA exemption of our clients from the wages and hours strictures, through adopting the exemptions set forth in the Fair Labor Standards Act, including the exemption for amusement enterprises.

508078

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -2-

As a result, no employee of our clients has any claim of entitlement to wages, hours or overtime work standards as set forth in federal or New York Code, regardless of whether the worker is a natural born citizen or an alien.[1]

At our meeting, you disclosed that the New York Office of the Attorney General is not proceeding under wages, hours or overtime as set forth in the FLSA or New York Code. Rather, your theory is based upon a contract between our clients and the United States Department of Labor. In this regard, you assert that our clients have engaged in repeated or persistent fraud or illegality in the conducting of its carnival business, and specifically with regard to federal Department of Labor forms ETA-750 (Applications for Alien Employment Certification). You contend that in signing those United States Department of Labor contracts for each of three years, 2006, 2007, and 2008, Dreamland alone,[2] and not our other clients, contracted under penalty of perjury to the United States to pay United States Department of Labor prevailing wages to non-immigrant, H-2B seasonal employees obtained by others for our clients for their mobile carnival; further, you contend that our clients breached the contracts, and that the breach of the contract with the United States Department of Labor gives the New York Office of the Attorney General jurisdiction over what you deem to be the fraudulent misrepresentations, pursuant to New York Executive Law § 63(12), even though the contract was exclusively entered into with and approved by the United States Department of Labor.

The federal forms ETA-750 contain columns for estimated hours per week, estimated overtime hours, estimated weekly wages, and estimated weekly overtime at boxes 10 and 12. Only estimates can be made on signing the form, because on application to the United States Department of Labor, the final schedule of carnival locations and dates, and hours consumed on each date have not been determined. The estimates are not a guarantee of the number of hours that each H-2B worker will be asked to perform during each week.

Were there any questions regarding these facts or their interpretation, the United States Department of Labor is the sole entity which can answer them.

It is difficult to conceive how anyone could view the affixation of a signature by Dreamland to constitute a guarantee of specified hours of work per week. Moreover, precisely because the FLSA and New York Analog exempt American citizens who work for Dreamland

---

[1] You also averred that my clients violated Civil Rights statutes because, inter alia, the porto-johns they lease for use at carnival sites are not sufficiently clean and because workers, including H-2B aliens, are forced to work in inclement weather. The short answers are sue the lessors and buy yourself a rain slicker at Family Dollar. The power of your Office to bring Civil Rights claims is not otherwise addressed in this response.

[2] The United States Department of Labor forms ETA-750 were submitted by Dreamland Amusements, only, and not by Toy Circus or Crossroads. In fact, none of the latter have any H-2B non-agricultural, seasonal employees.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -3-

from wages and hours strictures, your construction of the United States Department of Labor forms ETA-750 would create the anomalous situation of alien workers being guaranteed more money for displacing American workers than the American workers would receive for performing those services. Such a conundrum ignores and undercuts the express policy of the United States in creating its H-2B programs in the first instance. See, e.g., 8 U.S.C. § 1101(a)(4)(ii)(B).

Putting facts and logic aside however, your Office lacks the right or power to claim jurisdiction over or standing to pursue the averments that our clients have engaged in repeated or persistent fraud or illegality through your contention that they failed to pay prevailing wages per contract wit the United States Department of Labor to the H-2B seasonal employees, as set forth below.[3]

## PREEMPTION AND THE SUPREMACY CLAUSE

Resisting the temptation to refer you to treatises on Federal Preemption and the Supremacy Clause, suffice it to say for purposes of your investigation that the powers of Congress over Commerce and Immigration, as set forth in Article I, Section 8, Clauses 3 and 4 of the Constitution, are exclusive and paramount, and hold sway over states, as required by Article VI, Clause 2, known as the Supremacy Clause. The paramount and exclusive jurisdiction is even more pointed following the aftermath of the plane hijackings that occurred on September 11, 2001, and the resulting plethora of federal enactments governing aliens and the conduct of their entry into the United States by the federal government as part of its comprehensive immigration program.

Every aspect of immigration, including that pertaining to seasonal workers, is specifically set forth at length in phone book sized volumes within the United States Code and the Code of Federal Regulation.

### Federal Statutes and Federal Regulations

8 U.S.C. § 1101(a)(H)(ii)(b) sets out Congress's power to enact laws governing aliens residing in a foreign country which they have no intention of abandoning who come to the United States "to perform temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." Exercising that power, the Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of

---

[3]     Whether the United States Department of Justice could prosecute such claims as false statements under 18 U.S.C. § 1001, or as mail fraud under 18 U.S.C. § 1341, or under RICO pursuant to 18 U.S.C. § 1961 is unclear in view of primacy of the regulatory scheme involving the Departments of Homeland Security, Labor, Agriculture and Justice. E.g., *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). What is clear is that the New York Office of Attorney General has no such power.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -4-

_____

the Department of Labor have been exclusively vested with the "administration and enforcement of the chapter and all other laws relating to the immigration and naturalization of aliens," as set forth therein. See 8 U.S.C. § 1102(a). The powers so vested are virtually co-extensive with the power to regulate immigration. See, e.g., 8 U.S.C. § 1103, including (g) thereunder.

A sub-set of that broad grant of power is found within 8 U.S.C. § 1184, headed "Admission of Non-Immigrants." Under that statute, subsection (a), hinges admission of any alien as a non-immigrant "for such time and other such conditions" as the Executive Branch may prescribe. Within that Section are provisions imposing fraud prevention and detection fees upon employers filing false forms ETA-750 and other petitions, 8 U.S.C. § 1184(c)(13)(A), and (B). The statute also empowers the Secretary of the Department of Homeland Security to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits a false or fraudulent application in order to obtain, *inter alia*, H-2B employees. 8 U.S.C. § 1184(c)(14)(A).

The Code of Federal Regulations contains more than 30 pages addressing only seasonal alien temporary workers. 8 C.F.R. § 214.2(h)(1), *et seq*., extending for 30 pages within the Code of Federal Regulations, sets forth the procedure governing and representations by contract with the United States Department of Labor binding upon petitioner seeking H-2B workers, including wages and other terms and conditions of employment. The Secretary of Labor wields both the jurisdiction and power to address instances in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Under § 214.2(h)(11)(B), the Director may revoke a petition at any time, even after its expiration, based upon the petitioner's statements of facts contained in the position being "not true and correct," or that petitioner had "violated terms and conditions of the approved petition" or other standards set forth therein.

No wonder there is preemption. The statute itself provides for preemption. Indeed, 8 U.S.C. § 1324(a)(h)(2) reads in its entirety:

> The provisions of the section preempt any state or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens.

Even were there no statutory preemption, nonetheless the law would compel it.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -5-

_____

## CASE LAW

Not surprisingly, the case law interpreting the scope and breath of the federal statutory and regulatory components governing immigration and including seasonal workers has denied to all others the jurisdictional power or standing to raise claims otherwise within the four corners of the Congressional enactments and Federal Code provisions. Indeed, in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 147-48 (2002), the Supreme Court denied to a federal entity -- the National Labor Relations Board -- the authority to construe its enabling legislation to include giving back pay awards to aliens unauthorized to work in view of the overarching primacy of Title 8 of the United States Code.

Thus, it is not surprising that every Court which has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement. See, e.g., *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941) (striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilary regulations."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); accord *Gade v. Nat'l Solid Waste Management Assoc.*, 505 U.S. 88, 108 (1992); *Perry v. Thomas*, 482 U.S. 483 (1987); *DeCanas v. Bico*, 424 U.S. 351, 355 (1976); *Spina v. Department of Homeland Sec.*, 470 F.3d 116, 127-28 (2nd Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, *inter alia*, "the immigration laws contain no provision indicating that they are to be interpreted in accordance with state law."); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893-96 (10th Cir. 1972); *Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F.Supp.2d 1036 (D. Ariz. 2008); *Lozano v. City of Hazleton*, 496 F.Supp.2d 477, 517-528 (M.D.Pa. 2007); *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 648-49 (S.D.N.Y. 2000); *United States v. Richard Dattner Architects*, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); *Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146 (D.Colo. 1971); *Younus v. Shabat*, 336 F.Supp. 1137, 1140 (N.D.Ill. 1971).

And, without a private cause of action, there is no "parens patriae" jurisdiction permitting your Office to become involved in the matters you state are under investigation. The remedies are distinctly federal. See, e.g., *Castellanos- Contreras v. Decadur Hotels, LLC*, 488 F.Supp.2d 565 (E.D. La. 2007). Put another way, there is not a single case that holds that a state has the power or standing to pursue a person or entity for alleged false statements to the United States Department of Labor to obtain seasonal workers.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -6-

From the Supremacy Clause set forth in Article VI, Clause 2, the powers over commerce and immigration vested in Congress pursuant to Article I, Clause 8, and the authorities set forth, *supra*, it is painfully obvious that the New York Office of the Attorney General lacks any power with respect to the matter that it contends is under investigation. The substance and breadth of such investigation reside solely and exclusively within the federal government.

That being the case, it is our considered view that your proceeding with your investigation will do nothing other than force our clients to bear substantial legal costs and fees while resulting in an opinion holding that your Office lacks jurisdiction over the matter under investigation.

It is because of the costs and fees, however, that I am authorized to submit to you a formal response to your settlement proposal. I am authorized to represent that our clients are willing to enter into a consent decree, based on no admission of wrongdoing, that results in an order enforceable by you for breach, if such decree will close your investigation and, therefore, end the costs attendant to our clients' unwilling participation in these proceedings. In addition, our client will pay the sum of $35,000, in acknowledgement of the costs and expenses you have incurred in connection with your investigation, albeit one over which you lack jurisdiction.

I would propose that the consent agreement include a weekly wage rate for the periods of time within which our clients' mobile carnival is set up in New York. I would not presume to suggest what other reasonable conditions you deem important or appropriate; however, as I have advised you since the inception of our representation, our clients are more than willing to agree to any reasonable terms and conditions of a consent order.

Alternatively, we encourage you to submit the fruits of your investigation to the United States Department of Labor. That Department has the jurisdiction and standing to address whatever issue you deem important.

I look forward to your response.

Sincerely,

Bruce L. Thall

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -7-

BLT/jkw

# EXHIBIT "H"

# SPECTOR GADON & ROSEN, P.C.

**ATTORNEYS AT LAW**
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
350 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 14, 2008

via email: <u>andrew.elmore@oag.state.ny.us</u>
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:    <u>Dreamland Investigation</u>

Dear Mr. Elmore:

I am writing you in response to your demand pursuant to your initial office subpoenas to our clients that they appear for interrogation on July 15 by you and your office subject to the limitations upon me as counsel that you have previously delineated.

I suggested last week that you agree to postpone this date for testimony in view of your having served on me on July 8 a document headed "additional" subpoenas so that my clients and I, to the extent that you permit me to appear and represent my clients under your office subpoena procedures, will not have to appear for repeated, serial interrogations by you and your office, but rather need contend with only one set appearance.

Your office refused.

Andrew, I have given you in writing my concerns about the constitutionality of your office's procedures regarding testimony for office subpoenas, which procedures exclude me from participation at your whim and caprice, and limit that I am permitted to do even if you allow me to be present. Your considered responses to not allay those concerns, particularly in view of your offices' representations that its investigation has already found violations. All this, for an investigation over which your office lacks jurisdiction and standing in view of preemption and the overriding federal question.

In order to sort all this out, we are sending out today for filing a complaint for declaratory judgment and injunctive relief. On our receiving word that it has been filed, we will send a copy to you by electronic means. Its grounds are those I have provided to you in our past correspondences.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 14, 2008
Page -2-

     We will not appear for testimony absent the court ruling on our application. In the meantime, our clients will gather the documents responsive to your "additional" subpoenas, and forward them to us for review, categorization and Bates stamping, just as they have done in response to your initial office subpoena. This way, we will be in a position to forward them on to you should we not prevail in the litigation.

     Given the vastly divergent views our respective offices have of the jurisdiction and standing of your office with regard to our client's employment of alien, seasonal laborers under the contracts with the United States Department of Labor, it seemed to me that a judicial holding would not only serve each of our clients' interests but also save each of clients from expending time and dollars that might otherwise be put to better use.

     Very truly yours,

Bruce L. Thall

BLT/jkw

508812

# EXHIBIT "I"

Case 1:08-cv-06321-JGK   Document 31-5   Filed 08/19/2008   Page 2 of 28
Case 1:08-cv-07100-UA   Document 8-10   Filed 08/13/2008   Page 2 of 58

Case 1:08-cv-06321-JGK   Document 15   Filed 08/01/2008   Page 1 of 47

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK,<br><br>　　　　　　Defendant. | Civil Action No.<br>08-cv-6321 (JGK) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTION

### I.　　FACTS AND PROCEDURAL HISTORY

#### A.　　Plaintiffs' Complaint for Declaratory Judgment

The Attorney General of the State of New York has undertaken an investigation

and now represents that he has found violations of state law warranting both wider investigation

Case 1:08-cv-06321-JGK    Document 31-5    Filed 08/19/2008    Page 3 of 28
Case 1:08-cv-07100-UA    Document 8-10    Filed 08/13/2008    Page 3 of 58

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhel190!2!3119!!!!!Qbhf !3!pg58

and civil prosecution of Plaintiffs.  The violations at issue are asserted by the State Attorney General to be state law claims for relief rising solely from the alleged breaches by Plaintiff Dreamland of one pre-typed sentence contained in Dreamland's two page Alien Employment Certification that it signs and files with the United States Departments of Labor and Homeland Security.  The State Attorney General contends, albeit incorrectly, that resulting from Dreamland's failures to pay its temporary, seasonal non-agricultural foreign citizen workers the wages due under the Certification, deemed by the State Attorney General to be a binding contract, the failures are deemed "persistent illegality" and "fraud" by the State Attorney General, violative of state statutes within his investigative and prosecutorial jurisdiction.

