Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO, <br><br> Plaintiffs, <br> v. <br><br> THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK, <br><br> Defendant. | : <br> : <br> : <br> : <br> : Case No. 08-Civ-6321(JGK) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS PLAINTIFFS' COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.  FACTS AND PROCEDURAL HISTORY ...................................................... 1

    A.  The Plaintiffs' Complaint ................................................................. 1

    B.  The Admissions of the State Attorney General in his "Motion" to Dismiss ........... 3

    C.  The State Attorney General Disavows His Investigation
        and Prosecution ............................................................................... 11

II.  LEGAL ARGUMENT .................................................................................. 12

    A.  Preemption Bars the State Attorney General from Investigating and
        Prosecuting the Wages and Overtime Paid to Dreamland's H-2B Workers .......... 12

    B.  The State Attorney General's Abstention Contention is Inapposite to
        the Disposition of Plaintiffs' Declaratory Judgment Claim .................................. 19

III.  CONCLUSION .......................................................................................... 23

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alden Management Services, Inc. v. Chao*, 529 F. Supp.2d 882 (N.D. Ill. 2007) .......................13

*Baggett v. Department of Professional Regulation, Board of Pilot Commissioners*,
717 F.2d 521 (11th Cir. 1983) ..................................................................................22

*Buford v. Sun Oil Co.*, 319 U.S. 315 (1943) .............................................................19

*Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination*,
70 F.3d 1361, 1370 (1st Cir. 1995)...........................................................................20

*Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006).....................13

*Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987).............20, 21

*Coil v. Jack Tanner Co., Inc.*, 242 F. Supp.2d 255 (S.D. Ill. 2002) ..................................17, 18, 19

*Farrall v. District of Columbia Amateur Athletic Union*,
153 F.2d 647 (D.C. Cir. 1946)....................................................................................4

*Grochowski v. Phoenix Const.*, 318 F.2d 80 (2d Cir. 2003) .............................................13

*GTE Mobilenet of Ohio v. Johnson*, 113 F.3d 469, 475 (6th Cir. 1997) .........................................20

*Hicks v. Miranda*, 422 U.S. 332 (1975) .........................................................................21

*Howard v. Town of Bethel*, 481 F. Supp.2d 295 (S.D.N.Y. 2007) ...................................................4

*J. & W. Seligman & Co., Inc. v. Spitzer*, 2007 U.S. Dist. LEXIS 71881
(S.D.N.Y. Sept. 27, 2007)..........................................................................................21

*Judice v. Vail*, 430 U.S. 327 (1977)...............................................................................21

*Marshal v. Chase Manhattan Bank*, 558 F.2d 680 (2d Cir. 1977) ..................................................20

*Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001)....................20

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989).............................................................................................19, 20

*Shah v. Wilco Systems, Inc.*, 125 F. Supp.2d 641 (S.D.N.Y. 2000)...............................................13

*Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir. 1982),
*aff'd sub nom.*, *Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220 (1983) ...............20

*Streit v. Bushnell*, 424 F. Supp.2d 633 (S.D.N.Y. 2006) ..................................................................4

*Woodfeathers, Inc. v. Washington County, Or.*, 180 F.3d 1017, 1021-22 (9th Cir. 1999)............20

*Younger v. Harris*, 401 U.S. 37 (1971).........................................................................................19

## **Statutes**

18 U.S.C. § 1001.............................................................................................................................13

18 U.S.C. § 1746.............................................................................................................................13

29 U.S.C. § 201...............................................................................................................................14

29 U.S.C. § 206..........................................................................................................................14, 17

29 U.S.C. § 207..........................................................................................................................14, 17

29 U.S.C. § 213(a)..........................................................................................................................14

29 U.S.C. § 213(b)(6)......................................................................................................................17

29 U.S.C. § 218...............................................................................................................................16

29 C.F.R. 779.385...........................................................................................................................14

12 N.Y.C.R.R. § 142-2, 143-2, State Minimum Wage Order for Miscellaneous
Industries and Occupations, Part 142, Section 142-2 and 143-2 ....................................................16

## I.    FACTS AND PROCEDURAL HISTORY

### A.    The Plaintiffs' Complaint

On July 14, 2008, Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert DeStefano, and Kathryn DeStefano (hereinafter "Plaintiffs") filed a Complaint for Declaratory Judgment and Injunctive Relief against the Honorable Andrew M. Cuomo, Attorney General of the State of New York, Office of the Attorney General (hereinafter "Defendant" or "State Attorney General"), seeking a decree that preemption blocks the State Attorney General from investigating and prosecuting any claim based in whole or in part upon his construction or interpretation of the ETA-750 -- a certification   between Dreamland Amusements, Inc. (hereinafter "Dreamland") and the United States Departments of Labor and Homeland Security regarding wages to be paid to alien, seasonal non-agricultural employees should the United States Department of Labor approve Dreamland's request for H-2B workers -- and a declaration that the determination whether there is a breach by Dreamland of any or each of the provisions of the Form ETA-750 certification with the United States Departments of Labor and Homeland Security lies solely within the jurisdiction and power of the departments and agencies of the United States.

More specifically, Plaintiffs averred in their Complaint that the State Attorney General has repeatedly represented, both orally and in writing, that his investigation of "fraud" and "persistent illegality" under New York Executive Law § 63(12), was comprised entirely of Plaintiffs' alleged failures to pay temporary, seasonal Mexican workers with H-2B visas the compensation as set forth in the Form ETA-750 certification that Dreamland signs with the United States Departments of Labor and Homeland Security, and that the State Attorney General has specifically indicated that it could bring criminal proceedings against Plaintiffs based upon

"repeated fraudulent and illegal acts" which it had already found. *See* Complaint, *passim* and ¶¶ 35, 36. Thus, Plaintiffs' Complaint is replete with the factual averments that the State Attorney General's "fraud" investigation and prosecution of Plaintiffs is based upon its contention that the Plaintiffs have failed to pay the H-2B Mexican employees the "prevailing wage" under Dreamland's Certification to the United States Departments of Labor and Homeland Security on Form ETA-750.[1] Plaintiffs also averred that the State Attorney General had itself acknowledged that it had already found persistent fraud and illegality, which could result in the State Attorney General bringing criminal proceedings against Plaintiffs. *See* Complaint ¶¶ 2, 6, 36, 46, 50.

