Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

DREAMLAND AMUSEMENTS, INC.,
TOY CIRCUS , INC., CROSSROADS
TRUCKING CORP., ROBERT DESTEFANO,
and KATHRYN DESTEFANO,

         Plaintiffs,

v.

THE HONORABLE ANDREW M. CUOMO,
ATTORNEY GENERAL, OFFICE OF THE
ATTORNEY GENERAL,
STATE OF NEW YORK,

         Defendant.

Case No. 08-Civ-6321(JGK)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTION**

Because the New York State Attorney General's Opposition to Plaintiffs' Motion for Preliminary and/or Permanent Injunction contains little that has not elsewhere been thoroughly addressed by Plaintiffs, the Reply Memorandum of Law in support of Plaintiffs' Motion for Injunctive Relief can be relatively brief.

A.    **Plaintiffs Meet or Exceed the Tests for Injunctive Relief**

At Section II(A) of the Memorandum of Law in Support of their Motion for Preliminary and/or Permanent Injunctive Relief, Plaintiffs set out the factors and analysis entitling them to assert their claim for injunctive relief in the body of their Complaint. Defendant disagrees, asserting that Plaintiff has not alleged nor otherwise shown irreparable harm.

Defendant is in error. Attached hereto as Exhibit "A" is the Affidavit signed by Plaintiff Kathryn DeStefano, an owner and officer of Plaintiff entities and the primary bookkeeper of Plaintiff Dreamland. Her Affidavit and the chart appended thereto manifest not only that Dreamland is indeed an exempt amusement establishment under §213(a)(3)(B) of the federal Fair Labor Standard Act ("FLSA"), so that preemption bars the Defendant from investigating or prosecuting any and every claim based in whole or in part upon his construction of wages, hours or overtime due to Dreamland's H-2B employees, but also establishes irreparable harm.

With respect to cognizable, irreparable harm, the Affidavit of Plaintiff Kathryn DeStefano recites, *inter alia*, that Dreamland must now complete the federal Form ETA-750 for the year 2009, and that:

> In view of the contentions of the State Attorney General, Dreamland and its officers, including me, must choose between continuing the business of Dreamland and risking on-going and continuing liability and damages, or hiring no H-2B employees in which event Dreamland cannot operate its mobile carnival, or paying to its H-2B employees compensation demanded by the State Attorney General, which is not only far in excess of that paid to Dreamland's United States workers performing the same job function as the H-2B workers, but also is far in excess of what Dreamland can afford to pay its employees.

Exhibit "A" at ¶¶6, 7. Plaintiff's Affidavit manifests that Dreamland is caught between the scylla

2

of on-going and continually escalating liability and damages, and the charybdis of going out of business.\[1]

Plaintiffs respectfully submit that the Affidavit establishes unquestionable irreparable injury, and it would appear that the State Attorney General himself agrees. Indeed, Defendant cites to two cases which Defendant contends establish irreparable harm, by bottoming the grant of injunctive relief upon exposure to successive and harassing proceedings, or likelihood of potential insolvency absent injunctive intervention. See Defendant's Memorandum of Law in Opposition at pp. 12-13. Moreover, as is set forth in Sections I(B) of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint, the very acts and omissions of the State Attorney General themselves manifest that the predicament faced by Plaintiff is real, and that there is an immediate palpable threat of unlawful action by the State Attorney General. Given doctrines of prosecutorial immunity in general and official immunity under 42 U.S.C. §1983, in particular, Plaintiffs are not likely to be compensated for their resulting financial injury.

Thus, it is respectfully submitted that Plaintiffs have established both the validity of their claim and the likelihood of their success on the merits, together with their irreparable injury.

