UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREAMLAND AMUSEMENTS, INC.,
TOY CIRCUS, INC., CROSSROADS
TRUCKING CORP., ROBERT DESTEFANO,
and KATHRYN DESTEFANO,

    Plaintiffs,

  -- against --

THE HONORABLE ANDREW M. CUOMO,
ATTORNEY GENERAL OF THE STATE OF
NEW YORK, OFFICE OF THE ATTORNEY
GENERAL,

    Defendant.

No. 08 Civ. 6321 (JGK)

ECF Case


## DEFENDANT'S MEMORANDUM OF LAW
## IN REPLY TO PLAINTIFFS' OPPOSITION
## TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT


                                      Andrew M. Cuomo
                                      Attorney General of the State of New York
                                      120 Broadway
                                      New York, New York 10271
                                      Attorney for Defendant

Alphonso B. David, Deputy Bureau Chief for Civil Rights
Spencer Freedman, Counsel for Civil Rights
Seth Kupferberg, Acting Bureau Chief for Labor

Julian R. Birnbaum
Andrew J. Elmore
Judith Marblestone
Assistant Attorneys General
   Of Counsel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

   POINT I

      PLAINTIFFS HAVE CONCEDED THAT THIS MATTER IS NOT RIPE
      AND THAT THERE IS NO SUBJECT MATTER JURISDICTION ................................ 3

   POINT II

      ABSTENTION IS MANDATORY ............................................................................... 4

   POINT III

      PLAINTIFFS' PREEMPTION ARGUMENTS ARE BASESLESS ................................ 7

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

CASES                                                                                                                      PAGE

Alden Management Servs, Inc. v. Chao,
    529 F. Supp. 2d 882 (N.D. Ill. 2007) .................................................................................. 9

Blackwelder v. Safnauer,
    689 F.Supp. 106 (N.D.N.Y. 1988) ...................................................................................... 5

Cammon v. City of New York,
    95 N.Y.2d 583 (N.Y. 2000) ................................................................................................ 6

Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim.,
    70 F.3d 1361 (1st Cir. 1995) ............................................................................................... 7

Choimbol v. Fairfield Resorts, Inc.,
    2006 U.S. Dist. LEXIS 68225 (E.D. Va. Sept. 11, 2006) ................................................... 8

Coil v. Jack Tanner Co., Inc.,
    242 F. Supp. 2d 555 (S.D. Ill. 2002) ................................................................................. 10

Franza v. Abrams,
    695 F. Supp. 747 (S.D.N.Y. 1988) ..................................................................................... 5

Grochowski v. Ajet Const. Corp.,
    2000 U.S. Dist. LEXIS 11632 (S.D.N.Y. August 16, 2000) .............................................. 8

Grochowski v. Phoenix Const.,
    318 F. 2d 80 (2d Cir. 2003) ................................................................................................ 8

GTE Mobilenet of Ohio v. Johnson,
    111 F.3d 469 (6th Cir. 1997) .............................................................................................. 7

Hicks v. Miranda,
    422 U.S. 332 (1975) ....................................................................................................... 4, 5

J. & W. Seligman & Co., Inc. v. Spitzer,
    2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) .............................................. 4, 6

La Belle Creole Int'l v. Attorney General,
    10 N.Y.2d 192 (1961) ........................................................................................................ 4

Midwestern Gas Transmission Co. v. McCarty,
    270 F.3d 536 (7th Cir. 2001) .............................................................................................. 7

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,
  491 U.S. 350 (1989)..................................................................................4, 6, 7

Overnite Transp. Co. v. Tianti,
  926 F.2d 220 (2d Cir. 1991).................................................................................10

Pettis Moving Co. v. Roberts,
  784 F.2d 439 (2d Cir. 1986).................................................................................10

Shah v. Wilco Sys., Inc.,
  126 F. Supp. 2d 641 (S.D.N.Y. 2000)....................................................................8

Temple of the Lost Sheep v. Abrams,
  761 F. Supp. 237 (E.D.N.Y. 1989) .........................................................................5

Woodfeathers, Inc. v. Washington County,
  180 F.3d 1017 (9th Cir. 1999) ................................................................................6