Dreamland denies that any such breach has occurred and is prepared to meet head on any assertion to the contrary brought by any person, department or agency with jurisdiction to investigate the alleged breach of the certifications/contracts with the United States and with standing to pursue and prosecute such allegations.

The New York State Attorney General is not such a person.  As is set forth hereinafter, preemption necessarily bars anyone, including the New York State Attorney General, from proceeding with an investigation and prosecution of state statutory or state common law claims of any and every ilk, including fraud, arising from the alleged breach by Dreamland of its Certification/contract with the United States Departments of Labor and Homeland Security.

Moreover, the New York State Attorney General has no right or power to conduct an investigation or initiate a prosecution as straw man for the United States Departments of Labor, Homeland Security and Justice, nor has he even been asked to do so.  To the contrary, the thorough, extensive federal statutory and regulatory scheme governs every nook and cranny of

2

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhel190l2l3119!!!!!Qbhf l4lpg58

Dreamland's Certification/contract with the federal government, and provides administrative, civil and criminal sanctions for breaches of such certifications and frauds committed in connection therewith.

Thus, the New York State Attorney General lacks the right, power, or duty to investigate or act. Assuming, *arguendo*, that the law were to the contrary, which it is not, nonetheless the precise question that is the subject of the State Attorney General's investigation -- the determination of the federal prevailing wage that a seasonal, temporary alien worker with a special work visa is entitled to receive from his employment in an industry specifically exempted from the wages, hours and overtime strictures of the Fair Labor Standards Act -- is itself a federal question clearly committed solely to the jurisdiction of the United States Department of Labor for an answer, were there any question raised. Once again, the matter at issue is exclusively committed to the federal authorities for resolution.

Plaintiffs have so advised the New York State Attorney General both orally and in writing, and have suggested that the state officer submit the matter to the United States Department of Labor. [Complaint for Declaratory Judgment, Exhibit B, letter of July 8, 2008 from undersigned counsel to the New York State Attorney General]. Even though the federal authorities who have approved and policed Dreamland's certifications/contracts with the USDOL and USDHS have not seen fit to open an investigation into Dreamland's performance under its federal certifications/contracts, perhaps the violations already found by the New York State Attorney General and the fruits of his investigation will convert the USDOL and USDHS to the New York State Attorney General's point of view.

3

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjmel190l2l3119!!!!!Qbhf l5lpg58

The New York State Attorney General, however, has declined to accept that suggestion and instead has expanded the temporal scope of his investigation by a factor of two, while preparing the filing of his prosecution of Plaintiffs.

Thus, Plaintiffs were compelled to file their Complaint for Declaratory and Injunctive Relief.  The instant pleading is Plaintiffs' formal Motion for a Preliminary and/or Permanent Injunction, to enforce Plaintiffs' rights against the wholesale trampling of them by the size 32 EEE shoe of the State Attorney General.

Because of visceral reactions against the relief Plaintiffs' here seek, and because the laws at issue are somewhat obscure and principles of decision arcane, Plaintiffs are setting out the facts and applicable law in painful detail in order to manifest beyond per adventure that their position is correct in all essential regards, and that their entitlement to injunctive relief is compellingly clear.  Indeed, the detail contained in this analysis is intended to constitute a manifesto that brooks no meaningful response by the State Attorney General.

To that analysis Plaintiffs now turn.

**B.    The Pervasive Federal Program Governing the Employment of Alien Temporary Nonagricultural Workers by Dreamland**

**1.    The Application**

The regulations of the Department of Homeland Security's United States Citizenship and Immigration Service ("USCIS"), codified at 8 CFR 214.2(h)(6) apply to employers who wish to import alien temporary nonagricultural workers classified under 8 U.S.C. § 101(a)(15)(H)(ii)(b) of the Immigration and Nationality Act of 1952, as amended, to work in temporary jobs in the United States. 8 U.S.C. § 1184(c)(1) of the Immigration and Nationality Act requires that the United States Department of Homeland Security ("DHS") consult with the United States Department of Labor

4

Dbt f l2;19.dw 17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhe!190!20!3119!!!!!Qbhf l6!pg58

before determining whether any worker can be admitted under 8 U.S.C. § 101(a)(15)(H)(ii)(b).[1]
Moreover, 8 U.S.C. § 1184 (g)(1) of the Immigration and Nationality Act limits the number of aliens
during any fiscal year who can be issued visas or provided nonimmigrant status, now set at 66,000.

The USCIS regulations, codified at 20 CFR 655(a) and 8 CFR Part 214.2(h)(6), require
that employers who file petitions for H-2B workers with the USCIS must include a certification from
the United States Department of Labor ("USDOL") stating that qualified workers are not available in
the United States and that the employment of foreign workers on United States soil will not adversely
affect wages and working conditions of similarly employed United States workers. If the USDOL
does not so certify, the employer may submit countervailing evidence to DHS's USCIS.

In order to obtain the requisite certification from the USDOL, an employer must file an
Application for Certification of Temporary Nonagricultural jobs on a USDOL Form ETA-750, Part A
of which constitutes the Employer's Application for Alien Employment Certification. That two page
form contains the representations by the employer, based upon a single pre-printed sentence on the
Form ETA-750 which, in the case at bar, constitute the sole basis upon which the New York State
Attorney General has concluded, albeit incorrectly, that Dreamland has persistently and repeatedly
engaged in fraudulent conduct by not paying wages as the State Attorney General computes.

Federal law requires that the ETA-750 be submitted to the United States Department of
Homeland Security for its review and input. That form is submitted to the appropriate State
Workforce Agency ("SWA") for a determination of the prevailing wages in the geographic areas in
which the alien will work. The USDOL recommends that the employer seeking H-2B workers should
submit the ETA Form 750 certification/contract at least sixty days, but no more than one hundred
twenty days, before the need for the workers is expected to arise.

---

[1]     Hence, "H-2B employees."

5

Dbt f l2;19.dw.17432.KHL lllll!Epdvn f ou26lllll!Gjrhel190l20B119lllll!Qbhf l7!pg58

In order to ensure that the employment of the H-2B workers does not usurp jobs from the United States workers, the duration of the employment requested must be for less than one year with the need for the labor being seasonal or intermittent, as is set forth in General Administrative Letter No. I-95 (November 10, 1994), amended by the General Administrative Letter No. I-97 Change I (December 22, 1997).

On receiving the Form ETA-750, the SWA prepares a job order and places it into the Employment Service System for ten days. The employer then advertises the job opportunity in newspapers of general circulation for three consecutive days, or in union, professional trade or other publications, whichever is most appropriate for the occupation and likely to result in responses from United States based workers. The employer must also document that unions and other recruitment sources appropriate for the occupation and customary for the industry could not refer qualified U.S. workers.

On completion of the advertisements and upon the inability to obtain referrals from unions and other recruitment sources, the employer then submits a recruitment report to the SWA setting forth its efforts to obtain United States workers and, if applicable, lawful reasons for not hiring any United States workers who may have applied.

When filing an application for H-2B workers, it is not necessary for the employer to name each temporary foreign worker it wishes to employ. An employer, as did Dreamland, may submit a request for multiple unnamed alien workers so long as each worker will be performing the same types of work under the same terms and conditions and the same occupation within the same areas of intended employment over the same period of time.

The SWA then sends the complete application to the appropriate Federal National Processing Center ("NPC") within the United States Department of Labor. The NPC Certifying

6

Dbt f l2;19.dw.17432.KHL lllll!Epdvn f ou26!lllll!Gjrhel190l2031l9llll!Qbhf l8!pg58

Officer determines whether there are other appropriate sources of workers from which the employer should have recruited in order to obtain qualified United States workers. The NPC Certifying Officer grants the temporary labor certification for H-2B workers so long as the NPC concludes that the employment of the aliens will not adversely affect the wages and working conditions of similarly employed United States workers. That finding is fundamental in view of the Immigration and Naturalization Act itself and particularly 8 U.S.C. § 1101(a)(H)(i)(b), authorizing Congress to enact laws allowing the employment of aliens "to perform temporary service or labor if unemployed persons capable of performing such services or labor cannot be found in this country".

The USDOL's NPC Certifying Officer's temporary labor certification is used by the employer to support its petition for visas for foreign wokers filed with USCIS. The USDOL's labor certification determination, together with USCIS Form I-129 "Petition for Nonimmigrant Worker" is submitted to the United States Department of Homeland Security's United States Citizenship and Immigration Services, together with appropriate filing fees,[2]

The states have no role whatsoever in connection with this process. In this regard, the sole function performed by any state entity is the communication to the United States Department of Labor or the USCIS of the prevailing hourly wage rates in locations within the states and placement of Plaintiff's job orders before forwarding the application to USDOL's National Processing Center

  2.    **Exempt and Non-Exempt Businesses.**

United States workers and nonimmigrant H-2B workers are each accorded protections applying to United States workers under the Fair Labor Standards Act ("FLSA").

---

[2]      These fees are used to fund the administrative fraud prevention and abuse regulatory scheme regarding employers' applications for temporary H-2B workers.

7

Dbt f l2;19.dw.17432.KHL lllll Epdvn f ou26lllll Gjrhel190l2031l19lllll Qbhf l9lpg58

The Federal FLSA, 29 U.S.C. § 201 et seq., sets forth minimum wage, hour and overtime strictures generally governing the relationship between employers and employees.  29 U.S.C. §§ 206, 207.

Certain industries and businesses have been exempted from the wages, hours and overtime provisions of the FLSA, including Dreamland.  29 U.S.C. § 213(a) of the FLSA, headed "Minimum Wage and Maximum Hour Requirements," exempts seasonal amusement and/or recreational establishments from the minimum wage and maximum hour strictures of the FLSA, if the carnival operates for less than seven months a year, or its average receipts for any six months are not more than 1/3 of its average receipts for the other six months.  As a seasonal, nomadic carnival, Dreamland falls within the amusement exception.  The amusement exemption is mirrored in the Code of Federal Regulations 29 CFR 779.385; moreover, the amusement enterprise exemption is also a fixture of the New York Labor Laws.  See, e.g., 12 NYCRR §§ 142-2.2, 142-3.2.

Part A of the USDOL Form ETA-750, the two page document on which the New York Attorney General bases his prosecution, is devoid of any inquiry into the exempt or nonexempt status of the employer under the FLSA and has no place at which the exempt status of the employer may logically be inserted or added.  Moreover, the State Attorney General has admitted that he is investigating and prosecuting Plaintiffs as if they were not an exempt amusement enterprise.

3.    **Federal Fraud Prevention and Prosecution.**

Effective October 1, 2005, through the Save Our Small and Seasonal Businesses Act, amending yet again the Immigration and Naturalization Act and codified at 8 U.S.C. § 1184 (c)(1) and (c)(12-14) and 8 U.S.C. § 1356 (v), with scores of pages of supporting regulations, the

8

Dbt f l2;19.dw.17432.KHL lllllEpdvn f oU26lllllllGjrhel190l2Cl3119lllllQbhf !: lpg58

United States Congress broadened and supplemented the INA's fraud prevention and detection

system to prevent, detect and address instances of employer fraud with respect to Form ETA-750

petitions. The statutory scheme requires consultation among and between the Secretaries of

State, Homeland Security, and Labor in order to prevent and detect fraud with respect to

petitions filed by employers seeking nonagricultural, temporary workers. The penalties for

violators include administrative fines of up to $10,000.00 for each violation, as determined to be

appropriate by the Department of Homeland Security. The statutory scheme also authorizes the

Department of Homeland Security to automatically deny any ETA-750 petitions filed by

employers for a period of up to five years. The Act also permits the Secretary of the United

States Department of Homeland Security to delegate the authority to impose those sanctions to

the United States Secretary of Labor. He has not yet done so.

     This statutory scheme, aimed at rooting out, ending and punishing employers who

submit false and fraudulent Forms ETA-750 to the USDOL or who do not comport with their

representations made to the United States Department of Labor and United States Department of

Homeland Security on the Federal Forms ETA-750, is independent of the power and duty of the

United States Department of Justice to prosecute as felons those who make false statements to

the USDOL in connection with applications for temporary, nonagricultural H-2B workers or

false statements under 18 U.S.C. § 1001; mail fraud under 18 U.S.C. § 1341; wire fraud under 18

U.S.C. § 1343; or RICO pursuant to 18 U.S.C. § 1961.

     Thus, the exhaustive and inclusive H-2B federal employer fraud detection and

prevention regime is comprehensive, including administrative, civil, and criminal penalties for

any employers who run afoul of the Federal Form ETA-750 petition seeking H-2B workers with

the United States Department of Labor and United States Department of Homeland Security,

9

528611-1

Dbt f l2;19.dw.17432.KHL lllllEpdvn f ou26lllllGjfne1190l2l3119lllllQbhf l21lpg58

charged with meting out appropriate sanctions for administrative and civil proceedings, with violations amounting to serious fraud investigated and prosecuted by the United States Department of Justice.

## C. The Business of Dreamland, its Contract with the USDOL and its Limited Operations in New York and its Amusement Enterprise Exemption

Dreamland, Toy Circus and Crossroads are a peripatetic, mobile carnival, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts. For much of the year, Dreamland operates its carnival with its charitable organization partners in small and mid-sized towns in states up and down the East Coast of the United States.

For 2008, Dreamland scheduled its carnival in venues such as New London, Connecticut; West Chester, Pennsylvania; Westport, Connecticut; Leonia, New Jersey; Mt. Pocono, Pennsylvania; Budd Lake, New Jersey; New Haven, Connecticut; Bennington, Vermont; Lyndonville, Vermont; Lancaster, New Hampshire; Ledyard, Connecticut; Fort Bragg, North Carolina; Augusta, Georgia; and other small and mid-sized cities and towns along the East Coast of the United States. Dreamland is scheduled to operate its mobile carnival at New York State venues, such as Islip, Levittown, Farmingdale and New Paltz for approximately six weeks during the year 2008, with some stops as short as three days.

Nonetheless, the New York State Attorney General purports to prosecute Plaintiffs for their activities throughout the length and breadth of their tour stops, even though few occur within New York State.