Given these facts averred in their Complaint, Plaintiffs claimed entitlement to a judgment declaring that the wage rate and payment subject matter of the State Attorney General's investigation was preempted, and based thereon requested an Order precluding the State Attorney General from investigating and prosecuting Plaintiffs for claims arising from the Alien Employment Certificate Form ETA-750 with respect to wages, hours, and overtime due or paid to H-2B workers, or wages, hours or overtime payments to or otherwise due to H-2B workers. Plaintiffs filed a formal Motion and Memorandum of Law in support of their application for injunctive relief.

Plaintiffs sought no blanket exemption from investigation or prosecution by the State Attorney General. Rather, they sought the declaration and concommittant injunctive relief with respect to "the precise question whether the conduct of Dreamland in paying wages to the H-2B employees breached or did not breach the Dreamland contracts with the United States

---

[1]    At paragraphs 30 and 31 and footnote 4 of its Complaint, Plaintiffs referred to, and even appended, the Forms ETA-750. Each is signed only by Dreamland. Plaintiffs noted that "neither Crossroads nor Toy Circus has ever applied for or employed any alien with a H-2B visa." This assertion is not contested.

Department of Labor," the answer of which due to preemption lies solely with the United States Departments of Labor and/or Homeland Security. *See* Complaint ¶ 52.

In this regard, at footnote 1 of their Complaint, Plaintiffs stated that the State Attorney General's investigation also included alleged violations of other laws. As Plaintiffs recited therein, "Plaintiffs are prepared to meet these allegations ... head-on. These matters, however, are not the subject of the instant Complaint." Moreover, without more, they could not be, as a matter of law, because although preemption bars the State Attorney General from investigating or prosecuting any matter arising from Dreamland's payments of wages to the H-2B employees pursuant to its certifications with the United States Departments of Labor and Homeland Security, it does not bar other matters.

However, the State Attorney General has now provided the "without more." He has by his own pleadings brought these other matters before this Honorable Court through his Motion to Dismiss Plaintiffs' Complaint.

### B.    The Admissions of the State Attorney General in his "Motion" to Dismiss

For reasons known only to the State Attorney General, rather than file a general denial Motion to Dismiss with a memorandum of law analyzing preemption, the State Attorney General instead filed in lieu of a Motion, the same Affidavit that it had earlier filed with the New York Supreme Court seventeen (17) days after Plaintiffs' Complaint had been filed with this Court. The Affidavit was the State Attorney General's petition seeking enforcement of his office subpoenas. Plaintiffs promptly removed that action to this Court and filed it as a related case to the instant action because the state petition sought enforcement of subpoenas seeking documents and testimony that are forbidden it due to preemption -- the wages paid to Mexican H-2B employees under the ETA-750 certification of Dreamland.

As a result, even though issues of the State Attorney General's jurisdiction and use of office subpoenas to investigate Title VII or civil rights violations, or State Department of Health issues, or even the Attorney General's repeated misuse and abuse of office subpoenas themselves, were not topics respecting which Plaintiffs could or did seek a preemption declaratory judgment, the Attorney General's use of its State Court Petition as its Motion to Dismiss, together with the removal of the state court Petition, brings those issues squarely within the jurisdiction of this Honorable Court, as original pleadings and as an ancillary claim under 28 U.S.C. § 1441(c). Moreover, by affirmatively raising these very issues in its Motion to Dismiss the Plaintiffs' Complaint, the State Attorney General asked this court to resolve them, even were removal improper, which it is not.

In addition, the legal effect of the Attorney General choosing to file in this case a sworn Affidavit filed in a state case is to transform the Motion into one for Summary Judgment through inclusion of matters outside the pleading by the State Attorney General. Fed. R.C.P. 12(d). Although an Affidavit filed in support of a defendant's motion to dismiss a complaint cannot be treated as proof contradictory to the well-pleaded facts in the complaint,[2] the artificial Motion to Dismiss, comprised of the Attorney General's 58 paragraph Affidavit and the 20 exhibits he appended thereto, contains admissions which manifest beyond per adventure that the Complaint averments are in fact admitted, thereby establishing Plaintiffs' entitlement to the Declaratory and Injunctive relief they seek, while torpedoing the predicates on which the Defendant seeks dismissal.

---

[2]    See, e.g., *Farrall v. District of Columbia Amateur Athletic Union*, 153 F.2d 647 (D.C. Cir. 1946); *Howard v. Town of Bethel*, 481 F. Supp.2d 295 (S.D.N.Y. 2007); *Streit v. Bushnell*, 424 F. Supp.2d 633 (S.D.N.Y. 2006).

In this regard, Exhibit "L" to the State Attorney General's synthetic Motion, a letter dated June 27, 2008, was written to address undersigned counsel's questions whether the Attorney General had any jurisdiction over Plaintiffs. The State Attorney General himself claimed that his authority was based on the 2 page ETA-750 certifications that Dreamland annually filed with the United States Departments of Labor and Homeland Security:

> Your clients repeatedly filed Applications for Alien Employment Certifications ("ETA 750s") promising under penalty of perjury that they would pay H-2B prevailing wages to their employees for the entire work season in order to obtain labor certifications and visas. ... Dreamland's misrepresentations of the wage rate to be paid to its employees therefore constitutes repeated fraudulent conduct upon New York State, for which the OAG may seek injunctive relief and restitution pursuant to its "extremely broad" section 63(12) jurisdiction.

The Attorney General also made clear that the other wage topics of its investigations were entirely derivative, based upon its reading of the ETA-750 certifications:

> In addition, Dreamland's failure to pay promised wages is illegal under Article 6 of the Labor Law ... the applicable "wages" under Article 6 of the Labor Law for Dreamland employees are the H-2B prevailing wages as indicated on Dreamland's ETA-750s. Dreamland's repeated persistent failure to pay that wage as required by Article 6 is illegality for which our office has authority under Executive Law 63(12)...

> Setting aside the civil rights, health code, and other violations we have found, Dreamland has clearly failed to pay its employees the full, promised wages to which they are entitled, and our broad jurisdiction under Executive Law 63(12) permits a judicial award ....

Defendant's Affidavit in lieu of Motion to Dismiss at Exhibit "L".