B.  **Preemption Precludes the Defendant from Investigating or Prosecuting Wages, Hours and Overtime Paid or Payable to H-2B Workers**

As is set forth at length in Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Injunction at II(B) and (C), and in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss their Complaint, at II(A), the entire substance of the State Attorney General's investigation regarding wages, hours and overtime is preempted, and lies

---

[1] / For those who have not recently read *The Odyssey*: Odesseus on his way home had to go through a narrow strait with twin perils. Scylla, the sea nymph, would lure the sailors to their death. Charybdis was rocks that would crash together and crush anything in its path. Odesseus solved the problem by having cotton swabs stuck into his crews' ears so that none could hear Scylla.

3

fully beyond the bounds of any lawful authority of the State, much less its Attorney General. Wages and hours for H2-B workers are subject exclusively to the certification and contract between Dreamland and the United States Departments of Labor and Homeland Security. Assuming, *arguendo*, the FLSA attaches, then, pursuant to the amusement exemption, Dreamland is free from the wages and hours provisions of the FLSA. Moreover, New York State itself has adopted the very same amusement enterprise exemption. To the extent the State Attorney General chooses to read its incorporation of the FLSA amusement enterprise exemption to swallow up the exemption by demanding that overtime be paid, such contention, too, is preempted by the applicable case law. *See., e.g., Coil v. Jack Tanner Co., Inc.*, 242 F. Supp.2d 555 (S.D. Ill. 2002).

Even in its back-pedaling, the Defendant attempts to finesse the fact that it has acknowledged that its wage, hour and overtime investigation exists solely due to its interpretation of the federal Form ETA-750s, by suggesting that it is "investigating claims based on failure to pay the minimum wage required by New York Law and to pay no less than 1½ times that wage for overtime work, which also are clearly not preempted" [Defendant's Memorandum in Opposition to Plaintiffs' Motion for Injunctive Relief (hereinafter "Defendant's Memorandum") at p. 15]; and "the investigation focuses on insuring the wages and employment conditions of 42 workers comply with New York Law" [Defendant's Memorandum at p. 16]. Yet, New York Law has adopted the FLSA amusement exemption with respect to minimum wage and maximum hours. Moreover, as *Coil* held, preemption bars the State from imposing overtime in the face of the federal FLSA exemption. As a result, Plaintiffs respectfully submit that the State Attorney General's attempts to recast its wage, hour and overtime investigation as one involving only New York wages are ineffectual because the recast attempts, too, are the subject of preemption.

The position of the State Attorney General is not only wrong as a matter of law, but also cheeky. After all, the statutory purpose undergirding the H-2B program is to ensure that United States workers are not displaced from obtaining employment by alien, seasonal workers. Thus, the H-2B workers are allowed to obtain employment in the United States "if unemployed persons capable of performing such services or labor cannot be found in this country." 8 U.S.C. §1101(a)(H)(ii)(b). Were the Defendant correct in its interpretation of the federal Alien Employment Certification, or were the FLSA to compel Dreamland to pay each H-2B worker prevailing wages and at 40 hours per week, and at time and a half for overtime, then H-2B workers would be paid far more than native born United States workers performing the same jobs, due to the FLSA exemption. It is respectfully submitted that the State Attorney General's interpretation is both legally and logically unsupportable, and in dereliction of clear public policy, thereby rendering insubstantial its opposition to Plaintiffs' request for injunctive relief.

C.  **New York's Database Role is Inapposite to Preemption**

In their Memorandum of Law in Support of their Motion for Preliminary and/or Permanent Injunction, at I(B), Plaintiffs discussed the federal statutory and regulatory steps that an employer must climb in seeking to obtain federal H-2B visas from the federal Department of Homeland Security in order to hire the alien, seasonal workers. These steps begin with the federal Form ETA-750 -- the Alien Employment Certification submitted and approved by the United States Departments of Labor and Homeland Security -- the very document upon which the Defendant bases his jurisdiction. *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint at I(B), (C).

The elucidation by Plaintiffs of the federal statutory and regulatory steps that an employer such as Dreamland must undertake included, *inter alia,* the direct or indirect submission of the United States Department of Labor Form ETA-750 to the appropriate State

5

Workforce Agency for a recitation of the existing prevailing wages in the geographic areas in which the alien will work, and for a tapping in to the State's records of the available United States labor force, in order to ensure that the alien H-2B workers will not displace United States born workers otherwise available to work as employees of Dreamland.