Younger v. Harris,
  401 U.S. 37 (1971).....................................................................................4, 5, 6, 7

Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,
  215 F.3d 247 (2d Cir. 2000)....................................................................................1

## FEDERAL STATUTES

Fair Labor Standards Act.........................................................................3, 8, 9, 10

29 U.S.C. §216(b) ....................................................................................................8

29 U.S.C. §218..........................................................................................................9

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(1), (6).....................................................................................1

29 C.F.R. §778.5....................................................................................................10

## NEW YORK STATUTES

Executive Law §63(12)........................................................................................4, 6

Labor Law §§651-52 .......................................................................................................... 10

## NEW YORK RULES AND REGULATIONS

12 N.Y.C.R.R. §142-2.1 ................................................................................................... 10

12 N.Y.C.R.R. §142-2.2 ................................................................................................... 10

12 N.Y.C.R.R. §142-2.14 ................................................................................................. 10

## PRELIMINARY STATEMENT

Plaintiffs' opposition fails to rebut the Attorney General's arguments for dismissal of the Complaint. Plaintiffs offer no response on the issues of lack of ripeness and federal question jurisdiction (see Point I). While plaintiffs purport to address Younger abstention and federal preemption, their arguments have no merit (see Points II, III). Therefore, the Court should promptly dismiss the Complaint.

## STATEMENT OF FACTS[1]

As the Attorney General has repeatedly advised plaintiffs, employee complaints, worksite surveillance, and documents received from other government agencies and the plaintiffs themselves, all provide the Attorney General with a good faith belief that defendants have violated, inter alia, New York State wage and hour, anti-discrimination, and sanitary laws in the conduct of their business and treatment of employees. (See Elmore Aff. ¶¶22-28; Exs. G, L; Complaint n.1; Pls. Mem. at 8-9 & n.4) Based on this information, the Attorney General seeks compliance with validly issued subpoenas for testimony and documents.

---

[1]  The relevant facts are stated in the Attorney General's Memorandum of Law in Support of Motion to Dismiss the Complaint ("Def. Mem.") at 1-5, and the accompanying Affidavit of Julian R. Birnbaum ("Birnbaum Aff.") Ex. A ("Elmore Aff."), and are only summarized here to correct inaccurate and unsupported statements in plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint ("Pls. Mem.") that are factual assertions that appear nowhere in the Complaint (see, e.g., Pls. Mem. at 8-9 & n.3-4).

As the Attorney General made clear in his opening papers (Def. Mem. at n.1), he submitted the affidavits to support the portions of his motion made under Rule 12(b)(1), not the portions made under Rule 12(b)(6). Contrary to plaintiffs' suggestion (Pls. Mem. at 4), reliance on extrinsic evidence is proper on a 12(b)(1) motion. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

Plaintiffs, however, mischaracterize the Attorney General's good faith representations in initial settlement discussions as "findings." (Pls. Mem. at 10) The Attorney General agreed to meet with plaintiffs' counsel in light of his previous representations that plaintiffs sought to resolve the investigation by entering into a consent decree. (Elmore Aff. Exs. G and J at 3) To advance such discussions, the Attorney General revealed the nature of the allegations, his belief of at least four violations, and current theories of jurisdiction regarding one of those violations, i.e., that plaintiffs misrepresented to the New York State Department of Labor ("NYS DOL") what they would pay their employees. (Elmore Aff. ¶¶42-43; Ex. L) Characterization of this single allegation as the sole, final "findings of wrongdoing" (Pls. Mem. at 10) is belied by the Attorney General's July 27 letter on which plaintiffs rely (Pls. Mem. at 5):

> This letter is being submitted to advance the settlement discussions . . . by addressing your request for authority for . . . jurisdiction over your clients' fraudulent misrepresentations in documents to obtain nonimmigrant ("H-2B") employees. By providing this information, the OAG is not purporting to represent all jurisdictional bases for all violations of law nor does it waive any assertions of jurisdiction not addressed.

(Elmore Aff. Ex. L) This letter on its face intends to advance settlement, not to conclude the investigation.