The Fair Labor Standards Act ("FLSA") sets minimum wage, hour, and overtime requirements for employers. 29 U.S.C. §§ 201, 206, 207. Some employers, however, are exempt. 29 U.S.C. § 213(a), headed "Minimum Wage and Maximum Hour Requirements,"

528611-1

Dbt f l2;19.dw.17432.KHL lllllEpdvn f ou26lllll Gjrhel190l2l3l119lllll Qbhf l22lpg58

exempts amusement and/or recreational establishments from the minimum wage and maximum

hour and, therefore, overtime requirements. The statute reads, in relevant part; .

> The provisions of § 206... and § 207 of this Title shall not apply with respect to —
> (3) any employee employed by an establishment which is an amusement or
> recreational establishment...if (A) it does not operate for more than seven months in
> any calendar year, or (B) during the preceding calendar year, its average receipts for
> any six months of such year were not more than 33⅓ per centum of its average
> receipts for the other six months of such year...

    For certain years Dreamland had not operated its core business for more than

seven months in any calendar year. For each year, however, its average receipts for any six

months of such year are not more than ⅓ of its average receipts for the other six months.[3]

    Thus, Dreamland is exempt from the minimum wage and maximum hour

requirements of the Fair Labor Standards Act, and its employees, including its approximately 20

H-2B employees for 2008, are not covered by the FLSA minimum wage, hour, and overtime

requirements.[4] The New York Labor Laws contain the amusement enterprise exemption as well.

See, e.g., 12 NYCRR §§ 142-3.2, 142-2.2

    Likely due to the fact that Dreamland is an exempt amusement enterprise so that

wages, hours and overtime do not apply to employees of Dreamland, and because high costs of

its labor intensive operation and limited ability to generate revenue effectively preclude mobile

carnivals such as Dreamland from deriving sufficient revenues to pay a full complement of

United States born workers a wage sufficient to induce employment with Dreamland, Dreamland

is compelled to look beyond the borders of the United States in order to find workers who are

willing to be itinerant mobile carnival employees in return for wages that mobile carnivals such

---

[3]    Dreamland does not generally schedule its carnival in late fall and early winter and therefore has no
receipts for several months in each calendar year. Its average receipts for any six months in a calendar year range
from approximately 18% in 2005 to 26% in 2006.
[4]    Not surprisingly, the FLSA amusement establishment exemption is mirrored in the Code of Federal
regulations. 29 C.F.R. 779.385.

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjmfe190!203119!!!!!Qbhf !23!pg58

as Dreamland can afford to pay them and remain in business. Dreamland currently employs approximately one score such foreign national workers, each of whom has an "H-2B" visa issued by the Federal Government under the Immigration and Naturalization Act based upon Dreamland's application to the United States Department of Labor and the United States Department of Homeland Security, which the United States Departments have approved.

In order to obtain the temporary, seasonal employees from foreign countries, Dreamland followed each and every step set forth in § I(B), *supra*, first advertising for native-born workers and then certifying to the United States Department of Labor and United States Department of Homeland Security that its temporary need for the alien employees is based upon its inability to obtain native-born workers. The form that Dreamland must submit to the Department of Homeland Security's USCIS[5] in connection with its request for permission to employ alien seasonal workers requires the submission of precisely such an explanatory justification. The form submitted by Dreamland for the year 2008 recites at Section 2(3) under "Explain your temporary need for the alien's services" the following:

> DUE TO THE SHORTAGE OF U.S. WORKERS TO FILL THE LABORER POSITIONS WITH OUR ANNUAL TOURS, WE HAVE A CRITICAL NEED FOR TEMPORARY WORKERS TO ERECT LOADING AND UNLOADING BEFORE/AFTER EACH TOUR STOP. WE HAVE ADVERTISED AND RECRUITED ONCE AGAIN PER THE GUIDELINES AND INSTRUCTIONS AS SET FORTH BY THE DOL/INS FOR THIS JOB CATEGORY.
>
> WE HAVE ALSO POSTED HELP-WANTED SIGNS AT THE VARIOUS CITIES THAT WE TRAVEL TO DURING OUR TOURS.
>
> BECAUSE THIS JOB INVOLVES OUTDOOR WORK, MANY PEOPLE BECOME DISCOURAGED BY HAVING TO WORK IN THE ELEMENTS (HEAT, COLD, RAIN, ETC.). HOWEVER, THE MAIN PROBLEM IS FINDING PEOPLE THAT ARE WILLING/ABLE TO TRAVEL ON TOUR TO THE VARIOUS LOCATIONS FOR THE ENTIRE DURATION OF OUR OPERATING SEASON. THESE REASONS MENTIONED ALSO MAKE THIS TEMPORARY NEED NECESSARY FOR US TO BE ABLE TO CONTINUE TO OPERATE SUCCESSFULLY AND TO MEET OUR COMMITMENTS AND NOT LOSE OUR DATES TO THE COMPETITION.

---

[5]    The form is the H Classification Supplement to Form I-129.

12

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhe!190l2③119!!!!!Qbhf l24!pg58

This certification by Dreamland to the United States Department of Homeland Security and its United States Citizenship and Immigration Service is crucial in order to comport with the Immigration and Naturalization Act. Central to the Act is ensuring that United States workers are not displaced from obtaining employment by alien, seasonal workers. See, e.g., 8 U.S.C. § 1101(a)(H)(ii)(b) (setting out the power of the United States Congress to enact laws governing aliens residing in a foreign country which they have no intention of abandoning, who come to the United States "to perform temporary service or labor if unemployed persons capable of performing such services or labor cannot be found in this country.") (Emphasis supplied). The seasonal, temporary alien employees sought by Dreamland have H-2B visas based upon this subsection of 8 U.S.C. § 1101(a).[6]

As is set forth in § I(B), *supra*, the process of obtaining H-2B workers for enterprises such as Dreamland is one governed solely and exclusively by federal law, with virtually each and every step in the process committed exclusively to the United States Department of Labor, the United States Department of Homeland Security and its United States Citizenship and Immigration Services, and the United States Departments of State and Justice.

The document upon which the New York State Attorney General bases his pursuit and prosecution of Plaintiffs is a preprinted sentence of the two-page component of the massive documentation submitted by and for Dreamland to the United States Department of Labor, the United States Department of Homeland Security and their designees in multiple federal departments, and their agencies and bureaus within, in order to obtain H-2B visas for seasonal,

---

[6]    Intriguingly, were the State Attorney General correct in his view that Dreamland was required to pay each H-2B worker prevailing wages and at forty hours per week, and at time and one/half for overtime, the H-2B workers would be paid more than native born United States workers for the same position. This, of course, directly contradicts and undercuts the FLSA exemption and obliterates both the statute and premise upon which the H-2B workers are hired in the first instance.

13

Case 1:08-cv-06321-JGK    Document 31-5    Filed 08/19/2008    Page 15 of 28
Case 1:08-cv-07100-UA    Document 8-10    Filed 08/13/2008    Page 15 of 58

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjmel190!2Œ119!!!!!Qbhf !25!pg58

foreign born employees. Those here at issue, and upon which the State Attorney General purports to base its prosecution, however misguided, are the United States Department of Labor, Employment and Training Administration Forms ETA-750A.[7] Those filed by Dreamland in anticipation of the 2006, 2007 and 2008 Dreamland mobile carnival tours are attached hereto as Exhibit "A".[8]

    Review of the federal form ETA-750 is instructive. First, as recommended by the USDOL, each was signed and submitted four to six months before the year within which the H-2B employees of unknown numbers and identities will be working. Before the tour stops are finalized, the precise numbers of employees required and such niceties as even the length of the season are not known or knowable as of the time of submission of the form ETA-750 to the United States Department of Labor. Moreover, as is reflected on the first page of each of the forms, all enclosures must also be submitted to the United States Citizenship and Immigration Services of the United States Department of Homeland Security, as well as the United States Department of Labor.

    The two-page "Application for Alien Employment Certification" contains at paragraph 23(b) under "Employer certifications" the following pre-printed language:

> The wage offered equals or exceeds the prevailing wage and I guarantee that if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

---

[7]    Neither Crossroads nor Toy Circus has ever applied for or employed any alien with or without an H-2B visa. This fact, uncontested and uncontestable, has been communicated orally and in writing to the State Attorney General. The fact has not had any impact upon the State Attorney General's subpoenas or investigation.

[8]    . The original office subpoena propounded by the State Attorney General on May 23, 2008 covers the period from January 1, 2006 through the present. On July 8, the State Attorney General served by email a supplemental subpoena purporting to cover the period July 8, 2002 through December 31, 2005. The earlier forms are similar or identical in all material reports.

14

Dbt f l2;19.dw 17432.KHL !!!!!Epdvn f ou26!!!!!Gjfhe!190l203119!!!!Qbhf l26!pg58

There is not, nor could there be, any specific guarantee contained in the Federal Form ETA-750, with respect to the number of H-2B workers Dreamland will employ, or the number of weeks that each H-2B worker will be employed, or the number of hours each employee will work per week, much less the number of hours of overtime.

What is instructive, however, is the absence of any guarantee of hours of work, much less hours of overtime. For example, Block 10 on the Federal Form ETA-750 submitted to the United States Department of Labor by Dreamland for 2006, recites an estimate of 40 hours basic and no overtime per week with no rate of payment for overtime. The form instead lists a basic weekly rate of pay of $310.80 per H-2B employee. This ETA-750 submission for Dreamland was approved by the United States, as were all others.

Equally instructive is what is excluded from the Federal Form ETA-750. There is no place on the form for noting that the employer is exempt from the wages and hours and overtime provisions of the FLSA, or otherwise noting that whatever is the "applicable prevailing wage" as preprinted in paragraph 23(b) of the Form ETA-750, it is not the FLSA prevailing wage, hour and overtime strictures and rates.

The New York State Attorney General has represented orally and in writing that the violations its investigation has found of "repeated fraudulent and illegal acts" and/or "persistent fraud and illegality" are premised solely upon its contention that Dreamland repeatedly failed to pay to its H-2B employees the prevailing wage as computed by the State Attorney General, as required by pre-printed paragraph 23(b) of the general certification Dreamland made to the United States Department of Labor and the United States Department of Homeland Security. That the State Attorney General deems the FLSA irrelevant to its quest is

15

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjmfe!19012031191!!!!!Qbhf !27!pg58

manifested by the fact that its original office subpoena encompasses a timeframe that precludes the Attorney General from determining whether the FLSA exemption applied, save for one year.

One may fairly ask how the State Attorney General can make such a determination across the swath of Dreamland's multi-state carnival route, particularly in view of the FLSA exemption. One may also fairly ask how it is that the State Attorney General has arrogated onto himself the determination that the FLSA exemption should be ignored, and instead deem that the pre-printed language of 23(b) of the two page ETA-750 both vacates the FLSA exemption and reimposes that Act's wage, hour and overtime requirements, and more. Plaintiffs have asked. The State Attorney General has not provided an answer.

The New York State Attorney General has thus created out of whole cloth from his skewed view, that the preprinted paragraph 23(b) on the Federal Form ETA-750 certification constitutes a binding contract to pay FLSA wages, hours and overtime so that Dreamland's alleged breach of its certification/contract with the United States Department of Labor is a "repeated and persistent fraud and fraudulent misrepresentation" that he has the power to prosecute under state laws. Thus, his investigation and prosecution encompass wages paid by Dreamland to its H-2B employees at each and every small and mid-sized town throughout the Eastern United States at which Dreamland sets up its mobile carnival.

This it cannot lawfully do. Indeed, any such investigation, much less a prosecution, is within the sole and exclusive power and jurisdiction of the United States due to Preemption. Moreover, were there a question regarding the interpretation of the wage certification at ¶ 23(b) of the Alien Certification, that question, too, may only be answered by the United States Department of Labor and/or the United States Department of Homeland Security.

16

Dbt f !2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!!Gjrhe!190!2Ø3119!!!!!Qbhf !28!pg58

Finally, were there "fraud," the prosecution is solely the right and duty of the United States, including the United States Department of Justice.

Thus, Plaintiffs respectfully submit that they are entitled to the declaratory relief they seek and an injunction as the means to enforce it.

## II.    LEGAL ARGUMENT

### A.    The Standards Governing the Granting of Injunctive Relief

Although absent from the body of Fed. R. Civ. P. 65 itself, the authority to issue injunctions, derived from the Court's inherent equitable powers, hinges upon a determination that a party meets some or all of the four-factor test for injunctive relief: (1) irreparable injury; (2) inadequacy of remedies at law; (3) the balance of the hardships favors the party seeking injunctive relief; and (4) consideration of the public interest. See, e.g. eBay, Inc. v. MercExchange, LLC, ____ U.S. ____, 126 S. Ct. 1837 (2006); In re Zyprexa Injunction, 474 F. Supp.2d 385 (E.D.N.Y. 2007). As is set forth at paragraphs 63 through 67 of their Complaint for Declaratory Judgment and Injunctive Relief, Plaintiffs respectfully submit that they have manifested an entitlement to injunctive relief.