That the root of the Attorney General's claim of jurisdiction is the wages paid to the H-2B employees of Dreamland pursuant to Dreamland's certifications with the United States

Departments of Labor and Homeland Security was restated in the undersigned counsel's letter of

July 8, 2008, attached to the Attorney General's ersatz Motion at Exhibit "Q":

> At our meeting, you disclosed that the New York Office of the Attorney General was not proceeding under wages, hours or overtime as set forth in the FLSA or the New York Code. Rather, your theory is based upon a contract between our clients and the United States Department of Labor. In this regard, you assert that our clients have engaged in repeated or persistent fraud or illegality in the conducting of its carnival business, and specifically with regard to federal Department of Labor forms ETA-750 (Application for Alien Employment Certification). You contend that in signing these United States Department of Labor form contracts for each of three years, 2006, 2007, and 2008, Dreamland alone,* and not our other clients, contracted under penalties of perjury to the United States to pay United States Department of Labor prevailing wages to non-immigrant, H-2B seasonal employees obtained by others for our clients for their mobile carnival; further, you contend that our clients breached the contracts, and that the breach of contract with the United States Department of Labor is the New York Office of the Attorney General jurisdiction over what you deem to be the fraudulent misrepresentations, pursuant to New York Executive Law § 63(12), even though the contract was exclusively entered into with and approved by the United States Department of Labor.
>
> * The United States Department of Labor Form ETA-750 were submitted by Dreamland Amusements only, and not by Toy Circus or Crossroads. In fact, none of the latter employ any H-2B non-agricultural, seasonal employees.

The recitation, echoing that set forth by the State Affiant on June 27th, was never

contested or challenged in any way, nor could it have been in view of the Attorney General's

letter and other representations. Moreover, the Defendant has confirmed in its sworn Affidavit

filed in lieu of a Motion to Dismiss that its investigation, prosecution, and findings of

wrongdoing were premised upon the allegations of repeated fraudulent conduct through the

failure of Dreamland to pay the requisite H-2B wages as "required" by its Certification to the

United States Departments of Labor and Homeland Security. In this regard, in its Affidavit, the

State Affiant swears that it began receiving complaints of Plaintiffs' alleged unlawful conduct in "failing to pay lawful wages and subjecting certain employees to discriminatory treatment" beginning around May of 2007, one year prior to the issuance of its first office subpoena [AG Affidavit at ¶ 13]. As is set forth therein, and at paragraphs 10 through 25 and 28 of the Affidavit in lieu of a Motion, the State Attorney General squarely bottoms the predicates for his utilization of § 63(12) and office subpoenas upon the alleged failures of Plaintiffs to pay "proper" wages to the H-2B employees, as determined by the State Attorney General.

The State Affiant swears to the employment by Dreamland of foreign nationals from Mexico hired on a seasonal basis as employees under the H-2B visa program [Affidavit ¶ 15]; that employers must offer and subsequently pay for the periods of employment wages that are equal to or exceed the prevailing wage with respect to H-2B employees [Affidavit ¶ 17]; that each employer must make certifications with respect to the ETA-750, the applications for temporary labor certification in order to hire employees on H-2B visas [Affidavit ¶¶ 16, 19]; that the employer certifications for H-2B workers on the ETA-750 form require each employer to make certain certifications, violations of which are punishable as <u>federal</u> felonies for false information or perjury [Affidavit ¶¶ 19, 21]; that Dreamland has filed three separate ETA-750s to obtain H-2B employees since July of 2005 [Affidavit ¶¶ 22-23]; that the State Attorney General has thus far concluded that wages paid by Dreamland were lower than what had been represented on the ETA-750s [Affidavit ¶ 24].

This, of course, is the matter which has been under investigation from the issuance by the State Attorney General of its office subpoenas on May 23, 2008, which focus has been made abundantly and repeatedly clear by the State, in writing and at a meeting with undersigned counsel, as is set forth in paragraphs 42 and 47 of Plaintiffs' Answer to Defendant's state court

7

Petition, attached hereto as part of Plaintiffs' Answer to Defendant's Motion to Dismiss. Undersigned counsel was told to appear at a "settlement" conference on June 26, 2008, at the Defendant's offices.  Despite his requests for information regarding the predicates upon which the State Attorney General based its investigation in view of undersigned counsel's numerous written and oral analyses and submissions to the State Attorney General that he lacked jurisdiction, no such information had been forthcoming from the State Attorney General. Undersigned counsel arrived at the settlement conference seeking to discuss the Attorney General's absence of jurisdiction.  Mr. Thall was ushered into a conference room and confronted with Assistant Attorney General Andrew Elmore, Assistant Attorney General Judith Marblestone, Section Chief of the Civil Rights Bureau Julian Birnbaum, Deputy Attorney General James Rogers, and a summer intern.  The four Attorneys General refused to discuss any issue of their jurisdiction.  They refused to discuss any of the legal predicates upon which they hinged their investigation, and refused to consider preemption, exclusive jurisdiction, the FLSA amusement enterprise exemption, or any of the other legal barriers precluding them from proceeding with their investigation or their misuse of office subpoenas in pursuit of that investigation.

Although billed by the State Attorney General as a settlement conference, there were no settlement discussions.  To the contrary, the four Attorneys General demanded that Plaintiffs pay sums of money to resolve the specific violations they had already found, but refused to share what those alleged violations were.  They claimed that Plaintiffs owed $780,000 in unpaid wages for H-2B workers from January 1, 2006 through May 31, 2008, limited solely to New York State; $2.9 million in unpaid wages for H-2B workers from January 1, 2006 through May 31,

2008 for all of the half score states within which the mobile carnival stopped[3]; and threatened that if Plaintiffs did not agree to pay the $780,000 (not including costs of investigation) then the Attorney General would issue subpoenas to Plaintiffs going back an additional three (3) years. Notably, when Dreamland did not succumb to the State Attorney General's coercion tactics, the State Attorney General made good on its threat of retribution by soon thereafter slamming the Plaintiffs with another round of subpoenas, this time seeking the same vast expanse of documents for 2003 through 2005. The most cogent ways to convey the lunacy of these computations is to note that these sums approximate the annual gross receipts of Dreamland in New York and the entirety of its seasonal tour, respectively.