The New York State Department of Labor ("State Department of Labor") is the federal deferral State Workforce Agency to which Dreamland's federal Form ETA-750s were directed to merely provide the prevailing wage in each of the locations within Dreamland's multi-state itinerary. For example, as set forth at pages 8 and 9 of Exhibit "2" of Defendant's Motion, the State Department of Labor referred to its data resources and supplied a list of prevailing wages at thirty (30) locations in ten (10) states along the East Coast for Dreamland's 2007 itinerary. The State Department of Labor was also charged by federal law with confirming that United States born workers within Dreamland's itinerary were not available to perform the work required by Dreamland. In this regard, the United States Department of Labor, Employment & Training Administration ("ETA") has several processing centers to supervise foreign labor certifications, including H-2B visas; one in Atlanta and the other in Chicago. The United States Department of Labor Employment Standards Administration ("ESA") has wage and hour divisions, including seven (7) in New York, two (2) of which are in New York City. ETA and ESA obtain data from States to enable the federal authorities to ensure that the Immigration and Naturalization Act ("INA") provisions are met by the employer applicants, such as Dreamland, for H-2B workers.

Defendant contends that the involvement of the State Department of Labor as a resource used by the United States Departments of Labor and Homeland Security in providing data and information related to the determination by the federal departments whether to issue H-2B visas somehow transforms the federal program into one over which New York State has wage, hour and overtime jurisdiction.

At no time does the State Attorney General explain how the resource use by the United States departments of the information lying within the State Department of Labor changes the contract between Dreamland and the federal government, or alters or even affects preemption. The absence of any such explanation or analysis is due to the fact that there is no such link.

The fact that databases used are those of New York (or Texas or California, where the other two State Workforce Agencies are located) is irrelevant to preemption. Preemption would bar the State Attorney General from investigating former Governor Spitzer for federal tax fraud even were the State Attorney General to contend that some of his income was derived from New York State higher education or highway securities with floating, state-controlled interest rates and fees. In a similar *non sequitor*, Defendant purports to transform the inclusion of prevailing wage data from the State Department of Labor throughout Dreamland's mobile carnival itinerary into a contract between Dreamland and New York regarding wages, hours and overtime. The basis upon which Defendant draws that conclusion is not explained, nor can it be. There is no such link.\²

The matters preempted include, *inter alia*, the wages, hours and overtime to be paid to H-2B workers pursuant to the federal Form ETA-750s filed by employers such as Dreamland with the United States Departments of Labor and Homeland Security, under the INA. The resource

---

² /   In this regard, it is intriguing that the Affiant recites that it was the State Department of Labor's practice to forward the ETA-750s to the United States Department of Labor "only if the employer agreed to pay at least the prevailing wage determined by the New York State Department of Labor." Apart from New York State's "practice" being irrelevant, the fact remains that the form ETA-750 for the year 2006, attached to Plaintiffs' Complaint as Exhibit "A" and hereto as Exhibit "B", contained no hourly rate of pay whatsoever. Rather, a weekly rate of pay was submitted. Nonetheless, the ETA-750 was approved by the United States Department of Labor and, obviously, passed on by New York, regardless of its alleged "practice".

Not surprisingly, though bordering on deception by silence, that 2006 ETA-750 was <u>not</u> included in the exhibits attached to Defendant's Motion. Further, the documents within Exhibit "2" to Defendant's motion were the subject of Plaintiffs' FOIL request of June 30, 2008, which has not been honored, apparently because the State Attorney General has refused to sign off on the release of the documents.

7

function of the State Departments of Labor, including that of New York, neither affects preemption nor creates contracts between any employers and each or any of the several depository states.\[3] As a result, Defendant's contentions of New York State involvement have no bearing upon Plaintiffs' Motion for Injunctive Relief.