Despite many communications regarding the investigation and substantial production of documents, plaintiffs did not invoke preemption as a potential defense until July 8, 2008 (Elmore Aff. ¶49, Ex. Q), and they did so then only in the context of purported settlement discussions. Plaintiffs thereafter refused to state whether they would testify until July 14, 2008, the day before the thrice-adjourned final subpoena hearing date, when they also announced that they had filed the federal Complaint. (Elmore Aff. ¶¶50-51) Given plaintiffs' dilatory tactics and previous assurances of their

intent to reach a negotiated agreement, it is no surprise that the Attorney General was unable to file a motion to compel that addressed plaintiffs' preemption arguments until July 29, fifteen days after the Complaint was filed. (Birnbaum Aff. ¶3; Ex. C)[2]

## ARGUMENT

### POINT I

### PLAINTIFFS HAVE CONCEDED THAT THIS MATTER IS NOT RIPE AND THAT THERE IS NO SUBJECT MATTER JURISDICTION

Plaintiffs offer no meaningful response to, and therefore effectively concede, the Attorney General's arguments that there is no federal question jurisdiction and that the Complaint is not ripe, which alone require dismissal. The Complaint concerns potential preemption defenses to liability that, as shown, does not create federal jurisdiction. (Def. Mem. at 15-19 and below at Point III) The Complaint is not ripe at this stage in the investigation because the Attorney General has reached no firm conclusions and has not yet framed its theories of recovery in a manner that is susceptible to judicial review. (Def. Mem. at 6-8)

Lack of ripeness here is highlighted by plaintiffs' recent submission of a self-serving affidavit purportedly summarizing Dreamland's monthly revenues in an attempt to show its entitlement to the Fair Labor Standards Act ("FLSA") exemption, which is also a partial affirmative defense to certain potential New York wage and hour claims. Because plaintiffs have refused to testify about data they have produced so far about business receipts, the Attorney General can not yet determine plaintiffs' entitlement to

---

[2] Plaintiffs erroneously state that seventeen days elapsed between federal and state filings. (Pls. Mem. at n.8)

3

the exemption. Plaintiffs' apparent effort to have the Court decide this factual issue as to which there may not even be any dispute underscores that this case is not ripe.

## POINT II

### ABSTENTION IS MANDATORY

As the Attorney General has argued (Def. Mem. at 9-15) abstention is mandatory here – notwithstanding claims of preemption, see New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans ("NOPSI"), 491 U.S. 350, 365 (1989) – because the Younger v. Harris, 401 U.S. 37 (1971), factors are satisfied. Plaintiffs do not dispute that commencement of a state-court proceeding to compel compliance with investigatory subpoenas is an ongoing state proceeding for Younger purposes.[3] Nor do plaintiffs contest that they have had and will continue to have the opportunity to raise their preemption defense in state court.

Plaintiffs' incorrectly try to avoid abstention merely because they filed their Complaint fifteen days before the Attorney General commenced the state action to compel. (Pls. Mem. at 21 n.8) The Supreme Court has soundly rejected plaintiffs' race-to-the-courthouse theory, finding that forgoing abstention merely because the federal plaintiff filed first would "trivialize the principles" of Younger. Hicks v. Miranda, 422 U.S. 332, 350 (1975). Under Hicks, deference to the existence of an ongoing state proceeding is not defeated by the preemptive filing of a federal suit where there have been

---

[3]    Plaintiffs do appear to dispute whether issuance of the subpoenas itself commenced a state proceeding. (Pls. Mem. at 21 n.8) But their attempt (id.) to distinguish J. & W. Seligman & Co., Inc. v. Spitzer, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007), which held that issuance of investigatory subpoenas under the Martin Act commenced a state proceeding for Younger purposes, is unavailing. Contrary to plaintiffs' speculation, it is long established that New York Executive Law §63(12), like the Martin Act, authorizes the issuance of pre-complaint investigatory subpoenas. See, e.g., La Belle Creole Int'l v. Attorney General, 10 N.Y.2d 192, 195-96 (1961).