Although there is no one litmus test against which applications for injunctive relief may be scientifically analyzed, Plaintiffs respectfully submit that in instances in which states act to eliminate or limit federally created or derived rights of constitutional, statutory, or even common law dimension, courts routinely grant injunctive relief, recognizing in part that the deprivation of the federal right itself constitutes irreparable harm. It is beyond peradventure that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. Implicit in the federal system, the law has explicitly recognized such jurisdiction since Ex parte Young, 209 U.S. 123, 160-162 (1908). See, e.g., Camacho v. Texas Workforce Comm'n,

17

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhe!190!20!119!!!!!Qbhf l29!pg58

326 F.Supp.2d 794 (S.D.Tex. 2004) (enjoining state proposed rules limiting eligibility for cash and medical assistance); Western State Univ. of S. California v. American Bar Ass'n, 301 F.Supp.2d 1129 (S.D.Ca. 2004) (mandatory injunction prohibiting withdrawal of law school's provisional accreditation); Pankos Diner Corp. v. Nassau County Legislature, 321 F.Supp.2d. 520 (E.D.N.Y. 2003)(enjoining enforcement of county law barring smoking in restaurants due to loss of business and inability to obtain monetary damages against the state due to Eleventh Amendment); Karahabodas Co. v. Perusahaan Pertambangan Minyakdangas Bumi Nebara, 264 F.Supp.2d 470 (S.D.Tex. 2002)(enjoining actions of Indonesian manager to annul arbitral award in Indonesian court, because contractor would be forced to relitigate issues which contractor had won in district court); Ford Motor Co. v. Podocheene, 221 F.Supp.2d 1070, 1088 (D. Ariz. 2002)(enjoining prosecution of action nonmember brought in Native American tribal court following vehicle accident on reservation pending district court's decision as to jurisdiction of tribal court); Herman v. Fashion Headquarters, Inc., 992 F.Supp. 677 (S.D.N.Y. 1998)(Secretary of Labor entitled to injunction against garment manufacturer who failed to pay wages or overtime as provided in the FLSA).

The right to injunctive relief is most imperative and clear in cases in which the deprivation is of a constitutional right. See, e.g., Government Suppliers Consolidating Services v. Bayh, 975 F.2d 1267 (7th Cir. 1992), cert. denied, 506 U.S. 1053 (1993)(enjoining state statute declared to be in derogation of Commerce Clause); Valero Terrestrial v. Caperton, 36 F.Supp.2d 724 (N.D.W.Va. 1994)(declaratory judgment enjoining state solid waste statutes for violation of Commerce Clause); Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290 (D.C. Cir. 2006)(enjoining the United States Navy's violation of establishment clause through retaining only Catholic chaplains past the applicable age limits); Heideman v. South Salt Lake

18

Dbt f l2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!Gjmfe1901203119!!!!!Qbhf !2: !pg58

City, 348 F.3d 1182 (10th Cir. 2003)(1st Amendment); Abu-Jamal v. Price, 154 F.3d. 128 (3d Cir. 1998)(1st Amendment); Counsel of Alternative Political Parties v. Hooks, 121 F.3d. 876 (3d Cir. 1997)(enjoining New Jersey statute governing filing of nominating petitions for alternative party candidates); Marcus v. Iowa Public Television, 97 F.3d. 1137 (8th Cir. 1996)(enjoining public television station from excluding candidates for the United States Congress from televised appearances before panel of reporters); New York State Bar Ass'n v. Reno, 999 F.Supp. 710 (S.D.N.Y. 1998)(1st Amendment); Elrod v. Burns, 427 U.S. 347 (1976)(1st Amendment).

Federal preemption claims are based upon federal rights, over which federal courts have jurisdiction under 28 U.S.C. § 1331, precisely because preemption itself is predicated upon the Supremacy Clause of the United States Constitution, thereby necessarily presenting an actionable federal claim of constitutional dimension. See, e.g., Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96 (1983); Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921); Louisville & Nashville Ry. Co. v. Mottley, 211 U.S. 149, 152 (1908). Injunctive relief is also of paramount importance in connection with preserving the constitutional balance between the federal and state systems, particularly in areas in which Preemption and the Supremacy Clause attach. See, e.g., Morales v. Transworld Airlines, Inc., 504 U.S. 374 (1993)(enjoining states from enforcing fare guidelines alleged to be preempted by federal law).

As was his want, Judge Friendly boiled down the verbiage pursuant to which applications for injunctive relief were measured in instances in which defendants are alleged to violate a statute:

> A plaintiff asking an injunction because of the defendant's violation of the statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable injury" means in this context is that unless an injunction is granted, the plaintiff will suffer harm, which cannot be repaired." Studebaker Corp. v. Gittlin, 360 F. 2d 692, 698 (2d Cir. 1996).

19

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhe!190!2C3119!!!!!Qbhf !31!pg58

So, too, here.

Those principles attach to authorize injunctions to bar or prohibit threatened civil and even criminal actions.  In Mesa Petroleum Co. v. City's Serv. Co., 715 F. 2d 1425 (10th Cir. 1983), the court affirmed the trial court's grant of a preliminary injunction barring prosecution under the Oklahoma Take-Over Bid Act even after bids were withdrawn, due to a potential threat of renewed prosecution.  In this regard, federal courts have enjoined state criminal statutes, even though no prosecution has been instigated, in circumstances in which the threat of great and immediate irreparable injury exists and no other adequate remedy is available.  See., e.g., Wooley v. Maynard, 430 U.S. 705 (1977); Doran v. Salemn, Inc., 420 U.S. 922 (1975) Dombrowski v. Pfister, 380 U.S. 479 (1965); See, Watson v. Buck, 313 U.S. 387, 400 (1941); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95 (1935); In re Lustron Corp., 184 F.2d. 789 (7th Cir. 1950), cert. denied, 340 U.S. 946 (1951), holding that courts have the jurisdiction to enjoin all proceedings impinging the court's functions of administering an estate.

Here, Plaintiffs do not seek to enjoin a criminal prosecution.  None has been instituted.  Plaintiffs do not seek to enjoin a state civil action.  None has yet been instituted, although the State Attorney General claims that he has already found state law violations.  Rather, Plaintiffs seek a judgment decreeing that preemption bars the United States Attorney General from further investigation and any prosecution of any claims based in whole or in part upon his construction or interpretation of the Form ETA-750 certification/contract between Dreamland and the USDOL and USDHS, and that the determination whether there is a breach by Dreamland of any provision of the contract lies solely within the federal departments and agencies, with penalties if any to be meted out as they alone or with the United States Department of Justice determine; moreover, Plaintiffs' seek to have these declarations set forth in

20

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f oU26!!!!!Gjrhel190l2Q3119!!!!!IIQbhf l32!pg58

an injunction until final disposition of this matter can occur, in order to maintain the status quo

ante and avoid irreparable harm. Indeed, as is set forth below, injunctive relief in connection

with applications for declaratory judgment is a preferred vehicle to accomplish this result.

B.   **Injunctions May Issue to Enforce the Declaratory Judgment Remedy**

The Declaratory Judgment Act, 28 U.S.C. § 2201, is the statutory mechanism

authorizing the courts of the United States to declare the rights and relations of interested parties

in cases of actual controversies. The statute reads in relevant part:

> In a case of actual controversy within its jurisdiction...any court of the United States,
> upon the filing of an appropriate pleading, may declare the rights and other legal relations
> of any interested party seeking such declaration whether or nor further relief is or could
> be sought. Any such declaration shall have the force and effect of final judgment or
> decree and shall be reviewable as such.

It has long been the law that the declaratory judgment remedy may be obtained

through an application for an injunction. In this regard, the Supreme Court has determined that

injunctive relief enforcing a declaratory judgment was appropriate in a case eerily similar to that

at bar.

In Morales v. Transworld Airlines, Inc., 504 U.S. 374 (1992), the Supreme Court

affirmed the trial court's injunction barring state attorneys general from using their state's

statutes and state's common law to enforce state views that airlines were engaging in deceptive

practices, based upon grounds of preemption. In Morales, the Federal Aviation Act had given

the Civil Aeronautics Board the authority to regulate interstate airfares and take administrative

action against certain deceptive trade practices. The statute did not expressly preempt state

regulation however; indeed, the Act contained a "savings clause" providing that "nothing... in

this chapter shall in any way abridge or alter the remedies now existing at common law or by

statute, but the provisions of this chapter are in addition to such remedies."

21

528611-1

Dbt f !2;19.dw 17432.KHL !!!!!Epdvn f ou26!!!!!Gjrhe!190!2䁑119!!!!!Qbhf !33!pg58

Congress later enacted the Airline Deregulation Act, which act was intended to bar states from enforcing any law "relating to rates, routes, or services" of air carriers; however, the Act retained the saving clause *in haec verba*.

Thereafter, the National Association of Attorneys General ("NAAG"), whose members included the attorneys general of all fifty states, several territories and the District of Columbia, adopted Air Travel Industry Enforcement Guidelines. The Guidelines contained detailed standards purporting to govern the content and format of airline advertising and the awarding of premiums to frequent flyers, and the payment of compensation to passengers voluntarily yielding their seats on overbooked flights. The attorneys general of seven states then sent a memorandum to the major airlines announcing that many carriers were not adhering to the attorneys general's Advertising Guidelines, and that each such failure "is a violation of our respective state laws on deceptive advertising and trade practices". The seven attorneys general thereafter sent formal notices of intent to sue the airlines for their advertising practices which the attorneys general claimed violated various state laws.

The airlines thereupon filed a declaratory judgment action in federal court, claiming that the threatened state litigation constituted state regulation of their advertisements, which was preempted by the Federal Act, and requested an injunction restraining the attorneys general from taking any action under the various state deceptive practice statutes and common law causes of action that would regulate the airlines' rates, routes, services or their advertising and marketing.

The trial court entered the preliminary injunction, which injunction was affirmed by the Court of Appeals and the Supreme Court. In so affirming, the Supreme Court first held that the entry of injunctive relief in furtherance of the declaratory judgment was necessary and

22

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrfie!190!2B119!!!!!Qbhf !34!pg58

proper, in view of the state attorneys general having sent notices of intent to sue, thereby

initiating a civil proceeding that would violate the Constitution due to preemption, even though a

challenge after the actions had been filed could well have resulted in the state claims for relief

being held unconstitutional on grounds of preemption. In this regard, the Supreme Court opined:

> In Ex parte Young 209 U.S. 123 156 (1908), we held that [equity
> not acting in face of adequate remedy at law] does not prevent
> federal courts from enjoining state officers who threaten and/are
> about to commence proceedings, either of a civil or criminal
> nature, to enforce against parties affected by an unconstitutional
> act, violating the Federal Constitution. When enforcement actions
> are imminent – and at least when repetitive penalties attach to
> continuing or repeated violations and the moving party lacks the
> realistic option of violating the action once and raising its federal
> defenses – there is no adequate remedy at law. Morales, supra,
> 504 U.S. at 381.

The Supreme Court deemed Ex parte Young controlling, establishing the airlines'

right to injunctive relief restraining the attorneys general from acting in view of the attorneys

general notices of violations of state laws and intent to sue based upon them:

> We think Young establishes that injunctive relief was available
> here. As we have described, the attorneys general…had made
> clear that they would seek to enforce the challenged portions of the
> Guidelines (those concerning fair advertising) through suits under
> their respective state laws, and Texas law, at least, imposes
> additional liability (by way of civil penalties in consumer
> treble/damages actions) for multiple violations…Like the plaintiff
> in Young, then, respondents were faced with a Hobson's choice:
> continue to violate the Texas law and expose themselves to
> potentially huge liability, or violate the law once as a test case and
> suffer the injury of obeying the law during the pendency of the
> proceedings and any further review. Morales, supra, 504 U.S. at
> 381.

So, too, here. The New York Attorney General has represented, both orally and

in writing, that he has found violations in connection with his investigation. He has threatened

the initiation of civil and potentially criminal actions. The judgment plaintiffs here seek is to

23

528611-1

Dbt f l2;19.dw.17432.KHL lllllEpdvn f ou26lllllGjrhel190l2Œ119lllllQbhf l35lpg58

fend off such proceedings, based on preemption, enforced through the mechanism of a declaratory judgment injunction. Thus, Morales is controlling.

With respect to the merits, Morales held that, despite the savings clause remaining in the Airline Deregulation Act, preemption nonetheless attached; as a result, Morales held that all suits based upon various state law claims for violations of the fair advertising provisions of the NAAG Guidelines were preempted, and affirmed the judgments of the Court of Appeals and Trial Court insofar as they awarded injunctive and declaratory relief with respect to any such suits filed based upon those provisions. The district court had enjoined the attorneys general not only from using state laws to enforce the fair advertising sections of their guidelines, but also from initiating any enforcement action seeking to regulate or restrict "any aspect of the plaintiff airline's airfare advertising or other operations involving their rates, routes, and/or services." Since no suit had been threatened regarding airlines' other operations, routes, and/or services, injunctive relief was deemed improper because "in suits such as this one, which the plaintiff intends as a 'first strike' to prevent a State initiating a suit of its own, the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury". Morales, supra, 504 U.S. at 382. The court therefore vacated that portion of the injunction barring the initiation of enforcement actions that had not been threatened.

No such problem here exists, because the declaration and injunction that Plaintiffs seek are narrowly tailored precisely to proceedings based upon the State Attorney General's unique view of Dreamland's ETA-750 certifications/contracts with the USDOL and USDHS.

Morales does not stand alone. Where threatened action by the government is concerned, the Supreme Court does not require that a plaintiff expose himself to liability before bringing suit to challenge the basis for the governmental threat, particularly where the threat

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjme!190!2!3119!!!!!Qbhf l36!pg58

arises from an unconstitutional act of the government. For example, in Terrace v. Thompson, 263 U.S. 197, 216 (1923), upon the state threatening plaintiff with forfeiture of his farm, and fines and penalties were he to enter into a lease with an alien in violation of a state anti-alien land law, the Supreme Court did not require that plaintiff sign the lease as a prerequisite to testing the validity of the law by a suit for an injunction. See also, Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926); Ex parte Young, 209 U.S. 123 (1908). Similarly, in Steffel v. Thompson, 415 U.S. 452, 458-60, 480 (1974),[9] the Supreme Court did not require that a plaintiff distribute handbills in violation of a state statute precluding such distribution and thereby risk prosecution, before he could seek a declaratory judgment regarding the constitutionality of the state enactment because "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity". Indeed, the coercion of being forced to choose between abandoning the right or risking prosecution is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate". Abbot Laboratories v. Gardner, 387 U.S. 136, 152 (1957).

No wonder that the declaratory judgment relief is supported through applications for injunctions. Indeed, evolving Supreme Court principles of jurisdiction have applied the Declaratory Judgment Act to find an actual controversy in instances in which a plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of even a private party, and not the government. See, e.g., Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) (patent licensee not required to terminate or breach license agreement prior to seeking declaratory judgment of patent invalidity).