Although reading from preprinted documents, the State Attorneys General refused to provide them to counsel. The Defendant did provide copies of the ETA-750s for the years 2006, 2007 and 2008. It did so precisely because it represented that its investigation was based on the ETA-750s, and therefore, the State Attorney General wanted to ensure that undersigned counsel possessed them. The State Attorney General refused to provide any other writings, be they wage and hour computations, redacted "complaints" or other proofs of violations, or surveillance reports, nor did they provide any such information orally.

The Attorney General also represented that it had previously found other specific acts which it deemed constituted discrimination against the H-2B workers, some of which were not wage and overtime violations.[4]

---

[3]    This is not a typographical error. The four State Attorneys General purported to have jurisdiction to charge Plaintiffs with what they deemed were unpaid wages to H-2B employees in every state in which Dreamland's mobile carnival dropped anchor.

[4]    The Defendant claimed the following founds acts of discrimination: (1) requiring H-2B employees to work outdoors in inclement weather, although the Attorney General acknowledged that Dreamland's other workers did so as well; (2) requiring H-2B employees to assemble or

The significance to the matter at issue herein is that, regardless of the lack of analysis, thought, and/or accuracy of the State Attorney General's conclusions, the Attorney General had indeed focused upon Plaintiffs and concluded no later than June 26 that Plaintiffs had already committed a myriad of frauds and other legal wrongs. No matter how silly or embarrassing, the Attorney General's conclusions evidence that its office subpoenas are not in aid of any general investigation, but rather, based upon its "findings" of wrongdoing: the Attorney General had already rented the guillotine and hired Madam DeFarge to knit it a shroud bearing Plaintiffs' names. Indeed, the Attorneys General were abundantly clear at the so-called settlement conference that, based on their investigation, they had already concluded that Plaintiffs had committed multiple violations of the law, just as the State Attorney General wrote on June 27, 2008, attached to his "Motion" at Exhibit "L".

> Setting aside the civil rights, health code and other violations we have found, Dreamland clearly has failed to pay its employees the full promised wages to which they are entitled, ...

---

disassemble carnival rides in unsafe conditions, as if Dreamland's other workers performed those tasks under different conditions; (3) providing unsanitary porto-potties to H-2B workers, as if Dreamland's other workers and carnival customers did not use the same porto-potties, and as if Dreamland did not lease them at each carnival stop; (4) yelling at H-2B employees, although the Attorney General acknowledged that non-H-2B employees were yelled at too; and (5) providing bunkhouses for H-2B employees with mattresses that allegedly on occasion had bed bugs, without acknowledging or perhaps not being aware that Dreamland offers mobile bunkhouses at no cost to all of its employees, requiring no one to use the mobile bunkhouses, begins each season with brand new mattresses, and hires exterminators to fumigate the bunkhouses several times a year.

In their Memorandum of Law in Opposition to the Attorney General's removed Petition for enforcement, the Plaintiffs marshaled the authorities establishing that the Attorney General lacks jurisdiction and may not use office subpoenas to investigate these matters. By filing its Petition for Enforcement in this court as its Motion to Dismiss, the State Attorney General has brought each of these issues before Your Honor.

### C.    The State Attorney General Disavows his Investigation and Prosecution

Subsequent to the filing of the Complaint for Declaratory Judgment and Injunctive Relief, and particularly after receipt of the Memorandum of Law submitted by Plaintiffs in connection with their Rule 65 Motion, the Attorney General has attempted with no small measure of mendacity, to disown or ignore his writings and representations and recast his investigation, in order to escape the preemption declaration to which Plaintiffs are entitled by virtue of their allegations, and now Defendant's admissions, under the law.    Thus, the Defendant's unsworn Memorandum of Law describes the State Attorney General's investigation as whether Plaintiffs failed to pay New York minimum wages or committed New York overtime and record keeping violations, together with state deceptive business practice violations in misrepresenting the wages that would be paid.  In the back-peddling, the State Attorney General has even excluded references to forms ETA-750 and H-2B workers.  *See*, for example, State AG's Memorandum of Law at 5, or 16, stating, "The Attorney General's Investigation pertains to civil rights, wage and hour, and sanitary code claims under New York Law, not any federal causes of action."   Moreover, when the unsworn memorandum references the ETA-750s and H-2B workers, it does so almost as an afterthought, reciting: "While Plaintiffs point out that the Attorney General might ultimately look to information on the ETA-750 forms to determine lawful wage," the ETA-750s are "at most merely incorporated by reference as a standard of conduct."  [State AG Memorandum of Law in Support of Motion to Dismiss, hereinafter "AG Memo", at 17].    Similarly, "The investigation focuses primarily on maintaining a level of employment conditions for workers within the state".  [Id. at 23].

The Orwellian recharacterizations of the basis for the Attorney General's investigation and found violations may speak volumes about the integrity and good faith of the investigators.

The deconstructions, however, cannot erase the sworn statements and written representations of the Attorney General Affiant regarding either the nature of the investigation or the violations he has already found. Moreover, were the Attorney General's sworn statements and writings magically erased, its current, albeit disingenuous, articulation of its investigation and findings is nonetheless still preempted, as is set forth below.

## II.    LEGAL ARGUMENT

### A.    Preemption Bars the State Attorney General from Investigating and Prosecuting the Wages and Overtime Paid to Dreamland's H-2B Workers

As is set forth at length in Plaintiffs' Memorandum of Law in Support of its Motion for Preliminary and Permanent Injunctive Relief [attached to Plaintiffs' Answer to Defendant's Motion as Exhibit "1-I"], the determination of wages due and owing to H-2B alien, seasonal workers employed by Dreamland pursuant to its federal Alien Employment Certification and contract with the United States Department of Labor is within the sole and exclusive jurisdiction of the United States Departments of Labor and Homeland Security, with issues of employer mendacity or perfidity on federal Forms ETA-750, such as those posed by the State Attorney General, channeled directly to the administrative mechanisms set forth within the federal statutes and regulations, with access to courts thereafter. In addition, were employers such as Dreamland to lie on their certifications or commit fraudulent acts in connection therewith, such lies and fraudulent acts constitute federal felonies within the sole and exclusive jurisdiction of the United States Department of Justice. In this regard, even the Attorney General himself appears to agree, swearing that employer's representations in the federal Form ETA-750 submitted by Dreamland to the United States Departments of Labor and Homeland Security are facially made subject to

12

the federal felony false statement crimes code statute, 18 U.S.C. § 1001, and the federal felony

perjury crimes code statute, 18 U.S.C. § 1746. *See* AG Affidavit at ¶ 21.