D.  **Miscellaneous Issues**

In their Memorandum of Law in Support of their Motion for Injunctive Relief at II(B), Plaintiffs discussed *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374 (1992), an analogous Supreme Court authority establishing the propriety of injunctive relief to enforce declaratory judgments in cases in which State Attorneys General who had threatened the initiation of fraud prosecutions were precluded from acting by preemption. Recognizing the significance of *Morales*, but unable to distinguish or contest the core facts, holding, or Plaintiffs' analysis, Defendant has attempted to discount the significance of *Morales* by stating that the State Attorneys General had not there argued for abstention, so that *Younger* was not implicated. Once again the Defendant's contention undercuts its position and reflects a misapprehension of both preemption and *Younger*.

Abstention may occur under *Younger*, only if (1) there is a pending state proceeding that would be disrupted; (2) the proceeding implicates an important state interest; and (3) the proceeding gives the federal plaintiff adequate opportunity to raise Constitutional claims. *See, e.g., Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987). In *Morales*, Attorneys General of seven (7) states had sent memoranda to major airlines announcing their view that multiple carriers were failing to adhere to the Attorneys General's advertising

---

[3] \   In this regard, the State Attorney General serves the functional capacity of an executive's secretary. The secretary may verify that a contract proposal package is complete upon receipt of same, and may even fill in a few blanks before handing it to her boss, but she certainly is not a party to the contract and has no right of contract enforcement.

guidelines, and that each such failure "is a violation of our respective state laws on deceptive advertising and trade practices". The seven (7) Attorneys General thereafter sent formal notices of intent to sue the airlines for their advertising practices which the Attorneys General claimed violated multiple state laws.

Thus, in *Morales*, there was no pending state proceeding, much less one which implicated an important state interest. As a result, *Younger* abstention could not attach.\[4] No wonder the Attorneys General did not argue in *Morales* for abstention. Based on *Morales*, the State Attorney General should not argue that abstention applies to this case. After all, a formal notice of intent to sue issued by Attorneys General is functionally indistinguishable for abstention purposes from a formal admission by an Attorney General of multiple, found violations of law and a settlement demand based thereon, prior to filing suit or initiating state court proceedings.\[5] Thus, *Younger* abstention is no more applicable to this case than it was in *Morales*.

Considering the *Younger* abstention components, it would appear that the actions of State Attorney General evidence agreement that abstention does not apply to this case. In this regard, the State Attorney General has now affirmatively asked this Court to rule upon its state court Petition to enforce its office subpoenas which position was filed nineteen (19) days after the Complaint in this action. Defendant has filed the state court Petition in this Court as its Motion to Dismiss Plaintiffs' Complaint for Declaratory Judgment. Obviously, Defendant would not have voluntarily brought these matters to this Court were any state court proceeding pending prior to the filing of Plaintiffs' Complaint, or if any such proceedings would be disrupted. Thus, the law, and Defendant's actions, manifest that *Morales* controls and *Younger* is inapposite.

---

[4]/    *See also* Section II(B) of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint.

[5]/    Moreover, as has been discussed *ad nauseum* in various filings herein, there is simply no valid or enforceable state interest at issue herein, as is required to justify abstention under *Younger*.

The remaining contentions of the Defendant regarding preemption and abstention are addressed comprehensively at Plaintiffs' Memorandum of Law in Support of their Motion for Injunctive Relief at II(A), II(B) and II(C), and in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint at II(B), which is incorporated by reference as if fully set forth herein. They need not be repeated herein.

The contentions raised by Defendant regarding the scope of its investigation and its powers to investigate state law issues are discussed at length in Plaintiffs'/Respondents' Memorandum of Law in Opposition to Defendant/Petitioner's Motion to Enforce Subpoenas, which is incorporated by reference as if fully set forth herein, and need not be repeated herein.