4

no "proceedings of substance on the merits" in federal court when state proceedings are commenced. Id. at 349 (proceeding of substance does not occur where federal complaint was not answered and there were no pending proceedings before commencement of state suit). Here, plaintiffs were able to file first because they waited until the eve of their deadline for compliance with the Attorney General's subpoenas to announce they would not continue to comply with the subpoenas.

Similarly, plaintiffs' argument that their Complaint itself qualifies as a "proceeding of substance" (Pls. Mem. at 21 n.8), sufficient to defeat Younger cannot be squared with Hicks, in which the Court applied Younger because no proceedings of substance had occurred even though filing of the complaint, consideration and denial of a temporary restraining order and convening of a three-judge court to consider a constitutional challenge all preceded the state-court filing. Hicks, 422 U.S. at 337-38. Here, the mere passage of two weeks after filing the Complaint, with no other proceedings before the state motion to compel, does not constitute "proceedings of substance." Id.; see also Temple of the Lost Sheep v. Abrams, 761 F. Supp. 237, 242-43 (E.D.N.Y. 1989) (abstaining in favor of state proceeding filed two weeks later, where court heard argument on plaintiffs' motion for injunctive relief but did not rule on the merits before the state proceeding was commenced); Franza v. Abrams, 695 F. Supp. 747, 750 (S.D.N.Y. 1988) (abstaining where federal proceeded state action by about one month and there was a "wave of motions and cross-motions"); Blackwelder v. Safnauer, 689 F.Supp. 106, 117-18 (N.D.N.Y. 1988) (abstaining in favor of later-filed state court actions where federal court did not reach merits of plaintiffs' claims in ruling on preliminary motions).

5

Plaintiffs also defy Supreme Court precedent in arguing (Pls. Mem. at 21-22) that the Attorney General has "no legitimate interest to enforce" through the state proceeding solely because possible claims in an enforcement action based upon promises Dreamland Amusements Inc. and the DeStefanos made to NYS DOL in their ETA 750s, or other violations of state law, may be preempted. But as the Supreme Court has said, when assessing the state's interest in proceedings for <u>Younger</u> purposes, a court must look to "the importance of the generic proceedings to the State," not to the state's interest "in the outcome of the particular case" or to "narrow" case-specific claims of preemption, i.e., here whether plaintiffs indeed broke promises to NYS DOL or otherwise violated state law. <u>NOPSI</u>, 491 U.S. at 365-66. In this case, the state has undeniable interests in investigating illegal business practices under Executive Law §63(12), including enforcing investigatory subpoenas. <u>Seligman</u>, 2007 U.S. Dist. LEXIS 71881, at *17 (enforcement of subpoenas issued pursuant to state law represents important and legitimate state interest" supporting <u>Younger</u> abstention); <u>see also</u> <u>Cammon v. City of New York</u>, 95 N.Y.2d 583, 590 (N.Y. 2000) (affirming state's general interest "in investigating and preventing fraudulent conduct and enforcing subpoenas issued pursuant to state law"). That is particularly so because the investigation pertains to potential violations of civil rights, health, and wage and hour laws -- all traditional fields of state authority.

<u>NOPSI</u> further holds that even a "substantial" claim of federal preemption does not defeat <u>Younger</u> abstention. <u>NOPSI</u>, 491 U.S. at 364-65.[4] Plaintiffs appear to rely on

---

[4] Any stray language to the contrary from Second Circuit cases predating <u>NOPSI</u> (Pls Mem. at 20) is no longer good law. Indeed, the more recent cases cited by plaintiffs affirm that preemption claims are fully subject to <u>Younger</u>. <u>See, e.g.</u>, <u>Woodfeathers, Inc. v. Washington County</u>, 180 F.3d 1017, 1021 (9th Cir. 1999) ("Were we to make the determination whether to abstain turn on whether a state law is preempted, we would

6

the minority rule adopted by some circuits – but not by the Second Circuit – that a "facially conclusive" claim of preemption may make Younger abstention inappropriate. See, e.g., GTE Mobilenet of Ohio v. Johnson, 111 F.3d 469, 475 (6th Cir. 1997) (explaining that a federal court "should abstain to allow the state court to consider [] preemption issues" unless the preemption claim is facially conclusive); Chaulk Servs., Inc. v. Mass. Comm'n Against Discrim., 70 F.3d 1361, 1370 (1st Cir. 1995).