Where, as here, plaintiffs have sought declaratory relief as well as injunctive relief, the district court has "the duty to decide the appropriateness and the merits of the

---

[9]     Steffel had initially filed for injunctive relief, as well as declaratory judgment. After the trial court had denied both, Steffel appealed only the denial of declaratory relief.

528611-1

Dbt f l2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!Gjrhe!190!2!3119!!!!!Qbhf !37!pg58

declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction". Zwickler v. Koota, 389 U.S. 241 (1967); Roe v. Wade, 410 U.S. 113, 166 (1973); Steffel, supra, 415 U.S. at 468-469; Super Tire Engineering Co. v. McCorkle, 416 U.S. 115 (1974).

Moreover, where questions of preemption are raised, even the filing of an action in a state court does not preclude the lower federal courts from rendering the initial determination of preemption, and therefore rendering appropriate the grant of declaratory and injunctive relief. For example, in Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), twenty-six taxpayers who had pledged their anticipated tax refunds to obtain short-term loans from Beneficial National Bank, filed a state court action against the bank, seeking compensatory and punitive damages for the bank charging interest rates they claimed were usurious under state law. Even though the complaint did not refer to any federal law, Beneficial removed the case asserting that it was a national bank, chartered under the National Bank Act, and that the rates of interest it had charged were in compliance with the rates of interest that national banks could charge pursuant to federal statute.

In reversing the court of appeals, the Supreme Court held that the National Bank Act provided the exclusive cause of action for any allegation of usury against the chartered national bank, and that any state-law-based claim of usury was preempted, so that the state court action was properly removed. In so ruling, the Supreme Court adumbrated that where certain areas of the law had been preempted, there can be no state law based claims, and therefore, any state court action purporting to raise such claims was perforce removable to federal court.[10]

---

[10]    Beneficial itself identified preempted federal areas of law which perforce bar any state court actions or enforcements to include the entirety of The Labor Management Relations Act, Avco Corp. v. Machinists, 390 U.S. 557 (1968); nuclear accidents and nuclear incidents under the Price-Anderson Act, El Paso Natural Gas Co. v.

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhe!190!2C3119!!!!!Qbhf !38!pg58

Thus, as set forth in Beneficial, where federal statutes preempt state law based claims for relief, any state law claim that comes within the scope of the federal statute is in reality based on federal law even if pleaded in terms of state law, and therefore is preempted. Beneficial, supra, 539 U.S. at 7.

In holding that the National Bank Act preempted state law and provided the exclusive cause of action for claims of usury regardless of state law, Beneficial cited a long line of cases precluding state-based claims for relief that were contrary, supplemental, inconsistent or even consistent with federal statutes, and then warned that the special nature of federally-chartered banks cried out for uniform rules limiting the potential for such banks to be exposed to varying and various state law based claims for relief, and prescribing exclusive remedies available to depositors alleging bank overcharges, as essential to avoid chaos and confusion:

> [This] court has also recognized the special nature of federally chartered banks. Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possibly unfriendly state legislation'. Tiffany v. National Bank of Mo., 18 Wall 409, 412 (1874). These same federal interests that protected national banks from state taxation that Chief Justice Marshall characterized as the 'power to destroy', McCullough v. Maryland, 4 Wheat. 316 (1819), support the established interpretation of [federal statutes] that give those provisions the requisite preemptive force to provide removal jurisdiction....[Because the statutes] provide the exclusive cause of action for such claims, there is, in short, no such thing as a state law claim of usury against a national bank. Beneficial, supra, 539 U.S. at 7.

It is respectfully submitted that the authorities compel the conclusion that plaintiffs are entitled to the declaratory judgment that they seek.

---

Neztsosie, 526 U.S. 473 (1999); and ERISA, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987). There are others as well, some of which are totally preempted and some of which are preempted in part.

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhe!190!2031!9!!!!!Qbhf !39!pg58

**C.**    <u>Preemption Precludes the Attorney General from Pursuing or Prosecuting
the Matter Under Investigation</u>

Having established that declaratory judgment is the appropriate vehicle to obtain

the adjudication sought by Plaintiffs, and that an injunction is the appropriate mechanism to

enforce the relief to which Plaintiffs are entitled, Plaintiffs will now explore the authorities

manifesting beyond peradventure that the New York State Attorney General is affirmatively

precluded from investigating or prosecuting the matter he has represented, both orally and in

writing, to be under investigation.

The New York State Attorney General has represented that it believes that

Plaintiffs have and are engaging in repeated fraudulent and illegal acts, and have demonstrated

persistent fraud and illegality in payments of wages to the H-2B employees of the traveling

carnival.  The New York State Attorney General has repeatedly represented, both orally and in

writing, that the "fraud" and "persistent illegality" consists entirely of Plaintiffs' alleged failures

to pay temporary, seasonal alien workers a "prevailing wage" as compensation as is set forth in

the preprinted paragraph 23(b) of the Forms ETA-750, the certification of Plaintiff Dreamland

Amusements, Inc. with the USDOL and USDHS, which certification the State Attorney General

claims is a contract.  The New York State Attorney General claims it has the power under New

York Executive Law 63(12) to investigate and prosecute the "repeated fraudulent and illegal

acts" and "persistent fraud and illegality" under state law, and has acknowledged it could well

bring criminal proceedings against Plaintiffs under New York Executive Law 63.

Contrary to the position asserted by the Attorney General, such investigation and

prosecution are acts which the New York State Attorney General may not undertake.  Indeed, as

is set forth below, he is affirmatively barred from investigating or proceeding in the first

instance, and may not use state laws to do an end run around federal preemption.

28

528611-1

Dbt f l2;19.dw17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrfhe!190l2C83119!!!!!Qbhf l3: !pg58

The Supremacy Clause of the United States Constitution provides that the laws of the United States shall be "the supreme law of the land". U.S. Const. Art. VI., cl. 2. It is well established that Congress possesses the power to preempt state law. Congress may preempt state law by an explicit mandate contained in the federal enactment of law or by indicating an intent to occupy the field of regulation and thereby displace any and every state law on the same subject. Morales, *supra*; Brown v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491 (1984).

Indeed, even in instances in which Congress has not expressly or impliedly evidenced an intention to occupy a field, courts may nonetheless determine that state laws are displaced to the extent that they conflict with the carrying out of federal laws. Such conflicts between state and federal laws exist when compliance with state law "stands as an obstacle to the accomplishment of execution of the full purposes and objectives of Congress". Morales, *supra*; Brown, *supra*, 468 U.S. at 501.

Based upon these concepts, the Supreme Court has created broad rules of preemption to preclude state intrusions on federal laws, to avoid conflicts or inconsistencies with state rules of law, or with state remedies or with state administration of the federal laws, e.g., San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 242 (1969).

The potential inimical results from potential conflicts of rules of law are that each state will require different behavior than that prescribed by the federal law. The danger from intrusions regarding differing remedies is that the various states may provide for differing consequences for the same actions or penalize conduct the federal law authorizes, or allow that which federal law precludes. The problems arising from intrusions on federal administration of a statutory scheme are that Congress's design to entrust questions to the experts to whom it had delegated resolution can be undermined and indeed erased through states purporting to exercise

29

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhe1190!20311!9!!!!!Qbhf !41!pg58

jurisdiction over the same questions. See, e.g., Healthcare Ass'n of New York State, Inc. v.

Pataki, 471 F. 3d 87, 94-95 (2d Cir. 2006).

In order to guard against any of these three potential conflicts, each of which

would undermine the federal statutory and regulatory regime, Garmon held that state laws and

regulations are preempted "[w]hen it is clear or may be fairly be assumed that the activities

which a State purports to regulate are protected by the federal enactment or constitute a violation

under the federal enactment." Garmon, supra, 359 U.S. 236, 244[11]; Hoffman Plastic

Compounds, Inc. v. NLRB, 535 U.S. 137, 147-48 (2002)(denying to the federal NLRB the

power to award back pay to unauthorized aliens in view of the INA).

Thus, under Garmon, states may not regulate activity that the statute protects,

prohibits or even arguably protects or prohibits. Wisconsin Dept. of Indus., Labor & Human

Relations v. Gould, 475 U.S. 282, 286 (1986). This broad preclusion principle has been utilized

to preempt state action even where the state act was substantive, remedial, and consistent with

the primary jurisdiction of the federal government and it agencies [Livadas v. Bradshaw, 512

U.S. 107, 116-117 (1994)(state law held preempted because it conflicted with federal labor law);

Gould, supra, 475 U.S. at 287-288 (state regulation preempted even though it augmented the

remedies provided by federal statute); Garmon, supra, 359 U.S. at 244 (state tort claim

preempted even though NLRB declined jurisdiction over actions arguably prohibited by

NLRA)]. In this regard:

> If the state law regulates conduct that is actually protected by
> federal law…preemption follows not as a matter of protecting
> primary jurisdiction, but as a matter of substantive right". Brown
> v. Hotel & Rest. Employees & Bartenders, 468 U.S. 491, 503
> (1984).

---

[11]    In this regard, it is noteworthy that Garmon required that federal courts as well as state courts must defer to
the NLRB for questions arguably arising under Sections 7 or 8 of the National Labor Relations Act.

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhel190!203119!!!!!Qbhf !42!pg58

So, too, here.

Indeed, the concerns expressed by the Supreme Court regarding potentially inconsistent conflicts of remedies and dualities of administration for the same acts have resulted in numerous holdings of the Supreme Court preempting state actions based on tort or common law principles or state statutes. See, e.g., American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995)(Illinois consumer fraud act preempted by federal airline deregulation act); Morales, supra; Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992)(state law fraudulent misrepresentation claim against cigarette manufacturer preempted by federal cigarette labeling and advertising act); Wisconsin Dept. of Indus., Labor & Human Relations v. Gould, 475 U.S. 282 (1986)(Wisconsin statute debarring employer from contracts with state based on repeated violations of NLRA is preempted by the penalties provisions of the NLRA).

In Metropolitan Life Co. v. Taylor, 481 U.S. 58, 63 (1987), the Supreme Court affirmed the removal to federal court of state contract and tort claims, holding that the substance of those state claims had been preempted by the Employee Retirement Income Security Act. Similarly, in Oneida Indian Nation v County of Oneida, 414 U.S. 661, 675 (1974), the Supreme Court affirmed the removal to federal court of a state law complaint averring a present right to possession of Native American tribal lands because it necessarily was bottomed upon a right under federal law, and was completely preempted.

The same tenets and logic apply to the regulation of immigration and employment of aliens. The Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of the Department of Labor have had vested in them the "administration and enforcement of the chapter and all other laws relating to the immigration and nationalization of aliens." See, 8 U.S.C. § 1102(a). The powers so vested are virtually coextensive with the power

31

Dbt f l2;19.dw.17432.KHL lllllEpdvn f ou26lllllGjrhe190l203l19llllQbhf l43lpg58

to regulate immigration. See, 8 U.S.C. § 1103, including (g) thereunder; 8 U.S.C. § 1324(a)(h)(2).

A sub-set of that broad grant of power is found within 8 U.S.C. § 1184 headed "Admission of Non-Immigrants". Pursuant to that statute, at subsection (a), the admission of any alien as a non-immigrant "for such time and other such conditions" as the Federal Executive Branch may prescribe is squarely-bottomed. Within that section are provisions imposing fraud prevention and detection fees upon employers filing false Forms ETA-750 and other petitions. 8 U.S.C. § 1184(c)(13)(A) and (B). This statute also empowers the Secretary of the Department of Homeland Security[12] to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits false or fraudulent applications in order to obtain, *inter alia*, H-2B employees. See, e.g., 8 U.S.C. § 1184(c)(14)(A).

The United States Code of Federal Regulations contains more than thirty pages addressing only seasonal alien temporary workers. 8 CFR § 214.2(h)(1), et seq., sets forth the obligations of employers of H-2B workers and the effect and consequences of adhering to or breaching the ETA-750.

The Secretary of Labor and thereafter the Secretary of the Department of Homeland Security and their federal designees, have both the power and jurisdiction to approve H-2B contracts and thereafter enforce and investigate each and every instance in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Indeed, under § 214.2(h)(11)(B), the Director may revoke

---

[12]    Notably, although the Secretary of the Department of Homeland Security may, by 8 U.S.C. sec. 1184(c)(14)(B), delegate to the Secretary of Labor these investigative and enforcement duties and rights, the Department of Homeland Security has, to date, chosen not to do so. Rather, the Department of Homeland Security, in a clear indication of its desire to maintain its exclusive authority over this area of immigration regulation, has solely retained the rights of investigation and enforcement.

528611-1

Case 1:08-cv-06321-JGK    Document 31-6    Filed 08/19/2008    Page 6 of 30
Case 1:08-cv-07100-UA    Document 8-10    Filed 08/13/2008    Page 34 of 58

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhe!1901201119!!!!!Qbhf !44!pg58

a petition at any time, even after its expiration, based upon the petitioner's statement of facts contained in the petition being "not true and correct" or if the petitioner has "violated the terms and conditions of the approved petition" or any of the other standards set forth therein.

It is not surprising that every Court which has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement. See, e.g., Hines v. Davidowitz, 312 U.S. 52, 66-67 (1941) (striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilary regulations."); Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); accord Perry v. Thomas, 482 U.S. 483 (1987); DeCanas v. Bico, 424 U.S. 351, 355 (1976); Spina v. Department of Homeland Sec., 470 F.3d 116, 127-28 (2d Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, inter alia, "the immigration laws contain no provision indicating that they are to be interpreted in accordance with state law."); Chavez v. Freshpict Foods, Inc., 456 F.2d 890, 893-96 (10th Cir. 1972), cert. denied, 458 U.S. 92 (1973); Arizona Contractors Ass'n. Inc. v. Candelaria, 534 F.Supp.2d 1036 (D. Ariz. 2008); Lozano v. City of Hazleton, 496 F.Supp.2d 477, 517-528 (M.D.Pa. 2007); Shah v. Wilco Systems, Inc., 126 F.Supp.2d 641, 648-49 (S.D.N.Y. 2000); United States v. Richard Dattner Architects, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); Chavez v. Freshpict Foods, Inc., 322 F.Supp. 146 (D.Colo.