The subject matter of the State Attorney General's claim is preempted and, however

misguided, the State Attorney General has no lawful role in connection with the investigation or

pursuit of Dreamland for either wages, hours and overtime paid to H-2B employees or "repeated

fraud" in the employer Alien Employment Certification on the federal ETA-750 forms. As is set

forth in Dreamland's Memorandum of Law in Support of its Motion for Preliminary and

Permanent Injunctive Relief, the wages paid by Dreamland to the H-2B employees are

committed solely and exclusively to the jurisdiction of the United States Department of Labor, so

that even the FLSA does not apply, moreover, assuming *arguendo*, that the FLSA did apply, its

application to the pay due to H-2B alien, seasonal employees is in and of itself a federal question

committed to the jurisdiction of the United States Departments of Labor and Homeland Security,

with the entire field being preempted, thereby depriving the Attorney General of any power or

right to act. *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006);

*Shah v. Wilco Systems, Inc.*, 125 F. Supp.2d 641 (S.D.N.Y. 2000); *Alden Management Services,*

*Inc. v. Chao*, 529 F. Supp.2d 882 (N.D. Ill. 2007); *see, Grochowski v. Phoenix Const.*, 318 F.2d

80 (2d Cir. 2003); see Exhibit "1-I," at § II(C). Thus, the Plaintiffs' Complaint is properly before

this Court.[5]

Were the issue of wages and overtime due to H-2B workers under the employer

certification something other than a contract whose terms and conditions are solely the

---

[5]    Moreover, the State Attorney General persists in pursuing its investigation before this Court has the opportunity to determine the declaratory judgment Plaintiffs seek. Yet, lacking subject matter jurisdiction due to preemption and exclusive federal jurisdiction, the Attorney General's office subpoenas at issue are void and voidable so that the Attorney General's cannot use its office subpoenas to pursue an investigation over which he has no jurisdiction.

agreements of Dreamland and the United States Departments of Labor and Homeland Security as the only contracting parties, then the FLSA controls.   Under the FLSA, the State Attorney General's claims remain preempted.

United States workers and non-immigrant H-2B workers are each accorded protections applying to United States workers under the FLSA.  The federal FLSA, 29 U.S.C. § 201 *et. seq.*, sets forth minimum wage, hour and overtime strictures generally governing the relationship between employers and employees.  29 U.S.C. §§ 206, 207.

Certain industries and businesses have been exempted from the wages, hours and overtime provisions of the FLSA, including Dreamland.  29 U.S.C. § 213(a) of the FLSA, headed "Minimum Wage and Maximum Hour Requirements," exempts seasonal amusement and/or recreational establishments from the minimum wage and maximum hour strictures of the FLSA, if the carnival operates for less than 7 months a year, or its average receipts for any six months are not more than 1/3 of its average receipts for the other six months.  The statute reads, in relevant part:

> The provisions of Section 206 [minimum wages] and section 207 [maximum hours] of this Title shall not apply with respect to --
>
> (3)   any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center if ... (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 percentum of its average receipts for the other six months of such year ....

The Code of Federal Regulations applicable to the United States Department of Labor includes the same exemption.  29 C.F.R. 779.385 states, in relevant part:

> An amusement or recreational establishment operating on a seasonal basis may qualify as an exempt establishment under Section 13(a)(3) of the Act [29 U.S.C. § 213(a)(3)] ... Section

13(a)(3) exempts from the minimum wage and overtime pay requirements of the Act "any employee employed by an establishment which is an amusement or recreational establishment if (b) during the preceding calendar year its average receipts for any 6 months of the year were not more than 33 1/3 percentum of its average receipts for the other 6 months of the year."

Dreamland is such an establishment.

Attached hereto as Exhibit "2" is an Affidavit signed by Plaintiff Kathryn DeStefano, an owner and officer of the Plaintiff business entities and the primary bookkeeper of Plaintiff Dreamland. Her Affidavit and the chart appended thereto manifest that for each of the years preceding the ETA-750s signed by Dreamland, the average of the revenues derived in the lowest six months ranged from 16% to 28% of the average monthly revenues in the highest six months, so that Dreamland is indeed exempt for each of the years covered by the Defendant's May 23, 2008 office subpoenas.[6] Thus, Dreamland is exempt from the minimum wage, maximum hour and overtime requirements of the FLSA for all of its employees, including its approximately twenty (20) H-2B employees.

Furthermore, were there not preemption on these two grounds, the fact remains that the premise upon which the Attorney General purports now to bases his persistent fraud and illegality investigation and prosecution is directly contrary to the law of New York itself. New York has adopted and incorporated the FLSA exemption for amusement enterprises. As a result, Dreamland operates free from all federal or state strictures regarding wages and hours. In this

---

[6]    Her Affidavit also establishes irreparable harm and "ripeness" in that "in view of the contentions of the State Attorney General, Dreamland and its officers, including me, must choose between continuing the business of Dreamland and risking on-going and continuing liability and damages, or hiring no H-2B employees in which event Dreamland cannot operate its mobile carnival, or paying to its H-2B employees compensation demanded by the State Attorney General, which is not only far in excess of that paid to Dreamland's United States workers performing the same job functions as the H-2B workers, but also is far in excess of what Dreamland can afford to pay its employees." *See* Exhibit "2" hereto.

regard, the State Minimum Wage Order for Miscellaneous Industries and Occupations, Part 142 of Title 12 of the official compilation of Codes, Rules and Regulations reads at Section 142-2 and 143-2 as follows:

> An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate in the manner and methods provided in <u>and subject to the exemptions of Sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act</u>. ... In addition, an employer shall pay employees <u>subject to the exemptions of Section 13 of the Fair Labor Standards Act</u>, ... overtime at a wage rate of 1 1/2 times the basic minimum hourly rate.