Defendant's mischaracterizations and reinventing of the focus of its jurisdiction is addressed at length at I(B) and (C) of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint, which is incorporated by reference as if fully set forth herein. Those discussions, again, need not be reiterated herein.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully pray that this Honorable Court enter an Order granting to Plaintiffs the injunctive relief which they have requested and to which they are entitled.

Respectfully submitted,

*[signature]*

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA  19103
214-241-8888/FAX - 215-241-8844
*Lead Counsel for Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER KRINSKY & DROGIN, PC
1350 Broadway
New York, NY  10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Plaintiffs*

# EXHIBIT "A"

Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel For Plaintiffs*

Edward Finkelstein, Esquire [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel: 212-216-8000 / FAX- 212-216-8001
*Local Counsel For Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO, <br><br> Plaintiffs, <br><br> v. <br><br> THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL, OFFICE OF THE ATTORNEY GENERAL, STATE OF NEW YORK, <br><br> Defendant. | C. A. No. 08-Civ-6321(JGK) |

---

## AFFIDAVIT

I, Kathryn DeStefano, do depose and say as follows:

1. I am an owner and officer of Dreamland Amusements, Inc., and serve as its primary bookkeeper.

2. The attached chart, headed "Dreamland Amusement Exemption Computation Under 8 U.S.C. § 213(a)(3)(B)," reflects for each of the years 2005, 2006, and 2007 the gross

revenues received by Dreamland for each month within that year, and computes therefrom the average of the lowest of the six months within each year, the average of the highest of the six months of each year, and the ratio of the lowest six months to the highest six months, within each year.

3. I am aware that under the amusement enterprise exemption contained within the federal Fair Labor Standards Act, the minimum wage and maximum hour requirements of that Act do not apply to exempt amusement establishments. Under 29 U.S.C. § 213(a)(3)(B), an amusement enterprise is exempt if "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 percentum of its average receipts for the other six months of such year ...."

4. As is reflected on the Dreamland Amusement Exemption Computation schedule attached hereto, for each of the years 2006, 2007, and 2008, Dreamland was an exempt amusement establishment because its average receipts for any of the six months of each preceding year were not more than 33 1/3 percent of its average receipts for the other six months of such year, ranging from 16 percent to 28 percent.

5. Only Dreamland employs H-2B seasonal, temporary, alien workers. Neither Toy Circus, Inc. nor Crossroads Trucking Corp. have applied for or employed H-2B workers.

6. Dreamland has already been provided with the forms it must fill out pursuant to the Immigration and Nationalization Act in order to obtain H-2B employees for the 2009 season, including the federal Form ETA-750 Part A Alien Employment Certification which Dreamland must submit to the Departments of Labor and Homeland Security. The United States Department of Labor recommends that employers seeking H-2B workers should submit the Form ETA-750 Certification at least 60 days, but no more than 120 days before the need for the workers is expected to arise.

2

7. In view of the contentions of the State Attorney General, Dreamland and its officers, including me, must chose between continuing the business of Dreamland and risking ongoing and continuing liability and damages, or hiring no H-2B employees in which event Dreamland cannot operate its mobile carnival, or paying to its H-2B employees compensation demanded by the State Attorney General, which is not only far in excess of that paid to Dreamland's United States worker performing the same job function as the H-2B workers, but also is far in excess of what Dreamland can afford to pay its employees.

8. I am advised by my counsel that these facts establish irreparable harm for purposes of injunctive relief.

*Kathryn L. DeStefano*
Kathryn DeStefano

Sworn to and subscribed
before me this 11th day
of August, 2008

*Michael Engel*
Notary Public

MICHAEL ENGEL
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01EN6110426
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MAY 24, 2012

3

DREAMLAND AMUSEMENT EXEMPTION COMPUTATION
8 USC § 213(a)(3)(B)