Even if the Second Circuit had adopted an exception to Younger for cases of "facially conclusive preemption," this case does not fall into that category. Plaintiffs cannot demonstrate that the Attorney General's investigation is "flagrantly unlawful," NOPSI, 491 U.S. at 367, or otherwise barred on its face. Instead of citing clear statutory language or controlling precedent, plaintiffs have cobbled together a preemption argument based on analogies to cases presenting very different facts from this case, to the limited extent the facts here are now known. For this Court to hold federal proceedings to decide who has the better of the preemption argument and as to which potential theories of recovery, rather than deferring to the state court's ability to resolve those same issues in due course, would violate the core principles of Younger abstention.

POINT III

PLAINTIFFS' PREEMPTION ARGUMENTS ARE BASELESS

Even were abstention not required here, plaintiffs' preemption arguments would fail. The Attorney General is not investigating compliance with federal immigration law,

---

render Younger a nullity.") (internal quotation omitted); Midwestern Gas Transmission Co. v. McCarty, 270 F.3d 536, 539 (7th Cir. 2001) (rejecting premise that "that a defense of federal preemption automatically defeats Younger" and noting that a state court "has the same right and power to decide a defense of preemption as it does to decide any other federal defense").

federal fraud law, or federal wage and hour law, but seeks testimony and document production regarding potential violations of New York law governing deceptive business practices, wage and hour obligations, discrimination and sanitary requirements. (Def. Mem. at 5, 20-24) Plaintiffs have not even attempted to overcome the strong presumption against preemption that operates in such fields of traditional state authority.

As the Attorney General has shown, many of his potential theories of recovery – such as those requiring compliance with New York minimum wage laws or requiring payment of any wages Dreamland actually promised to its employees – are not even arguably preempted.[5] FLSA expressly permits more protective state minimum wage and

---

[5] In the face of this precedent, the cases on which plaintiffs rely (Pls. Mem. at 13) are not persuasive on their argument for preemption. Grochowski v. Phoenix Const., 318 F. 2d 80, 86 (2d Cir. 2003), turns on the facts – absent here – that the private plaintiffs, who filed a complaint in federal court, were paid under federally funded contracts "and, as such, are governed by" the Davis-Bacon Act ("DBA") prevailing wage requirements. Grochowski is essentially a standing case that does not discuss preemption, and involves a specific administrative recovery structure in which the plaintiffs participated. Id., at 83-84; Grochowski v. Ajet Const. Corp., 2000 U.S. Dist. LEXIS 11632, at *5 (S.D.N.Y. August 16, 2000). Because there is no private standing to sue under the DBA, there were no permitted "parallel actions seeking recovery of wages both under an administrative structure and through common-law remedies"; therefore, an attempt to use state law was determined to be an "'end-run' around the DBA." Grochowski, 318 F. 3d at 86. But here there is nothing for the Attorney General to make an "end-run" around: FLSA, 29 U.S.C. §216(b), does provide a private, parallel action to recover wages, and the lack of a private right of action under federal immigration law is not relevant since the Attorney General does not make claims under such law. Therefore, the reasoning that required dismissal of state law claims in Grochowski does not apply.

Choimbol v. Fairfield Resorts, Inc., 2006 U.S. Dist. LEXIS 68225, at *16-23 (E.D. Va. Sept. 11, 2006), concerned alleged FLSA preemption of state common law claims that merely duplicate FLSA claims, not state statutory claims with their own, independent elements, like those that the Attorney General is investigating in this case. Shah v. Wilco Sys., Inc., 126 F. Supp. 2d 641, 643, 645, 647-49 (S.D.N.Y. 2000), concerned H-1B workers subject to an extensive administrative enforcement scheme. Its holding, without discussing preemption, that private plaintiffs do not have a right of action under the Immigration and Nationality Act, id., at 648, is inapposite since the Attorney General is not claiming under that statute. The Shah plaintiffs' claims for

8

overtime laws (see below at 9-10), and immigration law does not supplant state claims under generally applicable statutes such as those regulating employment merely because the workers' immigration status is federally regulated (Def. Mem. at 19-25).