33

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrñel190!2Œ119!!!!!Qbhf !45!pg58

1971); <u>Younus v. Shabat</u>, 336 F.Supp. 1137, 1140 (N.D.Ill. 1971); see <u>Gade v. Nat'l Solid Waste</u>

<u>Management Assoc.</u>, 505 U.S. 88, 108 (1992).

      And, without a private cause of action, there is no "parens patriae" jurisdiction

permitting the State Attorney General to become involved in the matters he states are under

investigation.  The remedies are distinctly federal.  See, e.g., <u>Castellanos-Contreras v. Decatur</u>

<u>Hotels, LLC</u>, 488 F.Supp.2d 565 (E.D. La. 2007).

      In stark contrast, there is not a single case that holds that a state attorney general

has the power or standing to use any state based statute or common law cause of action to pursue

a person or entity for alleged false statements to the United States Department of Labor to obtain

seasonal workers or alleged breaches of such certifications or contracts.

      Not surprisingly, given the breadth and extent of the scheme crafted by Congress

and implemented through hundreds of pages of federal statutes and regulations, there are very

few cases which discuss the preemptive effect of the Immigration and Naturalization Act

provisions governing and attaching to the employment of temporary seasonal workers under H-

2B visas.  Not surprisingly, in view of the wide swath cut by the federal statutes and regulations

encompassing all aspects of employment of H-2B workers, including administrative, civil and

criminal penalties for false and fraudulent applications on Forms ETA-750 by employers, the

extant case law establishes that preemption attaches so that no state contract, tort, common law

or statutory remedies survive.

      Illustrative is <u>Choimbol v. Fairfield Resorts, Inc.</u>, 2006 WL 2631791 (E.D.Va.

September 11, 2006).  Plaintiffs were H-2B workers hired by and for defendant employer to

perform laundry, housekeeping and other maintenance services at Fairfield Resorts.  Fairfield

was not an exempt FLSA enterprise and was therefore required to pay FLSA wages and

34

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrhel190!20!119!!!!!Qbhf !46!pg58

overtime. The H-2B workers filed suit, claiming that Fairfield knowingly delayed paying them their hourly wages, and manipulated and falsified their hourly wage rates. The H-2B workers sought minimum wage and overtime compensation under the FLSA, and also filed state law claims of unjust enrichment and fraud, together with a federal civil RICO claim.

In an analysis compelled by the law set forth above, and which sounds the death knell of the position of the Attorney General in the matter at bar, the court found that preemption precluded the Plaintiffs from proceeding with any of their non-FLSA claims. In this regard, Choimbol held that the state claims based upon common law were preempted. Choimbol, supra, 2006 WL 2631791 *5. See, Lerwill v. Inflight Motion Pictures, Inc., 343 F.Supp. 1027, 28 (N.D.Ca. 1972)(even though the legislative history of the FLSA does not expressly provide for preemption "a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive").

Reasoning that the FLSA directly addresses and provides relief for the allegations made by the H-2B plaintiffs "in this case: overtime and minimum wage compensation," the Court held that "plaintiffs cannot circumvent the exclusive remedy provided by Congress by asserting equivalent state law claims in addition to the FLSA claim." Choimbol, id. at *5. See also Nettels v. Techplan Corp., 704 F.Supp. 95, 100 (D.S.C. 1998)(holding that plaintiff's common law tort claims were preempted by the FLSA because the statute provided the right to recover overtime wages); Moeck v. Gray Supply Corp., 2006 WL 42368, at 1-2 (D.N.J. Jan. 6, 2006)(dismissing state law fraud claim alleging material misrepresentation regarding entitlement to overtime in view of FLSA); Chen v. Street Beat Sportswear, Inc., 364 F.Supp.2d 269 (E.D.N.Y. 2005)(common law fraud and negligent misrepresentation claims were preempted because directly covered by the FLSA).

528611-1

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhe!190!2031 19!!!!!Qbhf !47!pg58

The H-2B plaintiffs' assertions of civil RICO violations fared no better. Despite the absence of a case directly on point, the Choimbol Court reasoned that the remedial schemes of both RICO and the FLSA provided compelling logic that RICO claims were precluded:

> The FLSA provides a sufficiently punitive scheme to address the Defendants' misconduct in this case. In Kendall v. City of Chesapeake, the Fourth Circuit relied on this rationale to uphold the District Court's finding that the Plaintiff's independent claims under Section 1983 were precluded by the 'comprehensive enforcement scheme that is incompatible with the individual enforcement under Section 1983.' 174 F.3d 437, 443 (4th Cir. 1989). Similar to the analysis applied with respect to whether the FLSA preempts parallel, common law claims, the court noted that the FLSA's 'unusually elaborate' enforcement scheme manifested Congress's desire to exclusively define the private remedies available to redress violations of the statute's terms. Id. at 443. See also Zombro v. Baltimore City Police Department, 868 F.2d 1364, 1366 (4th Cir. 1989). Choimbol, 2006 WL 2631791 at *6.

Finding that the FLSA provides a careful blend of administrative and judicial enforcement powers which include criminal penalties for willful violators, and relying on a spate of other cases that had precluded plaintiffs from proceeding with RICO claims in view of extensive remedies provided under other federal statutory schemes such as the Federal Energy Reorganization Act and the Federal Social Security Act, Choimbol found the Federal RICO claim are necessarily preempted.

Choimbol's holding and analysis are dispositive of the instant motion. In view of the FLSA, every state based claim for relief premised upon alleged failures of employers to pay H-2B workers the requisite hourly and overtime wages is preempted, be it created by statute or based on common law. Moreover, in view of the FLSA, any other federal claim based upon failures of employers to pay requisite hourly and overtime wages to H-2B workers is also preempted. The H-2B workers are relegated to their FLSA remedy.

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhel190!2031 19!!!!!Qbhf !48!pg58

Here, there is no FLSA remedy because, as set forth supra, Dreamland is an exempt amusement enterprise, so that the wages, hours, and overtime strictures of the FLSA do not attach to Dreamland or its H-2B employees. Were there any question regarding the applicability of the FLSA or the scope of its exemption, or the wages due to H-2B workers from FLSA exempted enterprises, then the answer and remedy lies with the United States Department of Labor.

Yet, at bottom, due to preemption, there are no state statutory or common law claims that the New York State Attorney General has the right to pursue. In view of preemption, he lacks the authority to investigate, much less prosecute, whether an alleged failure by Dreamland to pay prevailing wages to H-2B workers pursuant to its certification/contract with the United States Departments of Labor and Homeland Security is a violation of New York Executive Law 63(12), or any other New York statute or common law claim for relief. The New York State Attorney General lacks the power to investigate, much less prosecute, whether Dreamland has violated its certificate/contract with the United States Department of Labor with respect to the wages it has and is paying to the H-2B employees that travel with its mobile carnival.

Both the substance of the curiosity of the New York Attorney General and the task of enforcing that subject lie wholly within the rights, powers and duties of the United States. As a result, the investigation of the New York State Attorney General is beyond those it has the lawful right to pursue. All Dreamland seeks is an adjudication and order so declaring and enforcing the law.[13]

---

[13]     See, United States v. Richard Dattner Architects, 972 F.Supp. 738, 744 (S.D.N.Y. 1997)(since the "administration and enforcement of the INA is specifically delegated and entrusted to certain federal officials, federal departments, and federal agencies, ... the question of importing any alien as a non-immigrant under Section 1101(a)(15)(H) ... of this title in any specific case or specific cases will be determined by the Attorney General, after

Dbt f !2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!Gjfhel190!2¦3119!!!!!Qbhf !49!pg58

Similarly instructive is the Second Circuit's Opinion in <u>Grochowski v. Phoenix</u>

<u>Const.</u>, 318 F.3d 80 (2d Cir. 2003). In <u>Grochowski</u>, construction workers sued for recovery of

unpaid wages and overtime pay under the FLSA, the Davis-Bacon Act, the Contract Work Hours

and Safety Standards Act, and state common law. The trial court dismissed the state common

law claims and all federal claims apart from the FLSA, on grounds of preemption and exclusive

jurisdiction.

In affirming the trial court, and particularly, the dismissal of all state law claims

for recovery of unpaid wages and overtime pay, the Second Circuit relegated the plaintiffs to

their Fair Labor Standards Act remedy, deeming it exclusive even though the contracts under

which the workers had been employed had specifically adopted as general conditions the wage

rates and supplemental fringe benefits prevailing under the Davis-Bacon Act and the Contract

Work Hours and Safety Standards Act.

With respect to the plaintiffs' state law claims for breach of contract and quantum

meruit, the Second Circuit first concluded that the Davis-Bacon Act did not confer a private right

of action to an aggrieved employee for back wages because neither that Act nor the CWHSSA

expressly so provided. Deeming it a "elemental cannon of statutory construction," the Second

Circuit had no problem holding that the absence of an express provision in the federal DBA

creating a private right of action compels the conclusion that the extent FLSA remedies Congress

did provide are appropriate and exclusive. <u>Grochowski, supra,</u> 318 F.3d at 85.

---

consultation with appropriate agencies of the Government, upon petition of the importing employer.). 8 U.S.C. § 1184(c). The imposition of duties on public officials provides further evidence that Congress did not intend to create a private right of action." See, <u>Younus v. Shabat,</u> 336 F.Supp. 1137 (N.D. Ill. 1978)("in the area of immigration, the National government has to a great extent preempted the field of legislation, and that to the extent state laws and regulations are inconsistent therewith, the latter cannot stand.")

528611-1

Dbt f !2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!!Gjmel!190!2l31!19!!!!!Qbhf !4: !pg58

The Second Circuit also struck any claim for relief premised upon state statutory or common law violations of wages and hours claimed due and ewing precisely because of preemption and the need to ensure that states were barred from creating end-run remedies around federal statutory schemes:

> At bottom, the plaintiffs' state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA. To allow a third-party private contract action aimed at enforcing those wage schedules would be 'inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute.' (citation omitted). Grochowski, supra, 318 F.3d at 86.

The statutes and case law of New York had empowered employees to bring parallel actions seeking recovery of wages claimed and denied both under legislative enactments and through common law remedies. Nonetheless, Grochowski foreclosed the plaintiffs from pursuing such remedies under New York law, holding that those state remedies were inapposite to plaintiffs' claims:

> [T]he present contracts between the defendants and the NYCHA were federally funded and, as such, are governed by the prevailing wage requirements set forth in the DBA, not by section 220 of the New York Labor Laws. Since in this case ... no private right of action exists under the relevant statute, the plaintiffs efforts to bring their claims as state law claims are clearly an impermissible 'end run' around the DBA. Grochowski, supra, 318 F.3d at 86-7.

Grochowski does not stand alone. In Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005), the Court relied upon Grochowski in sustaining the removal of a customer's putative class action against a cable television service provider, which suit had asserted state law claims of breach of contract, common-law fraud, deceptive business practices and unjust enrichment, and in affirming the trial court's dismissal of each of the state statutory and common law claims, based upon preemption. Plaintiffs had sued under Section 224(a)(4) of

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjrfiel1901203119!!!!!Qbhf l51!pg58

the New York Public Service Law and state common law averring statutory and common law
claims for relief based upon Cablevision's alleged failures to provide uniform rates as required
by federal law, and notice of Winter Season Rates as required under state law, thereby allegedly
violating numerous provisions of New York General Business Law, as well as committing
common law fraud.

Even though the complaint made no mention of any federal statute or right, the
Second Circuit affirmed the trial court's decision to retain the removed action based upon the
presence of the preemption federal question — whether the state law claims were preempted.
Reasoning that plaintiff could not obtain the declaratory judgment he sought without prevailing
on the issue of whether the federal statute had been violated, the court determined that removal
was both appropriate and necessary. Relying on Grable & Sons Metal Products, Inc. v. Darue
Engineering & Manufacturing, 545 U.S. 308, 125 S.Ct. 2363, 2366-68 (2005), the Second
Circuit reasoned:

> Cablevision maintains that its provision of Winter Season rates did
> not violate the [federal statutory] uniform rate requirement.
> Cablevision contests, inter alia, whether Broder and the class
> members subscribed in areas that lacked 'effective competition,'
> and whether the Winter Season rates are exempt from the [federal
> statute] uniformity requirement as promotional rates. These
> questions involves aspects of the complex federal regulatory
> scheme applicable to cable television rates, as to which there is 'a
> serious federal interest in claiming the advantages thought to be
> inherent in a federal forum,' Grable, 545 U.S. at ___, 125 S.Ct. at
> 2367. These federal issues are not clearly insubstantial, ....
> Broder, supra, 418 F.3d at 195.

Thus, even though the federal statute itself excluded any private right of action to persons such
as Broder, the Second Circuit nonetheless held that no action could proceed in state court based
on the same facts, be it presented as a New York breach-of-contract action or suit under New

40

Dbt f !2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!!Gjmel190!2B119!!!!IQbhf !52!pg58

York's General Business Law, so that the matter was appropriately within the exclusive purvue of the federal courts.

Reaching the merits, the Second Circuit relied upon Grochowski to hold that no state law suit for breach of the federal statutes could avoid the Federal Act's lack of a private right of action. In so holding, the Second Circuit noted that Grochowski "stands at least for the proposition that a federal court should not strain to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists." Broder, supra, 418 F.3d at 198.

Broder as well dismissed the contract claim founded upon New York statutory laws, reasoning that such a construction would thwart the intent of Congress:

> Were we to hold, despite Convoy [v. AT&T Corp., 241 F.3d 242,
> 258 (2d Cir. 2001)] that [New York State General Business Law]
> Section 349 may be used to assert a private right of action for
> violation of a federal law otherwise lacking one, we would
> essentially be attributing to the New York Legislature and intent to
> thwart Congress's intentions on a significant scale. ...
>
> * * * *
>
> Neither the text of GBL Section 349 nor any other authority cited
> by Broder suggests that the New York Legislature intended to cast
> its net so broadly. Broder, supra, 418 F.3d at 199.