12 N.Y.C.R.R. § 142-2, 143-2 (emphasis added). Thus, New York State has adopted in its own Code the same amusement enterprise exemption as applies under the Federal Fair Labor Standards Act, engrafting it onto the New York State Labor Laws.

As a result, the Attorney General is required to once again dissemble, arguing that despite the amusement exemption under the federal FLSA and the incorporation of the federal FLSA amusement exemption into the New York Code, freeing Dreamland from the minimum wage and maximum hour strictures of the federal law, "New York law would still require Dreamland to pay overtime at 1 1/2 times the state minimum wage even if the exemption were found to apply." [State AG Memo at 18]. The contention presents the spectacle of the State purporting to assess overtime on an hourly wage which could approach zero and for a work week which could be of unlimited duration before overtime would kick in. Such contention, however absurd, manifests the sagacity of preemption in order to avoid the 50 states, several territories, and the District of Columbia from pursuing their visions of appropriate overtime for employees of enterprises exempt from FLSA wage and hour standards.

Fortunately, the case law has extinguished the illogical possibility that the State Attorney General's position could prevail. Under the "savings clause" of the FLSA, 29 U.S.C. § 218, on

16

which the Defendant relies and which permits states to impose higher minimum wage rates or shorter maximum work weeks than does the FLSA under 29 U.S.C. §§ 206 and 207, the state cannot erase or undo the very exemptions provided for within the FLSA. Indeed, any such state law is in and of itself preempted.

In *Coil v. Jack Tanner Co., Inc.*, 242 F. Supp.2d 555 (S.D. Ill. 2002), seamen on tugboats operating on federal inland waterways in Illinois and other states filed suit against their employers, seeking overtime pay pursuant to the Illinois Minimum Wage Law for that portion of the time they spent in Illinois territorial waters. Specifically, the seamen alleged that Jack Tanner employed them for more than 40 hours a week but did not pay them time and a half for extra hours. Under the Fair Labor Standards Act, 29 U.S.C. § 213(b)(6), the maximum hour requirements set forth in Section 207 of the FLSA did not apply to seamen.[7] Employers argued that the seamen could not recover overtime under the Illinois Minimum Wage law because any Illinois state law that purported to require overtime for seamen exempt under the FLSA was perforce preempted by the FLSA.

Agreeing with the employers and finding that the FLSA preempted the state from providing overtime in an industry for which the FLSA had exempted employers from maximum hour rules, the Court relied both upon the Constitutionally based power over admiralty and maritime jurisdiction pursuant to which the FLSA provisions regarding seamen were enacted, and the specific determination by Congress to exempt seamen from the maximum hour provisions of the FLSA. The Court deemed the Illinois minimum wage law to be in clear conflict with federal law, thus requiring preemption:

---

[7]    Here, under § 213(a)(3)(B), neither minimum wage nor maximum hour requirements apply to the H-2B workers.

> The FLSA provides for maximum hours and the payment of
> overtime for employees engaged in interstate commerce "except as
> otherwise provided in this section,..."    29 U.S.A. § 207(a)(1).
> However, under Section 213(b)(6), "any employee employed as a
> seamen" is specifically exempted from the maximum hour
> requirements of Section 207. Thus, state's overtime laws may not
> be applied without entering a realm in which Congress has taken
> specific action.

*Coil*, 242 F. Supp.2d at 559.

*Coil* also concluded that the "savings clause" in the FLSA does not authorize the states to

eliminate FLSA exemptions:

> Finally, the Supreme Court decision in *United States v. Lock*, 529
> U.S. 90 (2000), demonstrates that the savings clause in the FLSA
> does not permit states to eliminate the seamen exception and that
> any holding to the contrary is inapplicable. In *Lock*, the Supreme
> Court was faced with a similar savings clause when it preempted
> the state of Washington's regulation of tanker vessels. *Id.* at 106.
> "Limiting the savings clause as we have determined respects the
> established federal-state balance in matters of maritime commerce
> between the subjects as to which the states retain concurrent
> powers and those over which the federal authority displaces state
> control." *Id.* at 106.   The Court found it "quite unlikely that
> Congress would use a means as indirect as the savings clause ... to
> upset the settled division of authority by allowing states to impose
> additional unique substantive regulation ...."

*Id. Coil*, 242 F. Supp.2d at 561.

*Coil* also noted the practical concerns were the Illinois overtime law deemed applicable,

providing sound reasons undergirding the preemption decision required by law:

> Here, the Court finds that the application of Illinois' or any state's
> differing overtime provisions to seamen on federal waters would
> destroy the uniformity of rules applicable to commerce on the
> inland waterways.  It would cause carriers of goods in the inland
> waterways to be able to maintain daily rates of pay for seamen
> while outside Illinois waters but to be unable to do so while in
> Illinois waters. It would force such carriers to track, hour by hour
> when their vessels are in Illinois waters, and in some cases, when
> their vessels are on the Illinois side of a river ....

*Coil*, 242 F. Supp.2d at 559-60.

Here, likewise, the FLSA exempts amusement enterprises from minimum wage, maximum hour and overtime strictures. To require a mobile carnival unit, sometimes operating in three (3) different states in a single payroll period, to pay overtime under varying state law would eviscerate the FLSA exemption, require extraordinary bookkeeping, and entirely undermine the federal goal of exempting amusement enterprises from such obligations.

Thus, once again, the State Attorney General is barred from pursuing his claim, even on the back-peddle, with respect to overtime wages to be paid to H-2B workers under New York law. Preemption attaches even to the retrenched statement of his claim.

**B.      The State Attorney General's Abstention Contention is Inapposite to the Disposition of Plaintiffs' Declaratory Judgment Claim**

Despite the force of preemption, the State Attorney General contends that abstention compels the dismissal of Plaintiffs' Complaint for Declaratory Judgment. Once again, the State Attorney General is simply wrong.

In support of his contention, the State Attorney General cites to *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("NOPSI"), 491 U.S. 350 (1989). *NOPSI* is of little solace to the Defendant. Indeed, despite prior on-going rate making proceedings initiated before the state rate-making authority, *NOPSI* found it to be undisputed that the plaintiff utility's preemption claim had provided the District Court with the jurisdiction to decide the matters at issue. In so concluding, the Supreme Court cited to a long line of cases dating back to 1821, generally precluding the federal court from declining to exercise jurisdiction provided to it. *NOPSI*, 491 U.S. at 358.