DREAMLAND REVENUES[1]

|  | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Jan | 0 | 0 | 19,466 |  |
| Feb | 90,249 | 88,467 | 81,461 |  |
| Mar | 197,174 | 190,027 | 343,474 |  |
| Apr | 362,034 | 331,984 | 420,464 |  |
| May | 447,052 | 553,328 | 687,161 |  |
| June | 285,051 | 205,889 | 444,392 |  |
| July | 399,216 | 433,613 | 635,867 |  |
| Aug | 361,202 | 398,712 | 796,847 |  |
| Sept | 370,651 | 347,081 | 515,985 |  |
| Oct | 139,722 | 83,795 | 695,993 |  |
| Nov | 101,000 | 0 | 117,045 |  |
| Dec | 0 | 0 | 62,500 |  |
|  |  |  |  |  |
| Total Year | 2,753,351 | 2,632,796 | 4,819,655 |  |
| lowest 6 months | 528,145 | 362,289 | 1,068,338 |  |
|  |  |  |  |  |
| Average of lowest 6 months | 88,024 | 60,382 | 178,056 |  |
| Average of highest 6 months | 370,860 | 374,418 | 626,218 |  |
| (a)(3)(B) ratio | 24% | 16% | 28% |  |

529957

---

[1] Revenues include all pre-tax monies received for rides, games, food and includes receipts of rents, or revenue shares from third parties or independent contractors who supply rides or games or foods and excludes all expenses.

# EXHIBIT "B"

**U.S. Department of Labor**  **Employment and Training Administration**
Chicago National Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611



## FINAL DETERMINATION

January 20, 2006

DREAMLAND AMUSEMENTS
c/o Joe A, Nichols
Law Office of Joe A. Nichols, P. A.
1033 W. First Street, Suite B
Sanford, FL 32771

ETA Case Number: C-06020-07301
State Case #: 20050036260
Number of Openings: 40

Occupation: Circus Laborer
Period of Certification: January 05, 2006 - November 01, 2006

In reply refer to:   Mary Glusak

The Department of Labor has made a final determination on your application for certification of temporary alien employment pursuant to Title 20, Code of Federal Regulations, Part 655.

<u>The Application for Alien Employment Certification, Form ETA 750A, **has been certified** and is enclosed</u>. All enclosures are required to be submitted to the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, at:

> U.S. Department of Homeland Security
> U.S. Citizenship and Immigration Services
> Vermont Service Center
> 75 Lower Weldon St.
> Saint Albans, VT 05479

for consideration with your petition (Form I-129).

The employer is advised if filing for H-2B visas for carnival laborers next year, he must file his application under the guidelines of GAL 1-95 and not the guidelines for entertainers.

Sincerely,


Marie Gonzalez
Certifying Officer

CC: DREAMLAND AMUSEMENTS

Attachments: Form ETA 750A

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

OMB Approval No. 44-R1301

# APPLICATION FOR ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

*PRINT legibly in ink or use a typewriter. If you need more space to answer questions on this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.*

*To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001)*

## PART A. OFFER OF EMPLOYMENT

**1. Name of Alien** *(Family name in capital letter, First, Middle, Maiden)*
Multiple Aliens   (40)

**2. Present Address of Alien** *(Number, Street, City and Town, State ZIP Code or Province, Country)*
Not in USA.

**3. Type of Visa** *(If in U.S.)*

The following information is submitted as evidence of an offer of employment.

**4. Name of Employer** *(Full name of organization)*
DREAMLAND AMUSEMENTS

**5. Telephone** *(Area Code and Number)*
516-901-2988

**6. Address** *(Number, Street, City or Town, Country, State, Zip Code)*
2 Olympia Lane, Stony Brook, NY. 11790

**7. Address Where Alien Will Work** *(if different from item 6)*
Traveling Carnival on US Tour

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | | a. Basic | b. Overtime |
| Traveling Entertainment Carnival | Carnival Laborers | 40 | none | 10:00 a.m. 7:00 p.m. | $310.80 per week | $ none per hour |

**13. Describe Fully the Job to be Performed** *(Duties)*
Working with carnival rides and seats, unloading and loading rides, seats, and tents, moving heavy equipment as directed, setting up and taking down rides, seats, and tents.