In response, plaintiffs have conjured a breathtakingly broad theory of preemption going far beyond what is asserted in their complaint. They appear (Pls. Mem. at 13) to contend that employers hiring H-2B workers are immune even from FLSA requirements, as well as from all state wage and hour laws. No statutory language or judicial precedent supports this sweeping contention. Nor does it make any sense, since the fundamental point of the employer certification process is to ensure that H-2B workers are employed on the same terms as willing U.S. workers, so as not to depress wages and employment conditions in local labor markets.[6] This parity objective is best served by making H-2B employers subject to generally applicable state wage and hour laws, just as other employers are, and would be wholly undermined by exempting H-2B employers alone from the application and enforcement of those laws. (Def. Mem. at 24-25)

Plaintiffs similarly overreach in arguing that FLSA preempts New York labor law.[7] The Second Circuit has rejected plaintiffs' argument that "the state cannot erase or

---

retaliation under FLSA and for breach of contract were not dismissed on the ground of preemption, which was not even discussed as a potentially applicable issue. Id., at 651-53. Alden Management Servs, Inc. v. Chao, 529 F. Supp. 2d 882, 885, 892 (N.D. Ill. 2007), concerned a an administrative proceeding involving H-1A nurses under provisions of the Immigration Nursing Relief Act of 1989, that provided specific back pay complaint procedures; it does not discuss preemption.

[6]     Indeed, employers like Dreamland Amusements Inc. certify on the ETA 750s that "[t]he job opportunity has been and is clearly open to any qualified U.S. worker." (Complaint Ex. A)

[7]     FLSA expressly permits states to enact minimum wage and maximum hour laws that are more protective of employees than federal minimum wage and overtime laws, 29

9

undo the very exemptions provided for within the FLSA" by imposing minimum wage and overtime requirements for FLSA-exempt employees. (Pls. Mem. at 17) The Circuit has squarely held, "Congress did not prevent the states from regulating overtime wages paid to workers exempt from the FLSA." Pettis Moving Co. v. Roberts, 784 F.2d 439, 441 (2d Cir. 1986); accord, Overnite Transp. Co. v. Tianti, 926 F.2d 220 (2d Cir. 1991).[8]

## CONCLUSION

For the foregoing reasons and those in his opening brief, the Attorney General requests the Court dismiss this action and grant such other relief as is just and proper.

Dated: New York, New York
August 29, 2008

Respectfully submitted,

Andrew M. Cuomo,
Attorney General of the State of New York

By:   /s/  Andrew J. Elmore
Andrew J. Elmore (AE 9042)
Assistant Attorney General, Civil Rights
120 Broadway
New York, New York 10271
(212) 416-6280
Attorney for Defendant

---

U.S.C. §218; 29 C.F.R. §778.5. New York has (a) enacted a higher minimum wage that does not exempt amusement establishment employees, New York Labor Law §§651-652, 12 N.Y.C.R.R. §§142-2.1, 142-2.14; and (b) required employees subject to certain FLSA exemptions, including for amusement establishments, be paid overtime at no less than the reduced rate of one and one-half times the state minimum wage, 12 N.Y.C.R.R. §142-2.2.

[8]   While ignoring this controlling precedent, plaintiffs cite Coil v. Jack Tanner Co., Inc., 242 F. Supp. 2d 555 (S.D. Ill. 2002), where the district court held that a state overtime law could not be applied to seamen "on federal navigable waterways" in Illinois because the law would "work[] material prejudice to the characteristic features of the general maritime law or interfere[] with the proper harmony and uniformity of that law in its international and interstate relations." Id. at 557, 559 (internal quotation and citation omitted). Unlike Coil, in which the court held the uniquely federal character of maritime law and difficulties of applying state law on federal waterways precluded application of state law, id. at 559-60, here there is no conflict between state law and federal interests under immigration law and FLSA, so that Coil, which conflicts with Second Circuit precedent, does not apply.

10