The common law fraud claims fared no better before the Broder court, because the absence of any state-based claim precluded the bringing of a common law fraud claim ostensibly based upon it. Broder, supra, 418 F.3d at 200-01.

Similarly instructive is Shah v. Wilco Systems, Inc., 126 F.Supp.2d 641 (S.D.N.Y. 2000). In Shah, former employees sued Wilco for compensatory and punitive damages and injunctive relief arising from Wilco's alleged exploitation of domestic and foreign workers in violation of the Federal Immigration and Nationality Act, Fair Labor Standards Act,

41

528611-1

Dbt f !2;19.dw.17432.KHL lllll!Epdvn f ou26llllllGjrhe!190l2G3119lll!!Qbhf !53lpg58

and New York law. Shah had filed a class action complaint averring a comprehensive scheme

by Wilco pursuant to which Wilco imported foreign workers with H-1B visas to displace

domestic workers, paid the foreign workers a salary below prevailing wages, and failed to

adequately train domestic workers or pay them a competitive salary, asserting claims under the

INA, FLSA, and state law claims of discrimination in violation of New York Executive Law 290

and New York City Human Rights Law Sec. 8-107, breach of contract and breach of duty of

good faith and fair dealing.

In response to the defendants' motion to dismiss, the court issued rulings of

significance to the instant matter. First, the court dismissed each of the plaintiffs' claims

predicated upon the alleged violations of the Immigration and Nationality Act, relegating them to

the administrative mechanisms erected by federal statutes and regulations. Even though that Act

did not on its face preclude an aggrieved person from bringing a private right of action, the Shah

court held that the comprehensive administrative scheme under the INA evidenced a clear

intention on the part of Congress to:

> limit the enforcement for alleged violation of Sections 1182(n) and
> 1324(b) to the administrative agencies in charge of the processes,
> and only implicate judicial review once the administrative
> procedure has been exhausted. Nothing in either statutory
> provision indicates that Congress intended to provide a private
> right of action in federal courts to enforce violations of [the federal
> act] in the first instance. In the absence of strong indicia of
> contrary Congressional intent, the Court concludes that these
> statutes, and related regulations, provide 'precisely the remedies
> [Congress] considered appropriate'." Shah, supra, 126 F.Supp.2d
> at 648-49.

Shah also facially disposed of the plaintiffs' contention that they had a state

common law right to sue Wilco in tort for its alleged immigration law violations. Reasoning that

the only state law claim was a breach of contract which could not transformed into a tort, and

42

528611-1

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjfhe!190!2凸119!!!!!Qbhf !54!pg58

that no such breach of contract could be actionable under any state law for the violation alleged, the court easily dismissed the plaintiffs state common law claims. Shah, supra, 126 F.Supp.2d at 650. Most importantly, Shah adumbrated that even were there a state common law right to sue in court, such right would not provide plaintiffs with a private right of action under federal law. Id.

Of particular note, Shah determined that there was a valid and detailed mechanism created by the federal statute to address each of the issues raised by the plaintiffs -- that is the statutes and regulatory procedures erected thereunder pursuant to the provisions of the Immigration and Nationality Act:

> [T]here are other remedies available to plaintiffs, ... plaintiffs may address Wilco's purported violations pursuant to the administrative procedures outlined supra which are available under [the INA]. In addition to various civil penalties against Wilco, the statutes provide for back pay for nonimmigrant workers. (citations omitted). Shah, supra, 126 F.Supp.2d at 654-55.

Even prior to the extensive and exhaustive amendments to the Immigration and Nationality Act occasioned by, inter alia, 9/11, the few courts asked to consider this issue held that administrative and penal laws enacted by Congress in connection with the areas surrounding the employment of aliens were exclusive, brooking no state cause of action.

In Chavez v. Freshpit Foods, Inc., 456 F.2d 890 (10th Cir. 1972), cert. denied, 458 U.S. 592 (1973), the Court of Appeals affirmed the judgment of a trial court that no private right of action could be implied from the federal regulatory statute governing the employment of non-resident, seasonal workers. In Chavez, domestic workers in Colorado and Texas filed a class action suit averring that 34 agricultural employers had hired Mexican nationals who had illegally entered the United States, thereby depriving the domestic workers of jobs and depressing their wages, claiming violations of the Immigration and Nationality Act particularly

43

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrhe!190!2C3119!!!!!Qbhf l55!pg58

with respect to H-2 visas. Finding no express private remedy in the INA, the court would not

deem that the statutory scheme provided an implied remedy.

Of significance to the case at bar, the plaintiffs had contended that the

governmental agencies involved lacked the will or funds to enforce the provisions governing the

employment of H-2 workers. This, not surprisingly, was not deemed a cognizable fount from

which to imply the existence of a claim for relief under any theory, state or federal:

> The appellants contend that the Department of Justice and other
> governmental agencies which are required to enforce the federal
> immigration laws are 'mostly inadequate' and that this court should
> enforce the Act. Accordingly, they seek to by-pass the
> enforcement procedures set forth in the Act. In order to
> accommodate them, this court must 'fashion' or create a private
> right of action and a private remedy even though Congress has
> revealed no intention to do so under the immigration laws. This
> we decline to do. (citations omitted). _Chavez_, _supra_, 456 F.2d at
> 894.

And similarly:

> This court will not fashion civil remedies from federal regulatory
> statutes except where a compelling federal interest of a
> governmental nature exists where the intent of Congress to create
> private rights can not be found in the statute or in its legislative
> history. Had the Congress intended to create private causes of
> action and private remedies, it was fully capable of directly and
> clearly so providing. (citations omitted). _Chavez_, _supra_, 456 F.2d
> at 894-95.

Some of these principles were incorporated by the Second Circuit in its decision

in _Spina v. Department of Homeland Security_, 470 F.3d 116 (2d Cir. 2006). In _Spina_, an alien

subject to deportation sought credit under Connecticut law for time spent in Connecticut in pre-

conviction detention, which would thereby render him ineligible for deportation. In rebuking

this contention, the court noted that Spina's argument rested on the "flawed assumption" that

Connecticut law controlled the outcome of his petition. In this regard, the court stated:

44

Dbt f !2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!!Gjrlrfe!190!2©3119!!!!!Qbhf !56!pg58

In fact, the principle is well established that, unless Congress plainly manifests an 'intent to incorporate diverse state laws into a federal statute, the meaning of [a] federal statute should <u>not</u> be dependent on state law.' <u>United States v. Turley</u>, 352 U.S. 407, 411 (1957) (emphasis added); accord, <u>Dickerson v. New Banner Inst., Inc.</u>, 460 U.S. 103, 1119 (1983)(noting presumption that 'when Congress enacts a statute, ... it does not intend to make its application dependent on state law'); <u>Spina, supra</u>, 470 F.3d at 127. Accord, <u>Taylor v. United States</u>, 495 U.S. 575, 596 (1990); <u>United States v. Campbell</u>, 167 F.3d 94, 97 (2d Cir. 1999); <u>Sui v. INS</u>, 350 F.3d 105, 114 (2d Cir. 2001).

Illustrative is <u>Castellanos - Contreras v. Decatur Hotels, LLC</u>, 448 F.Supp.2d 565 (E.D. La. 2007).  In <u>Castellanos</u>, H-2B non-immigrant alien laborers temporarily employed to assist in Hurricane Katrina clean-up filed a declaratory judgment action against the employer for violations of the Fair Labor Standards Act, seeking awards of unpaid wages, liquidated damages, and attorneys' fees and costs.  The court refused to permit the plaintiffs to amend their complaint to include a breach of contract claim based on the same facts because they were subsumed by the FLSA claim.

The parties filed cross-motions seeking resolution of the threshold legal issue -- whether the FLSA applied to non-agricultural guest workers brought to the United States under the H-2B program.  In answering the question in the affirmative, the court relied upon an exhaustive and extensive analysis of the history and content of the H-2B visa program which analysis undersigned commends to this Honorable Court but will not repeat herein.

Reasoning that by its own terms, the FLSA applied to all employees -- that is to "any individual employed by an employer," -- and because the protections of the FLSA are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant, the Court found no reason to exclude H-2B guest workers from the protections of the

45

Dbt f !2;19.dw.17432.KHL !!!!!Epdvn f ou26!!!!!!Gjrhe!190!2081 19!!!!!Qbhf !57!pg58

FLSA. Castellanos, *supra*, 488 F.Supp.2d at 572. See, In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987), cert. denied, 487 U.S. 1235,

Thus, under authorities cited by Choimbol, *supra*, each and every state wage, hour and overtime claim for relief of H-2B workers whether based on statute or common law, is preempted in view of the FLSA, as are certain federal claims as well. Under Castellanos, *supra*, H-2B workers are deemed covered by the FLSA.

These two cases establish beyond per adventure that there are no state based claims for relief regarding wages and hour and overtime claims for H-2B employees. Any such claim is limited to that provided by the FLSA or other federal statute.

Where, as here, the employer is exempt from the FLSA wages and hours provisions as an amusement enterprise under § 213 of the FLSA, then recourse can be obtained solely and exclusively through the administrative provisions surrounding the enforcement of terms and conditions of employment pursuant to the statutory and regulatory scheme within the jurisdiction of the United States Departments of Labor and Homeland Security, with sanctions for repeated "fraud" available through those departments and through the United States Department of Justice.

These avenues of redress are not ineffective. Indeed, they are the very administrative avenues of redress to which the Shah court directed these plaintiffs. Moreover, these remedies are effective as can be attested by Alden Management Services.

Indeed, Alden Management Services was required to pay back pay to H-1A registered nurses for the entire period of their employment, after the nurses had pursued their administrative remedy within the United States Department of Labor's administrative review board. Alden Management Services, Inc. v. Chao, 529 F.Supp.2d 882, 892-93 (N.D.Ill. 2007).

46

Dbt f l2;19.dw.17432.KHL!!!!!Epdvn f ou26!!!!!Gjme!1901203119!!!!!Qbhf !58!pg58

Should Dreamland's H-2B employees have any such claim, they too need only pursue their

exclusive federal administrative remedy within the United States Department of Labor.

The State Attorney General is preempted. He has no right or power to act,

investigate or prosecute. He is also immune from damages under 42 U.S.C. § 1983. Plaintiffs

therefore respectfully pray that this Honorable Court act to preserve their rights, since they have

no remedy at law to recover from the State Attorney General the time, costs and dislocation

visited upon them by the prosecution at issue.

## III.     CONCLUSION

For the reasons set forth hereinafter, Plaintiffs respectfully pray that this

Honorable Court enter an Order in the form attached hereto, enjoining the Defendant from

investigating and prosecuting the matters set forth herein, based upon preemption and the

Defendant's lack of standing.

Respectfully submitted,

TARTER KRINSKY & DROGIN, PC

Edward Finkelstein, Esquire [EF-2805]
1350 Broadway
New York, NY  10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Plaintiffs*

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA  19103
214-241-8888/FAX - 215-241-8844
*Counsel for Plaintiffs*

47

528611-1

Case 1:08-cv-06321-JGK     Document 31-6     Filed 08/19/2008     Page 21 of 30
Case 1:08-cv-07100-UA     Document 8-10     Filed 08/13/2008     Page 49 of 58
Case 1:08-cv-06321-JGK     Document 15-2     Filed 08/01/2008     Page 1 of 10
Case 1:08-cv-06321-JGK     Document 15-2     Filed 07/14/2008     Page 22 of 39

EXHIBIT "A"

Case 1:08-cv-06321-JGK   Document 31-6   Filed 08/19/2008   Page 22 of 30
Case 1:08-cv-07100-UA   Document 8-10   Filed 08/13/2008   Page 50 of 58
Case 1:08-cv-06321-JGK   Document 15-2   Filed 08/01/2008   Page 2 of 10
Case 1:08-cv-06321-JGK   Document 15-2   Filed 07/14/2008   Page 23 of 39

U.S. Department of Labor    **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



## FINAL DETERMINATION

January 20, 2006

| | |
|---|---|
| DREAMLAND AMUSEMENTS | ETA Case Number: C-06020-07301 |
| c/o Joe A. Nichols | State Case #: 20050036260 |
| Law Office of Joe A. Nichols, P. A. | Number of Openings: 40 |
| 1033 W. First Street, Suite B | |
| Sanford, FL 32771 | Occupation: Circus Laborer |
| | Period of Certification: January 05, 2006 - November 01, 2006 |

In reply refer to:   Mary Glusak

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, has been certified and is enclosed. All enclosures are required to be submitted to the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, at:

> U.S. Department of Homeland Security
> U.S. Citizenship and Immigration Services
> Vermont Service Center
> 75 Lower Weldon St.
> Saint Albans, VT 05479

for consideration with your petition (Form I-129).

The employer is advised if filing for H-2B visas for carnival laborers next year, he must file his application under the guidelines of GAL 1-95 and not the guidelines for entertainers.