The *NOPSI* court then addressed issues of abstention under both *Buford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Younger v. Harris*, 401 U.S. 37 (1971), holding that neither required

that the *NOPSI* federal court abstain from reaching a decision on the merits.  In so holding, the

Supreme Court acknowledged that federal court disposition could affect or even negate pending

state court actions; nonetheless, *NOPSI* held that the federal court should decide the issue:

> It is true, of course, that the federal court's disposition of such a
> case may well affect, or for practical purposes pre-empt, a future,
> or as in the present circumstances, even a pending state-court
> action.  But there is no doctrine that the availability or even the
> pendency of state judicial proceedings excludes federal courts.

*NOPSI*, 491 U.S. at 373.

Moreover, to the extent that *NOPSI* left open the question whether federal courts should

abstain in the face of a readily apparent claim of federal preemption, the Courts of Appeal have

virtually uniformly held that abstention is inappropriate where a preemption claim is facially

conclusive or the preemptive effect of federal law is readily apparent.  *See*, e.g., *Woodfeathers,*

*Inc. v. Washington County, Or.*, 180 F.3d 1017, 1021-22 (9th Cir. 1999); *GTE Mobilenet of Ohio*

*v. Johnson*, 113 F.3d 469, 475 (6th Cir. 1997); *Chaulk Services, Inc. v. Massachusetts Comm'n*

*Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir. 1995)(collecting cases finding *Younger*

abstention inappropriate where preemption claim is "facially conclusive" or "readily apparent.");

*Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001)(*Younger*

inapplicable where state seeks to regulate activities clearly under exclusive federal control).  *See*

*also Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir. 1982), *aff'd sub nom.*,

*Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220 (1983) (*Younger* abstention not

properly invoked in preemption cases); *Marshal v. Chase Manhattan Bank*, 558 F.2d 680 (2d

Cir. 1977)(same); *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.

1987)("It would be futile to abstain in deference to a state decisional body if it should later

develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body").[8]

Moreover, there is a particular perversity to the State Attorney General's invocation of *Younger* abstention. After all, one of the three preconditions to abstention under *Younger* is squarely bottomed upon the notion that the state has a valid interest that it is seeking to enforce. *Christ the King Regional High School*, 815 F.2d at 224. Here, regardless of the State Attorney General's aspirations, it has no legitimate interest to enforce either at statute or common law.[9] As set forth, *supra*, the issue with respect to the determination of the proper compensation for wages and/or overtime pursuant to Dreamland's certification with the United States Departments

---

[8]     In order to warrant abstention under *Younger*, the party opposing the exercise of jurisdiction by the federal courts must establish, *inter alia*, that state proceedings have been initiated "before any proceedings of substance" took place in federal court. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Plaintiffs' Complaint is concededly a proceeding of substance. It was filed seventeen (17) days before the State Attorney General filed any matter in any court, or issued process in the name of any court or administrative agency. Thus, unless the Attorney General's own office subpoena, designed and intended to avoid court or administrative agency control, counter-intuitively somehow initiates a state proceeding, *Younger* is inapplicable on this ground alone. *J. & W. Seligman & Co., Inc. v. Spitzer*, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) is not to the contrary, because the subpoenas there at issue were propounded pursuant to a state statute specifically authorizing the use of pre-complaint process for investigative purposes and, apparently, were compulsory process, and not office subpoenas. *Seligman*, 2007 U.S. Dist. LEXIS 71881 at *15. Counsel has found no case holding that office subpoenas are "ongoing proceedings" under *Younger*. Moreover, *Seligman's* abstention was bottomed upon the lack of clear preemption and due to clear state original jurisdiction.

[9]     The State Attorney General's reliance on *Judice v. Vail*, 430 U.S. 327 (1977) is equally mystifying. In *Judice*, a debtor who had state court judgments lodged against him ignored post judgment deposition subpoenas for discovery in aid of execution, resulting in orders for his appearance and after failing to appear, for contempt. He then filed a § 1983 claim in federal court against the Judge who had held him in contempt, asserting that the state's contempt proceedings were unconstitutional. There was no issue of preemption, and Vail's repeated thumbing his nose at concededly lawful process within the proper jurisdiction of the parties and courts made the holding virtually inevitable. However, to suggest as the State Attorney General does here, that Plaintiffs' filing of their declaratory judgment action prior to the Attorney General filing any matter in state court somehow is equivalent to Vail's post-judgment ignoring of state deposition orders in aid of execution manifests the weakness of the State Attorney General's position.

of Labor and Homeland Security lies wholly beyond the bounds of any lawful authority of the

State.   Wages and hours are subject exclusively to the certification and contract between

Dreamland and the United States Departments of Labor and Homeland Security.   If the FLSA

attaches, then pursuant to the amusement exemption, Dreamland is free from the wages and

hours provisions of the FLSA.   New York itself has the very same amusement enterprise

exemption.   To the extent the State Attorney General chooses to read its incorporation of the

FLSA amusement enterprise exemption to nonetheless permit the state to demand that H-2B

workers receive overtime, even in the absence of wages and hours strictures, that reading, too, is

preempted by the applicable case law.

Thus, the state has no valid interest.   The State Attorney General simply has no basis to

proceed.

Even assuming, *arguendo*, that New York State had a legitimate interest and that the

State Attorney General were empowered to investigate and act, abstention would be

inappropriate.   Instructive is *Baggett v. Department of Professional Regulation, Board of Pilot

Commissioners*, 717 F.2d 521 (11th Cir. 1983), holding that preemption barred Florida from

investigating whether plaintiff had been intoxicated while piloting a tug and barge into a Florida

harbor, and opining:

> Florida has an important interest in insuring that state licensed
> marine pilots do not navigate registered vessels in a dangerous
> manner.  Congress, however, has determined that the United States
> has an identical interest ... and that the state should not interfere
> with federal enforcement of its requirements of pilots to operate
> under federal licenses.

*Baggett*, 717 F.2d at 523-24.  Here, there is no law creating a legitimate state interest, much less

empowering the State Attorney General to investigate.   As a result, it is crystal clear that the

State Attorney General cannot raise abstention as a bar precluding this Honorable Court from reaching the merits of the Plaintiffs' preemption Complaint.