**14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactory the job duties described in Item 13 above.**

| EDUCATION (Enter number of years) | Grade School | High School | College | College Degree Required (specify) |
|---|---|---|---|---|
| | 0 | 0 | 0 | n/a |
| | | | | Major Field of Study: n/a |

| TRAINING | No. Yrs. | No. Mos. | Type of Training |
|---|---|---|---|
| | 0 | 0 | n/a |

| EXPERIENCE | Job Offered | | Related Occupation | | Related Occupation (specify) |
|---|---|---|---|---|---|
| | Yrs. | Mos. | Yrs. | Mos. | |
| | 0 | 0 | 0 | 0 | n/a |

**15. Other Special Requirements**

**16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor**
Supervisor

**17. Number of Employees Alien Will Supervise**
0

**ENDORSEMENTS** *(Make no entry in section - for government use only)*

**Date Forms Received**
L.O.
S.O. NOV 1 5 2005
R.O.
N.O.

1. Qualified workers cannot be found in the United States
2. Division of Foreign Labor Certification Policies have been observed.
3. This certification is valid from 1/5/06 through 11/1/06

1/20/06    Maria O. Gonzalez
(Date)     (Certifying Officer)

Ind. Code: 7999
Occ. Code: 969.687-010
Occ. Title: Carnival Laborer

C-06020-07301

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.
ETA 750 (Oct. 1979)

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | a. Number of Local | b. Name of Local |
| | From / To | | c. City and State |
| 40 | 01/05/2006 / 10/11/2006 | | |

Handwritten: 11-01-2006, 1-20-06, 140

**CORRECTION APPROVED BY REGIONAL OFFICE**

### 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS (Complete for Private Household Job ONLY)

| a. Description of Residence ("X" one) | b. No. Persons Residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? ("X" one) |
|---|---|---|---|---|---|
| ☐ House  ☐ Apartment | Number of Rooms | Adults | Children BOYS / GIRLS | Ages | ☐ YES  ☐ NO |

### 21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources of Recruitment by Name)

Will advertise per instructions from Dept. of Labor office.

22. Applications require various types of documentation. Please read PART II of the instructions to assure that appropriate supporting documentation is included with your application.

### 23. EMPLOYER CERTIFICATIONS

*By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.*

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:
   (1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.
   (2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

### 24. DECLARATIONS

**DECLARATION OF EMPLOYER** ► Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE |
|---|---|
| /s/ | 07/13/2005 |

| NAME (Type or Print) | TITLE |
|---|---|
| Bob DeStefano | Owner |

**AUTHORIZATION OF AGENT OF EMPLOYER** ► I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE |
|---|---|
| /s/ | 07/13/2005 |

| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number, Street, City, State, ZIP Code) |
|---|---|
| Joe A. Nichols | Law Office of Joe A. Nichols, P.A.<br>1033 W. First Street, Ste. B, Sanford, FL 32771 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS , INC., CROSSROADS TRUCKING CORP., ROBERT DESTEFANO, and KATHRYN DESTEFANO,<br><br>    Plaintiffs,<br>  v.<br><br>THE HONORABLE ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OFFICE OF THE ATTORNEY GENERAL,<br><br>    Defendant. | Case No. 08 CIV 6321 (JGK)<br><br><br><br><br><br><br><br><br>**CERTIFICATE OF SERVICE** |

  I, Bruce L. Thall, certify that:

  On August 21, 2008, I caused to be served the within document on Defendant by e-mailing a true copy thereof to Andrew J. Elmore, Esquire of the State of New York Office of the Attorney General co-counsel for Defendant at Andrew.Elmore@oag.state.ny.us and Julian R. Birnbaum, Esquire of the State of New York Office of the Attorney General co-counsel for Defendant at Julian.Birnbaum@oag.state.ny.us and Judith Marblestone, Esquire of the State of New York Office of the Attorney General co-counsel for Defendant at judith.marblestone@oag.state.ny.us.

                 _____
                 Bruce L. Thall, Esquire