Sincerely,

Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENTS

Attachments: Form ETA 750A

OMB Approval No. 44-R1501

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

**APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION**

IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM
PRINT legibly in ink or use a typewriter. If you need more space to answer questions on this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

**PART A. OFFER OF EMPLOYMENT**

1. Name of Alien (Family name in capital letter, First, Middle, Maiden)

Multiple Aliens        (40)

2. Present Address of Alien (Number, Street, City and Town, State ZIP Code or Province, Country)

Not in USA

The following information is submitted as guidance of an offer of employment

3. Type of Visa (If in US)

4. Name of Employer (Full name of organization)

DREAMLAND AMUSEMENTS

5. Telephone (Area Code and Number)

516-901-2988

6. Address (Number, Street, City or Town, County, State, Zip Code)

2 Olympia Lane, Stony Brook, NY, 11790

7. Address Where Alien Will Work (if different from item 6)

Traveling Carnival on US Tour

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay |
|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b. Overtime |
| Traveling Entertainment Carnival | Carnival Laborers | 40 | none | 10:00 a.m. 7:00 p.m. | $ 510.80 per week | $ none. per hour |

13. Describe Fully the Job to be Performed (Duties)

Working with carnival rides and seats, unloading and loading rides, seats, and tents, moving heavy equipment as directed, setting up and taking down rides, seats, and tents.

| 14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above. | | | | 15. Other Special Requirements |
|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required (specify) n/a |
| | 0 | 0 | 0 | Major Field of Study n/a |
| TRAIN-ING | No. Yrs. | No. Mos. | Type of Training | n/a |
| | | | | |
| EXPERI-ENCE | Job Offered Yrs. Mos. | Related Occupation Number Yrs. Mos. | Related Occupation (specify) | n/a |
| | | | | n/a |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | Supervisor | 17. Number of Employees Alien Will Supervise | 0 |
|---|---|---|---|

ENDORSEMENTS (Make by entry in section — for government use only)

Date Forms Received

| L.O. | NOV 15 2005 |
|---|---|
| R.O. | |
| Ind. Code 7999 | Occ. Code 969.687010 |
| Occ. Title | Carnival Laborer |

1. Qualified workers cannot be found in the United States
2. Provision of Foreign Labor Certification Policies have been observed.
3. This certification is valid from 1/5/06 through 11/1/06

1/20/06        Marie O. Gonzalez
(Date)                    (Signature of Officer)

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.        ETA 750 (Oct. 1979)

C-06020-07301

**CORRECTION APPROVED BY REGIONAL OFFICE**

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|
| a. No. of Open-ings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | a. No. of Local | b. Name of Local |
| | From | | |
| 40 | 01/05/2005 | 11-01-2006 | |
| | | 10/11/2005 | |

**20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS** (Complete for Private Household JOB ONLY)

| a. Description of Residence | | b. No. Persons Residing at Place of Employment | | | c. Will free board and private room for hired will any-one be provided? | |
|---|---|---|---|---|---|---|
| ("X" one) | Number of Rooms | Adults | Children | Ages | ("X" one) | |
| ☐ House | | | | | ☐ YES  ☐ NO | |
| ☐ Apartment | | BOYS: | | | | |
| | | GIRLS: | | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.** (Specify Sources of Recruitment by Name)

Will advertise per instructions from Dept. of Labor office.

**22.** Applications require various types of documentation. Please read PART II of the instructions to secure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when they start begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

DECLARATION OF EMPLOYER → Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE 07/13/2005 |
|---|---|
| NAME (Type or Print) Bob DeStefano | TITLE Owner |

AUTHORIZATION OF AGENT OF EMPLOYER — I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE 13/2005 |
|---|---|
| NAME OF AGENT (Type or Print) Joe A. Nichols | ADDRESS OF AGENT (Number, Street, City, State and ZIP code) Law Office of Joe A. Nichols, 1033 W. First Street, Sanford, FL. 32771 |

U.S. Department of Labor    **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



### FINAL DETERMINATION

November 07, 2006

DREAMLAND AMUSEMENTS INC                ETA Case Number:    C-06311-14820
c/o MALCOLM SHEULT                      State Case #:       20060002710
15210 WATERLINE ROAD                    Number of Openings: 45
BRADENTON, FL 34212                     Occupation:         Ride Operator
                                        Period of Certification: January 17, 2007 - November 06, 2007

In reply refer to:    Mary Glusak

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, has been certified and is enclosed. All enclosures are required to be submitted to the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, at:

> U.S. Department of Homeland Security
> U.S. Citizenship and Immigration Services
> Vermont Service Center
> 75 Lower Welden St.
> Saint Albans, VT 05479

for consideration with your petition (Form I-129).

Sincerely,


Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENTS INC

Attachments:  Form ETA 750A

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

**APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION**

OMB Approval No. 44-R1301

IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM

PART A. OFFER OF EMPLOYMENT

1. Name of Alien (Family Name in Capital Letter) First, Middle, Maiden)
**45 unknown temporary workers**

2. Present Address of Alien (Number, Street, City and Town, State ZIP code or Province, Country)
**not in the U.S.A.**

3. Type of Visa (If in U.S.)
n/a

4. Name of Employer (Full name of Organization)
**Dreamland Amusements Inc.**

NOV 0 7 2006
RECEIVED

5. Telephone
(888) 666-8247

6. Address (Number, Street, City and Town, State ZIP code)
**2 Olympia Lane, Stoney Brook, New York 11790**

7. Address Where Alien Will Work (if different from item 6)
**see attached Route Schedule**

8. Nature of Employer's Business
**carnival/amusement business**

9. Name of Job Title
**ride operator**

10. Total Hours Per Week
a. Basic 40    b. Overtime 0

11. Work Schedule
11:00 — 07:00

12. Rate of Pay
$ /

13. Describe Fully the Job to be Performed
**Ride Operator- workers will operate various carnival rides and will assemble and disassemble the rides at each location. Worker shall collect tickets for the rides. Ability to lift in excess of 50 lbs.**

CORRECTION APPROVED BY
NATIONAL PROCESSING CENTER
ON 11-7-06
DATE

14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above.

| | EDUC. (Grade) | HIGH SCHOOL | College Degree Required (specify) |
|---|---|---|---|
| EDU-CATION (Enter number of years) | 0 | 0 | n/a |
| | | | Major Field of Study n/a |

15. Other Special Requirements

| TRAIN-ING | No. Mos. 0 | Type of Training n/a |
|---|---|---|

**workers will be trained on location**

| EXPERI-ENCE | Job Offered 0 | Related Occupation 0 | Related Occupation (specify) none |

16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor
**owner or ride supervisor**

17. Number of Employees Alien Will Supervise 0

18. ENDORSEMENTS

L.C.
R.O.    SEP 27 2006

1. Qualified workers cannot be found in the United States.
2. Division of Existing Labor Certification Policies and Rules changed.
3. This certification is valid from 11/7/07 through 11/6/07

11/9/06
(Date)

(Certifying Officer)

7099 34 26 920 0
Ride Operator

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

**0621-14820**

Case 1:08-cv-06321-JGK    Document 15-2    Filed 07/14/2008    Page 29 of 10

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOBS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Open-ings to be Filled by Alien Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | n/a |
| 46 | 01/17/07 | 11/06/07 | n/a | c. City and State     n/a |

20. STATEMENT FOR LIVE-AT-HOME JOB OFFERS (Complete for Private Household Only)

21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources of Recruitment by Name)

advertised for workers in local papers and magazines, but unable to find a high response to seasonal need. Our company must rely on contract or temporary workers to fill this position although this is difficult due to the transient nature of this occupation-i.e. constant travel from one location to another

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

24. DECLARATIONS

DECLARATION OF EMPLOYER     Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | | DATE     September 12, 2006 |
|---|---|---|
| NAME (Type or Print)     Bob Destefano | | TITLE     Owner |

AUTHORIZATION OF AGENT OF EMPLOYER     I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | | DATE     12, 2006 |
|---|---|---|
| NAME OF AGENT (Type or Print)     Malcolm Seheult | | ADDRESS OF AGENT (Number, Street, City, State, ZIP Code)     15210 Waterline Road, Bradenton, Florida, 34212 |

Case 1:08-cv-06321-JGK    Document 31-6    Filed 08/19/2008    Page 28 of 30
Case 1:08-cv-07100-UA    Document 8-10    Filed 08/13/2008    Page 56 of 58
Case 1:08-cv-06321-JGK    Document 15-2    Filed 08/04/2008    Page 8 of 10
Case 1:08-cv-06321-JGK    Document 15-2    Filed 07/14/2008    Page 29 of 30

U.S. Department of Labor    **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



### FINAL DETERMINATION

November 01, 2007

DREAMLAND AMUSEMENT, INC.                 ETA Case Number:    C-07303-28899
c/o JKI WORKFORCE, TESS HARRISON
32755 FM 106                              State Case Number:   20070004340
RIO HONDO, TX 78583                       Number of Openings:  55
                                          Occupation:          Ride Operator
                                          Period of Certification:  December 26, 2007 – November 09,
                                                                    2008

The Department of Labor has made a final determination on your application for certification of
temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

The Application for Alien Employment Certification, Form ETA 750A, has been certified and is
enclosed.

Upon receipt of this notification, you will need to submit the appropriate Form I-129 which is required in
conjunction with an H-2B temporary labor certification application to the following address:

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services (USCIS)
California Service Center
Attn: I-129
P. O. Box 10129
Laguna Niguel, CA 92607-1012

The USCIS I-129 form can be obtained at http://www.immigration.gov.

Sincerely,

Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENT, INC.

Attachments: Form ETA 750A

Case 1:08-cv-06321-JGK    Document 15-2    Filed 08/01/2008    Page 9 of 10
Case 1:08-cv-06321-JGK    Document 15-2    Filed 07/14/2008    Page 59 of 59

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

**APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION**

IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM
PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.
To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

PART A. OFFER OF EMPLOYMENT

**1. Name of Alien** (Family name in capital letter, First, Middle, Maiden)
55 Unnamed Aliens

**2. Present Address of Alien** (Number, Street, City and Town, State ZIP code or Province, Country)
N/A

**3. Type of Visa**
N/A

The labor is submitted as an offer of employment.

**4. Name of Employer** (as detailed in Organization)
Dreamland Amusements, Inc.

OCT 3 0 2007

**5. Telephone**
(516) 901-2888

**6. Address** (Number, Street, City and Town, State ZIP Code)
2 Olympia Lane, Stony Brook, NY 11790

**Address Where Alien Will Work** (if different from item 6)
As per the attached itinerary.

**7. Nature of Employer's Business Activity**
Traveling Carnival

**8. Name of Job Title**
Amusement Attendant Carnival [39-3091]

**9. Total Hours Per Week**
a. Basic 36
b. Overtime 0

**10. Work Schedule**
11:30 a.m. to 08:30 p.m.

**11. Rate of Pay**
a. Basic $8.49 per hour
b. Overtime $12.20 per hour

**12. Describe Fully the Job to be Performed** (Duties)
Performs variety of attending duties at amusement or recreation facility. May schedule use of recreation facilities, maintain and provide equipment to participants of sporting events or recreational pursuits, or operate amusement concessions and rides.

**13. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 12 above.**

| | Grade School | High School | College | College Degree Required (specify) | N/A |
|---|---|---|---|---|---|
| EDUCATION (Enter number of years) | 0 | 0 | 0 | Major Field of Study | N/A |
| TRAINING | No. Mos. 0 | | | No. Mos. (specify) N/A | |
| EXPERIENCE | Job Offered Yrs. Mos. 0 0 | Related Occupation (specify) Number Yrs. Mos. 0 0 | | N/A | |

**14. Other Special Requirements**
Travel with Carnival.

**15. Occupational Title of Person Who Will Be Alien's Immediate Supervisor**
Supervisor

**16. Number of Employees Alien Will Supervise**
0

ENDORSEMENTS (Make no entry in section - for Government use only)
L.O.    SEP 26 2007
R.O.

skilled workers cannot be found in the United States
Notice of Foreign Labor Certification Policies have been observed.
This certification is valid from 12/04/07 through 11/9/08

ETA 750 (Oct. 1979)

07303-28899

Case 1:08-cv-06321-JGK    Document 31-6    Filed 08/19/2008    Page 30 of 30
Case 1:08-cv-07100-UA    Document 8-10    Filed 08/13/2008    Page 58 of 58
Case 1:08-cv-06321-JGK    Document 15-2    Filed 07/09/2008    Page 10 of 10

| 19. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|
| a. No. of Open-ings to be Filled by Aliens Under Job Order | b. Exact Dates You Expect To Employ Alien | c. Number of Local | d. Name of Local |
| | From: 12/26/07  To: 11/09/08 | N/A | N/A |
| 55 | | e. City and State  N/A | |

21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources Recruited by Name)

We spread the word of employment by word of mouth. We are able to fill some temporary positions with local workers, but we have a chronic shortage of at least 40 to 50 positions that we are not able to fill.

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. Enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1)    Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2)    At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

24. DECLARATIONS

DECLARATION OF EMPLOYER — Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | *Kathryn L. DiStefano* | DATE 08/08/07 |
|---|---|---|
| NAME (Type or Print)  Kathryn L. DeStefano | | TITLE  President |

I HEREBY DESIGNATE the agent below to represent me for the purpose of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | *Kathryn L. DiStefano* | DATE 08/08/07 |
|---|---|---|
| NAME (Type or Print) | | ADDRESS OF AGENT (Number, Street, City, State, ZIP Code) |

JKJ Workforce, Tess Harrison, 32775 FM 1015, Rio Honda, TX 78583

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, : : : | Case No. 08-Civ-6321(JGK) |
| Petitioner, : : | |
| for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas : : : | **CERTIFICATE OF SERVICE** |
| -- against -- : : | |
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp., : : : : : : : : | |
| Respondents. : : | |

I, Bruce L. Thall, certify that:

On August 19, 2008, I caused to be served the within document on Petitioners by e-mailing a true copy thereof to Andrew J. Elmore, Esquire of the State of New York Office of the Attorney General co-counsel for Petitioner at Andrew.Elmore@oag.state.ny.us and Julian R. Birnbaum, Esquire of the State of New York Office of the Attorney General co-counsel for Petitioner at Julian.Birnbaum@oag.state.ny.us.

_____
Bruce L. Thall, Esquire

Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO,            Plaintiffs,    v.       THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK,            Defendant. | Case No. 08-Civ-6321(JGK) |

**ORDER**

AND NOW, to wit, this ____ day of _____, 2008, having considered the

State Attorney General's Motion to Dismiss Plaintiffs' Complaint for Declaratory Judgment and

Injunctive Relief, and Plaintiffs' response thereto;

It shall be and hereby is ORDERED, ADJUDGED and DECREED that the State Attorney General's Motion is DENIED.

_____

Koeltl, J.