## III.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully submit that this Honorable Court should enter an Order in the form attached hereto, denying the State Attorney General's Motion to Dismiss the Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief.

Respectfully submitted,

_Bruce L. Thall_

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA  19103
214-241-8888/FAX - 215-241-8844
*Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER KRINSKY & DROGIN, PC
1350 Broadway
New York, NY  10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Plaintiffs*

23

# EXHIBIT "2"

Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel For Plaintiffs*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel For Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO, | : <br> : <br> : <br> : <br> : |
|                 Plaintiffs, | : C. A. No. 08-Civ-6321(JGK) <br> : |
|       v. | : <br> : |
| THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK, | : <br> : <br> : <br> : |
|             Defendant. | : |

## AFFIDAVIT

I, Kathryn DeStefano, do depose and say as follows:

1.    I am an owner and officer of Dreamland Amusements, Inc., and serve as its

primary bookkeeper.

2.    The attached chart, headed "Dreamland Amusement Exemption Computation

Under 8 U.S.C. § 13(a)(3)(B)," reflects for each of the years 2005, 2006, and 2007 the gross

revenues received by Dreamland for each month within that year, and computes therefrom the average of the lowest of the six months within each year, the average of the highest of the six months of each year, and the ratio of the lowest six months to the highest six months, within each year.

3.    I am aware that under the amusement enterprise exemption contained within the federal Fair Labor Standards Act, the minimum wage and maximum hour requirements of that Act do not apply to exempt amusement establishments. Under 29 U.S.C. § 213(a)(3)(B), an amusement enterprise is exempt if "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 percentum of its average receipts for the other six months of such year ...."

4.    As is reflected on the Dreamland Amusement Exemption Computation schedule attached hereto, for each of the years 2006, 2007, and 2008, Dreamland was an exempt amusement establishment because its average receipts for any of the six months of each preceding year were not more than 33 1/3 percent of its average receipts for the other six months of such year, ranging from 16 percent to 28 percent.

5.    Only Dreamland employs H-2B seasonal, temporary, alien workers. Neither Toy Circus, Inc. nor Crossroads Trucking Corp. have applied for or employed H-2B workers.

6.    Dreamland has already been provided with the forms it must fill out pursuant to the Immigration and Nationalization Act in order to obtain H-2B employees for the 2009 season, including the federal Form ETA-750 Part A Alien Employment Certification which Dreamland must submit to the Departments of Labor and Homeland Security. The United States Department of Labor recommends that employers seeking H-2B workers should submit the Form ETA-750 Certification at least 60 days, but no more than 120 days before the need for the workers is expected to arise.

2

7.    In view of the contentions of the State Attorney General, Dreamland and its officers, including me, must chose between continuing the business of Dreamland and risking ongoing and continuing liability and damages, or hiring no H-2B employees in which event Dreamland cannot operate its mobile carnival, or paying to its H-2B employees compensation demanded by the State Attorney General, which is not only far in excess of that paid to Dreamland's United States worker performing the same job function as the H-2B workers, but also is far in excess of what Dreamland can afford to pay its employees.

8.    I am advised by my counsel that these facts establish irreparable harm for purposes of injunctive relief.

*Kathryn L. DeStefano*

Kathryn DeStefano

Sworn to and subscribed
before me this _11th_ day
of August, 2008

*Michael Engel*

Notary Public

MICHAEL ENGEL
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01EN6110426
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MAY 24, 2012

3

DREAMLAND AMUSEMENT EXEMPTION COMPUTATION
8 USC § 213(a)(3)(B)

DREAMLAND REVENUES[1]

| | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Jan | 0 | 0 | 19,466 | |
| Feb | 90,249 | 88,467 | 81,461 | |
| Mar | 197,174 | 190,027 | 343,474 | |
| Apr | 362,034 | 331,984 | 420,464 | |
| May | 447,052 | 553,328 | 687,161 | |
| June | 285,051 | 205,889 | 444,392 | |
| July | 399,216 | 433,613 | 635,867 | |
| Aug | 361,202 | 398,712 | 796,847 | |
| Sept | 370,651 | 347,081 | 515,985 | |
| Oct | 139,722 | 83,795 | 695,993 | |
| Nov | 101,000 | 0 | 117,045 | |
| Dec | 0 | 0 | 62,500 | |
| | | | | |
| Total Year | 2,753,351 | 2,632,796 | 4,819,655 | |
| lowest 6 months | 528,145 | 362,289 | 1,068,338 | |
| | | | | |
| | | | | |
| Average of lowest 6 months | 88,024 | 60,382 | 178,056 | |
| Average of highest 6 months | 370,860 | 374,418 | 626,218 | |
| (a)(3)(B) ratio | 24% | 16% | 28% | |

529957

---

[1]    Revnues include all pre-tax monies received for rides, games, food and includes receipts of rents, or revenue shares from third parties or independent contractors who supply rides or games or foods and excludes all expenses.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN THE APPLICATION OF ANDREW M. CUOMO,    :
ATTORNEY GENERAL OF THE STATE OF
NEW YORK,                                :    Case No. 08-Civ-6321(JGK)

                                         :
                          Petitioner,    :

                                         :
for an Order under C.P.L.R. § 2308(b) to enforce    :    **CERTIFICATE OF SERVICE**
compliance with subpoenas                :

                                         :
        -- against --                    :

                                         :
DREAMLAND AMUSEMENTS, INC., TOY CIRCUS,   :
INC., CROSSROADS TRUCKING CORP., ROBERT   :
F. DESTEFANO, JR., KATHRYN L. DESTEFANO,  :
and any other owners and corporate officers of Dreamland    :
Amusements, inc., Toy Circus, Inc., and/or Crossroads        :
Trucking Corp.,                          :

                                         :
                          Respondents.   :

I, Bruce L. Thall, certify that:

On August 19, 2008, I caused to be served the within document on Petitioners by e-mailing a true copy thereof to Andrew J. Elmore, Esquire of the State of New York Office of the Attorney General co-counsel for Petitioner at Andrew.Elmore@oag.state.ny.us and Julian R. Birnbaum, Esquire of the State of New York Office of the Attorney General co-counsel for Petitioner at Julian.Birnbaum@oag.state.ny.us.

Bruce L. Thall, Esquire